# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:21–cv–00100–EGS

HUISHA–HUISHA et al v. GAYNOR et al
Assigned to: Judge Emmet G. Sullivan
 Case:  1:20–cv–02245–EGS–GMH
Cause: 05:0701 Judicial Review of Agency Decision

**Plaintiff**

Date Filed: 01/12/2021
Jury Demand: None
Nature of Suit: 360 P.I.: Other
Jurisdiction: U.S. Government Defendant

| | | |
|---|---|---|
| **NANCY GIMENA HUISHA–HUISHA**<br>*and her minor child* | represented by | **Tamara Goodlette**<br>REFUGEE AND IMMIGRANT CENTER<br>FOR EDUCATION & LEGAL<br>SERVICES<br>802 Kentucky Avenue<br>San Antonio, TX 78201<br>210–960–3206<br>Email: tami.goodlette@raicestexas.org<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Arthur B. Spitzer**<br>AMERICAN CIVIL LIBERTIES UNION<br>OF THE DISTRICT OF COLUMBIA<br>915 15th Street NW<br>Ste 2nd Floor<br>Washington, DC 20005<br>202–601–4266<br>Fax: 202–457–0805<br>Email: artspitzer@gmail.com<br>*ATTORNEY TO BE NOTICED* |
| | | **Celso Perez**<br>ACLU IMMIGRANTS' RIGHTS<br>PROJECT<br>125 Broad Street<br>18th Floor<br>New York, NY 10004<br>646–905–8953<br>Email: cperez@aclu.org<br>*TERMINATED: 04/05/2021* |
| | | **Cody H. Wofsy**<br>AMERICAN CIVIL LIBERTIES UNION<br>FOUNDATION<br>Immigrants' Rights Project<br>39 Drumm Street<br>San Francisco, CA 94111<br>415–343–0785 |

Email: cwofsy@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Antonio Galindo**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
New York
125 Broad Street
Suite 18th Floor
New York
New York, NY 10004
646–905–8907
Email: dgalindo@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jamie L. Crook**
CENTER FOR GENDER AND
REFUGEE STUDIES
200 McAllister Street
San Francisco, CA 94102
(415) 565–4877
Fax: (415) 581–8824
Email: crookjamie@uchastings.edu
*ATTORNEY TO BE NOTICED*

**Karla Vargas**
TEXAS CIVIL RIGHTS PROJECT
1017 W. Hackberry Avenue
Alamo, TX 78516
512–731–2576
Email: kvargas@texascivilrightsproject.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
AMERICAN CIVIL LIBERTIES UNION
125 Broad St.
18th Floor
New York, NY 10004
212–549–2616
Fax: 212–549–2654
Email: lgelernt@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ming Cheung**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street
18th Floor

New York, NY 10004
646–610–9943
Fax: 212–549–2654
Email: MCheung@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Russell**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
39 Drumm Street
San Francisco, CA 94111
415–343–0776
Email: irp_mr@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Immigrants' Rights Project
125 Broad Street
18th Floor
New York, NY 10004
(212) 549–2620
Fax: (212) 549–2654
Email: ojadwat@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
AMERICAN CIVIL LIBERTIES UNION
OF THE DISTRICT OF COLUMBIA
915 15th Street, NW
2nd Floor
Washington, DC 20005
(202) 457–0800
Fax: (202) 457–0805
Email: smichelman@acludc.org
*ATTORNEY TO BE NOTICED*

**Stephen Bonggyun Kang**
AMERICAN CIVIL LIBERTIES UNION
39 Drumm Street
San Francisco, CA 94111
415–343–0783
Fax: 415–395–0950
Email: skang@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**I.M.C.H.**    represented by    **Tamara Goodlette**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Arthur B. Spitzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celso Perez**
(See above for address)
*TERMINATED: 04/05/2021*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Antonio Galindo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jamie L. Crook**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Karla Vargas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ming Cheung**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Russell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen Bonggyun Kang**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**VALERIA MACANCELA BERMEJO**                    represented by    **Tamara Goodlette**
*and her minor daughter*                                                         (See above for address)
                                                                                                 *LEAD ATTORNEY*
                                                                                                 *ATTORNEY TO BE NOTICED*

**Arthur B. Spitzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celso Perez**
(See above for address)
*TERMINATED: 04/05/2021*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Antonio Galindo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jamie L. Crook**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Karla Vargas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ming Cheung**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Russell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen Bonggyun Kang**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**B.A.M.M.**                    represented by  **Tamara Goodlette**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Arthur B. Spitzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celso Perez**
(See above for address)
*TERMINATED: 04/05/2021*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Antonio Galindo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jamie L. Crook**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Karla Vargas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ming Cheung**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Russell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen Bonggyun Kang**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**JOSAINE PEREIRA–DE SOUZA**
*and her minor children*

represented by **Tamara Goodlette**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Arthur B. Spitzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celso Perez**
(See above for address)
*TERMINATED: 04/05/2021*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Antonio Galindo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jamie L. Crook**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Karla Vargas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ming Cheung**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Russell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen Bonggyun Kang**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**H.N.D.S.**                              represented by **Tamara Goodlette**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Arthur B. Spitzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celso Perez**
(See above for address)
*TERMINATED: 04/05/2021*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Antonio Galindo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jamie L. Crook**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Karla Vargas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ming Cheung**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Russell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen Bonggyun Kang**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**E.R.P.D.S.**                          represented by **Tamara Goodlette**
                                        (See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Arthur B. Spitzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celso Perez**
(See above for address)
*TERMINATED: 04/05/2021*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Antonio Galindo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jamie L. Crook**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Karla Vargas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ming Cheung**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Russell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Stephen Bonggyun Kang**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**M.E.S.D.S.**                            represented by **Tamara Goodlette**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Arthur B. Spitzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celso Perez**
(See above for address)
*TERMINATED: 04/05/2021*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Antonio Galindo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jamie L. Crook**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Karla Vargas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ming Cheung**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Russell**
(See above for address)

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen Bonggyun Kang**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**H.T.D.S.D.S.**
*on behalf of themselves and others*
*similarly situated*

represented by **Tamara Goodlette**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Arthur B. Spitzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celso Perez**
(See above for address)
*TERMINATED: 04/05/2021*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Antonio Galindo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jamie L. Crook**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Karla Vargas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ming Cheung**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Russell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen Bonggyun Kang**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**ALL PLAINTIFFS**                    represented by **Tamara Goodlette**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Arthur B. Spitzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celso Perez**
(See above for address)
*TERMINATED: 04/05/2021*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Antonio Galindo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jamie L. Crook**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Karla Vargas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ming Cheung**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Russell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen Bonggyun Kang**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**MARTHA LILIANA**                  represented by **Tamara Goodlette**
**TADAY–ACOSTA**                                   (See above for address)
*and her minor children*                           *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

**Celso Perez**
(See above for address)
*TERMINATED: 04/05/2021*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

14

**Daniel Antonio Galindo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jamie L. Crook**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Karla Vargas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ming Cheung**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Russell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephen Bonggyun Kang**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**D.J.Z.**                          represented by **Tamara Goodlette**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Celso Perez**
(See above for address)
*TERMINATED: 04/05/2021*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Daniel Antonio Galindo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jamie L. Crook**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Karla Vargas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ming Cheung**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Russell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephen Bonggyun Kang**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**J.A.Z.**                          represented by **Tamara Goodlette**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Celso Perez**
(See above for address)
*TERMINATED: 04/05/2021*

**Cody H. Wofsy**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Antonio Galindo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jamie L. Crook**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Karla Vargas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ming Cheung**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Russell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephen Bonggyun Kang**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**JULIEN THOMAS**                    represented by **Tamara Goodlette**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Celso Perez**
(See above for address)
*TERMINATED: 04/05/2021*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Antonio Galindo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jamie L. Crook**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Karla Vargas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ming Cheung**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Russell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephen Bonggyun Kang**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**FIDETTE BOUTE**
*and their minor children*

represented by **Tamara Goodlette**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Celso Perez**

*(See above for address)*
*TERMINATED: 04/05/2021*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Antonio Galindo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jamie L. Crook**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Karla Vargas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ming Cheung**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Russell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephen Bonggyun Kang**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**D.J.T.–B.**                    represented by **Tamara Goodlette**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Celso Perez**
(See above for address)
*TERMINATED: 04/05/2021*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Antonio Galindo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jamie L. Crook**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Karla Vargas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ming Cheung**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Russell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephen Bonggyun Kang**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**T.J.T.–B.**                                    represented by  **Tamara Goodlette**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Celso Perez**
(See above for address)
*TERMINATED: 04/05/2021*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Antonio Galindo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jamie L. Crook**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Karla Vargas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ming Cheung**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Russell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephen Bonggyun Kang**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

ROMILUS VALCOURT                    represented by **Tamara Goodlette**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Celso Perez**
(See above for address)
*TERMINATED: 04/05/2021*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Antonio Galindo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jamie L. Crook**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Karla Vargas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ming Cheung**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Russell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephen Bonggyun Kang**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**BEDAPHECA ALCANTE**
*and their minor child*

represented by **Tamara Goodlette**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Celso Perez**
(See above for address)
*TERMINATED: 04/05/2021*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Antonio Galindo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jamie L. Crook**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Karla Vargas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ming Cheung**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Russell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephen Bonggyun Kang**
(See above for address)

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**B.V.–A.**                    represented by **Tamara Goodlette**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Celso Perez**
(See above for address)
*TERMINATED: 04/05/2021*

**Cody H. Wofsy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Antonio Galindo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jamie L. Crook**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Karla Vargas**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ming Cheung**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Morgan Russell**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

Stephen Bonggyun Kang
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**PETER T. GAYNOR**
*ACTING SECRETARY OF HOMELAND*
*SECURITY, in his official capacity*
*TERMINATED: 01/28/2021*

represented by **Sean Michael Tepe**
U.S. DEPARTMENT OF JUSTICE
555 Fourth Street, NW
Washington, DC 20530
(202) 252–2533
Fax: (202) 252–2599
Email: sean.tepe@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**MARK A. MORGAN**
*SENIOR OFFICIAL PERFORMING*
*THE DUTIES OF THE*
*COMMISSIONER OF U.S. CUSTOMS*
*AND BORDER PROTECTION (CBP), in*
*his official capacity*
*TERMINATED: 01/28/2021*

represented by **Sean Michael Tepe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**WILLIAM A. FERRARA**
*EXECUTIVE ASSISTANT*
*COMMISSIONER, CBP OFFICE OF*
*FIELD OPERATIONS, in his official*
*capacity*

represented by **Sean Michael Tepe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**RODNEY S. SCOTT**
*CHIEF OF U.S. BORDER PATROL, in*
*his official capacity*

represented by **Sean Michael Tepe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**JONATHAN FAHEY**
*SENIOR OFFICIAL PERFORMING*
*THE DUTIES OF THE DIRECTOR OF*
*U.S. IMMIGRATION AND CUSTOMS*
*ENFORCEMENT, in his official capacity*
*TERMINATED: 01/28/2021*

represented by **Sean Michael Tepe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ALEX M. AZAR, II**
*SECRETARY OF HEALTH AND*
*HUMAN SERVICES, in his official*
*capacity*
*TERMINATED: 01/28/2021*

represented by **Sean Michael Tepe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ROBERT R. REDFIELD**
*DR.,DIRECTOR OF THE CENTERS*
*FOR DISEASE CONTROL AND*
*PREVENTION, in his official capacity*
*TERMINATED: 01/28/2021*

represented by **Sean Michael Tepe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**DAVID PEKOSKE**
*ACTING SECRETARY OF HOMELAND*
*SECURITY, in his official capacity*
*TERMINATED: 02/10/2021*

represented by **Sean Michael Tepe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**TROY MILLER**
*SENIOR OFFICIAL PERFORMING*
*THE DUTIES OF THE*
*COMMISSIONER OF U.S. CUSTOMS*
*AND BORDER PROTECTION (CBP), in*
*his official capacity*

represented by **Sean Michael Tepe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**TAE D. JOHNSON**
*Senior Official Performing the Duties of*
*the Director of U.S. Immigration and*
*Customs Enforcement, in his official*
*capacity*

represented by **Sean Michael Tepe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**NORRIS COCHRAN**
*Acting Secretary of Health and Human*
*Services, in his official capacity*

represented by **Sean Michael Tepe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ROCHELLE P. WALENSKY**
*Dr., Director of the Centers for Disease*
*Control and Prevention, in her official*
*capacity*

represented by **Sean Michael Tepe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ALEJANDRO J. MAYORKAS**
*SECRETARY OF HOMELAND*

represented by **Sean Michael Tepe**
(See above for address)

*SECURITY, in his official capacity*                                                      *LEAD ATTORNEY*
                                                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**XAVIER BECERRA**                                        represented by  **Sean Michael Tepe**
                                                                          (See above for address)
                                                                          *LEAD ATTORNEY*
                                                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**T. ALEXANDER ALEINIKOFF**                               represented by  **Noah A. Levine**
                                                                          WILMER CUTLER PICKERING HALE
                                                                          & DORR LLP
                                                                          7 World Trade Center
                                                                          250 Greenwhich Street
                                                                          New York, NY 10007
                                                                          (212) 230–8800
                                                                          Fax: (212) 230–8888
                                                                          Email: noah.levine@wilmerhale.com
                                                                          *LEAD ATTORNEY*
                                                                          *PRO HAC VICE*
                                                                          *ATTORNEY TO BE NOTICED*

                                                                          **Daniel S. Volchok**
                                                                          WILMER CUTLER PICKERING HALE
                                                                          & DORR LLP
                                                                          1875 Pennsylvania Avenue NW
                                                                          Washington, DC 20006
                                                                          (202) 663–6103
                                                                          Fax: (202) 663–6363
                                                                          Email: daniel.volchok@wilmerhale.com
                                                                          *ATTORNEY TO BE NOTICED*

                                                                          **Paul R.Q. Wolfson**
                                                                          WILMER CUTLER PICKERING HALE
                                                                          & DORR LLP
                                                                          1875 Pennsylvania Ave., NW
                                                                          Suite 400E
                                                                          Washington, DC 20006
                                                                          (202) 663–6000
                                                                          Fax: (202) 663–6363
                                                                          Email: paul.wolfson@wilmerhale.com
                                                                          *TERMINATED: 08/16/2021*

**Amicus**

**DEBORAH ANKER**                                         represented by  **Noah A. Levine**
                                                                          (See above for address)
                                                                          *LEAD ATTORNEY*
                                                                          *PRO HAC VICE*
                                                                          *ATTORNEY TO BE NOTICED*

**Daniel S. Volchok**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paul R.Q. Wolfson**
(See above for address)
*TERMINATED: 08/16/2021*

<u>Amicus</u>

**JAMES C. HATHTAWAY**                    represented by   **Noah A. Levine**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel S. Volchok**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paul R.Q. Wolfson**
(See above for address)
*TERMINATED: 08/16/2021*

<u>Amicus</u>

**GERALD L. NEUMAN**                      represented by   **Noah A. Levine**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel S. Volchok**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paul R.Q. Wolfson**
(See above for address)
*TERMINATED: 08/16/2021*

<u>Amicus</u>

**INTERNATIONAL REFUGEE**                 represented by   **Kathryn S. Austin**
**ASSISTANCE PROJECT**                                     INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza
4th Floor
New York, NY 10004
516–296–0688
Email: kaustin@refugeerights.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geroline A Castillo**

INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza
4th Floor
New York, NY 10004
516–824–4256
Email: gcastillo@refugeerights.org
*ATTORNEY TO BE NOTICED*

**Amicus**

**HISTORIANS**                    represented by **Raymond P. Tolentino**
                                  KAPLAN HECKER & FINK LLP
                                  350 Fifth Avenue
                                  Suite 7110
                                  New York, NY 10118
                                  212–763–0883
                                  Fax: 212–564–0883
                                  Email: rtolentino@kaplanhecker.com
                                  *LEAD ATTORNEY*
                                  *ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 01/12/2021 | 1 | | COMPLAINT against ALEX M. AZAR, II, JONATHAN FAHEY, WILLIAM A. FERRARA, PETER T. GAYNOR, MARK A. MORGAN, ROBERT R. REDFIELD, RODNEY S. SCOTT ( Filing fee $ 402 receipt number ADCDC–8066168) filed by B.A.M.M., H.N.D.S., H.T.D.S.D.S., I.M.C.H., JOSAINE PEREIRA–DE SOUZA, E.R.P.D.S., M.E.S.D.S., NANCY GIMENA HUISHA–HUISHA, VALERIA MACANCELA BERMEJO. (Attachments: # 1 Civil Cover Sheet, # 2 Notice of Related Cases, # 3 Summons for all Defendants)(Perez, Celso) (Entered: 01/12/2021) |
| 01/12/2021 | 2 | | NOTICE OF RELATED CASE by B.A.M.M., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA. Case related to Case No. 20cv2245. (adh, ) (Entered: 01/12/2021) |
| 01/12/2021 | | | Case Assigned to Judge Emmet G. Sullivan. (adh, ) (Entered: 01/12/2021) |
| 01/12/2021 | 3 | | SUMMONS (9) Issued Electronically as to ALEX M. AZAR, II, JONATHAN FAHEY, WILLIAM A. FERRARA, PETER T. GAYNOR, MARK A. MORGAN, ROBERT R. REDFIELD, RODNEY S. SCOTT, U.S. Attorney and U.S. Attorney General (Attachment: # 1 Notice and Consent)(adh, ) (Entered: 01/12/2021) |
| 01/12/2021 | 4 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by B.A.M.M., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Declaration of Huisha–Huisha, # 2 Declaration of Pereira–De Souza, # 3 Declaration of Macancela Bermejo, # 4 Text of Proposed Order)(Perez, Celso) (Entered: |

| | | 01/12/2021) |
|---|---|---|
| 01/12/2021 | 5 | Emergency MOTION to Stay *Removal* by B.A.M.M., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA (Attachments: # 1 Memorandum in Support of Emergency Motion for Stay of Removal, # 2 Declaration of Andrea Meza, # 3 Text of Proposed Order)(Perez, Celso) (Entered: 01/12/2021) |
| 01/12/2021 | | MINUTE ORDER. The Court, sua sponte, schedules a Status Conference for January 12, 2021 at 6:00 PM via Teleconference. The parties shall contact Mr. Mark Coates, the Courtroom Deputy Clerk, for the dial–in information. In view of Plaintiffs' 5 Emergency MOTION to Stay Removal, plaintiffs are HEREBY DIRECTED to contact forthwith the United States Attorneys Office for the District of Columbia and/or the Department of Justice as appropriate to identify government counsel. Signed by Judge Emmet G. Sullivan on 1/12/2021. (lcegs2) (Entered: 01/12/2021) |
| 01/12/2021 | | Set/Reset Hearings: Status Conference set for 1/12/2021 at 6:00 PM in Telephonic/VTC before Judge Emmet G. Sullivan. (mac) (Entered: 01/12/2021) |
| 01/12/2021 | | Minute Entry for proceedings held before Judge Emmet G. Sullivan: Status Conference held via VTC on 1/12/2021. The Court Will Grant Motion Over Objection. Plaintiffs Not Involuntarily Moved Pending Further Order Of The Court. The Court Will Issue An Order. Parties Will Confer In Regard To Briefing Schedule. (Court Reporter LISA BANKINS.) (mac) (Entered: 01/12/2021) |
| 01/12/2021 | | MINUTE ORDER granting, over objection, Plaintiffs' 5 Emergency MOTION to Stay Removal. In view of the arguments presented by Plaintiffs in their motion, the representations made by the Government, and for the reasons stated on the record at the January 12, 2021 Status Conference, Plaintiffs shall not be involuntarily removed from the United States pending further order of the Court. Parties shall file a Joint Proposed Scheduling Order by no later than January 15, 2021. In the forthcoming briefing, in addition to other arguments, parties shall address whether this case is related to Civil Action Number 20–2245, P.J.E.S. v. Wolf Signed by Judge Emmet G. Sullivan on 1/12/2021. (lcegs2) (Entered: 01/12/2021) |
| 01/12/2021 | 6 | NOTICE of Appearance by Sean Michael Tepe on behalf of All Defendants (Tepe, Sean) (Entered: 01/12/2021) |
| 01/12/2021 | 7 | NOTICE of Appearance by Scott Michelman on behalf of All Plaintiffs (Michelman, Scott) (Entered: 01/12/2021) |
| 01/12/2021 | 8 | NOTICE of Appearance by Arthur B. Spitzer on behalf of All Plaintiffs (Spitzer, Arthur) (Entered: 01/12/2021) |
| 01/13/2021 | | Set/Reset Deadlines: Joint Status Report due by 1/15/2021 (mac) (Entered: 01/13/2021) |
| 01/13/2021 | | SEALED MINUTE ORDER granting 4 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL. Signed by Judge Emmet G. Sullivan on 1/13/21. (mac) (Entered: 01/13/2021) |

| 01/13/2021 | 9 | SEALED Declarations filed by B.A.M.M., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA. (This document is SEALED and only available to authorized persons.)(zjf) (Entered: 01/13/2021) |
|---|---|---|
| 01/14/2021 | 10 | NOTICE of Appearance by Jamie L. Crook on behalf of All Plaintiffs (Crook, Jamie) (Main Document 10 replaced on 1/14/2021) (zjf). (Entered: 01/14/2021) |
| 01/15/2021 | 11 | PROPOSED BRIEFING SCHEDULE *Joint Proposed Briefing Schedule* by ALEX M. AZAR, II, JONATHAN FAHEY, WILLIAM A. FERRARA, PETER T. GAYNOR, MARK A. MORGAN, ROBERT R. REDFIELD, RODNEY S. SCOTT. (Tepe, Sean) (Entered: 01/15/2021) |
| 01/15/2021 | | MINUTE ORDER. In view of Parties' 11 PROPOSED BRIEFING SCHEDULE concerning the specific issue of whether this case is related to Civil Action Number 20–2245, P.J.E.S. v. Wolf, the parties SHALL adhere to the following briefing schedule: Defendants shall file a brief with supporting points and authorities of no more than 10 pages in length by no later than January 19, 2021, and Plaintiffs shall file a brief with supporting points and authorities of no more than 10 pages in length by no later than January 21, 2021. Signed by Judge Emmet G. Sullivan on 1/15/2021. (lcegs2) (Entered: 01/15/2021) |
| 01/19/2021 | | Set/Reset Deadlines: Defendants Brief due 1/19/2021. Plaintiffs Brief due 1/21/2021. (mac) (Entered: 01/19/2021) |
| 01/19/2021 | 12 | Emergency MOTION to Stay *Removal* by B.A.M.M., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA. (Attachments: # 1 Text of Proposed Order)(Perez, Celso) (Entered: 01/19/2021) |
| 01/19/2021 | 13 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by B.A.M.M., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Declaration of Taday–Acosta, # 3 Declaration of Thomas)(Perez, Celso) (Entered: 01/19/2021) |
| 01/19/2021 | | MINUTE ORDER treating as opposed and granting over objection 12 emergency order to stay removal. In view of the arguments presented by Plaintiffs in their motion and for the reasons stated on the record at the January 12, 2021 Status Conference, it is hereby ORDERED that the removal of Martha Liliana Taday–Acosta (SID 369–635–597) and her minor children D.J.Z. (SID 369–635–599) and J.A.Z. (SID 369–635–605); and of Julien Thomas (SID 369–648–244), Fidette Boute (SID 369–648–252), and their minor children D.J.T.–B. (SID 369– 648–250) and T.J.T.–B. (SID 369–648–247), is STAYED pending further order of the Court. It is FURTHER ORDERED that the parties shall file a joint status report with a recommendation for further proceedings by no later than January 21, 2021 at 12:00 PM. This Order is subject to reconsideration for good cause shown by no later than January 19, 2021 at 8:00 PM. Signed by Judge Emmet G. Sullivan on |

| 01/19/2021 | | MINUTE ORDER granting 13 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL. Signed by Judge Emmet G. Sullivan on 1/19/2021. (lcegs3) (Entered: 01/19/2021) |
|---|---|---|
| 01/19/2021 | 14 | RESPONSE re 2 Notice of Related Case filed by ALEX M. AZAR, II, JONATHAN FAHEY, WILLIAM A. FERRARA, PETER T. GAYNOR, MARK A. MORGAN, ROBERT R. REDFIELD, RODNEY S. SCOTT. (Tepe, Sean) (Entered: 01/19/2021) |
| 01/19/2021 | 17 | SEALED DECLARATIONS filed by ALL PLAINTIFFS. (This document is SEALED and only available to authorized persons.)(zjf) (Entered: 01/21/2021) |
| 01/20/2021 | 15 | REPLY re 2 Notice of Related Cases filed by B.A.M.M., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA. (Perez, Celso) Modified on 1/20/2021 to correct docket link (zjf). (Entered: 01/20/2021) |
| 01/21/2021 | | Set/Reset Deadlines: Joint Status Report due no later than 12:00PM on 1/21/2021 (mac) (Entered: 01/21/2021) |
| 01/21/2021 | 16 | Joint STATUS REPORT by B.A.M.M., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA. (Perez, Celso) (Entered: 01/21/2021) |
| 01/21/2021 | | MINUTE ORDER. In view of 16 joint status report, Plaintiffs shall file their amended complaint by no later than January 28, 2021. Signed by Judge Emmet G. Sullivan on 1/21/2021. (lcegs3) (Entered: 01/21/2021) |
| 01/22/2021 | | Set/Reset Deadlines: Plaintiff Amended Complaint due by 1/28/2021. (mac) (Entered: 01/22/2021) |
| 01/25/2021 | 18 | STANDING ORDER: The parties are directed to read the attached Standing Order Governing Civil Cases Before Judge Emmet G. Sullivan in its entirety upon receipt. The parties are hereby ORDERED to comply with the directives in the attached Standing Order. Signed by Judge Emmet G. Sullivan on 1/25/21. (Attachment: # 1 Exhibit 1) (mac) (Entered: 01/25/2021) |
| 01/26/2021 | 19 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Karla M. Vargas, Filing fee $ 100, receipt number ADCDC–8127067. Fee Status: Fee Paid. by B.A.M.M., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA. (Perez, Celso) (Entered: 01/26/2021) |
| 01/26/2021 | 20 | Emergency MOTION to Stay *Removal* by B.A.M.M., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA. (Attachments: # 1 Text of Proposed Order)(Perez, Celso) (Entered: 01/26/2021) |
| 01/26/2021 | 21 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by B.A.M.M., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA |

| | | |
|---|---|---|
| | | HUISHA–HUISHA, I.M.C.H., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Declaration of Valcourt)(Perez, Celso) (Entered: 01/26/2021) |
| 01/27/2021 | | MINUTE ORDER treating as opposed and granting over objection 20 emergency motion to stay removal. In view of the arguments presented by Plaintiffs in their motion and for the reasons stated on the record at the January 12, 2021 Status Conference, it is hereby ORDERED that the removal of Romilus Valcourt (SID 369–705–271), Bedapheca Alcante, (SID 369–705–293), and their minor child B.V.–A. (SID 369–705–304), is STAYED pending further order of the Court. This Order is subject to reconsideration for good cause shown by no later than January 27, 2021 at 5:00 PM. Signed by Judge Emmet G. Sullivan on 1/27/2021. (lcegs3) (Entered: 01/27/2021) |
| 01/27/2021 | | MINUTE ORDER granting 21 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL. Signed by Judge Emmet G. Sullivan on 1/27/2021. (lcegs3) (Entered: 01/27/2021) |
| 01/27/2021 | | Set/Reset Deadlines: Minute Order Reconsideration For Good Cause Shown due no later than 5:00PM on 1/27/2021. (mac) (Entered: 01/27/2021) |
| 01/27/2021 | | MINUTE ORDER granting 19 motion for leave to appear pro hac vice. Karla M. Vargas is hereby admitted pro hac vice in this action. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). Click for instructions**. Signed by Judge Emmet G. Sullivan on 1/27/2021. (lcegs3) (Entered: 01/27/2021) |
| 01/27/2021 | 24 | SEALED DOCUMENT (Declaration) filed by B.A.M.M., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA. (This document is SEALED and only available to authorized persons.)(znmw) (Entered: 01/29/2021) |
| 01/28/2021 | 22 | AMENDED COMPLAINT against All Defendants filed by B.A.M.M., H.N.D.S., H.T.D.S.D.S., I.M.C.H., JOSAINE PEREIRA–DE SOUZA, E.R.P.D.S., M.E.S.D.S., NANCY GIMENA HUISHA–HUISHA, VALERIA MACANCELA BERMEJO. (Attachments: # 1 Exhibit A. Redline Amended Complaint)(Perez, Celso) (Entered: 01/28/2021) |
| 01/28/2021 | 23 | MOTION to Certify Class by B.A.M.M., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA. (Attachments: # 1 Memorandum in Support of Motion to Certify Class, # 2 Declaration of Stephen B. Kang with Exhibits A and B, # 3 Text of Proposed Order)(Perez, Celso) (Entered: 01/28/2021) |
| 01/29/2021 | 25 | Emergency MOTION to Stay *Removal* by B.A.M.M., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA. (Attachments: # 1 Text of Proposed Order)(Perez, Celso) (Entered: 01/29/2021) |
| 01/29/2021 | 26 | |

| | | | |
|---|---|---|---|
| | | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by B.A.M.M., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Declaration of Casy, # 3 Declaration of De Oliveira, # 4 Declaration of Zami, # 5 Declaration of Lataro)(Perez, Celso) (Entered: 01/29/2021) |
| 01/29/2021 | | | MINUTE ORDER treating as opposed and granting over objection 25 emergency motion to stay removal. In view of the arguments presented by Plaintiffs in their motion and for the reasons stated on the record at the January 12, 2021 Status Conference, it is hereby ORDERED that the removal of Kaio Joseph Lataro (SID 369–651–122), Carine Nathielle Pereira Brocanelli (SID 369–651–127, and their minor child M.L.B.L. (SID 369–651– 134); Jude Mary Zami (SID 369–696–796), Santhianie Aris (SID 369–696–835), and their minor child C.E.J.Z.A. (SID 369–696–868); Gracia Junior Casy (SID 369–706–088), Farah Casy Bescien (SID 369–706–084), and their minor child T.C. (SID 369–706–096); and Jessica Fernandes de Oliveira (SID 369–676–509) and her minor child J.F.L. (SID 369–676–502) is STAYED pending further order of the Court. This Order is subject to reconsideration for good cause shown by no later than January 29, 2021 at 6:00 PM. Signed by Judge Emmet G. Sullivan on 1/29/2021. (lcegs3) (Entered: 01/29/2021) |
| 01/29/2021 | | | MINUTE ORDER granting 26 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL. Signed by Judge Emmet G. Sullivan on 1/29/2021. (lcegs3) (Entered: 01/29/2021) |
| 01/29/2021 | | | Set/Reset Deadlines: Motion For Reconsideration due no later than 6:00PM on 1/29/2021. (mac) (Entered: 01/29/2021) |
| 01/29/2021 | 27 | | SEALED Declarations of Casy, De Oliveira, Zami and Lataro filed by ALL PLAINTIFFS. (This document is SEALED and only available to authorized persons.)(zjf) (Main Document 27 replaced on 1/31/2021) (zjf). (Entered: 01/31/2021) |
| 01/31/2021 | 28 | | Emergency MOTION to Stay *Removal* by B.A.M.M., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA. (Attachments: # 1 Text of Proposed Order)(Perez, Celso) (Entered: 01/31/2021) |
| 01/31/2021 | 29 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by B.A.M.M., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Declaration of Fils Aime, # 3 Declaration of Ladouceur, # 4 Declaration of Louis, # 5 Declaration of Myrtil, # 6 Declaration of Sabino, # 7 Declaration of Santos De Paula)(Perez, Celso) (Entered: 01/31/2021) |
| 01/31/2021 | | | MINUTE ORDER. In view of 28 Emergency Motion to Stay Removal, the government is directed to file a response by no later than February 1, 2021 at 8:00 AM. Plaintiffs shall file a reply by no later than February 1, 2021 at 12:00 PM. Signed by Judge Emmet G. Sullivan on 1/31/2021. (lcegs3) (Entered: |

| 02/01/2021 | 30 | RESPONSE TO ORDER OF THE COURT re Order, *Response to January 31, 2021 Minute Order* filed by ALEX M. AZAR, II, JONATHAN FAHEY, WILLIAM A. FERRARA, PETER T. GAYNOR, TROY MILLER, MARK A. MORGAN, DAVID PEKOSKE, ROBERT R. REDFIELD, RODNEY S. SCOTT. (Tepe, Sean) (Entered: 02/01/2021) |
|---|---|---|
| 02/01/2021 |  | Set/Reset Deadlines: Government Response due no later than 8:00AM on 2/1/2021. Plaintiffs Reply due no later than 12:00PM on2/1/2021. (mac) (Entered: 02/01/2021) |
| 02/01/2021 | 31 | REPLY to opposition to motion re 28 Emergency MOTION to Stay *Removal* filed by B.A.M.M., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA. (Perez, Celso) (Entered: 02/01/2021) |
| 02/01/2021 |  | MINUTE ORDER granting, over objection, 28 Emergency Motion to Stay Removal. Although the government notes in its 30 Response that, on January 31, 2021, the U.S. Court of Appeals for the District of Columbia ("D.C. Circuit") stayed the class–wide preliminary injunction in P.J.E.S. v. Wolf, No. 20–cv–2245 (D.D.C.), see Order, P.J.E.S. v. Pekoske, No. 20–5357 (D.C. Cir. Jan. 29, 2021), the government does not, and cannot, argue that the D.C. Circuit's order requires denial of 28 Emergency Motion to Stay Removal because the D.C. Circuit's order is not published and was issued without opinion or reasoning. Accordingly, in view of the arguments presented by Plaintiffs, and for the reasons stated on the record at the January 12, 2021 Status Conference, it is hereby ORDERED that the removals of the following six families are STAYED pending further order of this Court: Evens Fils Aime (SID 369–703–977), Shnaidere Altenord (SID 369–703–992), and their minor child A.F.A.A. (SID 369–704–002); Rijkaard Ladouceur (SID 369–690–928), Miralia Fleurima (SID 369–690–930), and their minor children N.F. (SID 369–690–940) and B.R.L.F. (SID 369–690–944); Frenzy Joseph Louis (SID 369–627–368), Rose Maria Bien–Aime (SID 369–627–371), and their minor child H.G.L. (SID 369–627–374); Djimytoo Myrtil (SID 369–705–242), Lunda Odilus (SID 369–705–228), and their minor child M.Y.M.O. (SID 369–705–252); Eric Lenes Sabino (SID 369–694–161), Elisandra de Lima Borges (SID 369–694–170), and their minor children K.C.S.B. (SID 369–694–176) and K.V.S.B. (SID 369–694–183); Josimar Santos de Paula (SID 369–695–923), and his minor child K.V.S.D.P. (SID 369– 695–934). Signed by Judge Emmet G. Sullivan on 2/1/2021. (lcegs3) (Entered: 02/01/2021) |
| 02/01/2021 |  | MINUTE ORDER granting 29 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL. Signed by Judge Emmet G. Sullivan on 2/1/2021. (lcegs3) (Entered: 02/01/2021) |
| 02/01/2021 | 32 | SEALED Declarations of Fils Aime, Ladouceur, Louis, Myrtil, Sabino & Santos De Paula filed by ALL PLAINTIFFS. (This document is SEALED and only available to authorized persons.)(zjf) (Entered: 02/01/2021) |
| 02/01/2021 | 33 | RESPONSE TO ORDER OF THE COURT re Order on Motion to Stay,,,,,, filed by ALEX M. AZAR, II, JONATHAN FAHEY, WILLIAM A. |

| | | |
|---|---|---|
| | | FERRARA, PETER T. GAYNOR, TROY MILLER, MARK A. MORGAN, DAVID PEKOSKE, ROBERT R. REDFIELD, RODNEY S. SCOTT. (Tepe, Sean) (Entered: 02/01/2021) |
| 02/02/2021 | 34 | Joint MOTION for Scheduling Order by B.A.M.M., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA. (Attachments: # 1 Text of Proposed Order)(Perez, Celso) (Entered: 02/02/2021) |
| 02/02/2021 | 35 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Stephen B. Kang, Filing fee $ 100, receipt number ADCDC–8155498. Fee Status: Fee Paid. by B.A.M.M., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA. (Perez, Celso) (Entered: 02/02/2021) |
| 02/02/2021 | 36 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Ming Cheung, Filing fee $ 100, receipt number ADCDC–8155543. Fee Status: Fee Paid. by B.A.M.M., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA. (Perez, Celso) (Entered: 02/02/2021) |
| 02/02/2021 | 37 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Cody Wofsy, Filing fee $ 100, receipt number ADCDC–8155680. Fee Status: Fee Paid. by B.A.M.M., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA. (Perez, Celso) (Entered: 02/02/2021) |
| 02/02/2021 | 38 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Lee Gelernt, Filing fee $ 100, receipt number ADCDC–8155714. Fee Status: Fee Paid. by B.A.M.M., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA. (Perez, Celso) (Entered: 02/02/2021) |
| 02/02/2021 | 39 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Morgan Russell, Filing fee $ 100, receipt number ADCDC–8155725. Fee Status: Fee Paid. by B.A.M.M., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA. (Perez, Celso) (Entered: 02/02/2021) |
| 02/02/2021 | 40 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Daniel Galindo, Filing fee $ 100, receipt number ADCDC–8155744. Fee Status: Fee Paid. by B.A.M.M., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA. (Perez, Celso) (Entered: 02/02/2021) |
| 02/02/2021 | 41 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Omar Jadwat, Filing fee $ 100, receipt number ADCDC–8156091. Fee Status: Fee Paid. by B.A.M.M., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA |

| | | | |
|---|---|---|---|
| | | | HUISHA–HUISHA, I.M.C.H., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA. (Perez, Celso) (Entered: 02/02/2021) |
| 02/03/2021 | | | MINUTE ORDER granting <u>34</u> joint motion for scheduling order. The parties shall abide by the following briefing schedule: Plaintiffs shall file their motion for classwide preliminary injunction by no later than February 5, 2021; Defendants shall file their combined opposition to Plaintiffs' motion for class certification and motion for classwide preliminary injunction by no later than February 17, 2021; and Plaintiffs shall file their combined reply in support of both motions by no later than February 23, 2021. Signed by Judge Emmet G. Sullivan on 2/3/2021. (lcegs3) (Entered: 02/03/2021) |
| 02/03/2021 | | | MINUTE ORDER granting <u>35</u> motion for leave to appear pro hac vice. Stephen B. Kang is hereby admitted pro hac vice in this action. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** <u>**Click for instructions**</u>. Signed by Judge Emmet G. Sullivan on 2/3/2021. (lcegs3) (Entered: 02/03/2021) |
| 02/03/2021 | | | MINUTE ORDER granting <u>36</u> motion for leave to appear pro hac vice. Ming Cheung is hereby admitted pro hac vice in this action. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** <u>**Click for instructions**</u>. Signed by Judge Emmet G. Sullivan on 2/3/2021. (lcegs3) (Entered: 02/03/2021) |
| 02/03/2021 | | | MINUTE ORDER granting <u>37</u> motion for leave to appear pro hac vice. Cody Wofsy is hereby admitted pro hac vice in this action. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** <u>**Click for instructions**</u>. Signed by Judge Emmet G. Sullivan on 2/3/2021. (lcegs3) (Entered: 02/03/2021) |
| 02/03/2021 | | | MINUTE ORDER granting <u>38</u> motion for leave to appear pro hac vice. Lee Gelernt is hereby admitted pro hac vice in this action. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** <u>**Click for instructions**</u>. Signed by Judge Emmet G. Sullivan on 2/3/2021. (lcegs3) (Entered: 02/03/2021) |
| 02/03/2021 | | | MINUTE ORDER granting <u>39</u> motion for leave to appear pro hac vice. Morgan Russell is hereby admitted pro hac vice in this action. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** <u>**Click for instructions**</u>. Signed by Judge Emmet G. Sullivan on 2/3/2021. (lcegs3) (Entered: 02/03/2021) |
| 02/03/2021 | | | MINUTE ORDER granting <u>40</u> motion for leave to appear pro hac vice. Daniel Galindo is hereby admitted pro hac vice in this action. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** <u>**Click for instructions**</u>. Signed by Judge Emmet G. Sullivan on 2/3/2021. (lcegs3) (Entered: 02/03/2021) |
| 02/03/2021 | | | MINUTE ORDER granting <u>41</u> motion for leave to appear pro hac vice. Omar Jadwat is hereby admitted pro hac vice in this action. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** <u>**Click for instructions**</u>. Signed by Judge Emmet G. Sullivan on 2/3/2021. (lcegs3) (Entered: 02/03/2021) |

| | | |
|---|---|---|
| 02/04/2021 | 42 | Emergency MOTION to Stay Removal by ALL PLAINTIFFS, B.A.M.M., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA. (Attachments: # 1 Text of Proposed Order)(Crook, Jamie) (Entered: 02/04/2021) |
| 02/04/2021 | 43 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by ALL PLAINTIFFS, B.A.M.M., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Declaration of Jonny Dieudonne)(Crook, Jamie) (Entered: 02/04/2021) |
| 02/04/2021 | | Set/Reset Deadlines: Plaintiffs Motion For Classwide Preliminary Injunction due by 2/5/2021. Defendants Combined Opposition To Plaintiffs' Motion For Class Certification And Motion For Classwide Preliminary Injunction due by 2/17/2021. Plaintiffs Combined Reply In Support Of Both Motions due by 2/23/2021.(mac) (Entered: 02/04/2021) |
| 02/04/2021 | | MINUTE ORDER treating as opposed and granting over objection 42 Emergency Motion to Stay Removal. In view of the arguments presented by Plaintiffs in their motion, the Court's February 1, 2021 Minute Order, and for the reasons stated on the record at the January 12, 2021 Status Conference, it is hereby ORDERED that the removals of Jonny Dieudonne (SID 369–745–541), Nathalie Decilian (SID 369–745–608), and their minor child N.J.D.D. (SID 369–745–546) are STAYED pending further order of this Court. This Order is subject to reconsideration for good cause shown by no later than February 4, 2021 at 12:00 PM. Signed by Judge Emmet G. Sullivan on 2/4/2021. (lcegs3) (Entered: 02/04/2021) |
| 02/04/2021 | | MINUTE ORDER granting 43 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL. Signed by Judge Emmet G. Sullivan on 2/4/2021. (lcegs3) (Entered: 02/04/2021) |
| 02/04/2021 | | Set/Reset Deadlines: Reconsideration, If Any, due no later than 12:00PM on 2/4/2021. (mac) (Entered: 02/04/2021) |
| 02/04/2021 | 44 | Emergency MOTION to Stay Removal by BEDAPHECA ALCANTE, ALL PLAINTIFFS, B.A.M.M., B.V.–A., FIDETTE BOUTE, D.J.T.–B., D.J.Z., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., J.A.Z., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA, T.J.T.–B., MARTHA LILIANA TADAY–ACOSTA, JULIEN THOMAS, ROMILUS VALCOURT. (Attachments: # 1 Text of Proposed Order)(Crook, Jamie) (Entered: 02/04/2021) |
| 02/04/2021 | 45 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by BEDAPHECA ALCANTE, ALL PLAINTIFFS, B.A.M.M., B.V.–A., FIDETTE BOUTE, D.J.T.–B., D.J.Z., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., J.A.Z., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA, T.J.T.–B., MARTHA LILIANA TADAY–ACOSTA, JULIEN THOMAS, ROMILUS VALCOURT (This document is SEALED and only available to |

| | | authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Declaration of Diana Quilli–Marca)(Crook, Jamie) (Entered: 02/04/2021) |
|---|---|---|
| 02/04/2021 | 46 | Emergency MOTION to Stay Removal by BEDAPHECA ALCANTE, ALL PLAINTIFFS, B.A.M.M., B.V.–A., FIDETTE BOUTE, D.J.T.–B., D.J.Z., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., J.A.Z., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA, T.J.T.–B., MARTHA LILIANA TADAY–ACOSTA, JULIEN THOMAS, ROMILUS VALCOURT. (Attachments: # 1 Text of Proposed Order)(Crook, Jamie) (Entered: 02/04/2021) |
| 02/04/2021 | 47 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by BEDAPHECA ALCANTE, ALL PLAINTIFFS, B.A.M.M., B.V.–A., FIDETTE BOUTE, D.J.T.–B., D.J.Z., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., J.A.Z., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA, T.J.T.–B., MARTHA LILIANA TADAY–ACOSTA, JULIEN THOMAS, ROMILUS VALCOURT (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Declaration of Jean Louissaint Fleury, # 3 Declaration of Thechelet Dieudonne, # 4 Declaration of Pouchon Bien–Aime, # 5 Declaration of Elyse Louima)(Crook, Jamie) (Entered: 02/04/2021) |
| 02/04/2021 | | MINUTE ORDER treating as opposed and granting over objection 44 Emergency Motion to Stay Removal. In view of the arguments presented by Plaintiffs in their motion, the Court's February 1, 2021 Minute Order, and for the reasons stated on the record at the January 12, 2021 Status Conference, it is hereby ORDERED that the removals of Diana Quilli–Marca (SID 369–752–319) and her minor child N.S.Q. (SID 369–752–531) are STAYED pending further order of this Court. This Order is subject to reconsideration for good cause shown by no later than February 4, 2021 at 10:00 PM. Signed by Judge Emmet G. Sullivan on 2/4/2021. (lcegs3) (Entered: 02/04/2021) |
| 02/04/2021 | | MINUTE ORDER granting 45 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL. Signed by Judge Emmet G. Sullivan on 2/4/2021. (lcegs3) (Entered: 02/04/2021) |
| 02/04/2021 | | MINUTE ORDER treating as opposed and granting over objection 46 Emergency Motion to Stay Removal. In view of the arguments presented by Plaintiffs in their motion, the Court's February 1, 2021 Minute Order, and for the reasons stated on the record at the January 12, 2021 Status Conference, it is hereby ORDERED that the removals of the following families are STAYED pending further order of this Court: Thechelet Dieudonne (SID 369–745–511), Juna Delphin (SID 369–745–516), and their minor child T.D. (SID 369–745–519); Pouchon Bien–Aime, (SID 369–780–070), Annediana Desir, (SID 369–780–063), and their minor child P.R.B.A.D. (SID 369–780–078); Jean Louissaint Fleury, (SID 369–780–176), Barbara Fleury Previl, (SID 369–780–197), and their minor children D.L.F. (SID 369–780–189) and M.L. (SID 369–780–181); Elyse Louima (SID 369–739–119), Filande Adolphe (SID 369–739–126), and their minor child E.L.A. (SID 369–739–133). This Order is subject to reconsideration for good cause shown by no later than February 4, 2021 at 10:00 PM. Signed by Judge Emmet G. Sullivan on |

| | | |
|---|---|---|
| 02/04/2021 | | MINUTE ORDER granting 47 Sealed Motion for Leave to File Document Under Seal. Signed by Judge Emmet G. Sullivan on 2/4/2021. (lcegs3) (Entered: 02/04/2021) |
| 02/04/2021 | 48 | Emergency MOTION to Stay Removal by BEDAPHECA ALCANTE, ALL PLAINTIFFS, B.A.M.M., B.V.–A., FIDETTE BOUTE, D.J.T.–B., D.J.Z., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., J.A.Z., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA, T.J.T.–B., MARTHA LILIANA TADAY–ACOSTA, JULIEN THOMAS, ROMILUS VALCOURT. (Attachments: # 1 Text of Proposed Order)(Crook, Jamie) (Entered: 02/04/2021) |
| 02/04/2021 | 49 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by BEDAPHECA ALCANTE, ALL PLAINTIFFS, B.A.M.M., B.V.–A., FIDETTE BOUTE, D.J.T.–B., D.J.Z., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., J.A.Z., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA, T.J.T.–B., MARTHA LILIANA TADAY–ACOSTA, JULIEN THOMAS, ROMILUS VALCOURT (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Declaration of Fabiana Ferreira Da Costa)(Crook, Jamie) (Entered: 02/04/2021) |
| 02/04/2021 | 64 | SEALED Declaration of DIANA QUILLI–MARCA filed by ALL PLAINTIFFS. (This document is SEALED and only available to authorized persons.)(zjf) (Entered: 02/09/2021) |
| 02/04/2021 | 65 | SEALED Declaration of JONNY DIEUDONNE filed by ALL PLAINTIFFS. (This document is SEALED and only available to authorized persons.)(zjf) (Entered: 02/09/2021) |
| 02/04/2021 | 66 | SEALED Declarations of Jean Louissaint Fleury, Thechelet Dieudonne, Pouchon Bien–Aime and Elyse Louima filed by ALL PLAINTIFFS. (This document is SEALED and only available to authorized persons.)(zjf) (Entered: 02/09/2021) |
| 02/05/2021 | | Set/Reset Deadlines: Motion For Reconsideration due no later than 10:00PM on 2/4/2021. (mac) (Entered: 02/05/2021) |
| 02/05/2021 | | MINUTE ORDER treating as opposed and granting over objection 48 Emergency Motion to Stay Removal. In view of the arguments presented by Plaintiffs in their motion, the Court's February 1, 2021 Minute Order, and for the reasons stated on the record at the January 12, 2021 Status Conference, it is hereby ORDERED that the removals of the following families are STAYED pending further order of this Court: Fabiana Ferreira Da Costa (SID 369–729–448), and her minor children M.A.L.F.C. (SID 369–729–454), K.R.F.D.C. (SID 369–729–457), and A.D.M.F.D.C. (SID 369–729–466). This Order is subject to reconsideration for good cause shown by no later than February 5, 2021 at 12:00 PM. Signed by Judge Emmet G. Sullivan on 2/5/2021. (lcegs3) (Entered: 02/05/2021) |
| 02/05/2021 | | |

| | | |
|---|---|---|
| | | MINUTE ORDER granting 49 Sealed Motion for Leave to File Document Under Seal. Signed by Judge Emmet G. Sullivan on 2/5/2021. (lcegs3) (Entered: 02/05/2021) |
| 02/05/2021 | | Set/Reset Deadlines: Motion For Reconsideration due no later than 12:00PM on 2/5/2021. (mac) (Entered: 02/05/2021) |
| 02/05/2021 | 50 | NOTICE of Appearance by Paul R.Q. Wolfson on behalf of T. Alexander Aleinikoff, Deborah Anker, James C. Hathaway, Gerald L. Neuman (Wolfson, Paul) (Entered: 02/05/2021) |
| 02/05/2021 | 51 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Noah A. Levine, Filing fee $ 100, receipt number ADCDC–8169810. Fee Status: Fee Paid. by T. Alexander Aleinikoff, Deborah Anker, James C. Hathaway, Gerald L. Neuman. (Attachments: # 1 Declaration of Noah A. Levine, # 2 Text of Proposed Order)(Wolfson, Paul) (Entered: 02/05/2021) |
| 02/05/2021 | 52 | Unopposed MOTION for Leave to File *a Brief for Scholars of Refugee and Immigration Law as Amici Curiae in Support of Plaintiffs' Motion for Classwide Preliminary Injunction* by T. Alexander Aleinikoff, Deborah Anker, James C. Hathaway, Gerald L. Neuman. (Attachments: # 1 Proposed Amicus Brief, # 2 Text of Proposed Order)(Wolfson, Paul) (Entered: 02/05/2021) |
| 02/05/2021 | 53 | NOTICE of Appearance by Lee Gelernt on behalf of All Plaintiffs (Gelernt, Lee) (Entered: 02/05/2021) |
| 02/05/2021 | 54 | MOTION for Leave to File *Amicus Curiae Brief* by INTERNATIONAL REFUGEE ASSISTANCE PROJECT. (Attachments: # 1 Exhibit Proposed Amicus Brief, # 2 Text of Proposed Order)(Austin, Kathryn) (Entered: 02/05/2021) |
| 02/05/2021 | 55 | NOTICE of Appearance by Raymond P. Tolentino on behalf of Historians (Tolentino, Raymond) (Entered: 02/05/2021) |
| 02/05/2021 | 56 | Unopposed MOTION for Leave to File *Amicus Curiae Brief* by Historians. (Attachments: # 1 Exhibit Proposed Amicus Brief, # 2 Text of Proposed Order)(Tolentino, Raymond) (Entered: 02/05/2021) |
| 02/05/2021 | 57 | MOTION for Preliminary Injunction by BEDAPHECA ALCANTE, ALL PLAINTIFFS, B.A.M.M., B.V.–A., FIDETTE BOUTE, D.J.T.–B., D.J.Z., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., J.A.Z., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA, T.J.T.–B., MARTHA LILIANA TADAY–ACOSTA, JULIEN THOMAS, ROMILUS VALCOURT. (Attachments: # 1 Memorandum in Support of Preliminary Injunction, # 2 Text of Proposed Order, # 3 Index of Exhibits, # 4 Declaration of Ming Cheung, # 5 Exhibit A–I, # 6 Declaration of Public Health Experts, # 7 Exhibit A–D, # 8 Declaration of Javier Hidalgo, # 9 Declaration of Allison Herre, # 10 Declaration of Linda Corchado, # 11 Declaration of Lisa Frydman, # 12 Declaration of Taylor Levy)(Gelernt, Lee) (Entered: 02/05/2021) |
| 02/05/2021 | 58 | Emergency MOTION to Stay Removal *of Apollon Family* by ALL PLAINTIFFS. (Attachments: # 1 Text of Proposed Order)(Crook, Jamie) (Entered: 02/05/2021) |
| 02/05/2021 | 59 | |

| | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by ALL PLAINTIFFS (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Declaration of Gesnel Apollon)(Crook, Jamie) (Entered: 02/05/2021) |
|---|---|---|
| 02/05/2021 | 67 | SEALED Declaration of Fabiana Ferreira Da Costa filed by ALL PLAINTIFFS. (This document is SEALED and only available to authorized persons.)(zjf) (Entered: 02/09/2021) |
| 02/06/2021 | | MINUTE ORDER treating as opposed and granting over objection 58 Emergency Motion to Stay Removal. In view of the arguments presented by Plaintiffs in their motion, the Court's February 1, 2021 Minute Order, and for the reasons stated on the record at the January 12, 2021 Status Conference, it is hereby ORDERED that the removal of the following family is STAYED pending further order of this Court: Gesnel Apollon (SID 369–778–765), Elourdes Bergel (SID#369–778–770), and their minor child, J.A., SID#369–778–776. This Order is subject to reconsideration for good cause shown by no later than February 6, 2021 at 8:00 PM. Signed by Judge Emmet G. Sullivan on 2/6/2021. (lcegs3) (Entered: 02/06/2021) |
| 02/06/2021 | | MINUTE ORDER granting 59 Sealed Motion for Leave to File Document Under Seal. Signed by Judge Emmet G. Sullivan on 2/6/2021. (lcegs3) (Entered: 02/06/2021) |
| 02/06/2021 | 63 | SEALED Declaration of Gesnel Apollon re 58 Emergency MOTION to Stay Removal *of Apollon Family* filed by ALL PLAINTIFFS. (This document is SEALED and only available to authorized persons.)(zjf) (Entered: 02/09/2021) |
| 02/08/2021 | | Set/Reset Deadlines: Motion For Reconsideration due no later than 8:00PM on 2/6/2021. (mac) (Entered: 02/08/2021) |
| 02/08/2021 | 60 | Emergency MOTION to Stay Removal *of Desenclos/Emile, Jean, Lalune, and Thomas Families* by ALL PLAINTIFFS. (Attachments: # 1 Text of Proposed Order)(Crook, Jamie) (Entered: 02/08/2021) |
| 02/08/2021 | 61 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by ALL PLAINTIFFS (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Declaration of Clema Thomas, # 3 Declaration of David Jean, # 4 Declaration of Danie Lalune, # 5 Declaration of Ketlene Emile)(Crook, Jamie) (Entered: 02/08/2021) |
| 02/09/2021 | | MINUTE ORDER treating as opposed and granting over objection 60 Emergency Motion to Stay Removal. In view of the arguments presented by Plaintiffs in their motion, the Court's February 1, 2021 Minute Order, and for the reasons stated on the record at the January 12, 2021 Status Conference, it is hereby ORDERED that the removal of the following families are STAYED pending further order of this Court: Ketlene Emile (SID#369–736–280), Michel Riverson Cliff Salis Desenclos (SID369– 736–194), and their minor child A.D.E. (SID#369–736–308); David Jean (SID# 369–789–160), Edwidge Civil (SID#369–789–185), and their minor child A.J. (SID#369–789–192); Danie Lalune (SID# 369–782–922), Wesley Lalune (SID# 369–782–907), and their two minor children D.L. (SID# 369–782–935) and C.M.L. (SID# 369–782–949); Clema Thomas (SID#369–781–406), Lyesse Sylen (SID#369–783–314), and their minor children A.G.T.S. (SID#369–781–423) |

| | | |
|---|---|---|
| | | and A.G.D. (SID#369–783–326). This Order is subject to reconsideration for good cause shown by no later than February 9, 2021 at 12:00 PM. Signed by Judge Emmet G. Sullivan on 2/9/2021. (lcegs3) (Entered: 02/09/2021) |
| 02/09/2021 | | MINUTE ORDER granting 61 Sealed Motion for Leave to File Document Under Seal. Signed by Judge Emmet G. Sullivan on 2/9/2021. (lcegs3) (Entered: 02/09/2021) |
| 02/09/2021 | 62 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Tamara F. Goodlette, Filing fee $ 100, receipt number ADCDC–8180349. Fee Status: Fee Paid. by BEDAPHECA ALCANTE, B.A.M.M., B.V.–A., FIDETTE BOUTE, D.J.T.–B., D.J.Z., E.R.P.D.S., H.N.D.S., H.T.D.S.D.S., NANCY GIMENA HUISHA–HUISHA, I.M.C.H., J.A.Z., M.E.S.D.S., VALERIA MACANCELA BERMEJO, JOSAINE PEREIRA–DE SOUZA, T.J.T.–B., MARTHA LILIANA TADAY–ACOSTA, JULIEN THOMAS, ROMILUS VALCOURT. (Perez, Celso) (Entered: 02/09/2021) |
| 02/09/2021 | 70 | SEALED Declaration of Clema Thomas,David Jean, Danie Lalune, Ketlene Emile filed by ALL PLAINTIFFS. (This document is SEALED and only available to authorized persons.)(zjf) (Entered: 02/10/2021) |
| 02/10/2021 | | Set/Reset Deadlines: Motion For Reconsideration due no later than 12:00PM on 2/9/2021. (mac) (Entered: 02/10/2021) |
| 02/10/2021 | 68 | NOTICE of Appearance by Stephen Bonggyun Kang on behalf of All Plaintiffs (Kang, Stephen) (Entered: 02/10/2021) |
| 02/10/2021 | 69 | NOTICE of Appearance by Cody H. Wofsy on behalf of All Plaintiffs (Wofsy, Cody) (Entered: 02/10/2021) |
| 02/10/2021 | 71 | NOTICE of Appearance by Daniel Antonio Galindo on behalf of All Plaintiffs (Galindo, Daniel) (Entered: 02/10/2021) |
| 02/10/2021 | 72 | NOTICE of Appearance by Ming Cheung on behalf of All Plaintiffs (Cheung, Ming) (Entered: 02/10/2021) |
| 02/10/2021 | 73 | NOTICE of Appearance by Morgan Russell on behalf of All Plaintiffs (Russell, Morgan) (Entered: 02/10/2021) |
| 02/10/2021 | 74 | NOTICE of Appearance by Omar C. Jadwat on behalf of All Plaintiffs (Jadwat, Omar) (Entered: 02/10/2021) |
| 02/11/2021 | | MINUTE ORDER granting 51 motion for leave to appear pro hac vice. Noah A. Levine is hereby admitted pro hac vice in this action. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). Click for instructions**. Signed by Judge Emmet G. Sullivan on 2/11/2021. (lcegs3) (Entered: 02/11/2021) |
| 02/11/2021 | | MINUTE ORDER granting 62 motion for leave to appear pro hac vice. Tamara F. Goodlette is hereby admitted pro hac vice in this action. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). Click for instructions**. Signed by Judge Emmet G. Sullivan on 2/11/2021. (lcegs3) (Entered: 02/11/2021) |
| 02/11/2021 | | MINUTE ORDER granting 52 Unopposed MOTION for Leave to File a Brief for Scholars of Refugee and Immigration Law as Amici Curiae in Support of |

| | | |
|---|---|---|
| | | Plaintiffs' Motion for Class–wide Preliminary Injunction. The [52−1] amicus brief shall be deemed filed as of February 11, 2021. Signed by Judge Emmet G. Sullivan on 2/11/2021. (lcegs3) (Entered: 02/11/2021) |
| 02/11/2021 | | MINUTE ORDER granting 54 MOTION for Leave to File Amicus Curiae Brief by INTERNATIONAL REFUGEE ASSISTANCE PROJECT. The [54−1] amicus brief shall be deemed filed as of February 11, 2021. Signed by Judge Emmet G. Sullivan on 2/11/2021. (lcegs3) (Entered: 02/11/2021) |
| 02/11/2021 | | MINUTE ORDER granting 56 Unopposed MOTION for Leave to File Amicus Curiae Brief by Historians. The [56−1] amicus brief shall be deemed filed as of February 11, 2021. Signed by Judge Emmet G. Sullivan on 2/11/2021. (lcegs3) (Entered: 02/11/2021) |
| 02/11/2021 | 75 | NOTICE of Appearance by Noah A. Levine on behalf of T. ALEXANDER ALEINIKOFF, DEBORAH ANKER, JAMES C. HATHTAWAY, GERALD L. NEUMAN (Levine, Noah) (Entered: 02/11/2021) |
| 02/11/2021 | 77 | AMICUS BRIEF by T. ALEXANDER ALEINIKOFF, DEBORAH ANKER, JAMES C. HATHTAWAY, GERALD L. NEUMAN. (znmw) (Entered: 02/18/2021) |
| 02/11/2021 | 78 | AMICUS BRIEF by INTERNATIONAL REFUGEE ASSISTANCE PROJECT. (znmw) (Entered: 02/18/2021) |
| 02/11/2021 | 79 | AMICUS BRIEF by HISTORIANS. (znmw) (Entered: 02/18/2021) |
| 02/17/2021 | 76 | Memorandum in opposition to re 23 MOTION to Certify Class , 57 MOTION for Preliminary Injunction filed by NORRIS COCHRAN, WILLIAM A. FERRARA, TAE D. JOHNSON, ALEJANDRO MAYORKAS, TROY MILLER, RODNEY S. SCOTT, ROCHELLE P. WALENSKY. (Attachments: # 1 Exhibits A–E, # 2 Declaration of Troy Miller, # 3 Declaration of Russell Hott)(Tepe, Sean) (Entered: 02/17/2021) |
| 02/18/2021 | 80 | Emergency MOTION to Stay *Removal* by ALL PLAINTIFFS. (Attachments: # 1 Text of Proposed Order)(Gelernt, Lee) (Entered: 02/18/2021) |
| 02/18/2021 | 81 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by ALL PLAINTIFFS (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Declaration of Torres–Rojas)(Gelernt, Lee) (Entered: 02/18/2021) |
| 02/18/2021 | | MINUTE ORDER treating as opposed and granting over objection 80 Emergency Motion to Stay Removal. In view of the arguments presented by Plaintiffs in their motion, the Court's February 1, 2021 Minute Order, and for the reasons stated on the record at the January 12, 2021 Status Conference, it is hereby ORDERED that the removal of the following family is STAYED pending further order of this Court: Paola Trinidad Torres–Rojas (SID 369–842–359) and her minor child M.J.Z.T. (SID 369– 842–362). This Order is subject to reconsideration for good cause shown by no later than February 18, 2021 at 7:00 PM. Signed by Judge Emmet G. Sullivan on 2/18/2021. (lcegs3) (Entered: 02/18/2021) |
| 02/18/2021 | | MINUTE ORDER granting 81 sealed motion for leave to file document under seal. Signed by Judge Emmet G. Sullivan on 2/18/2021. (lcegs3) (Entered: 02/18/2021) |

| 02/18/2021 | 88 | SEALED Declaration of Bebeto Pierrot filed by ALL PLAINTIFFS. (This document is SEALED and only available to authorized persons.)(zjf) (Entered: 02/24/2021) |
| 02/18/2021 | 89 | SEALED Declaration of Torres–Rojas filed by ALL PLAINTIFFS. (This document is SEALED and only available to authorized persons.)(zjf) (Entered: 02/24/2021) |
| 02/19/2021 | | Set/Reset Deadlines: Motion For Reconsideration due no later than 7:00PM on 2/18/2021. (mac) (Entered: 02/19/2021) |
| 02/19/2021 | 82 | Emergency MOTION to Stay *Removal* by ALL PLAINTIFFS. (Attachments: # 1 Text of Proposed Order)(Gelernt, Lee) (Entered: 02/19/2021) |
| 02/19/2021 | 83 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by ALL PLAINTIFFS (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Declaration of Francois)(Gelernt, Lee) (Entered: 02/19/2021) |
| 02/19/2021 | | MINUTE ORDER treating as opposed and granting over objection 82 Emergency Motion to Stay Removal. In view of the arguments presented by Plaintiffs in their motion, the Court's February 1, 2021 Minute Order, and for the reasons stated on the record at the January 12, 2021 Status Conference, it is hereby ORDERED that the removal of the following family is STAYED pending further order of this Court: Fredenel Francois (SID 369–772–515), Guyvlena Malvoisin, (SID 369–772–487), and their minor child, P.A.S.G.M. (SID 369–772–547). This Order is subject to reconsideration for good cause shown by no later than February 19, 2021 at 3:00 PM. Signed by Judge Emmet G. Sullivan on 2/19/2021. (lcegs3) (Entered: 02/19/2021) |
| 02/19/2021 | | MINUTE ORDER granting 83 sealed motion for leave to file document under seal. Signed by Judge Emmet G. Sullivan on 2/19/2021. (lcegs3) (Entered: 02/19/2021) |
| 02/19/2021 | | Set/Reset Deadlines: Motion For Reconsideration due no later than 3:00PM on 2/19/2021. (mac) (Entered: 02/19/2021) |
| 02/19/2021 | 84 | SEALED Declaration of Francois filed by ALL PLAINTIFFS. (This document is SEALED and only available to authorized persons.)(zjf) (Entered: 02/19/2021) |
| 02/19/2021 | 85 | Emergency MOTION to Stay *Removal of the Pierrot Family* by ALL PLAINTIFFS. (Attachments: # 1 Text of Proposed Order)(Russell, Morgan) (Entered: 02/19/2021) |
| 02/19/2021 | 86 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by ALL PLAINTIFFS (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Declaration of Bebeto Pierrot)(Russell, Morgan) (Entered: 02/19/2021) |
| 02/22/2021 | | MINUTE ORDER treating as opposed and granting over objection 85 Emergency Motion to Stay Removal. In view of the arguments presented by Plaintiffs in their motion, the Court's February 1, 2021 Minute Order, and for the reasons stated on the record at the January 12, 2021 Status Conference, it is hereby ORDERED that the removal of the following family is STAYED pending further order of this Court: Bebeto Pierrot, SID 369–772–300, Nadine |

Remilus, SID 369–772–363, and their minor child M.A.P., SID 369–868–214. This Order is subject to reconsideration for good cause shown by no later than February 22, 2021 at 3:00 PM. Signed by Judge Emmet G. Sullivan on 2/22/2021. (lcegs3) (Entered: 02/22/2021)

| 02/22/2021 | | MINUTE ORDER granting 86 Sealed Motion for Leave to File Document Under Seal. Signed by Judge Emmet G. Sullivan on 2/22/2021. (lcegs3) (Entered: 02/22/2021) |
| 02/22/2021 | | Set/Reset Deadlines: Motion For Reconsideration due no later than 3:00PM on 2/22/2021. (mac) (Entered: 02/22/2021) |
| 02/22/2021 | 90 | SEALED DOCUMENT (Declaration of Bebeto Pierrot) filed by ALL PLAINTIFFS. (This document is SEALED and only available to authorized persons.)(znmw) (Entered: 02/26/2021) |
| 02/23/2021 | 87 | Joint MOTION to Stay *Joint Motion to Hold in Abeyance Plaintiffs' Class Certification and Preliminary Injunction Motions* by NORRIS COCHRAN, WILLIAM A. FERRARA, TAE D. JOHNSON, ALEJANDRO N. MAYORKAS, TROY MILLER, RODNEY S. SCOTT, ROCHELLE P. WALENSKY. (Tepe, Sean) (Entered: 02/23/2021) |
| 02/23/2021 | | MINUTE ORDER granting 87 joint motion to hold in abeyance Plaintiffs' motions for class certification and classwide preliminary injunction. It is FURTHER ORDERED that either party may request termination of the abeyance by filing a motion seeking such relief. It is FURTHER ORDERED that Plaintiffs shall file their reply in support of their motions for class certification and preliminary injunction by no later than March 23, 2021. Signed by Judge Emmet G. Sullivan on 2/23/2021. (lcegs3) (Entered: 02/23/2021) |
| 02/24/2021 | | Set/Reset Deadlines: Plaintiffs Reply In Support Of Their Motions For Class Certification And Preliminary Injunction due by 3/23/2021. (mac) (Entered: 02/24/2021) |
| 02/25/2021 | 91 | ENTERED IN ERROR AS A DUPLICATE DE# 90 ..SEALED Declaration of Bebeto Pierrot filed by ALL PLAINTIFFS. (This document is SEALED and only available to authorized persons.)(zjf) Modified on 2/26/2021 (zjf). (Entered: 02/26/2021) |
| 02/26/2021 | 92 | NOTICE of Appearance by Geroline A Castillo on behalf of INTERNATIONAL REFUGEE ASSISTANCE PROJECT (Castillo, Geroline) (Entered: 02/26/2021) |
| 03/15/2021 | 93 | NOTICE of Appearance by Karla Vargas on behalf of All Plaintiffs (Vargas, Karla) (Entered: 03/15/2021) |
| 03/15/2021 | 94 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. ALEX M. AZAR, II served on 1/25/2021; JONATHAN FAHEY served on 1/19/2021; WILLIAM A. FERRARA served on 1/19/2021; PETER T. GAYNOR served on 1/19/2021; MARK A. MORGAN served on 1/19/2021; ROBERT R. REDFIELD served on 1/19/2021; RODNEY S. SCOTT served on 1/19/2021 (Cheung, Ming) (Entered: 03/15/2021) |
| 03/15/2021 | 95 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States |

| | | Attorney General 01/19/2021. (Cheung, Ming) (Entered: 03/15/2021) |
|---|---|---|
| 03/15/2021 | 96 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 1/21/2021. Answer due for ALL FEDERAL DEFENDANTS by 3/22/2021. (Cheung, Ming) (Entered: 03/15/2021) |
| 03/16/2021 | 97 | Joint MOTION for Protective Order by NORRIS COCHRAN, WILLIAM A. FERRARA, TAE D. JOHNSON, ALEJANDRO MAYORKAS, TROY MILLER, RODNEY S. SCOTT, ROCHELLE P. WALENSKY. (Attachments: # 1 Proposed Stipulated Protective Order)(Tepe, Sean) (Entered: 03/16/2021) |
| 03/16/2021 | 98 | Consent MOTION to Vacate *Answer Deadline and Set Joint Status Report Deadline* by NORRIS COCHRAN, WILLIAM A. FERRARA, TAE D. JOHNSON, ALEJANDRO MAYORKAS, TROY MILLER, RODNEY S. SCOTT, ROCHELLE P. WALENSKY. (Tepe, Sean) (Entered: 03/16/2021) |
| 03/22/2021 | 99 | Joint MOTION to Continue Holding in Abeyance Plaintiffs' Motions for Class Certification and Preliminary Injunction by NORRIS COCHRAN, WILLIAM A. FERRARA, TAE D. JOHNSON, ALEJANDRO MAYORKAS, TROY MILLER, RODNEY S. SCOTT, ROCHELLE P. WALENSKY. (Tepe, Sean) Modified on 3/22/2021 to correct docket event/text(zjf). (Entered: 03/22/2021) |
| 03/22/2021 | | MINUTE ORDER granting 97 joint motion for entry of a stipulated protective order. The terms presented in [97–1] Stipulated Protective Order are hereby incorporated by reference into this Order. Signed by Judge Emmet G. Sullivan on 3/22/2021. (lcegs3) (Entered: 03/22/2021) |
| 03/22/2021 | | MINUTE ORDER granting 98 consent motion to vacate answer deadline and set joint status report deadline. It is hereby ORDERED that the March 22, 2021 deadline for Defendants to answer or otherwise respond to the Amended Complaint is VACATED. It is FURTHER ORDERED that the parties shall file a joint status report within fourteen days from the date of the Court's decisions on Plaintiffs' Motions for Class Certification and Classwide Preliminary Injunction. Signed by Judge Emmet G. Sullivan on 3/22/2021. (lcegs3) (Entered: 03/22/2021) |
| 03/22/2021 | | MINUTE ORDER granting 99 joint motion to continue to hold in abeyance Plaintiffs' Motions for Class Certification and Classwide Permanent Injunction until April 2, 2021. Plaintiffs shall file their reply in support of their motions by no later than April 2, 2021. Signed by Judge Emmet G. Sullivan on 3/22/2021. (lcegs3) (Entered: 03/22/2021) |
| 03/23/2021 | | Set/Reset Deadlines: Plaintiff Reply due by 4/2/2021. (mac) (Entered: 03/23/2021) |
| 04/01/2021 | 100 | Joint MOTION To Continue Holding in Abeyance Plaintiffs' Motions for Class Certification and Preliminary Injunction by NORRIS COCHRAN, WILLIAM A. FERRARA, TAE D. JOHNSON, ALEJANDRO MAYORKAS, TROY MILLER, RODNEY S. SCOTT, ROCHELLE P. WALENSKY. (Tepe, Sean) Modified on 4/2/2021 (zjf). (Entered: 04/01/2021) |
| 04/02/2021 | | MINUTE ORDER granting 100 joint motion to continue holding in abeyance Plaintiffs' motions for class certification and classwide preliminary injunction. It is FURTHER ORDERED that Plaintiffs shall file their reply in support of |

| | | |
|---|---|---|
| | | their motions for class certification and preliminary injunction by no later than April 12, 2021. Signed by Judge Emmet G. Sullivan on 4/2/2021. (lcegs3) (Entered: 04/02/2021) |
| 04/03/2021 | | Set/Reset Deadlines: Plaintiffs Reply In Support Of Their Motions For Class Certification And Preliminary Injunction due by 4/12/2021. (mac) (Entered: 04/03/2021) |
| 04/05/2021 | 101 | NOTICE OF WITHDRAWAL OF APPEARANCE as to ALL PLAINTIFFS. Attorney Celso Perez terminated. (Gelernt, Lee) (Entered: 04/05/2021) |
| 04/11/2021 | 102 | Joint MOTION to Continue Holding in Abeyance Plaintiffs' Motions for Class Certification and Preliminary Injunction by NORRIS COCHRAN, WILLIAM A. FERRARA, TAE D. JOHNSON, ALEJANDRO MAYORKAS, TROY MILLER, RODNEY S. SCOTT, ROCHELLE P. WALENSKY. (Tepe, Sean) (Entered: 04/11/2021) |
| 04/12/2021 | | MINUTE ORDER granting 102 joint motion to continue to hold in abeyance Plaintiffs' Motions for Class Certification and Classwide Permanent Injunction until April 22, 2021. It is FURTHER ORDERED that Plaintiffs shall file their reply in support of their motions for class certification and preliminary injunction by no later than April 22, 2021. Signed by Judge Emmet G. Sullivan on 4/12/2021. (lcegs3) (Entered: 04/12/2021) |
| 04/13/2021 | | Set/Reset Deadlines: Plaintiffs Reply In Support of Their Motions For Class Certification And Preliminary Injunction due by 4/22/2021. (mac) (Entered: 04/13/2021) |
| 04/22/2021 | 103 | Joint MOTION to Continue Holding in Abeyance Plaintiffs' Motions for Class Certification and Preliminary Injunction by NORRIS COCHRAN, WILLIAM A. FERRARA, TAE D. JOHNSON, ALEJANDRO MAYORKAS, TROY MILLER, RODNEY S. SCOTT, ROCHELLE P. WALENSKY. (Tepe, Sean) Modified on 4/23/2021 to correct event/text (zjf). (Entered: 04/22/2021) |
| 04/22/2021 | 104 | NOTICE of Appearance by Tamara Goodlette on behalf of All Plaintiffs (Goodlette, Tamara) (Entered: 04/22/2021) |
| 04/26/2021 | | MINUTE ORDER granting 103 joint motion to continue to hold in abeyance Plaintiffs' Motions for Class Certification and Classwide Permanent Injunction until May 3, 2021. Plaintiffs shall file their reply in support of their motions for class certification and preliminary injunction on May 3, 2021. Signed by Judge Emmet G. Sullivan on 4/26/2021. (lcegs3) (Entered: 04/26/2021) |
| 04/26/2021 | | Set/Reset Deadlines: Plaintiffs Reply In Support Of Their Motions For Class Certification And Preliminary Injunction due by 5/3/2021. (mac) (Entered: 04/26/2021) |
| 05/03/2021 | 105 | Joint MOTION to Continue Holding in Abeyance Plaintiffs' Motions for Class Certification and Preliminary Injunction by NORRIS COCHRAN, WILLIAM A. FERRARA, TAE D. JOHNSON, ALEJANDRO MAYORKAS, TROY MILLER, RODNEY S. SCOTT, ROCHELLE P. WALENSKY. (Tepe, Sean) (Entered: 05/03/2021) |
| 05/04/2021 | | MINUTE ORDER granting 105 joint motion to continue to hold in abeyance Plaintiffs' Motions for Class Certification and Classwide Permanent Injunction. Plaintiffs shall file their reply in support of their motions for class certification |

| | | |
|---|---|---|
| | | and preliminary injunction by no later than May 13, 2021. Signed by Judge Emmet G. Sullivan on 5/4/2021. (lcegs3) (Entered: 05/04/2021) |
| 05/05/2021 | | Set/Reset Deadlines: Plaintiffs Reply In Support Of Their Motions For Class Certification And Preliminary Injunction due by 5/13/2021. (mac) (Entered: 05/05/2021) |
| 05/13/2021 | 106 | Joint MOTION to Continue Holding in Abeyance Plaintiffs' Motions for Class Certification and Preliminary Injunction by NORRIS COCHRAN, WILLIAM A. FERRARA, TAE D. JOHNSON, ALEJANDRO MAYORKAS, TROY MILLER, RODNEY S. SCOTT, ROCHELLE P. WALENSKY. (Tepe, Sean) Modified on 5/14/2021 to correct docket event/text (zjf). (Entered: 05/13/2021) |
| 05/17/2021 | | MINUTE ORDER granting 106 joint motion to continue to hold in abeyance Plaintiffs' Motions for Class Certification and Classwide Permanent Injunction. Plaintiffs shall file their reply in support of their motions for class certification and preliminary injunction by no later than May 25, 2021. Signed by Judge Emmet G. Sullivan on 5/17/2021. (lcegs3) (Entered: 05/17/2021) |
| 05/18/2021 | | ENTERED IN ERROR....Set/Reset Deadlines: Plaintiffs Reply In Support Of Their Motions For Class Certification And Preliminary Injunction due by 5/2/2021. (mac) (Entered: 05/18/2021) |
| 05/18/2021 | | Set/Reset Deadlines: Plaintiffs Reply In Support Of Their Motions For Class Certification And Preliminary Injunction due by 5/2/2021 (mac) (Entered: 05/18/2021) |
| 05/25/2021 | 107 | Joint MOTION to Continue Holding in Abeyance Plaintiffs' Motions for Class Certification and Preliminary Injunction by NORRIS COCHRAN, WILLIAM A. FERRARA, TAE D. JOHNSON, ALEJANDRO MAYORKAS, TROY MILLER, RODNEY S. SCOTT, ROCHELLE P. WALENSKY. (Tepe, Sean) Modified on 5/26/2021 to correct docket event/text (zjf). (Entered: 05/25/2021) |
| 05/27/2021 | | MINUTE ORDER granting 107 joint motion to continue to hold in abeyance Plaintiffs' Motions for Class Certification and Classwide Permanent Injunction. Plaintiffs shall file their reply in support of their motions for class certification and preliminary injunction by no later than June 8, 2021. Signed by Judge Emmet G. Sullivan on 5/27/2021. (lcegs3) (Entered: 05/27/2021) |
| 05/27/2021 | | Set/Reset Deadlines: Plaintiffs Reply In Support Of Their Motions For Class Certification And Preliminary Injunction due by 6/8/2021. (mac) (Entered: 05/27/2021) |
| 06/08/2021 | 108 | Joint MOTION to Continue Holding in Abeyance Plaintiffs' Motions for Class Certification and Preliminary Injunction by NORRIS COCHRAN, WILLIAM A. FERRARA, TAE D. JOHNSON, ALEJANDRO MAYORKAS, TROY MILLER, RODNEY S. SCOTT, ROCHELLE P. WALENSKY. (Tepe, Sean) Modified on 6/9/2021 to correct docket event/text (zjf). (Entered: 06/08/2021) |
| 06/09/2021 | | MINUTE ORDER granting 108 Joint Motion to Continue Holding in Abeyance Plaintiffs' Motions for Class Certification and Preliminary Injunction. Plaintiffs shall file their reply brief in support of their motions for class certification and preliminary injunction by no later than June 18, 2021. Signed by Judge Emmet G. Sullivan on 6/9/2021. (lcegs3) (Entered: 06/09/2021) |

| 06/10/2021 | | Set/Reset Deadlines: Plaintiffs Reply Brief In Support Of Their Motions For Class Certification And Preliminary Injunction due by 6/18/2021. (mac) (Entered: 06/10/2021) |
|---|---|---|
| 06/18/2021 | 109 | Joint MOTION to Continue in Abeyance Plaintiffs' Motions for Class Certification and Preliminary Injunction by NORRIS COCHRAN, WILLIAM A. FERRARA, TAE D. JOHNSON, ALEJANDRO MAYORKAS, TROY MILLER, RODNEY S. SCOTT, ROCHELLE P. WALENSKY. (Tepe, Sean) Modified on 6/21/2021 to correct docket event/text (zjf). (Entered: 06/18/2021) |
| 06/22/2021 | | MINUTE ORDER granting 109 Joint Motion to Continue Holding in Abeyance Plaintiffs' Motions for Class Certification and Preliminary Injunction. Plaintiffs shall file their reply brief in support of their motions for class certification and preliminary injunction by no later than July 2, 2021. Signed by Judge Emmet G. Sullivan on 6/22/2021. (lcegs3) (Entered: 06/22/2021) |
| 06/22/2021 | | Set/Reset Deadlines: Plaintiffs Reply Brief In Support Of Motions For Class Certification And Preliminary Injunction due by 7/2/2021. (mac) (Entered: 06/22/2021) |
| 07/02/2021 | 110 | Joint MOTION to Continue Holding in Abeyance Plaintiffs' Motions for Class Certification and Preliminary Injunction by WILLIAM A. FERRARA, TAE D. JOHNSON, ALEJANDRO MAYORKAS, TROY MILLER, RODNEY S. SCOTT, ROCHELLE P. WALENSKY, XAVIER BECERRA. (Tepe, Sean) Modified on 7/6/2021 to correct docket event/text (zjf). (Entered: 07/02/2021) |
| 07/09/2021 | | MINUTE ORDER granting 110 Joint Motion to Continue Holding in Abeyance Plaintiffs' Motions for Class Certification and Preliminary Injunction. Plaintiffs shall file their reply brief in support of their motions for class certification and preliminary injunction by no later than July 16, 2021. Signed by Judge Emmet G. Sullivan on 7/9/2021. (lcegs3) (Entered: 07/09/2021) |
| 07/09/2021 | | Set/Reset Deadlines: Plaintiffs Reply Brief In Support Of Their Motions For Class Certification And Preliminary Injunction due by 7/16/2021. (mac) (Entered: 07/09/2021) |
| 07/16/2021 | 111 | Joint MOTION to Continue Holding in Abeyance Plaintiffs' Motions for Class Certification and Preliminary Injunction by XAVIER BECERRA, WILLIAM A. FERRARA, TAE D. JOHNSON, ALEJANDRO MAYORKAS, TROY MILLER, RODNEY S. SCOTT, ROCHELLE P. WALENSKY. (Tepe, Sean) Modified on 7/19/2021 to correct docket event/text (zjf). (Entered: 07/16/2021) |
| 07/19/2021 | | MINUTE ORDER granting 111 Joint Motion to Continue Holding in Abeyance Plaintiffs' Motions for Class Certification and Preliminary Injunction. Plaintiffs shall file their reply brief in support of their motions for class certification and preliminary injunction by no later than August 2, 2021. Signed by Judge Emmet G. Sullivan on 7/19/2021. (lcegs1) (Entered: 07/19/2021) |
| 07/19/2021 | | Set/Reset Deadlines: Plaintiffs Reply Brief In Support Of Their Motions For Class Certification And Preliminary Injunction due by 8/2/2021. (mac) (Entered: 07/19/2021) |

| 08/02/2021 | 112 | Joint MOTION for Briefing Schedule *on Plaintiffs' Motions for Class Certification and Classwide Preliminary Injunction* by ALL PLAINTIFFS. (Gelernt, Lee) (Entered: 08/02/2021) |
|---|---|---|
| 08/02/2021 | | MINUTE ORDER. In view of 112 joint motion to reset briefing schedule, in which the parties indicated that efforts "to resolve or narrow the dispute in this case have reached an impasse," the parties are DIRECTED to file a joint status report by no later than August 4, 2021 informing the Court whether this case would benefit from referral to a magistrate judge, mediation, or any other form of alternative dispute resolution that can be tailored to the needs of their case. Signed by Judge Emmet G. Sullivan on 8/2/2021. (lcegs3) (Entered: 08/02/2021) |
| 08/02/2021 | 113 | MOTION for Leave to File *Supplemental Declaration* by XAVIER BECERRA, WILLIAM A. FERRARA, TAE D. JOHNSON, ALEJANDRO MAYORKAS, TROY MILLER, RODNEY S. SCOTT, ROCHELLE P. WALENSKY. (Attachments: # 1 Declaration of David Shahoulian)(Tepe, Sean) (Entered: 08/02/2021) |
| 08/02/2021 | 114 | NOTICE *NOTICE OF CDC PUBLIC HEALTH ORDER* by XAVIER BECERRA, WILLIAM A. FERRARA, TAE D. JOHNSON, ALEJANDRO MAYORKAS, TROY MILLER, RODNEY S. SCOTT, ROCHELLE P. WALENSKY (Tepe, Sean) (Entered: 08/02/2021) |
| 08/03/2021 | | Set/Reset Deadlines: Joint Status Report due by 8/4/2021 (mac) (Entered: 08/03/2021) |
| 08/04/2021 | 115 | RESPONSE TO ORDER OF THE COURT re Order,, *Joint Response to Court's August 2, 2021 Order Concerning Further Mediation or Alternative Dispute Resolution* filed by XAVIER BECERRA, WILLIAM A. FERRARA, TAE D. JOHNSON, ALEJANDRO MAYORKAS, TROY MILLER, RODNEY S. SCOTT, ROCHELLE P. WALENSKY. (Tepe, Sean) (Entered: 08/04/2021) |
| 08/05/2021 | | MINUTE ORDER granting nunc pro tunc 112 joint motion to reset briefing schedule on Plaintiffs' motions for class certification and classwide preliminary injunction. It is HEREBY ORDERED that Defendants shall file their supplemental declaration in support of their combined opposition to Plaintiffs' motions for class certification and classwide preliminary injunction by no later than August 2, 2021; and that Plaintiffs shall file their combined reply in support of those motions by no later than August 11, 2021. Signed by Judge Emmet G. Sullivan on 8/5/2021. (lcegs3) (Entered: 08/05/2021) |
| 08/05/2021 | | MINUTE ORDER granting 113 motion for leave to file supplemental declaration. The Clerk of Court is directed to file the supplemental declaration, ECF No. 113–1, as a separate docket entry. Signed by Judge Emmet G. Sullivan on 8/5/2021. (lcegs3) (Entered: 08/05/2021) |
| 08/06/2021 | | Set/Reset Deadlines: Defendants Supplemental Declaration In Support Of Their Combined Opposition To Plaintiffs' Motions For Class Certification And Classwide Preliminary Injunction by 08/02/2021. Plaintiffs Reply In Support Of Those Motions due by 08/11/2021. (mac) (Entered: 08/06/2021) |
| 08/06/2021 | 116 | DECLARATION of David Shahoulian re Combined Opposition (ECF No. 76 ) to Plaintiffs Motion for Class Certification (ECF No. 23 ) and Motion for |

| | | |
|---|---|---|
| | | Classwide Preliminary Injunction (ECF No. 57 ). by XAVIER BECERRA, NORRIS COCHRAN, WILLIAM A. FERRARA, TAE D. JOHNSON, ALEJANDRO MAYORKAS, TROY MILLER, RODNEY S. SCOTT, ROCHELLE P. WALENSKY. (zjf) (Entered: 08/06/2021) |
| 08/11/2021 | 117 | MOTION for Oral Argument by XAVIER BECERRA, WILLIAM A. FERRARA, TAE D. JOHNSON, ALEJANDRO MAYORKAS, TROY MILLER, RODNEY S. SCOTT, ROCHELLE P. WALENSKY re 57 MOTION for Preliminary Injunction (Tepe, Sean) Modified on 8/12/2021 to correct docket event/text (zjf). (Entered: 08/11/2021) |
| 08/11/2021 | 118 | REPLY to opposition to motion re 23 MOTION to Certify Class , 57 MOTION for Preliminary Injunction filed by ALL PLAINTIFFS. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit Index of Exhibits, # 3 Declaration of Taylor Levy, # 4 Declaration of Julia Neusner, # 5 Declaration of Jennifer K. Harbury, # 6 Declaration of Erika Pinheiro, # 7 Declaration of Savitri Arvey, # 8 Declaration (Supplemental) of Former CDC Officials, # 9 Declaration of 32 Medical and Public Health Experts, # 10 Declaration (Second) of Ming Cheung, # 11 Declaration of Linda Rivas, # 12 Declaration of Marisa Limn Garza, # 13 Declaration of Astrid Dominguez, # 14 Declaration of Chelsea Sachau, # 15 Declaration of Mdecins Sans Frontires Medical Coordinator in Mexico, # 16 Declaration of Teresa Cavendish, # 17 Declaration of Kate Clark, # 18 Declaration of Aaron Reichlin–Melnick, # 19 Declaration of Alan E. Valdez Jurez, # 20 Declaration of Edgar Ramrez Lpez, # 21 Declaration of Samuel Thomas Bishop, # 22 Declaration of Luis Alberto Lizarraga Tolentino, # 23 Declaration of Cecilia Menjvar, Ph.D.)(Gelernt, Lee) (Entered: 08/11/2021) |
| 08/11/2021 | 119 | MOTION for Leave to File *Reply Declarations* by ALL PLAINTIFFS. (Attachments: # 1 Text of Proposed Order)(Gelernt, Lee) (Entered: 08/11/2021) |
| 08/16/2021 | 120 | NOTICE of Appearance by Daniel S. Volchok on behalf of T. ALEXANDER ALEINIKOFF, DEBORAH ANKER, JAMES C. HATHTAWAY, GERALD L. NEUMAN (Volchok, Daniel) (Entered: 08/16/2021) |
| 08/16/2021 | 121 | NOTICE OF WITHDRAWAL OF APPEARANCE as to T. ALEXANDER ALEINIKOFF, DEBORAH ANKER, JAMES C. HATHTAWAY, GERALD L. NEUMAN. Attorney Paul R.Q. Wolfson terminated. (Wolfson, Paul) (Entered: 08/16/2021) |
| 09/13/2021 | | MINUTE ORDER granting 119 unopposed motion for leave to file reply declarations. Signed by Judge Emmet G. Sullivan on 9/13/2021. (lcegs3) (Entered: 09/13/2021) |
| 09/16/2021 | 122 | ORDER granting 23 Motion to Certify Class; granting 57 Motion for Preliminary Injunction; denying 117 Motion for Hearing. Signed by Judge Emmet G. Sullivan on 9/16/2021. (lcegs3) (Entered: 09/16/2021) |
| 09/16/2021 | 123 | MEMORANDUM OPINION. Signed by Judge Emmet G. Sullivan on 9/16/2021. (lcegs3) (Entered: 09/16/2021) |
| 09/17/2021 | 124 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 122 Order on Motion to Certify Class, Order on Motion for Preliminary Injunction, Order on Motion for Hearing, 123 Memorandum & Opinion by TAE D. JOHNSON, TROY |

MILLER, ROCHELLE P. WALENSKY, ALEJANDRO J. MAYORKAS, XAVIER BECERRA, WILLIAM A. FERRARA, RODNEY S. SCOTT. Fee Status: No Fee Paid. Parties have been notified. (Attachments: # 1 Exhibit District Court Order, # 2 Exhibit District Court Memorandum Opinion)(Tepe, Sean) (Entered: 09/17/2021)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NANCY GIMENA HUISHA-HUISHA, on
behalf of herself and others similarly situated,

Plaintiffs,

v.

Civ. A. No. 21-100 (EGS)

ALEJANDRO MAYORKAS, Secretary of
Homeland Security, et al.,

Defendants.

## NOTICE OF APPEAL

NOTICE IS HEREBY GIVEN that all Defendants appeal to the United States Court of

Appeals for the District of Columbia Circuit from this Court's September 16, 2021 Order (ECF

No. 122) and Memorandum Opinion (ECF No. 123) granting a preliminary injunction.

Dated:  September 17, 2021

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar #415793
Acting United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

 */s/ Sean M. Tepe*
SEAN M. TEPE, DC Bar #1001323
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C. 20530
Phone: (202) 252-2533
Email: sean.tepe@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NANCY GIMENA HUISHA-HUISHA, *et al.*,<br><br>          Plaintiffs,<br><br>v.<br><br>ALEJANDRO MAYORKAS, *in his official capacity as Secretary of Homeland Security*, *et al.*,<br><br>          Defendants. | Civ. Action No. 21-100(EGS) |

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Plaintiffs' Motion for Class Certification is **GRANTED**; and it is further

**ORDERED** that the Court certifies a class pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure consisting of all noncitizens who: (1) are or will be in the United States; (2) come to the United States as a family unit composed of at least one child under 18 years old and that child's parent or legal guardian; and (3) are or will be subjected to the Title 42 Process; and it is further

**ORDERED** that Plaintiffs Nancy Gimena Huisha-Huisha and her minor child I.M.C.H.; Valeria Macancela Bermejo and her minor

1

daughter, B.A.M.M.; Josaine Pereira-De Souza and her minor
children H.N.D.S.; E.R.P.D.S.; M.E.S.D.S.; H.T.D.S.D.S.; Martha
Liliana Taday-Acosta and her minor children D.J.Z.; J.A.Z.;
Julien Thomas, Fidette Boute, and their minor children D.J.T.-
B.; T.J.T.-B.; and Romilus Valcourt, Bedapheca Alcante, and
their minor child, B.V.-A., are appointed as Class
Representatives; and it is further

**ORDERED** that ACLU Immigrants' Rights Project is appointed
Lead Class Counsel, and the Texas Civil Rights Project, the ACLU
of Texas, the ACLU of the District of Columbia, the Refugee and
Immigrant Center for Legal Education and Legal Services
(RAICES), the Center for Gender & Refugee Studies, and Oxfam
America are appointed as Class Counsel; and it is further

**ORDERED** that Defendants' Motion for Oral Argument is
**DENIED**; and it is further

**ORDERED** that Plaintiffs' Motion for Preliminary Injunction
is **GRANTED**; and it is further

**ORDERED** that, pursuant to this Order, Defendants are **HEREBY
ENJOINED** from applying the Title 42 Process, including the CDC's
August 2021 Order, to the Class Members; and it is further

**ORDERED** that this Order shall be stayed for 14 days from
the date of its entry; and it is further

2

**ORDERED** that any request to stay this Order pending appeal

will be denied for the reasons stated in the accompanying

Memorandum Opinion.

    **SO ORDERED.**

**Signed:    Emmet G. Sullivan**
          **United States District Judge**
          **September 16, 2021**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| NANCY GIMENA HUISHA-HUISHA, *et al.*, |
| Plaintiffs, |
| v. |
| ALEJANDRO MAYORKAS, *in his official capacity as Secretary of Homeland Security*, *et al.*, |
| Defendants. |

Civ. Action No. 21-100(EGS)

## MEMORANDUM OPINION

Plaintiffs—a group of asylum-seeking families who fled to the United States—bring this lawsuit against Alejandro Mayorkas,[1] in his official capacity as Secretary of Homeland Security, and various other federal government officials ("Defendants" or the "government") for violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq.; the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, et seq.; the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), 8 U.S.C. § 1231 note; and the Public Health Service Act of 1944, 42 U.S.C § 201, et seq. Pending before the Court are Plaintiffs' Motion for Class Certification and Motion for Classwide Preliminary

---

[1] Alejandro Mayorkas is substituted pursuant to Federal Rule of Civil Procedure 25(d).

1

Injunction. *See* Pls.' Mot. Class Cert., ECF No. 23-1; Mem. Supp.

Pls.' Mot. Classwide Prelim. Inj. ("Pls.' Mot. Prelim. Inj."),

ECF No. 57-1.[2] Upon careful consideration of the motions, the

responses, and replies thereto, the applicable law, and the

entire record, the Court **GRANTS** Plaintiffs' Motion for Class

Certification and **GRANTS** Plaintiffs' Motion for Classwide

Preliminary Injunction.[3]

**I.   Background**

    **A. Factual Background**

        **1.   The U.S. Asylum Process**

"For almost a century, Congress has recognized that

citizens of foreign states are sometimes forced to flee from

persecution in their home countries, and it has been the policy

of the United States government that this country ought to serve

---

[2]  When citing electronic filings throughout this Memorandum
Opinion, the Court cites to the ECF page number, not the page
number of the filed document.

[3] On August 11, 2021, Defendants filed a motion for oral argument
on Plaintiffs' motion for preliminary injunction. *See* Mot. Oral
Argument, ECF No. 117. Pursuant to Local Civil Rule 65(d), "[o]n
request of the moving party together with a statement of the
facts which make expedition essential, a hearing on an
application for preliminary injunction shall be set by the Court
no later than 21 days after its filing, unless the Court earlier
decides the motion on the papers or makes a finding that a later
hearing date will not prejudice the parties." Here, while
Plaintiffs filed their motion on February 5, 2021, briefing on
the motion was stayed until August 5, 2021. *See* Min. Order (Aug.
5, 2021). Thus, the Court finds that there is no prejudice to
the parties in declining to hold a hearing on Plaintiffs' motion
and shall instead decide the motion on the papers. Defendants'
motion for oral argument is therefore denied.

as a place of refuge for persons who are in such distress."
*Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 11-12 (D.D.C. 2020). In
keeping with this policy, Congress has codified various
procedures governing how the United States evaluates and
processes the admission requests of refugees. As relevant here,
there are three primary protections for asylum seekers in place
under current immigration laws.

First, in 1980, Congress passed the Refugee Act, Pub. L.
No. 96-212, 94 Stat. 102, which amended the INA, Pub. L. No. 82-
414, 66 Stat. 163 (1952) (codified as amended in sections of 8
U.S.C.). The Refugee Act created a statutory procedure for
refugees seeking asylum and established the standards for
granting such requests. The INA currently governs this
procedure, and it provides that "[a]ny alien who is physically
present in the United States or who arrives in the United States
(whether or not at a designated port of arrival . . . ),
irrespective of such alien's status, may apply for asylum." 8
U.S.C. § 1158(a)(1). The Attorney General is granted the
discretion to grant asylum. *Id.* § 1158 (b)(1)(A). However, that
relief can only be granted if the alien is a "refugee," as
defined by federal law. *Id.* Pursuant to the INA, a "refugee" is
"any person who is outside any country of such person's
nationality" and who is "unable or unwilling to return to . . .
that country because of persecution or a well-founded fear of

persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A). "Thus, the 'persecution or well-founded fear of persecution' standard governs the Attorney General's determination [of] whether an alien is eligible for asylum." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 (1987). Furthermore, even when a noncitizen is subject to a rapid expulsion process known as "expedited removal" because they fit within an established category of persons who can be summarily removed without full hearings or other process, such noncitizen can only be so removed if she does not have "an intention to apply for asylum under [8 U.S.C. § 1158] or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i).

Second, at the same time the Refugee Act of 1980 established the asylum process, it amended the statutory scheme governing a related form of relief—"withholding of deportation"—to remove the Attorney General's discretion to decide whether to grant that form of relief. *Cardoza-Fonseca*, 480 U.S. at 428–29. As amended by the 1980 Act, the INA "requires the Attorney General to withhold deportation of an alien who demonstrates that his 'life or freedom would be threatened' on account of one of [a list of factors] if he is deported." *Id.* at 423. A grant of withholding is mandatory if the individual meets the

4

statutory criteria. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 420 (1999).

Third, Article 3 of the Convention Against Torture ("CAT") provides that "[n]o State Party shall expel, return ('refouler') or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Art. 3, Dec. 10, 1984, S. Treaty Doc. No. 100-20, p. 20, 1456 U.N.T.S. 114. Congress has implemented Article 3 of CAT as part of the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"). *Omar v. McHugh*, 646 F.3d 13, 17 (D.C. Cir. 2011). FARRA further declares it "the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture." *Id.* (quoting Pub.L. No. 105-277, § 2242, 112 Stat. 2681-761, 822 (1998) (codified at 8 U.S.C. § 1231 note).

## 2.   COVID-19 Pandemic and the CDC Orders

Since 1893, federal law has provided federal officials with the authority to stem the spread of contagious diseases from foreign countries by prohibiting, "in whole or in part, the introduction of persons and property from such countries." Act

5

of February 15, 1893, ch. 114, § 7, 27 Stat. 449, 452 ("1893

Act"). Under current law:

> Whenever the Surgeon General determines that
> by reason of the existence of any communicable
> disease in a foreign country there is serious
> danger of the introduction of such disease
> into the United States, and that this danger
> is so increased by the introduction of persons
> or property from such country that a
> suspension of the right to introduce such
> persons and property is required in the
> interest of the public health, the Surgeon
> General, in accordance with regulations
> approved by the President, shall have the
> power to prohibit, in whole or in part, the
> introduction of persons and property from such
> countries or places as he shall designate in
> order to avert such danger, and for such
> period of time as he may deem necessary for
> such purpose.

42 U.S.C. § 265 ("Section 265"). In 1966, the Surgeon General's

Section 265 authority was transferred to the Department of

Health and Human Services ("HHS"), which in turn delegated this

authority to the Centers for Disease Control and Prevention

("CDC") Director. *See P.J.E.S. v. Wolf*, 502 F. Supp. 3d 492, 503

(D.D.C. 2020); 31 Fed. Reg. 8855 (June 25, 1966), 80 Stat. 1610

(1966).

On March 20, 2020, as the COVID-19 virus spread globally,

HHS issued an interim final rule pursuant to Section 265 that

aimed to "provide[] a procedure for CDC to suspend the

introduction of persons from designated countries or places, if

required, in the interest of public health." Interim Final Rule,

Control of Communicable Diseases; Foreign Quarantine: Suspension

of Introduction of Persons Into United States From Designated

Foreign Countries or Places for Public Health Purposes, 85 Fed.

Reg. 16559-01, 2020 WL 1330968, (March 24, 2020) ("Interim Final

Rule"). Pursuant to the Interim Final Rule, the CDC Director

could "suspend the introduction of persons into the United

States." *Id.* at 16563. The Interim Final Rule stated, in

relevant part:

> (1) Introduction into the United States of persons from a foreign country (or one or more political subdivisions or regions thereof) or place means the movement of a person from a foreign country (or one or more political subdivisions or regions thereof) or place, or series of foreign countries or places, into the United States so as to bring the person into contact with persons in the United States, or so as to cause the contamination of property in the United States, in a manner that the Director determines to present a risk of transmission of a communicable disease to persons or property, even if the communicable disease has already been introduced, transmitted, or is spreading within the United States;
>
> (2) Serious danger of the introduction of such communicable disease into the United States means the potential for introduction of vectors of the communicable disease into the United States, even if persons or property in the United States are already infected or contaminated with the communicable disease; and
>
> (3) The term "Place" includes any location specified by the Director, including any

7

                    carrier, as that term is defined in 42 CFR
                    71.1, whatever the carrier's nationality.

*Id.* at 16566-67.

     The CDC's Interim Rule went into effect immediately. *Id.* at
16565. The CDC explained that, pursuant to 5 U.S.C. 553(b)(3)(B)
of the APA, HHS had concluded that there was "good cause" to
dispense with prior notice and comment. *Id.* Specifically, the
CDC stated that "[g]iven the national emergency caused by COVID-
19, it would be impracticable and contrary to the public health—
and, by extension, the public interest—to delay these
implementing regulations until a full public notice-and-comment
process is completed." *Id.*

     Pursuant to the Interim Final Rule, the CDC Director issued
an order suspending for 30 days the introduction of "covered
aliens," which he defined as "persons traveling from Canada or
Mexico (regardless of their country of origin) who would
otherwise be introduced into a congregate setting in a land Port
of Entry [("POE")] or Border Patrol station at or near the
United States borders with Canada and Mexico." Notice of Order
Under Sections 362 and 365 of the Public Health Service Act
Suspending Introduction of Certain Persons From Countries Where
a Communicable Disease Exists, 85 Fed. Reg. 17060-02, 17061,
2020 WL 1445906 (March 26, 2020) ("March 2020 Order"). The March
2020 Order declared that "[i]t is necessary for the public

                                  8

health to immediately suspend the introduction of covered

aliens" and "require[d] the movement of all such aliens to the

country from which they entered the United States, or their

country of origin, or another location as practicable, as

rapidly as possible." *Id.* at 17067. The CDC Director then

"requested that [the Department of Homeland Security ("DHS")]

implement th[e] [March 2020 Order] because CDC does not have the

capability, resources, or personnel needed to do so." *Id.* The

CDC Director also noted that U.S. Customs and Border Protection

("CBP"), a federal law enforcement agency of DHS, had already

"developed an operational plan for implementing the order." *Id.*

Soon thereafter, the CBP issued a memorandum on April 2,

2020 establishing its procedures for implementing the March 2020

Order. See Ex. E to Cheung Decl. ("CAPIO Memo"), ECF No. 57-5 at

15; *see also* Pls.' Mot. Prelim. Inj., ECF No. 57-1 at 14-15. The

CAPIO Memo instructed that agents may determine whether

individuals are subject to the CDC's order "[b]ased on training,

experience, physical observation, technology, questioning and

other considerations." CAPIO Memo, ECF No. 57-5 at 15. If an

individual was determined to be subject to the order, they were

to be "transported to the nearest POE and immediately returned

to Mexico or Canada, depending on their point of transit." *Id.*

at 17. Those who are "not amenable to immediate expulsion to

Mexico or Canada, will be transported to a dedicated facility

9

for limited holding prior to expulsion" to their home country. *Id.* The CAPIO Memo "provide[d] no instructions on medical screenings or other procedures for determining whether a covered noncitizen may have COVID-19." Am. Compl., ECF No. 22 ¶ 60.

On April 22, 2020, the March 2020 Order was extended for an additional 30 days. *See* Extension of Order Under Sections 362 and 365 of the Public Health Service Act; Order Suspending Introduction of Certain Persons From Countries Where a Communicable Disease Exists, 85 Fed. Reg. 22424-01, 2020 WL 1923282 (April 22, 2020) ("April 2020 Order"). The order was then extended again on May 20, 2020 until such time that the CDC Director "determine[s] that the danger of further introduction of COVID-19 into the United States has ceased to be a serious danger to the public health." Amendment and Extension of Order Under Sections 362 and 365 of the Public Health Service Act; Order Suspending Introduction of Certain Persons From Countries Where a Communicable Disease Exists, 85 Fed. Reg. 31503-02, 31504, 2020 WL 2619696 (May 26, 2020) ("May 2020 Order").

On September 11, 2020, the CDC published its final rule. *See* Control of Communicable Diseases; Foreign Quarantine: Suspension of the Right To Introduce and Prohibition of Introduction of Persons Into United States From Designated Foreign Countries or Places for Public Health Purposes, 85 Fed. Reg. 56424-01, 2020 WL 5439721, (Sept. 11, 2020) (Effective

10

October 13, 2020) ("Final Rule"). The Final Rule "defin[ed] the phrase to '[p]rohibit, in whole or in part, the introduction into the United States of persons' to mean 'to prevent the introduction of persons into the United States by suspending any right to introduce into the United States, physically stopping or restricting movement into the United States, or physically expelling from the United States some or all of the persons.'" *Id.* at 56445. The CDC Director then replaced the March, April, and May 2020 Orders with a new order on October 13, 2020. Order Suspending the Right To Introduce Certain Persons From Countries Where a Quarantinable Communicable Disease Exists, 85 Fed. Reg. 65806, 65808 (Oct. 16, 2020) ("October 2020 Order").

On August 2, 2021, the CDC issued its most recent order, "Public Health Assessment and Order Suspending the Right to Introduce Certain Persons from Countries Where a Quarantinable Communicable Disease Exists," which replaced and superseded the October 2020 Order. *See* Public Health Assessment and Order Suspending the Right to Introduce Certain Persons from Countries Where a Quarantinable Communicable Disease Exists (Aug. 2, 2021), Attach. A to Notice CDC Public Health Order ("August 2021 Order"), ECF No. 114. The August 2021 Order states that "CDC has determined that an Order under 42 U.S.C. § 265 remains necessary to protect U.S. citizens, U.S. nationals, lawful permanent residents, personnel and noncitizens at the ports of entry (POE)

11

and U.S. Border Patrol stations, and destination communities in the United States during the COVID-19 public health emergency." *Id.* at 5. Thus, the August 2021 Order continues to prohibit the introduction of "covered noncitizens"—which is defined to include "family units"—into the United States along the U.S. land and adjacent coastal borders. *Id.* at 7. The Court will refer to the process developed by the CDC and implemented by the August 2021 Order as the "CDC Order" or the "Title 42 Process."

### 3.    CDC Order's Effect on Asylum Seekers

Plaintiffs and the proposed class member are families from countries "that are among the most dangerous in the world due to gang, gender, family membership, and other identity-based violence." Pls.' Mot. Prelim. Inj., ECF No. 57-1 at 31. Plaintiffs are currently detained and in the custody of DHS. Am. Compl., ECF No. 22 ¶¶ 14-19. As such, they are subject to expulsion from the United States pursuant to the CDC Order. Plaintiffs assert that prior to the Title 42 Process, and "pursuant to longstanding immigration statutes protecting asylum seekers, Plaintiffs were entitled to assert claims for asylum and related forms of humanitarian protection, and to procedures Congress established to ensure the fair determination of their right to remain in the United States." *Id.* ¶ 4. Plaintiffs claim that if they and others like them are expelled pursuant to the CDC Order, they "would face grave danger in their home

12

69

countries." *Id.* ¶ 10. According to Plaintiffs, "Defendants subjected approximately 21,500 members of families to the Title 42 Process between March and December 2020." Pls.' Mot. Class Cert., ECF No. 23-1 at 10.

## B. Procedural History

### 1. Related Litigation

On November 18, 2020, this Court adopted Magistrate Judge Harvey's Report and Recommendation, provisionally granted the plaintiff's motion to certify class, and issued a preliminary injunction barring enforcement of the Title 42 Process as to unaccompanied minors in *P.J.E.S. v. Wolf*, 502 F. Supp. 3d 492, 520-22 (D.D.C. 2020). The Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") later stayed the preliminary injunction pending appeal. Order, *P.J.E.S. v. Mayorkas*, No. 20-5357 (D.C. Cir. Jan. 29, 2021).

In February 2021, the CDC issued a notice "temporarily except[ing] . . . unaccompanied noncitizen children" from expulsion under the Title 42 Process. CDC, Notice of Temporary Exception from Expulsion of Unaccompanied Noncitizen Children Encountered in the United States Pending Forthcoming Public Health Determination, 86 Fed. Reg. 9942-01, 2021 WL 600683 (Feb. 11, 2021). The notice stated that CDC was "in the process of reassessing" the Title 42 Order and that the temporary exception for unaccompanied minors would "remain in effect until CDC has

13

completed its public health assessment and published any notice or modified Order." *Id.* Magistrate Judge Harvey and the D.C. Circuit granted the parties' motion to hold the case in abeyance on February 24, 2021. *See* Min. Order (Feb. 24, 2021); Order, P*.J.E.S. v. Mayorkas*, No. 20-5357 (D.C. Cir. Mar. 2, 2021).

In July 2021, the CDC issued an order "except[ing] unaccompanied noncitizen children . . . from the [CDC's] October [13, 2020] Order." *See* Order Under Sections 362 & 365 of the Public Health Service Act (42 U.S.C. 265, 268) and 42 CFR 71.40; Public Health Determination Regarding an Exception for Unaccompanied Noncitizen Children From the Order Suspending the right to Introduce Certain Persons From Countries Where a Quarantinable Communicable Disease Exists, 86 Fed. Reg. 38717, 38718 (July 22, 2021). The CDC explained that the July 16 Order "supersede[s]" the notice issued on February 11, 2021. *Id.* at 38720. On August 2, 2021 the CDC issued another order that superseded the October 2020 Order. Public Health Reassessment and Order Suspending the Right To Introduce Certain Persons From Countries Where a Quarantinable Communicable Disease Exists, 86 Fed. Reg. 42828-02 (Aug. 5, 2021). The July 16 Order was "made a part of [the August 2021 Order] and incorporated by reference as if fully set forth" in the August 2021 Order. *Id.* at 42829 n.5.

14

**2.    Proceedings in this Case**

Plaintiffs filed this action on January 12, 2021. *See* Compl., ECF No. 1. The same day, Plaintiffs filed an emergency motion to stay their removal from the United States, and Defendants orally objected to Plaintiffs' request during the hearing on the motion. *See* Pls.' Emergency Mot. Stay Removal, ECF No. 5. The Court entered a Minute Order granting Plaintiffs' emergency motion over objection "[i]n view of the arguments presented by Plaintiffs in their motion, the representations made by the Government, and for the reasons stated on the record at the January 12, 2021 Status Conference." Min. Order (Jan. 12, 2021). The Court also granted thirteen subsequent emergency motions to stay the removal of other families on January 19, 2021; January 27, 2021; January 29, 2021; February 1, 2021; February 4, 2021; February 5, 2021; February 6, 2021; February 9, 2021; February 18, 2021; February 19, 2021; and February 22, 2021. *See* Min. Orders (Jan. 19, 2021; Jan. 27, 2021; Jan. 29, 2021; Feb. 1, 2021; Feb. 4, 2021; Feb. 5, 2021; Feb. 6, 2021; Feb. 9, 2021; Feb. 18, 2021; Feb. 19, 2021; Feb. 22, 2021).

Plaintiffs filed a motion for class certification on January 28, 2021, *see* Mot. Certify Class, ECF No. 23; and they filed a motion for preliminary injunction on February 5, 2021, *see* Mot. Prelim. Inj., ECF No. 57. Defendants filed a combined opposition to both motions on February 17, 2021. *See* Defs.'

15

Opp'n, ECF No. 76. On February 23, 2021, the Court granted the
parties' joint motion to hold in abeyance Plaintiffs' motions
for class certification and classwide preliminary injunction.
Min. Order (Feb. 23, 2021). The motions were held in abeyance
until August 5, 2021, when the Court granted the parties' motion
for a briefing schedule on Plaintiffs' motions. Min. Order (Aug.
5, 2021). On August 6, 2021, Defendants filed a supplemental
declaration in support of their combined opposition. *See*
Shahoulian Decl., ECF No. 116. Plaintiffs filed their combined
reply brief on August 11, 2021. *See* Pls.' Reply, ECF No. 118.
The motions are now ripe for the Court's adjudication.

## II.   Legal Standard

"A plaintiff seeking a preliminary injunction must
establish [1] that he is likely to succeed on the merits, [2]
that he is likely to suffer irreparable harm in the absence of
preliminary relief, [3] that the balance of equities tips in his
favor, and [4] that an injunction is in the public interest."
*Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (alteration
in original) (quoting *Sherley v. Sebelius*, 644 F.3d 388, 392
(D.C. Cir. 2011)). Where the federal government is the opposing
party, the balance of equities and public interest factors
merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). A
preliminary injunction is an "extraordinary remedy that may only
be awarded upon a clear showing that the plaintiff is entitled

to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. V. Camenisch*, 451 U.S. 390, 395 (1981). In this Circuit, the four factors have typically been evaluated on a "sliding scale," such that if "the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009).

In the wake of the Supreme Court's decision in *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008), "the D.C. Circuit has suggested that a positive showing on all four preliminary injunction factors may be required." *Holmes v. FEC*, 71 F. Supp. 3d 178, 183 n.4 (D.D.C. 2014); *see also Sherley*, 644 F.3d at 393 ("[W]e read *Winter* at least to suggest if not to hold that a likelihood of success is an independent, freestanding requirement for a preliminary injunction.") (citation and quotation marks omitted)). Nonetheless, "the Circuit has had no occasion to decide this question because it has not yet encountered a post-*Winter* case where a preliminary injunction motion survived the less rigorous sliding-scale

17

analysis." *ConverDyn v. Moniz*, 68 F. Supp. 3d 34, 46 n.2 (D.D.C. 2014).

## III.   Analysis

### A. Plaintiffs' Motion for Class Certification

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quotation marks omitted). Rule 23(a) establishes four requirements for class certification: (1) that "the class is so numerous that joinder of all members is impracticable"; (2) that "there are questions of law or fact common to the class"; (3) that "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition to satisfying Rule 23(a), a putative class must also meet one of the Rule 23(b) requirements. Here, Plaintiffs seek certification under Rule 23(b)(2), claiming that Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Pls.' Mot. Class Cert., ECF No. 23-1 at 8 (quoting Fed. R. Civ. P. 23(b)(2)).

18

"The party seeking certification bears the burden of persuasion, and must show that the putative class[] meet[s] the requirements of Rule 23 by a preponderance of the evidence." *Garnett v. Zeilinger*, 301 F. Supp. 3d 199, 204 (D.D.C. 2018) (citing *Hoyte v. District of Columbia*, 325 F.R.D. 485, 491 (D.D.C. 2017)). To carry that burden, Plaintiffs must "affirmatively demonstrate . . . compliance with the Rule—that is, [they] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The Court must undertake a "rigorous analysis" to confirm that the requirements of Rule 23 have been satisfied. *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 161 (1982).

Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), Plaintiffs have sought certification of the following class:  "All noncitizens who (1) are or will be in the United States; (2) come to the United States as a family unit composed of at least one child under 18 years old and that child's parent or legal guardian; and (3) are or will be subjected to the Title 42 Process." Pls.' Mot. Class Cert., ECF No. 23-1 at 7. For the reasons discussed below, the Court finds that Plaintiffs meet all of Rule 23(a) and Rule 23(b)(2)'s requirements. As Defendants' sole challenge to Plaintiffs' class certification motion is that the term "Title 42 Process" is not adequately

19

defined, Defs.' Opp'n, ECF No. 76 at 16; the Court shall first
address the sufficiency of the class definition before briefly
analyzing the remaining Rule 23(a) and Rule 23(b)(2)
requirements.

### 1.    Class Definition

"[I]t is far from clear that there exists in this
[D]istrict a requirement that a class . . . must demonstrate
ascertainability to merit certification." *Ramirez v. USCIS*, 338
F. Supp. 3d 1, 48 (D.D.C. 2018); *see also Hoyte v. District of
Columbia*, 325 F.R.D. 485, 489 n.3 (D.D.C. 2017) (noting that
"[t]he ascertainability requirement, while adopted by some
courts in this district, has been recently disavowed by four
federal appellate courts" and explaining that "the D.C. Circuit
has not opined on the requirement"). However, the requirement of
"definiteness" has been imposed by some courts as an "implied
requirement" for class certification, in addition to the express
requirements in Rule 23. *See DL v. District of Columbia*, 302
F.R.D. 1, 17 (D.D.C. 2013). This "common-sense requirement,"
*Pigford v. Glickman*, 182 F.R.D. 341, 346 (D.D.C. 1998); is
designed primarily to ensure the proposed class is
administratively manageable, *see Hartman v. Duffey*, 19 F.3d
1459, 1471 (D.C. Cir. 1994). "It is not designed to be a
particularly stringent test, but plaintiffs must at least be
able to establish that 'the general outlines of the membership

20

of the class are determinable at the outset of the litigation.'" *Pigford*, 182 F.R.D. at 346 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1760 at 118).

"[W]here the plaintiff seeks certification of an injunctive class pursuant to Rule 23(b)(2), 'actual membership of the class need not . . . be precisely delimited' because such cases will not require individualized notice, opt-out rights, or individual damage assessments, and the defendant will be required to comply with the relief ordered no matter who is in the class.'" *Brewer v. Lynch*, No. 08-1747, 2015 WL 13604257, at \*6 (D.D.C. Sept. 30, 2015). In those cases, the definiteness requirement is satisfied as long as plaintiffs can establish the "existence of a class" and propose a class definition that "accurately articulates 'the general demarcations' of the class of individuals who are being harmed by the alleged deficiencies." *See, e.g.*, *Kenneth R. v. Hassan*, 293 F.R.D. 254, 264 (D.N.H. 2013); *see also DL*, 302 F.R.D. at 17 ("Because the rationale for precise ascertainability is inapposite in the 23(b)(2) context, . . . it is not required in cases such as this where only injunctive relief is sought and notice is not required.").

Defendants contend that Plaintiffs have failed to establish that the proposed class satisfies the requirements of Rule 23(a) and Rule 23(b)(2) because the phrase "Title 42 Process" is not

21

defined within the class definition. Defs.' Opp'n, ECF No. 76 at

16. They argue that, due to the lack of a definition,

"Plaintiffs have not established that the conduct they seek to

enjoin or declare unlawful will be 'as to all of the class

members or as to none of them.'" *Id.* (quoting Fed. R. Civ. P.

23(b)(2)). While Defendants concede that "it is no secret that

Plaintiffs challenge the 'practice of summary expulsion under

the Title 42 Process' and the alleged lack of access to asylum,"

they argue that the Amended Complaint and Class Certification

Motion include statements that suggest that the "class

definition might include practices that Plaintiffs do not

challenge as unlawful." *Id.* at 17. Specifically, Defendants note

that Plaintiffs refer to the "Title 42 Process" as a "system

established in a set of agency documents—a new regulation,

several orders, and an implementation memo," and that the

Amended Complaint states that, "*[a]mong other things*, the Title

42 Process authorizes the summary expulsion of noncitizens,

including vulnerable families seeking asylum in this country,

without any of the procedural protections guaranteed by

Congress." *Id.* (quoting Am. Compl., ECF No. 22 ¶¶ 1, 3) (cleaned

up).

The Court disagrees. As an initial matter, the Court notes

that a "vague and ambiguous class definition" is not

automatically "fatal[]" to a motion for class certification.

22

Defs.' Opp'n, ECF No. 76 at 15-17. The case law is clear that
the mere existence of a problematic class definition does not
automatically mandate denial of class certification. *See Brewer*,
2015 WL 13604257, at *7. Rather, "[w]hen appropriate, district
courts may redefine classes . . . sua sponte prior to
certification." *Borum v. Brentwood Village, LLC*, 324 F.R.D. 1, 8
(D.D.C. 2018); *see also Wagner v. Taylor*, 836 F.2d 578, 589-90
(D.C. Cir. 1987) (stating that district courts may "exercise . .
. broad discretion to redefine and reshape the proposed class to
the point that it qualifies for certification under Rule 23").

     Here, however, the proposed class is not so poorly defined
as to require sua sponte redefinition by the Court. First,
Plaintiffs' amended complaint, motions, and reply brief each set
forth a fairly descriptive definition of the Title 42 Process as
referring to the practice of summarily expelling asylum-seeking
families since late March 2020. *See* Pls.' Mot. Class Cert., ECF
No. 23-1 at 7 ("A class action lawsuit is appropriate to
challenge Defendants' unlawful practice of summarily expelling
vulnerable families with minor children under their shadow
deportation system, referred to here as the 'Title 42 Process'
or 'Title 42 Policy.'"); Pls.' Mot. Prelim. Inj., ECF No. 57-1
at 9 ("Defendants moved to summarily deport [Plaintiffs] based
on an unprecedented and unlawful expulsion process, invoking the
public health powers of the Centers for Disease Control and

23

Prevention ('CDC'), specifically 42 U.S.C. § 265 (the 'Title 42 Process').")'; Pls.' Reply, ECF No. 118 at 29 ("Plaintiffs have identified and challenged 'a uniform policy or practice' of 'expulsion,' and sought relief enjoining application of the challenged CDC orders to the class."); Am. Compl., ECF No. 22 ¶ 3 ("Among other things, the Title 42 Process authorizes the summary expulsion of noncitizens, including vulnerable families seeking asylum in this country, without any of the procedural protections guaranteed by Congress—even if the families show no signs of having COVID-19.").

Second, although Plaintiffs do use the phrase "among other things" in one sentence within their Amended Complaint, Defendants' argument is weakened by their own acknowledgment that the focus of this litigation is the "'practice of summary expulsion under the Title 42 Process' and the alleged lack of access to asylum." Defs.' Opp'n, ECF No. 76 at 16.

And third, Defendants' reliance on the Seventh Circuit case *Rahman v. Chertoff*, 530 F.3d 622 (7th Cir. 2008), is misplaced. In *Rahman*, the plaintiffs sought to certify a class of citizens defined as "[a]ll United States citizens who now are and/or in the future will be subjected to detentions upon reentry to the United States as a result of defendants' contested policies, practices and customs." *Id.* at 625. However, the class definition did not specify what "defendants' contested policies,

24

practices and customs" were. *Id.* The Seventh Circuit therefore denied the plaintiffs' motion to certify, explaining that "[a] class of all persons now or in the future subject to unspecified practices may have nothing to do with the named representatives' injuries, or what caused them." *Id.* at 626. The court also noted that the undefined class was "hard to evaluate" and "incompatible" with the "typicality" requirement. *Id.* at 627.

Here, Defendants argue that Plaintiffs' class definition "suffers from similar infirmities." Defs.' Opp'n, ECF No. 76 at 16. But not only is *Rahman* non-binding on this Court, it is also distinguishable on the facts. Significantly, though Plaintiffs refer to the "Title 42 Process" generally as a "system established in a set of agency documents—a new regulation, several orders, and an implementation memo," *id*. at 17; Plaintiffs' Amended Complaint and motions briefing also separately identify and describe each regulation, order, and memo. *See, e.g.*, Am. Compl., ECF No. 22 ¶¶ 41-66. Thus, unlike in *Rahman*, the Court is able to easily evaluate the application of specific policies and procedures on the proposed class members, and any "administrative feasibility requirement" is satisfied because identifying the class members under this definition would not require much, if any, individual factual inquiry. *See Brewer,* 2015 WL 13604257, at \*6.

25

**2. Rule 23(a) Requirements**

**a. Numerosity**

Because of the general rule in favor of confining litigation to the named parties only, a class action is appropriate only when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although Plaintiffs need not clear any "specific threshold," as a general benchmark, "courts in this jurisdiction have observed that a class of at least forty members is sufficiently large to meet this requirement." *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007). Plaintiffs may satisfy the requirement by supplying estimates of putative class members, *see Pigford*, 182 F.R.D. at 347–48; "[s]o long as there is a reasonable basis for the estimate provided," *Kifafi v. Hilton Hotels Ret. Plan*, 189 F.R.D. 174, 176 (D.D.C. 1999).

Here, Defendants do not dispute that the proposed class satisfies the numerosity requirement. Plaintiffs have provided evidence that, between March 2020 and December 2020, approximately 21,515 members of family units[4] were subject to the CDC Order and its previous iterations, *see* Kang Decl., ECF No. 23-2 ¶ 4; and that, between April 2020 and December 2020,

---

[4] The CBP defines a "family unit" as "the number of individuals (either a child under 18 years old, parent or legal guardian) apprehended with a family member." *See* Kang Decl., ECF No. 23-2 ¶ 3.

26

"approximately 21,018 members of family units (81%) were expelled under Title 42," *id.* ¶ 6. Accordingly, the Court finds that the numerosity requirement is met. *See O.A. v. Trump*, 404 F. Supp. 3d 109, 155 (D.D.C. 2019) (finding numerosity established by evidence in the administrative record estimating that the class consisted of "thousands of migrants who have crossed and will cross the United States' southern border outside ports of entry").

## b. Commonality

A plaintiff seeking class certification must also establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requires more than the identification of the purported violation of the same provision of law. *See DL v. District of Columbia*, 713 F.3d 120, 127–30 (D.C. Cir. 2013) (vacating an order certifying a class composed of students who were purportedly each denied a free appropriate public education on the ground that plaintiffs had identified only sufferers of a violation of the same provision of law and had not met the commonality requirement). Instead, the claims must depend on "a common contention [that] is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores*, 564

U.S. at 350. "Even a single common question will do." *Id.* at 359 (cleaned up).

As the D.C. Circuit has explained, commonality is satisfied where there is "a uniform policy or practice that affects all class members." *DL*, 713 F.3d at 128; *see also O.A.*, 404 F. Supp. 3d at 156 (finding commonality satisfied where "[a]ll members of the proposed class, and all of the proposed class representatives, face the same threat of injury" and where "[a]ll challenge the same Rule on the same grounds, and all seek the same remedy—invalidation of the Rule"). Here, Plaintiffs are challenging the lawfulness of the Title 42 Process, which is a uniform policy that applies to each Plaintiff and all members of the proposed class. Moreover, "[n]ot only do all class members present the same challenge to the policy, but there also is no evident variation among them concerning their ultimate entitlement to relief: if any person in the class has a meritorious claim, they all do." *J.D. v. Azar*, 925 F.3d 1291, 1321 (D.C. Cir. 2019). The Court can, therefore, conclude that "common questions of law and fact" unite the class members' claims. *Damus v. Nielsen*, 313 F. Supp. 3d 317, 332 (D.D.C. 2018) (finding that "the allegation that the five ICE Field Officers are no longer providing the 'individualized determinations' of parole eligibility and procedural protections required by the Parole Directive" satisfied the commonality requirement).

28

## c. Typicality

A class representative satisfies the typicality requirement if the representative's "claims are based on the same legal theory as the claims of the other class members" and her "injuries arise from the same course of conduct that gives rise to the other class members' claims." *Bynum*, 214 F.R.D. at 35. Put another way, a representative's claims are typical of those of the class when "[t]he plaintiffs allege that their injuries derive from a unitary course of conduct by a single system." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997). Here, Plaintiffs and all members of the proposed class face the same injury: the threat of expulsion pursuant to the Title 42 Process. All challenge the same policy on the same grounds, and all seek the same remedy—invalidation of the Title 42 Process. Thus, the typicality requirement is met.

## d. Adequacy

"The adequacy requirement aims to ensure that absent class members will not be bound by the outcome of a suit in which they were not competently and fairly represented." *J.D.*, 925 F.3d at 1312. "Adequacy embraces two components: the class representative (i) 'must not have antagonistic or conflicting interests with the unnamed members of the class' and (ii) 'must appear able to vigorously prosecute the interests of the class

through qualified counsel.'" *Id.* (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)).

Defendants also do not dispute that Plaintiffs have satisfied the adequacy requirement. First, Defendants have not identified—and the Court is unaware of—any interest Plaintiffs have that is antagonistic to or conflicts with the putative class members. Rather, courts have found that where, as here, the plaintiffs "seek identical relief for all class members, . . . there are no conflicting interests that might derail certification on this prong." *Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 84 (D.D.C. 2015). Second, the Court concludes that Plaintiffs' current counsel are "willing and have the ability vigorously to litigate this case and to protect the interests of absent class members." *O.A.*, 404 F. Supp. 3d at 157.

### 3.    Rule 23(b)(2) Requirement

Having determined that Plaintiffs meet the requirements of Rule 23(a), the Court must next determine whether they meet the requirements of Rule 23(b)(2). Rule 23(b)(2) applies if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the

30

87

injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (internal quotation marks and citations omitted). Rule 23(b)(2) imposes "two requirements: (1) that defendant's actions or refusal to act are 'generally applicable to the class' and (2) that plaintiffs seek final injunctive relief or corresponding declaratory relief on behalf of the class." *Bynum*, 214 F.R.D. at 37.

Plaintiffs have satisfied both requirements here. The relief Plaintiffs seek—among other things, a declaration that the Title 42 Process is unlawful and an injunction prohibiting Defendants from applying the Title 42 Process to Plaintiffs and proposed class members—is "generally applicable to the class" and is indivisible. *See Damus*, 313 F. Supp. 3d at 334-35 (finding Rule 23(b)(2) satisfied where plaintiffs were not asking the court "to remedy discrete errors in their parole determinations," but rather "only . . . address an alleged systematic harm"); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 182 (D.D.C. 2015) (finding Rule 23(b)(2) satisfied where plaintiffs sought to enjoin ICE from consideration of particular factor in making detention determination). Plaintiffs also do not seek individualized relief, and thus this is not a case where "each individual class member would be entitled to a *different*

31

injunction or declaratory judgment against the defendant." *Wal–Mart*, 564 U.S. at 360; *see also Ramirez*, 338 F. Supp. 3d at 48 (finding Rule 23(b) satisfied where plaintiffs "d[id] not seek a court order mandating any particular outcome with respect to any particular [individual plaintiff]").

For all these reasons, the Court grants Plaintiffs' motion for class certification.

## B. Plaintiffs' Motion for Preliminary Injunction

### 1. Plaintiffs Are Likely to Succeed on the Merits

Plaintiffs argue that the CDC Orders instituting the Title 42 Process exceed the authority granted by Congress pursuant to Section 265 because "[n]othing in [Section] 265, or Title 42 more generally, purports to authorize any deportations, much less deportations in violation of" statutory procedures and humanitarian protections, including the right to seek asylum. Pls.' Mot. Prelim. Inj., ECF No. 57-1 at 17-18. The Court agrees and finds that Plaintiffs have shown that they are likely to succeed on the merits of their claim.

*Chevron, USA, Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), provides the framework for reviewing an agency's interpretation of a statute that the agency is charged with administering. *See* 467 U.S. at 837. The first step in this review process is for the court to determine "whether Congress

32

has directly spoken to the precise question at issue." *Id.* at
842. "If the intent of Congress is clear, that is the end of the
matter; for the court, as well as the agency, must give effect
to the unambiguously expressed intent of Congress." *Id.* at 842–
43. In determining whether the statute unambiguously expresses
the intent of Congress, the court should use all the
"traditional tools of statutory construction," including looking
to the text and structure of the statute, as well as its
legislative history, if appropriate. *See id.* at 843 n.9; *see
also Bell Atlantic Tel. Co. v. FCC*, 131 F.3d 1044, 1047 (D.C.
Cir. 1997). If the court concludes that the statute is either
silent or ambiguous with respect to the precise question at
issue, the second step of the court's review process is to
determine whether the interpretation proffered by the agency is
"based on a permissible construction of the statute." *Chevron*,
467 U.S. at 843. The court must defer to agency interpretations
that are not "arbitrary, capricious, or manifestly contrary to
the statute." *Id.* at 844.

The Court's analysis begins with the statutory text*. See S.
Cal. Edison Co. v. FERC*, 195 F.3d 17, 22-23 (D.C. Cir. 1999).
Here, Section 265 states in full:

> Whenever the Surgeon General determines that
> by reason of the existence of any communicable
> disease in a foreign country there is serious
> danger of the introduction of such disease
> into the United States, and that this danger

33

is so increased by the introduction of persons or property from such country that a suspension of the right to introduce such persons and property is required in the interest of the public health, the Surgeon General, in accordance with regulations approved by the President, shall have the power to prohibit, in whole or in part, the introduction of persons and property from such countries or places as he shall designate in order to avert such danger, and for such period of time as he may deem necessary for such purpose.

42 U.S.C. § 265.

As Plaintiffs point out, Section 265 simply contains no mention of the word "expel"—or any synonyms thereof—within its text. *See* Pls.' Mot. Prelim. Inj., ECF No. 57-1 at 18. The lack of express terms within the statute is significant: even "broad rulemaking power must be exercised within the bounds set by Congress," *Merck & Co. v. U.S. Dep't of Health & Human Servs*., 385 F. Supp. 3d 81, 92, 94 (D.D.C. 2019), *aff'd*, 962 F.3d 531 (D.C. Cir. 2020) (stating that "agencies are 'bound, not only by the ultimate purposes Congress has selected, but by the means it has deemed appropriate, and prescribed, for the pursuit of those purposes'"); and the CDC "does not [have the] power to revise clear statutory terms," *Util. Air Reg. Grp. v. EPA*, 573 U.S. 302, 327 (2014).

Indeed, particularly where the statute in question regards such a "severe 'penalty'" as deportation, *Padilla v. Kentucky*, 559 U.S. 356, 365 (2010) (quoting *Fong Yue Ting v. United*

34

*States*, 149 U.S. 698, 740 (1893)); the Court is loathe to recognize an implied power of forced removal from the country, *see Util. Air Reg. Grp.*, 573 U.S. at 324 ("We expect Congress to speak clearly if it wishes to assign to an agency decisions of vast 'economic and political significance.'"). Rather, as this Court explained in *P.J.E.S. v. Wolf*, 502 F. Supp. 3d 492, 512 (D.D.C. 2020), "when Congress wants to grant the power to expel individuals out of the United States, it does so plainly." *P.J.E.S.*, 502 F. Supp. 3d at 512; *see, e.g.*, 8 U.S.C. § 1225(b)(2)(A), (C) (allowing an alien who has arrived on land from a contiguous country and who is "not clearly and beyond a doubt entitled to be admitted" to be "return[ed] . . . to that territory pending a proceeding"); *id.* § 1231(a)(1)(A) ("Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days . . . ."); 18 U.S.C. § 3186 (authorizing a fugitive from another country found in the United States to be "take[n] . . . to the territory of such foreign government" by an agent of that government). Moreover, "Congress has made clear when public health concerns merit disallowing a non-citizen to remain in the United States." *P.J.E.S.*, 502 F. Supp. 3d at 539; *see* 8 U.S.C. § 1182(a)(1) (providing that "aliens who are inadmissible" are those determined "to have a communicable disease of public health

35

significance"); *id.* § 1222 (providing for medical detention and examination as part of immigration processing). As the Supreme Court "ha[s] stated time and again[,] . . . courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (citations omitted); *see also FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000) ("The classic judicial task of reconciling many laws enacted over time, and getting them to make sense in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute." (internal quotation marks omitted)). And here, the plain language of Section 265, particularly when read in conjunction with the above statutes governing immigration under Title 8 of the U.S. Code, evinces no intention to grant the Executive the authority to expel or remove persons from the United States.

The Court also finds that the plain text of Section 265 is supported by the statutory context. *See Brown & Williamson Tobacco Corp.*, 529 U.S. at 132-33 (2000) ("It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989))). For example, in Section 271, Congress provided for specific "penalties" for those

36

93

persons who or vessels that violated public health regulations prescribed under the relevant sections, including Section 265. 42 U.S.C. § 271. For individuals, Section 271 states that any violation "shall be punished by a fine of not more than \$1,000 or by imprisonment for not more than one year, or both." *Id.* § 271(a). Removal from the United States, however, is not included as a penalty. Moreover, Section 271 refers to the regulations prescribed under Section 265 and others as "*quarantine* laws," further suggesting that the CDC's powers were limited to quarantine and containment. *Id.* § 271 (emphasis added).

   Neither does neighboring Section 264 contemplate the removal of persons from the United States. Section 264 authorizes the Secretary to use various public health measures to "prevent the introduction, transmission, or spread of communicable diseases." 42 U.S.C. § 264. Although Defendants rely on Section 264 as evidence of the Secretary's "sweeping authority to protect the country from potentially devastating communicable diseases," Defs.' Opp'n, ECF No. 76 at 23; the provision only mentions regulations that provide for the "apprehension, detention, examination, or conditional release of individuals" if the individual is "coming into a State or possession from a foreign country or possession." 42 U.S.C. § 264(c). Again, the authority to remove is not mentioned. "That is, in a section where one would expect the term to appear—where

37

94

Congress has delineated the government's power to prevent the spread of contagious disease from individuals coming into the United States from a foreign country—it does not." *P.J.E.S.*, 502 F. Supp. 3d at 537-38.

Furthermore, even beyond Sections 264 and 271, the statute as a whole does not contain "a word about the power of the [CDC] to expel anyone who has come into the country." *Id.* at 513-14 (citing 42 U.S.C., Chap. 6A, Subchap. II, Part G (entitled "Quarantine and Inspection")); 42 U.S.C. § 267 (entitled "Quarantine stations, grounds, and anchorages"); *id.* § 268 (entitled "Quarantine duties of consular and other officers"); *id.* § 270 (entitled "Quarantine regulations governing civil air navigation and civil aircraft"); *id.* § 271 (entitled "Penalties for violation of quarantine laws"); *id.* § 272 (entitled "Administration of oaths by quarantine officers"). Rather, the statutory scheme reflects Congress's focus on the public's health, authorizing the CDC to create regulations that allow for the "apprehension, detention, examination, or conditional release of individuals" entering from foreign countries to stop the spread of communicable diseases from those countries, *id.* § 264; and then in times of serious danger, to halt the "introduction of persons" from designated foreign countries, *id.* § 265.

38

Defendants argue, however, that the findings above

"ignore[] the purely public health purpose of the statute,"
because "[t]he absence of the terms 'expel' or 'removal' has no
special significance in the public health context even if its
absence might be meaningful in the immigration context." Defs.'
Opp'n, ECF No. 76 at 19-20. They further contend that Section
265's phrase "prohibit[ing] . . . the introduction" does not
demonstrate that Congress intended to limit the Executive's
authority at "stopping a person precisely at the Nation's
borders." *Id.* at 18. Instead, "the term 'introduction' refers to
a continuing process and is most naturally read to extend beyond
a person's immediate physical crossing of the border," and "to
'prohibit . . . the introduction' naturally means to intercept
or prevent such a process." *Id.* at 18-19. Thus, in Defendants'
view, "the Section 265 authority includes intercepting and
halting persons who have already crossed the border—but who are
in the process of being introduced—into the United States." *Id.*
at 19.

Defendants arguments are unpersuasive. First, regardless of
whether the words "expel" or "remove" are specific to the
immigration context, Defendants do not explain the lack of
synonyms of either word within the statute. Moreover, "[i]t is a
fundamental principle of statutory interpretation that absent
provision[s] cannot be supplied by the courts." *Rotkiske v.*

39

*Klemm*, 140 S. Ct. 355, 360–61 (2019) (internal citations and quotation marks omitted) (alteration in original). "[W]hen Congress wants to mandate [certain] procedures[,] it knows exactly how to do so." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1626 (2018). In view of current immigration laws, which speak to deportation by using words such as "remove" and "return," *see* 8 U.S.C. § 1182(d)(3)(A) ("The Attorney General shall prescribe conditions . . . to . . . *return* . . . inadmissible aliens . . . ." (emphasis added)); *id.* § 1182(h)(2) ("No waiver shall be granted . . . for a period of not less than 7 years immediately preceding the date of initiation of proceedings to *remove* the alien from the United States." (emphasis added)); this Court recognizes, as have other courts in this District, that "[t]here's a serious question about whether [Section 265's] power includes the power . . . to remove or exclude persons who are already present in the United States," Hr'g Tr., *J.B.B.C. v. Wolf*, No. 20-cv-1509, ECF No. 39 at 50 (June 26, 2020). Put simply, the "fact that Congress did not use [words such as 'return' or 'remove'] . . . suggests at a minimum that the power to remove is not granted by [S]ection 265." *Id.*[5]

_____

[5] Citing to dicta in *Russello v. United States*, 464 U.S. 16, 25 (1983), the government argues that "language in one statute usually sheds little light upon the meaning of different language in another statute." Defs.' Opp'n, ECF No. 76 at 19-20.

40

Second, even accepting the government's position that the phrase "prohibit . . . the introduction of" means "to intercept or prevent" the "process" of introduction, Defs.' Opp'n, ECF No. 76 at 18-19; this phrase also does not encompass expulsion from the United States, nor do any of the definitions provided by the Government contain the word "expel" or synonyms thereof. Rather, to "prohibit . . . the introduction of" merely means that the process of introduction can be halted. And "[e]xpelling persons, as a matter of ordinary language, is entirely different from interrupting, intercepting, or halting the process of introduction." *P.J.E.S.*, 502 F. Supp. at 512; *see also id.* at 536 (finding that the Merriam-Webster Dictionary definitions of "prohibit," "intercept," and "prevent" each "connote stopping something before it begins, rather than remedying it afterwards"). In other words, "interrupting, intercepting, or halting the process of introduction does [not] inexorably lead to expulsion." *Id.* at 512.

---

However, the Supreme Court routinely points to other statutes as evidence that Congress knows how to legislate in particular ways. *See Rotkiske v. Klemm*, 140 S. Ct. 355, 361 (2019) ("A textual judicial supplementation is particularly inappropriate when, as here, Congress has shown that it knows how to adopt the omitted language or provision. Congress has enacted statutes that expressly include the language [the petitioner] asks us to read in . . . ."); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1626 (2018) (explaining that "when Congress wants to mandate [certain] procedures[,] it knows exactly how to do so," and "Congress has spoken often and clearly" to the issue in other statutes).

41

The Government next contends that, "rather than specifying that the power to prohibit the introduction of persons is limited to the Nation's borders," Congress expressly delegated the power to issue regulations that accomplish Section 265's purpose. Defs.' Opp'n, ECF No. 76 at 20. But the government's argument is beside the point; if Section 265 does not provide the authority to expel persons, then it does not delegate the authority to issue regulations to expel persons. In addition, the Court also notes that the legislative history cited by the government—that Section 265's predecessor statute would have given the President the power to suspend "immigration," *see* Defs.' Opp'n, ECF No. 76 at 22—does not provide support for its position that Section 265 authorizes it to expel persons.

Finally, in view of the above discussion and finding that Section 265 is not ambiguous, the Court need not reach step two of the *Chevron* analysis. However, even if the statute was ambiguous, deference would not be justified. First, "the 'reconciliation' of distinct statutory regimes 'is a matter for the courts,' not agencies," *Epic Sys.*, 138 S. Ct. at 1629 (quoting *Gordon v. N.Y. Stock Exch., Inc.*, 422 U.S. 659, 685-86 (1975)); and here, "[t]he question for this claim is purely legal: does Section 265 authorize expulsions from the United States, or does it not?" *P.J.E.S.*, 502 F. Supp. 3d at 544 n.15. And while the government contends that the interpretation of

42

99

"introduction" is within the Secretary's expertise, *see* Defs.'
Opp'n, ECF No. 76 at 33-34; the Court disagrees. "The CDC's
'scientific and technical knowledge' . . . has no bearing on
that question of statutory interpretation." *P.J.E.S.*, 502 F.
Supp. 3d at 544 n.15. Moreover, government has not explained how
its scientific and technical expertise would lead it to
interpret "introduction" to encompass "expulsion." *Cf. Kisor v.
Wilkie*, 139 S. Ct. 2400, 2416 (2019) (noting that "[a] court
must make an independent inquiry into whether the character and
context of the agency interpretation entitled it to controlling
weight"); *see also NRDC v. Daley*, 209 F.3d 747, 755-56 (D.C.
Cir. 2000) ("The Service cannot rely on 'reminders that its
scientific determinations are entitled to deference' in the
absence of reasoned analysis 'to cogently explain' why its
additional recommended measures satisfied the Fishery Act's
requirements."). Accordingly, the CDC is not entitled to
deference with respect to its interpretation.[6]

## 2. Plaintiffs Face Irreparable Injury

"The failure to demonstrate irreparable harm is 'grounds
for refusing to issue a preliminary injunction, even if the

---

[6] Because the Court finds that Title 42 does not authorize
expulsion, the Court need not address Plaintiffs' additional
arguments that Section 265 was designed to regulation
transportation or that, even if Section 265 authorized
expulsions, the Title 42 Process would violate the immigration
statutes. *See* Pls.' Mot. Prelim. Inj., ECF No. 57-1 at 21, 27.

43

other three factors . . . merit such relief.'" *Nat'l Mining
Ass'n v. Jackson*, 768 F. Supp. 2d 34, 50 (D.D.C. 2011) (RBW)
(quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d
290, 297 (D.C. Cir. 2006)). "In this Circuit, a litigant seeking
a preliminary injunction must satisfy 'a high standard' for
irreparable injury." *ConverDyn*, 68 F. Supp. 3d at 46 (quoting
*Chaplaincy of Full Gospel Churches*, 454 F.3d at 297). The movant
must demonstrate that it faces an injury that is "both certain
and great; it must be actual and not theoretical," and of a
nature "of such imminence that there is a clear and present need
for equitable relief to prevent irreparable harm." *Wis. Gas Co.
v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (quotation marks and
emphasis omitted).

    Plaintiffs contend that they are likely to suffer
irreparable harm if they are expelled without the opportunity to
seek humanitarian relief pursuant to the Title 42 Process. Pls.'
Mot. Prelim. Inj., ECF No. 57-1 at 31. Plaintiffs have presented
as evidence United States Department of State reports and
multiple declarations asserting that the home countries of the
proposed class members "are among the most dangerous in the
world due to gang, gender, family membership, and other
identity-based violence." *Id.* at 32. The declarations submitted
to the Court specify in detail Plaintiffs' fear of violence,
persecution, and other victimization if they are removed, yet

44

101

they remain subject to the Title 42 Process and face the threat

of removal prior to receiving any of the protections the

immigration laws provide. *See, e.g.*, Sealed Decl., ECF No. 9;

Sealed Decl., ECF No. 17; Sealed Decl., ECF No. 27; Sealed

Decl., ECF No. 32; Sealed Decls., ECF Nos. 63-67; Sealed Decl.,

ECF No. 70; Sealed Decls., ECF Nos. 84; Sealed Decls., ECF No.

88-89. Plaintiffs further assert that many of the families "are

expelled to Mexico, where they are often victimized by criminal

cartels and gang members and face numerous barriers to finding

safe places to shelter." Pls.' Mot. Prelim. Inj., ECF No. 57-1

at 33. Defendants do not dispute the potential harms that

Plaintiffs could face if removed from the United States.

The Court finds that Plaintiffs have sufficiently shown

they will likely suffer irreparable harm absent a preliminary

injunction. Plaintiffs' alleged injuries would likely be "beyond

remediation." *Chaplaincy of Full Gospel Churches*, 454 F.3d at

297. First, pursuant to the Title 42 Process, Plaintiffs and the

proposed class members face the prospect of expulsion without

any opportunity to apply for asylum or withholding of removal.

And once expelled from the United States and outside the

jurisdiction of the Court, a judicial remedy may be unavailable.

*See Doe v. Mattis*, 928 F.3d 1, 22 (D.C. Cir. 2019) (finding

irreparable harm likely to flow from the transfer of a dual

citizen detained in Iraq to an unidentified third country

45

because he would then be in the custody of that third country
"without any continuing oversight by—or recourse to—the United
States"); *P.J.E.S.*, 502 F. Supp. 3d at 545; *Tefel v. Reno*, 972
F. Supp. 608, 619–20 (S.D. Fla. 1997) ("[T]he Court finds . . .
that Plaintiffs and class members would suffer irreparable harm
if they are deported to their native countries after having been
denied an opportunity to have a hearing on their claims for
suspension of deportation."); *Velasquez v. Velasquez*, No. 14-cv-
1688, 2014 WL 7272934, at \*5 (E.D. Va. Dec. 15, 2014) (finding
irreparable harm where children could be removed from
jurisdiction because that would "frustrate the effort of th[e]
Court in resolving the [dispute]"). Second, members of the
proposed class also do not seek monetary compensation for their
injuries; instead, they seek injunctive and declaratory relief
invalidating the Title 42 Process. Unlike economic harm, the
harm resulting from expulsion from the United States pursuant to
an unlawful policy likely cannot be remediated after the fact.
*Cf. Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1295
(D.C. Cir. 2009) (explaining that economic losses are typically
not irreparable because compensation can be awarded after a
merits determination).

In addition, "[i]t is well-established that acts by
[g]overnment agencies in derogation of statutory rights of the
public or certain individual members of the public can

46

constitute irreparable injury." *Kirwa v. U.S. Dep't of Def.*, 285

F. Supp. 3d 21, 42 n.22 (D.D.C. 2017) (quoting *Gates v.*

*Schlesinger*, 366 F. Supp. 797, 800 (D.D.C. 1973)). Here, the

Court has explained that Section 265 likely does not authorize

expulsion, thereby denying the proposed class members' the

opportunity to seek humanitarian benefits pursuant to the

immigration statutes.

Defendants argue, however, that the "inherently

individualized nature" of Plaintiffs' potential harms does not

demonstrate that the harms are "likely" to occur in the absence

of a preliminary injunction. Defs.' Opp'n, ECF No. 76 at 35. But

while the decision whether to eventually grant asylum to

individuals is undoubtedly fact-intensive, as explained above,

Plaintiffs have provided ample unrebutted evidence demonstrating

that they are collectively deprived of certain statutory

procedures to seek protection under the Title 42 Process, and

they face real threats of violence and persecution if they were

to be removed from the United States. *See, e.g.*, Neusner Decl.,

ECF No. 118-4 ¶ 8; Harbury Decl., ECF No. 118-5 ¶¶ 1, 10; Arvey

Decl, ECF No. 118-7 ¶ 16; Pinheiro Decl., ECF No. 118-7 ¶ 37;

Suppl. Levy Decl., ECF No. 118-3 ¶ 16; Rivas Decl., ECF No. 118-

11 ¶ 16. In addition, as Plaintiffs point out, "Defendants offer

no evidence that class members face materially disparate dangers

once expelled." Pls.' Reply, ECF No. 118 at 20. As other courts

47

have noted, "similar showings" of "bona fide clams for
humanitarian relief, including fear of persecution on the basis
of protected characteristics," have been found to be "sufficient
to demonstrate irreparable injury." *P.J.E.S.*, 502 F. Supp. 3d at
544 (citing cases); *see also J.B.B.C. v. Wolf*, No. 20-cv-1509,
2020 WL 6041870, at \*2 (D.D.C. June 26, 2020) (stating that
sealed "declaration describing the possible harms that would
result from plaintiff's return to Honduras" was sufficient);
*Devitri v. Cronen*, 289 F. Supp. 3d 287, 296-97 (D. Mass. 2018)
(finding unrebutted evidence showing threat of persecution or
torture if deported established likely irreparable harm, despite
"no individualized evidence concerning the specific threats each
Petitioner faces in Indonesia"); *Grace v. Whitaker*, 344 F. Supp.
3d 96, 146 (D.D.C. 2018), *aff'd in part, rev'd in part on other
grounds sub nom.*, *Grace v. Barr*, 965 F.3d 883 (D.C. Cir. 2020)
("[P]laintiffs credibly alleged at their credible fear
determinations that they feared rape, pervasive domestic
violence, beatings, shootings, and death in their countries of
origin. Based on plaintiffs' declarations attesting to such
harms, they have demonstrated that they have suffered
irreparable injuries."); *Orantes–Hernandez v. Meese*, 685 F.
Supp. 1488, 1504–05 (C.D. Cal. 1988) (finding that plaintiffs
would suffer irreparable harm if they were summarily removed

48

105

without being afforded the opportunity to exercise their right to apply for asylum).

Defendants also contend that "the [g]overnment's implementation of the Order provides a process for determining a covered alien's claim for protection under the Convention Against Torture. Thus, Plaintiffs would not be expelled without some opportunity to seek humanitarian relief." Defs.' Opp'n, ECF No. 76 at 35. However, Defendants do not dispute that Plaintiffs and proposed class members would still be deprived of the protections and procedures provided for under the immigration statutes. *See id.*

Plaintiffs have thus shown a likelihood of suffering irreparable harm.

## 3. The Balance of the Equities and Public Interest Favors an Injunction

The balance-of-equities factor directs the Court to "balance the competing claims of injury and . . . consider the effect on each party of the granting or withholding of the requested relief." *ConverDyn*, 68 F. Supp. 3d at 52 (quoting *Winter*, 555 U.S. at 24). "When the issuance of a preliminary injunction, while preventing harm to one party, causes injury to the other, this factor does not weigh in favor of granting preliminary injunctive relief." *Id.*; *see also Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1326 (D.C. Cir. 1998). By contrast,

49

the balance of equities may favor a preliminary injunction that serves only "to preserve the relative positions of the parties until a trial on the merits can be held." *Rufer v. FEC*, 64 F. Supp. 3d 195, 206 (D.D.C. 2014) (quoting *Camenisch*, 451 U.S. at 395). "The purpose of . . . interim relief is not to conclusively determine the rights of the parties, . . . but to balance the equities as the litigation moves forward. In awarding a preliminary injunction a court must also 'conside[r] . . . the overall public interest'. . . ." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (second alteration in original) (citations omitted).

Plaintiffs contend that issuing a preliminary injunction "would not substantially injure the government and would be consistent with public health" because (1) "families who come to the border . . . can be processed quickly by Border Patrol agents and released to sponsors in the interior," where they can quarantine and be subject to local health restrictions; (2) "insofar as Defendants choose to detain families upon their apprehension at the border, Defendants operate family detention facilities where the family can be housed together," as well as tested and quarantined; and (3) "Defendants keep many families in custody for weeks before expulsion," where the families are tested for COVID-19. Pls.' Mot. Prelim. Inj., ECF No. 57-1 at 34-35. Defendants, in opposition, argue that "an injunction will

50

increase the risk of COVID-19 transmission, which for some could have deadly consequences, and undoing the mitigation measures put in place by the Order is not in the public interest." Defs.' Opp'n, ECF No. 76 at 36.

Here, the Court ultimately finds that the balance of the equities and the public interest weigh in favor of an injunction.

First, "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016); *see also Ramirez v. ICE*, 310 F. Supp. 3d 7, 33 (D.D.C. 2018) ("The public interest surely does not cut in favor of permitting an agency to fail to comply with a statutory mandate."); *R.I.L-R*, 80 F. Supp. 3d at 191 ("The Government 'cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns.'"). As explained above, the Court has determined that Plaintiffs are likely to succeed on their claim that the Title 42 Process is unlawful. Accordingly, because "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate," *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977); the Court finds that Plaintiffs likelihood of success "is a strong indicator that a preliminary injunction would serve the public interest," *Newby*,

51

838 F.3d at 12; *see also A.B.-B. v. Morgan*, No. 20-cv-846, 2020 WL 5107548, at \*9 (D.D.C. Aug. 31, 2020) ("[T]he Government and public can have little interest in executing removal orders that are based on statutory violations . . . .").

Second, "the public has an interest in 'ensuring that we do not deliver aliens into the hands of their persecutors,' *Leiva-Perez* [*v. Holder*], 640 F.3d [962,] 971 [(9th Cir. 2011)], and 'preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm,' *Nken*, 556 U.S. at 436." *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 678 (9th Cir. 2021). Here, the Title 42 Process deprives Plaintiffs and the proposed class members of an opportunity to seek humanitarian protections under the asylum and withholding of removal statutes. Proceeding to the merits of this litigation without preliminary injunctive relief thus "risks [P]laintiffs being returned to home countries where they face significant risk of physical harm." *A.B.-B.*, 2020 WL 5107548, at \*9. Defendants do not question that Plaintiffs face substantial harm if returned to their countries of origin. Accordingly, "[t]hese life-or-death consequences weigh heavily in favor of preliminary injunctive relief." *Id.*; *see also Devitri*, 289 F. Supp. 3d at 297 (D. Mass. 2018) ("The public's interest in providing due process for non-citizens to ensure that they are not removed to a country where they will be

persecuted is an extremely weighty one."); *Chaudhry v. Barr*, No. 19-cv-00682, 2019 WL 2009307, at \*4 (E.D. Cal. May 7, 2019) ("[T]here is . . . 'a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm.'" (quoting *Sied v. Nielsen*, No. 17-cv-06785, 2018 WL 1142202, at \*27 (N.D. Cal. Mar. 2, 2018))).

Defendants argue, however, that "an injunction will increase the risk of COVID-19 transmission, which for some could have deadly consequences, and undoing the mitigation measures put in place by the Order is not in the public interest." Defs.' Opp'n, ECF No. 76 at 36. According to Defendants, (1) "CBP facilities 'are not structured or equipped for quarantine or isolation for COVID-19'"; (2) "[t]he numbers of aliens and the size and capacity of the congregate holding areas are not at all conducive to effective social distancing"; and (3) "CBP is not equipped to provide on-site care to infected persons." *Id.* (quoting March Order at 14; Final Rule, 85 Fed Reg. at 56,433). Due to these constraints, Defendants fear that U.S. Border Patrol's facilities "may rapidly become overcrowded" if the Title 42 Process is rescinded. *Id.* But despite the government's warnings regarding the capacity of its facilities and staff, the fact remains that "86% of families arriving at the southwest border are *already* allowed into the United States and processed

for regular removal proceedings." Pls.' Reply, ECF No. 118 at

22. Moreover, although Defendants have expressed concerns

regarding its inability to provide for quarantine space or

"effective social distancing" if the Title 42 Process were not

in effect, expulsion pursuant to the CDC Orders still results in

"plac[ing] families on crowded planes and buses from the Rio

Grande Valley," without first testing the individuals and

isolating those who test positive, and transporting them "to

other locations in Texas, or places as far away as Arizona and

San Diego," before expelling them or releasing them into the

United States. Pls.' Reply, ECF No. 118 at 25.

        Citing an increased number of "enforcement encounters" from

April 2020 to January 2021, Defendants further contend that an

injunction in this case could "create a 'pull factor' leading to

additional attempts to enter the United States and in turn more

apprehensions." Defs.' Opp'n, ECF No. 76 at 37 (citing Miller

Decl., ECF No. 76-2 ¶ 16). However, as Plaintiffs point out,

Defendants' only evidence in support of their prediction is "a

16% increase in encounters of unaccompanied children in the

weeks after entry of this Court's injunction in *P.J.E.S.* in

November 2020," which was actually "part of a larger upward

trend that predated the injunction by *many months*—and it was

smaller than the percentage increase for each month from April

to October 2020, when Title 42 was being enforced against

54

111

unaccompanied children." Pls.' Reply, ECF No. 118 at 26 (citing

Menjívar Decl., ECF No. 118-23 ¶ 15). Moreover, though

Defendants contend that there has been a "historic" level of

enforcement encounters at the border, the statistics Defendants

cite "overstate the number of unique individuals arriving at the

border." Reichlin-Melnick Decl., ECF No. 118-18 ¶¶ 15-16. For

example, Plaintiffs have provided evidence that, after the

implementation of the Title 42 Process, the recidivism rate of

individuals crossing the border increased from less than 7% to

40%. *Id.* ¶ 11. In other words, under the Title 42 regime,

individuals seeking an asylum hearing have attempted to cross

the border multiple times, "sometimes 10 times or more, and each

attempt is counted as a new 'encounter.'" Pls.' Reply, ECF No.

118 at 22. Such evidence casts doubt on Defendants' claims that

an injunction in this matter would create a "pull factor." *See

Flores v. Sessions*, No. 85-cv-4544, 2018 WL 4945000, at *2 (C.D.

Cal. July 9, 2018) (finding argument that border crossings would

surge due to court order lacked merit).

Defendants also note that "the pandemic has taken a toll on

the CBP workforce," with many CBP employees contracting COVID-19

and several others dying from the virus. Defs.' Opp'n, ECF No.

76 at 37 (citing Miller Decl., ECF No. 76-2 ¶ 18). Defendants

assert that "[w]ith personnel on sick leave or quarantining, the

ability of CBP to perform its functions is diminished." *Id.*

(citing Miller Decl., ECF No. 76-2 ¶ 14). The loss of life
resulting from COVID-19 contraction is undeniably tragic, and
the Court agrees that "promoting public health—especially during
a pandemic—is in the public interest." *Nat'l Immigration Project
of Nat'l Lawyers Guild v. Exec. Off. of Immigration Review*, 456
F. Supp. 3d 16, 34 (D.D.C. 2020). However, Defendants provide no
evidence that the CBP employees who tested positive for COVID-19
contracted the virus from any of the asylum seekers crossing the
border into the United States. And, significantly, since
Defendants filed its opposition brief in this matter, vaccines
protecting against the risk of serious disease and
hospitalization have become widely available in the United
States. *See* Pls.' Reply, ECF No. 118 at 25. The Court does not
doubt that a preliminary injunction issued in this matter would
force the government "to make difficult decisions about
allocation of resources to mitigate the risks caused by COVID-
19." *P.J.E.S.*, 502 F. Supp. 3d at 549. But in view of the wide
availability of testing, vaccines, and other minimization
measures, the Court is not convinced that the transmission of
COVID-19 during border processing cannot be significantly
mitigated. Indeed, the government has successfully implemented
mitigation measures with regard to processing unaccompanied
minors in order to minimize risk of COVID-19 transmission. *See*
Pls.' Reply, ECF No. 118 at 21-22.

Finally, Defendants argue that "[a]ny time [the government]
is enjoined by a court from effectuating statutes enacted by
representatives of its people, it suffers a form of irreparable
injury." Defs.' Opp'n, ECF No. 76 at 38 (quoting *Maryland v.
King*, 133 S. Ct. 1, 3 (2012)). But, as explained above, the
Title 42 Process is likely unlawful, and "[t]here is generally
no public interest in the perpetuation of an unlawful agency
action." *Newby*, 838 F.3d at 12.

### 4. The Court Will Not Require Plaintiffs to Post a Bond

Federal Rule of Civil Procedure 65(c) provides that "[t]he
court may issue a preliminary injunction . . . only if the
movant gives security in an amount that the court considers
proper to pay the costs and damages sustained by any party found
to have been wrongfully enjoined." Fed. R. Civ. P. 65(c).
"Courts in this Circuit have found the Rule 'vest[s] broad
discretion in the district court to determine the appropriate
amount of an injunction bond,' including the discretion to
require no bond at all." *Simms v. District of Columbia*, 872 F.
Supp. 2d 90, 107 (D.D.C. 2012) (quoting *DSE, Inc. v. United
States*, 169 F.3d 21, 33 (D.C. Cir. 1999)) (internal citation
omitted). Here, Plaintiffs are families allegedly fleeing
persecution in their home country and do not have the ability to
post a bond. Additionally, they are seeking to vindicate

57

important procedures and protections under the immigration laws. Accordingly, the Court will waive the requirement for an injunction bond. *See id.*

## **5. The Court Shall Stay the Preliminary Injunction**

Defendants request that the Court stay its Order enjoining the Title 42 Process for 14 days "to give Defendants sufficient time to explore their appellate options." Defs.' Opp'n, ECF No. 76 at 39. Plaintiffs do not oppose Defendants' request. Pls.' Reply, ECF No. 118 at 30. Accordingly, the Court shall stay its Order for 14 days from the date of its entry. However, the Court declines to stay this decision pending appeal for substantially the same reasons as those articulated in this Opinion.

## **IV.   Conclusion**

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Class Certification, ECF No. 23, and **GRANTS** Plaintiffs' Motion for Preliminary Injunction, ECF No. 57. The preliminary injunction shall be stayed for 14 days. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan
           United States District Judge
           September 16, 2021**

58

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NANCY GIMENA HUISHA-HUISHA, *et al.*, <br><br>          Plaintiffs, <br><br> v. <br><br> ALEJANDRO MAYORKAS, *in his official capacity as Secretary of Homeland Security*, *et al.*, <br><br>          Defendants. | Civ. Action No. 21-100(EGS) |

**MEMORANDUM OPINION**

Plaintiffs—a group of asylum-seeking families who fled to the United States—bring this lawsuit against Alejandro Mayorkas,[1] in his official capacity as Secretary of Homeland Security, and various other federal government officials ("Defendants" or the "government") for violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq.; the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, et seq.; the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), 8 U.S.C. § 1231 note; and the Public Health Service Act of 1944, 42 U.S.C § 201, et seq. Pending before the Court are Plaintiffs' Motion for Class Certification and Motion for Classwide Preliminary

---

[1] Alejandro Mayorkas is substituted pursuant to Federal Rule of Civil Procedure 25(d).

1

Injunction. *See* Pls.' Mot. Class Cert., ECF No. 23-1; Mem. Supp.

Pls.' Mot. Classwide Prelim. Inj. ("Pls.' Mot. Prelim. Inj."),

ECF No. 57-1.[2] Upon careful consideration of the motions, the

responses, and replies thereto, the applicable law, and the

entire record, the Court **GRANTS** Plaintiffs' Motion for Class

Certification and **GRANTS** Plaintiffs' Motion for Classwide

Preliminary Injunction.[3]

## I.    Background

### A. Factual Background

#### 1.    The U.S. Asylum Process

"For almost a century, Congress has recognized that

citizens of foreign states are sometimes forced to flee from

persecution in their home countries, and it has been the policy

of the United States government that this country ought to serve

---

[2]  When citing electronic filings throughout this Memorandum
Opinion, the Court cites to the ECF page number, not the page
number of the filed document.

[3] On August 11, 2021, Defendants filed a motion for oral argument
on Plaintiffs' motion for preliminary injunction. *See* Mot. Oral
Argument, ECF No. 117. Pursuant to Local Civil Rule 65(d), "[o]n
request of the moving party together with a statement of the
facts which make expedition essential, a hearing on an
application for preliminary injunction shall be set by the Court
no later than 21 days after its filing, unless the Court earlier
decides the motion on the papers or makes a finding that a later
hearing date will not prejudice the parties." Here, while
Plaintiffs filed their motion on February 5, 2021, briefing on
the motion was stayed until August 5, 2021. *See* Min. Order (Aug.
5, 2021). Thus, the Court finds that there is no prejudice to
the parties in declining to hold a hearing on Plaintiffs' motion
and shall instead decide the motion on the papers. Defendants'
motion for oral argument is therefore denied.

2

as a place of refuge for persons who are in such distress."
*Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 11-12 (D.D.C. 2020). In
keeping with this policy, Congress has codified various
procedures governing how the United States evaluates and
processes the admission requests of refugees. As relevant here,
there are three primary protections for asylum seekers in place
under current immigration laws.

First, in 1980, Congress passed the Refugee Act, Pub. L.
No. 96-212, 94 Stat. 102, which amended the INA, Pub. L. No. 82-
414, 66 Stat. 163 (1952) (codified as amended in sections of 8
U.S.C.). The Refugee Act created a statutory procedure for
refugees seeking asylum and established the standards for
granting such requests. The INA currently governs this
procedure, and it provides that "[a]ny alien who is physically
present in the United States or who arrives in the United States
(whether or not at a designated port of arrival . . . ),
irrespective of such alien's status, may apply for asylum." 8
U.S.C. § 1158(a)(1). The Attorney General is granted the
discretion to grant asylum. *Id.* § 1158 (b)(1)(A). However, that
relief can only be granted if the alien is a "refugee," as
defined by federal law. *Id.* Pursuant to the INA, a "refugee" is
"any person who is outside any country of such person's
nationality" and who is "unable or unwilling to return to . . .
that country because of persecution or a well-founded fear of

3

118

persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A). "Thus, the 'persecution or well-founded fear of persecution' standard governs the Attorney General's determination [of] whether an alien is eligible for asylum." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 (1987). Furthermore, even when a noncitizen is subject to a rapid expulsion process known as "expedited removal" because they fit within an established category of persons who can be summarily removed without full hearings or other process, such noncitizen can only be so removed if she does not have "an intention to apply for asylum under [8 U.S.C. § 1158] or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i).

Second, at the same time the Refugee Act of 1980 established the asylum process, it amended the statutory scheme governing a related form of relief—"withholding of deportation"—to remove the Attorney General's discretion to decide whether to grant that form of relief. *Cardoza-Fonseca*, 480 U.S. at 428–29. As amended by the 1980 Act, the INA "requires the Attorney General to withhold deportation of an alien who demonstrates that his 'life or freedom would be threatened' on account of one of [a list of factors] if he is deported." *Id.* at 423. A grant of withholding is mandatory if the individual meets the

4

statutory criteria. *INS v. Aguirre–Aguirre*, 526 U.S. 415, 420 (1999).

Third, Article 3 of the Convention Against Torture ("CAT") provides that "[n]o State Party shall expel, return ('refouler') or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Art. 3, Dec. 10, 1984, S. Treaty Doc. No. 100-20, p. 20, 1456 U.N.T.S. 114. Congress has implemented Article 3 of CAT as part of the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"). *Omar v. McHugh*, 646 F.3d 13, 17 (D.C. Cir. 2011). FARRA further declares it "the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture." *Id.* (quoting Pub.L. No. 105–277, § 2242, 112 Stat. 2681–761, 822 (1998) (codified at 8 U.S.C. § 1231 note).

## 2.   COVID-19 Pandemic and the CDC Orders

Since 1893, federal law has provided federal officials with the authority to stem the spread of contagious diseases from foreign countries by prohibiting, "in whole or in part, the introduction of persons and property from such countries." Act

5

of February 15, 1893, ch. 114, § 7, 27 Stat. 449, 452 ("1893

Act"). Under current law:

> Whenever the Surgeon General determines that by reason of the existence of any communicable disease in a foreign country there is serious danger of the introduction of such disease into the United States, and that this danger is so increased by the introduction of persons or property from such country that a suspension of the right to introduce such persons and property is required in the interest of the public health, the Surgeon General, in accordance with regulations approved by the President, shall have the power to prohibit, in whole or in part, the introduction of persons and property from such countries or places as he shall designate in order to avert such danger, and for such period of time as he may deem necessary for such purpose.

42 U.S.C. § 265 ("Section 265"). In 1966, the Surgeon General's

Section 265 authority was transferred to the Department of

Health and Human Services ("HHS"), which in turn delegated this

authority to the Centers for Disease Control and Prevention

("CDC") Director. *See P.J.E.S. v. Wolf*, 502 F. Supp. 3d 492, 503

(D.D.C. 2020); 31 Fed. Reg. 8855 (June 25, 1966), 80 Stat. 1610

(1966).

On March 20, 2020, as the COVID-19 virus spread globally,

HHS issued an interim final rule pursuant to Section 265 that

aimed to "provide[] a procedure for CDC to suspend the

introduction of persons from designated countries or places, if

required, in the interest of public health." Interim Final Rule,

6

Control of Communicable Diseases; Foreign Quarantine: Suspension

of Introduction of Persons Into United States From Designated

Foreign Countries or Places for Public Health Purposes, 85 Fed.

Reg. 16559-01, 2020 WL 1330968, (March 24, 2020) ("Interim Final

Rule"). Pursuant to the Interim Final Rule, the CDC Director

could "suspend the introduction of persons into the United

States." *Id.* at 16563. The Interim Final Rule stated, in

relevant part:

> (1) Introduction into the United States of persons from a foreign country (or one or more political subdivisions or regions thereof) or place means the movement of a person from a foreign country (or one or more political subdivisions or regions thereof) or place, or series of foreign countries or places, into the United States so as to bring the person into contact with persons in the United States, or so as to cause the contamination of property in the United States, in a manner that the Director determines to present a risk of transmission of a communicable disease to persons or property, even if the communicable disease has already been introduced, transmitted, or is spreading within the United States;
>
> (2) Serious danger of the introduction of such communicable disease into the United States means the potential for introduction of vectors of the communicable disease into the United States, even if persons or property in the United States are already infected or contaminated with the communicable disease; and
>
> (3) The term "Place" includes any location specified by the Director, including any

7

carrier, as that term is defined in 42 CFR
71.1, whatever the carrier's nationality.

*Id.* at 16566-67.

The CDC's Interim Rule went into effect immediately. *Id.* at
16565. The CDC explained that, pursuant to 5 U.S.C. 553(b)(3)(B)
of the APA, HHS had concluded that there was "good cause" to
dispense with prior notice and comment. *Id.* Specifically, the
CDC stated that "[g]iven the national emergency caused by COVID-
19, it would be impracticable and contrary to the public health—
and, by extension, the public interest—to delay these
implementing regulations until a full public notice-and-comment
process is completed." *Id.*

Pursuant to the Interim Final Rule, the CDC Director issued
an order suspending for 30 days the introduction of "covered
aliens," which he defined as "persons traveling from Canada or
Mexico (regardless of their country of origin) who would
otherwise be introduced into a congregate setting in a land Port
of Entry [("POE")] or Border Patrol station at or near the
United States borders with Canada and Mexico." Notice of Order
Under Sections 362 and 365 of the Public Health Service Act
Suspending Introduction of Certain Persons From Countries Where
a Communicable Disease Exists, 85 Fed. Reg. 17060-02, 17061,
2020 WL 1445906 (March 26, 2020) ("March 2020 Order"). The March
2020 Order declared that "[i]t is necessary for the public

8

health to immediately suspend the introduction of covered aliens" and "require[d] the movement of all such aliens to the country from which they entered the United States, or their country of origin, or another location as practicable, as rapidly as possible." *Id.* at 17067. The CDC Director then "requested that [the Department of Homeland Security ("DHS")] implement th[e] [March 2020 Order] because CDC does not have the capability, resources, or personnel needed to do so." *Id.* The CDC Director also noted that U.S. Customs and Border Protection ("CBP"), a federal law enforcement agency of DHS, had already "developed an operational plan for implementing the order." *Id.*

Soon thereafter, the CBP issued a memorandum on April 2, 2020 establishing its procedures for implementing the March 2020 Order. See Ex. E to Cheung Decl. ("CAPIO Memo"), ECF No. 57-5 at 15; *see also* Pls.' Mot. Prelim. Inj., ECF No. 57-1 at 14-15. The CAPIO Memo instructed that agents may determine whether individuals are subject to the CDC's order "[b]ased on training, experience, physical observation, technology, questioning and other considerations." CAPIO Memo, ECF No. 57-5 at 15. If an individual was determined to be subject to the order, they were to be "transported to the nearest POE and immediately returned to Mexico or Canada, depending on their point of transit." *Id.* at 17. Those who are "not amenable to immediate expulsion to Mexico or Canada, will be transported to a dedicated facility

9

124

for limited holding prior to expulsion" to their home country.

*Id.* The CAPIO Memo "provide[d] no instructions on medical screenings or other procedures for determining whether a covered noncitizen may have COVID-19." Am. Compl., ECF No. 22 ¶ 60.

On April 22, 2020, the March 2020 Order was extended for an additional 30 days. *See* Extension of Order Under Sections 362 and 365 of the Public Health Service Act; Order Suspending Introduction of Certain Persons From Countries Where a Communicable Disease Exists, 85 Fed. Reg. 22424-01, 2020 WL 1923282 (April 22, 2020) ("April 2020 Order"). The order was then extended again on May 20, 2020 until such time that the CDC Director "determine[s] that the danger of further introduction of COVID-19 into the United States has ceased to be a serious danger to the public health." Amendment and Extension of Order Under Sections 362 and 365 of the Public Health Service Act; Order Suspending Introduction of Certain Persons From Countries Where a Communicable Disease Exists, 85 Fed. Reg. 31503-02, 31504, 2020 WL 2619696 (May 26, 2020) ("May 2020 Order").

On September 11, 2020, the CDC published its final rule. *See* Control of Communicable Diseases; Foreign Quarantine: Suspension of the Right To Introduce and Prohibition of Introduction of Persons Into United States From Designated Foreign Countries or Places for Public Health Purposes, 85 Fed. Reg. 56424-01, 2020 WL 5439721, (Sept. 11, 2020) (Effective

10

October 13, 2020) ("Final Rule"). The Final Rule "defin[ed] the
phrase to '[p]rohibit, in whole or in part, the introduction
into the United States of persons' to mean 'to prevent the
introduction of persons into the United States by suspending any
right to introduce into the United States, physically stopping
or restricting movement into the United States, or physically
expelling from the United States some or all of the persons.'"
*Id.* at 56445. The CDC Director then replaced the March, April,
and May 2020 Orders with a new order on October 13, 2020. Order
Suspending the Right To Introduce Certain Persons From Countries
Where a Quarantinable Communicable Disease Exists, 85 Fed. Reg.
65806, 65808 (Oct. 16, 2020) ("October 2020 Order").

On August 2, 2021, the CDC issued its most recent order,
"Public Health Assessment and Order Suspending the Right to
Introduce Certain Persons from Countries Where a Quarantinable
Communicable Disease Exists," which replaced and superseded the
October 2020 Order. *See* Public Health Assessment and Order
Suspending the Right to Introduce Certain Persons from Countries
Where a Quarantinable Communicable Disease Exists (Aug. 2,
2021), Attach. A to Notice CDC Public Health Order ("August 2021
Order"), ECF No. 114. The August 2021 Order states that "CDC has
determined that an Order under 42 U.S.C. § 265 remains necessary
to protect U.S. citizens, U.S. nationals, lawful permanent
residents, personnel and noncitizens at the ports of entry (POE)

11

and U.S. Border Patrol stations, and destination communities in the United States during the COVID-19 public health emergency." *Id.* at 5. Thus, the August 2021 Order continues to prohibit the introduction of "covered noncitizens"—which is defined to include "family units"—into the United States along the U.S. land and adjacent coastal borders. *Id.* at 7. The Court will refer to the process developed by the CDC and implemented by the August 2021 Order as the "CDC Order" or the "Title 42 Process."

### 3.   CDC Order's Effect on Asylum Seekers

Plaintiffs and the proposed class member are families from countries "that are among the most dangerous in the world due to gang, gender, family membership, and other identity-based violence." Pls.' Mot. Prelim. Inj., ECF No. 57-1 at 31. Plaintiffs are currently detained and in the custody of DHS. Am. Compl., ECF No. 22 ¶¶ 14-19. As such, they are subject to expulsion from the United States pursuant to the CDC Order. Plaintiffs assert that prior to the Title 42 Process, and "pursuant to longstanding immigration statutes protecting asylum seekers, Plaintiffs were entitled to assert claims for asylum and related forms of humanitarian protection, and to procedures Congress established to ensure the fair determination of their right to remain in the United States." *Id.* ¶ 4. Plaintiffs claim that if they and others like them are expelled pursuant to the CDC Order, they "would face grave danger in their home

12

127

countries." *Id.* ¶ 10. According to Plaintiffs, "Defendants subjected approximately 21,500 members of families to the Title 42 Process between March and December 2020." Pls.' Mot. Class Cert., ECF No. 23-1 at 10.

**B. Procedural History**

**1.   Related Litigation**

On November 18, 2020, this Court adopted Magistrate Judge Harvey's Report and Recommendation, provisionally granted the plaintiff's motion to certify class, and issued a preliminary injunction barring enforcement of the Title 42 Process as to unaccompanied minors in *P.J.E.S. v. Wolf*, 502 F. Supp. 3d 492, 520-22 (D.D.C. 2020). The Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") later stayed the preliminary injunction pending appeal. Order, *P.J.E.S. v. Mayorkas*, No. 20-5357 (D.C. Cir. Jan. 29, 2021).

In February 2021, the CDC issued a notice "temporarily except[ing] . . . unaccompanied noncitizen children" from expulsion under the Title 42 Process. CDC, Notice of Temporary Exception from Expulsion of Unaccompanied Noncitizen Children Encountered in the United States Pending Forthcoming Public Health Determination, 86 Fed. Reg. 9942-01, 2021 WL 600683 (Feb. 11, 2021). The notice stated that CDC was "in the process of reassessing" the Title 42 Order and that the temporary exception for unaccompanied minors would "remain in effect until CDC has

13

completed its public health assessment and published any notice or modified Order." *Id.* Magistrate Judge Harvey and the D.C. Circuit granted the parties' motion to hold the case in abeyance on February 24, 2021. *See* Min. Order (Feb. 24, 2021); Order, P.*J.E.S. v. Mayorkas*, No. 20-5357 (D.C. Cir. Mar. 2, 2021).

In July 2021, the CDC issued an order "except[ing] unaccompanied noncitizen children . . . from the [CDC's] October [13, 2020] Order." *See* Order Under Sections 362 & 365 of the Public Health Service Act (42 U.S.C. 265, 268) and 42 CFR 71.40; Public Health Determination Regarding an Exception for Unaccompanied Noncitizen Children From the Order Suspending the right to Introduce Certain Persons From Countries Where a Quarantinable Communicable Disease Exists, 86 Fed. Reg. 38717, 38718 (July 22, 2021). The CDC explained that the July 16 Order "supersede[s]" the notice issued on February 11, 2021. *Id.* at 38720. On August 2, 2021 the CDC issued another order that superseded the October 2020 Order. Public Health Reassessment and Order Suspending the Right To Introduce Certain Persons From Countries Where a Quarantinable Communicable Disease Exists, 86 Fed. Reg. 42828-02 (Aug. 5, 2021). The July 16 Order was "made a part of [the August 2021 Order] and incorporated by reference as if fully set forth" in the August 2021 Order. *Id.* at 42829 n.5.

14

## 2. Proceedings in this Case

Plaintiffs filed this action on January 12, 2021. *See* Compl., ECF No. 1. The same day, Plaintiffs filed an emergency motion to stay their removal from the United States, and Defendants orally objected to Plaintiffs' request during the hearing on the motion. *See* Pls.' Emergency Mot. Stay Removal, ECF No. 5. The Court entered a Minute Order granting Plaintiffs' emergency motion over objection "[i]n view of the arguments presented by Plaintiffs in their motion, the representations made by the Government, and for the reasons stated on the record at the January 12, 2021 Status Conference." Min. Order (Jan. 12, 2021). The Court also granted thirteen subsequent emergency motions to stay the removal of other families on January 19, 2021; January 27, 2021; January 29, 2021; February 1, 2021; February 4, 2021; February 5, 2021; February 6, 2021; February 9, 2021; February 18, 2021; February 19, 2021; and February 22, 2021. *See* Min. Orders (Jan. 19, 2021; Jan. 27, 2021; Jan. 29, 2021; Feb. 1, 2021; Feb. 4, 2021; Feb. 5, 2021; Feb. 6, 2021; Feb. 9, 2021; Feb. 18, 2021; Feb. 19, 2021; Feb. 22, 2021).

Plaintiffs filed a motion for class certification on January 28, 2021, *see* Mot. Certify Class, ECF No. 23; and they filed a motion for preliminary injunction on February 5, 2021, *see* Mot. Prelim. Inj., ECF No. 57. Defendants filed a combined opposition to both motions on February 17, 2021. *See* Defs.'

15

Opp'n, ECF No. 76. On February 23, 2021, the Court granted the
parties' joint motion to hold in abeyance Plaintiffs' motions
for class certification and classwide preliminary injunction.
Min. Order (Feb. 23, 2021). The motions were held in abeyance
until August 5, 2021, when the Court granted the parties' motion
for a briefing schedule on Plaintiffs' motions. Min. Order (Aug.
5, 2021). On August 6, 2021, Defendants filed a supplemental
declaration in support of their combined opposition. *See*
Shahoulian Decl., ECF No. 116. Plaintiffs filed their combined
reply brief on August 11, 2021. *See* Pls.' Reply, ECF No. 118.
The motions are now ripe for the Court's adjudication.

## II.   **Legal Standard**

"A plaintiff seeking a preliminary injunction must
establish [1] that he is likely to succeed on the merits, [2]
that he is likely to suffer irreparable harm in the absence of
preliminary relief, [3] that the balance of equities tips in his
favor, and [4] that an injunction is in the public interest."
*Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (alteration
in original) (quoting *Sherley v. Sebelius*, 644 F.3d 388, 392
(D.C. Cir. 2011)). Where the federal government is the opposing
party, the balance of equities and public interest factors
merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). A
preliminary injunction is an "extraordinary remedy that may only
be awarded upon a clear showing that the plaintiff is entitled

16

to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. V. Camenisch*, 451 U.S. 390, 395 (1981). In this Circuit, the four factors have typically been evaluated on a "sliding scale," such that if "the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009).

In the wake of the Supreme Court's decision in *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008), "the D.C. Circuit has suggested that a positive showing on all four preliminary injunction factors may be required." *Holmes v. FEC*, 71 F. Supp. 3d 178, 183 n.4 (D.D.C. 2014); *see also Sherley*, 644 F.3d at 393 ("[W]e read *Winter* at least to suggest if not to hold that a likelihood of success is an independent, freestanding requirement for a preliminary injunction.") (citation and quotation marks omitted)). Nonetheless, "the Circuit has had no occasion to decide this question because it has not yet encountered a post-*Winter* case where a preliminary injunction motion survived the less rigorous sliding-scale

17

analysis." *ConverDyn v. Moniz*, 68 F. Supp. 3d 34, 46 n.2 (D.D.C. 2014).

## III. Analysis

### A. Plaintiffs' Motion for Class Certification

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quotation marks omitted). Rule 23(a) establishes four requirements for class certification: (1) that "the class is so numerous that joinder of all members is impracticable"; (2) that "there are questions of law or fact common to the class"; (3) that "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition to satisfying Rule 23(a), a putative class must also meet one of the Rule 23(b) requirements. Here, Plaintiffs seek certification under Rule 23(b)(2), claiming that Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Pls.' Mot. Class Cert., ECF No. 23-1 at 8 (quoting Fed. R. Civ. P. 23(b)(2)).

18

"The party seeking certification bears the burden of persuasion, and must show that the putative class[] meet[s] the requirements of Rule 23 by a preponderance of the evidence." *Garnett v. Zeilinger*, 301 F. Supp. 3d 199, 204 (D.D.C. 2018) (citing *Hoyte v. District of Columbia*, 325 F.R.D. 485, 491 (D.D.C. 2017)). To carry that burden, Plaintiffs must "affirmatively demonstrate . . . compliance with the Rule—that is, [they] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The Court must undertake a "rigorous analysis" to confirm that the requirements of Rule 23 have been satisfied. *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 161 (1982).

Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), Plaintiffs have sought certification of the following class:  "All noncitizens who (1) are or will be in the United States; (2) come to the United States as a family unit composed of at least one child under 18 years old and that child's parent or legal guardian; and (3) are or will be subjected to the Title 42 Process." Pls.' Mot. Class Cert., ECF No. 23-1 at 7. For the reasons discussed below, the Court finds that Plaintiffs meet all of Rule 23(a) and Rule 23(b)(2)'s requirements. As Defendants' sole challenge to Plaintiffs' class certification motion is that the term "Title 42 Process" is not adequately

19

defined, Defs.' Opp'n, ECF No. 76 at 16; the Court shall first address the sufficiency of the class definition before briefly analyzing the remaining Rule 23(a) and Rule 23(b)(2) requirements.

### 1.    Class Definition

"[I]t is far from clear that there exists in this [D]istrict a requirement that a class . . . must demonstrate ascertainability to merit certification." *Ramirez v. USCIS*, 338 F. Supp. 3d 1, 48 (D.D.C. 2018); *see also Hoyte v. District of Columbia*, 325 F.R.D. 485, 489 n.3 (D.D.C. 2017) (noting that "[t]he ascertainability requirement, while adopted by some courts in this district, has been recently disavowed by four federal appellate courts" and explaining that "the D.C. Circuit has not opined on the requirement"). However, the requirement of "definiteness" has been imposed by some courts as an "implied requirement" for class certification, in addition to the express requirements in Rule 23. *See DL v. District of Columbia*, 302 F.R.D. 1, 17 (D.D.C. 2013). This "common-sense requirement," *Pigford v. Glickman*, 182 F.R.D. 341, 346 (D.D.C. 1998); is designed primarily to ensure the proposed class is administratively manageable, *see Hartman v. Duffey*, 19 F.3d 1459, 1471 (D.C. Cir. 1994). "It is not designed to be a particularly stringent test, but plaintiffs must at least be able to establish that 'the general outlines of the membership

20

of the class are determinable at the outset of the litigation.'"

*Pigford*, 182 F.R.D. at 346 (quoting 7A Charles Alan Wright,

Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure

§ 1760 at 118).

"[W]here the plaintiff seeks certification of an injunctive

class pursuant to Rule 23(b)(2), 'actual membership of the class

need not . . . be precisely delimited' because such cases will

not require individualized notice, opt-out rights, or individual

damage assessments, and the defendant will be required to comply

with the relief ordered no matter who is in the class.'" *Brewer*

*v. Lynch*, No. 08-1747, 2015 WL 13604257, at \*6 (D.D.C. Sept. 30,

2015). In those cases, the definiteness requirement is satisfied

as long as plaintiffs can establish the "existence of a class"

and propose a class definition that "accurately articulates 'the

general demarcations' of the class of individuals who are being

harmed by the alleged deficiencies." *See, e.g.*, *Kenneth R. v.*

*Hassan*, 293 F.R.D. 254, 264 (D.N.H. 2013); *see also DL*, 302

F.R.D. at 17 ("Because the rationale for precise

ascertainability is inapposite in the 23(b)(2) context, . . . it

is not required in cases such as this where only injunctive

relief is sought and notice is not required.").

Defendants contend that Plaintiffs have failed to establish

that the proposed class satisfies the requirements of Rule 23(a)

and Rule 23(b)(2) because the phrase "Title 42 Process" is not

21

defined within the class definition. Defs.' Opp'n, ECF No. 76 at

16. They argue that, due to the lack of a definition,

"Plaintiffs have not established that the conduct they seek to

enjoin or declare unlawful will be 'as to all of the class

members or as to none of them.'" *Id.* (quoting Fed. R. Civ. P.

23(b)(2)). While Defendants concede that "it is no secret that

Plaintiffs challenge the 'practice of summary expulsion under

the Title 42 Process' and the alleged lack of access to asylum,"

they argue that the Amended Complaint and Class Certification

Motion include statements that suggest that the "class

definition might include practices that Plaintiffs do not

challenge as unlawful." *Id.* at 17. Specifically, Defendants note

that Plaintiffs refer to the "Title 42 Process" as a "system

established in a set of agency documents—a new regulation,

several orders, and an implementation memo," and that the

Amended Complaint states that, "*[a]mong other things*, the Title

42 Process authorizes the summary expulsion of noncitizens,

including vulnerable families seeking asylum in this country,

without any of the procedural protections guaranteed by

Congress." *Id.* (quoting Am. Compl., ECF No. 22 ¶¶ 1, 3) (cleaned

up).

The Court disagrees. As an initial matter, the Court notes

that a "vague and ambiguous class definition" is not

automatically "fatal[]" to a motion for class certification.

22

137

Defs.' Opp'n, ECF No. 76 at 15-17. The case law is clear that
the mere existence of a problematic class definition does not
automatically mandate denial of class certification. *See Brewer*,
2015 WL 13604257, at *7. Rather, "[w]hen appropriate, district
courts may redefine classes . . . sua sponte prior to
certification." *Borum v. Brentwood Village, LLC*, 324 F.R.D. 1, 8
(D.D.C. 2018); *see also Wagner v. Taylor*, 836 F.2d 578, 589-90
(D.C. Cir. 1987) (stating that district courts may "exercise . .
. broad discretion to redefine and reshape the proposed class to
the point that it qualifies for certification under Rule 23").

Here, however, the proposed class is not so poorly defined
as to require sua sponte redefinition by the Court. First,
Plaintiffs' amended complaint, motions, and reply brief each set
forth a fairly descriptive definition of the Title 42 Process as
referring to the practice of summarily expelling asylum-seeking
families since late March 2020. *See* Pls.' Mot. Class Cert., ECF
No. 23-1 at 7 ("A class action lawsuit is appropriate to
challenge Defendants' unlawful practice of summarily expelling
vulnerable families with minor children under their shadow
deportation system, referred to here as the 'Title 42 Process'
or 'Title 42 Policy.'"); Pls.' Mot. Prelim. Inj., ECF No. 57-1
at 9 ("Defendants moved to summarily deport [Plaintiffs] based
on an unprecedented and unlawful expulsion process, invoking the
public health powers of the Centers for Disease Control and

23

Prevention ('CDC'), specifically 42 U.S.C. § 265 (the 'Title 42 Process').")'; Pls.' Reply, ECF No. 118 at 29 ("Plaintiffs have identified and challenged 'a uniform policy or practice' of 'expulsion,' and sought relief enjoining application of the challenged CDC orders to the class."); Am. Compl., ECF No. 22 ¶ 3 ("Among other things, the Title 42 Process authorizes the summary expulsion of noncitizens, including vulnerable families seeking asylum in this country, without any of the procedural protections guaranteed by Congress—even if the families show no signs of having COVID-19.").

Second, although Plaintiffs do use the phrase "among other things" in one sentence within their Amended Complaint, Defendants' argument is weakened by their own acknowledgment that the focus of this litigation is the "'practice of summary expulsion under the Title 42 Process' and the alleged lack of access to asylum." Defs.' Opp'n, ECF No. 76 at 16.

And third, Defendants' reliance on the Seventh Circuit case *Rahman v. Chertoff*, 530 F.3d 622 (7th Cir. 2008), is misplaced. In *Rahman*, the plaintiffs sought to certify a class of citizens defined as "[a]ll United States citizens who now are and/or in the future will be subjected to detentions upon reentry to the United States as a result of defendants' contested policies, practices and customs." *Id.* at 625. However, the class definition did not specify what "defendants' contested policies,

24

practices and customs" were. *Id.* The Seventh Circuit therefore denied the plaintiffs' motion to certify, explaining that "[a] class of all persons now or in the future subject to unspecified practices may have nothing to do with the named representatives' injuries, or what caused them." *Id.* at 626. The court also noted that the undefined class was "hard to evaluate" and "incompatible" with the "typicality" requirement. *Id.* at 627.

Here, Defendants argue that Plaintiffs' class definition "suffers from similar infirmities." Defs.' Opp'n, ECF No. 76 at 16. But not only is *Rahman* non-binding on this Court, it is also distinguishable on the facts. Significantly, though Plaintiffs refer to the "Title 42 Process" generally as a "system established in a set of agency documents—a new regulation, several orders, and an implementation memo," *id*. at 17; Plaintiffs' Amended Complaint and motions briefing also separately identify and describe each regulation, order, and memo. *See, e.g.*, Am. Compl., ECF No. 22 ¶¶ 41-66. Thus, unlike in *Rahman*, the Court is able to easily evaluate the application of specific policies and procedures on the proposed class members, and any "administrative feasibility requirement" is satisfied because identifying the class members under this definition would not require much, if any, individual factual inquiry. *See Brewer,* 2015 WL 13604257, at *6.

25

## 2.   Rule 23(a) Requirements

### a. Numerosity

Because of the general rule in favor of confining litigation to the named parties only, a class action is appropriate only when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although Plaintiffs need not clear any "specific threshold," as a general benchmark, "courts in this jurisdiction have observed that a class of at least forty members is sufficiently large to meet this requirement." *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007). Plaintiffs may satisfy the requirement by supplying estimates of putative class members, *see Pigford*, 182 F.R.D. at 347–48; "[s]o long as there is a reasonable basis for the estimate provided," *Kifafi v. Hilton Hotels Ret. Plan*, 189 F.R.D. 174, 176 (D.D.C. 1999).

Here, Defendants do not dispute that the proposed class satisfies the numerosity requirement. Plaintiffs have provided evidence that, between March 2020 and December 2020, approximately 21,515 members of family units[4] were subject to the CDC Order and its previous iterations, *see* Kang Decl., ECF No. 23-2 ¶ 4; and that, between April 2020 and December 2020,

---

[4] The CBP defines a "family unit" as "the number of individuals (either a child under 18 years old, parent or legal guardian) apprehended with a family member." *See* Kang Decl., ECF No. 23-2 ¶ 3.

26

"approximately 21,018 members of family units (81%) were expelled under Title 42," *id.* ¶ 6. Accordingly, the Court finds that the numerosity requirement is met. *See O.A. v. Trump*, 404 F. Supp. 3d 109, 155 (D.D.C. 2019) (finding numerosity established by evidence in the administrative record estimating that the class consisted of "thousands of migrants who have crossed and will cross the United States' southern border outside ports of entry").

### b. Commonality

A plaintiff seeking class certification must also establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requires more than the identification of the purported violation of the same provision of law. *See DL v. District of Columbia*, 713 F.3d 120, 127–30 (D.C. Cir. 2013) (vacating an order certifying a class composed of students who were purportedly each denied a free appropriate public education on the ground that plaintiffs had identified only sufferers of a violation of the same provision of law and had not met the commonality requirement). Instead, the claims must depend on "a common contention [that] is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores*, 564

27

U.S. at 350. "Even a single common question will do." *Id.* at 359 (cleaned up).

As the D.C. Circuit has explained, commonality is satisfied where there is "a uniform policy or practice that affects all class members." *DL*, 713 F.3d at 128; *see also O.A.*, 404 F. Supp. 3d at 156 (finding commonality satisfied where "[a]ll members of the proposed class, and all of the proposed class representatives, face the same threat of injury" and where "[a]ll challenge the same Rule on the same grounds, and all seek the same remedy—invalidation of the Rule"). Here, Plaintiffs are challenging the lawfulness of the Title 42 Process, which is a uniform policy that applies to each Plaintiff and all members of the proposed class. Moreover, "[n]ot only do all class members present the same challenge to the policy, but there also is no evident variation among them concerning their ultimate entitlement to relief: if any person in the class has a meritorious claim, they all do." *J.D. v. Azar*, 925 F.3d 1291, 1321 (D.C. Cir. 2019). The Court can, therefore, conclude that "common questions of law and fact" unite the class members' claims. *Damus v. Nielsen*, 313 F. Supp. 3d 317, 332 (D.D.C. 2018) (finding that "the allegation that the five ICE Field Officers are no longer providing the 'individualized determinations' of parole eligibility and procedural protections required by the Parole Directive" satisfied the commonality requirement).

28

## c. Typicality

A class representative satisfies the typicality requirement if the representative's "claims are based on the same legal theory as the claims of the other class members" and her "injuries arise from the same course of conduct that gives rise to the other class members' claims." *Bynum*, 214 F.R.D. at 35. Put another way, a representative's claims are typical of those of the class when "[t]he plaintiffs allege that their injuries derive from a unitary course of conduct by a single system." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997). Here, Plaintiffs and all members of the proposed class face the same injury: the threat of expulsion pursuant to the Title 42 Process. All challenge the same policy on the same grounds, and all seek the same remedy—invalidation of the Title 42 Process. Thus, the typicality requirement is met.

## d. Adequacy

"The adequacy requirement aims to ensure that absent class members will not be bound by the outcome of a suit in which they were not competently and fairly represented." *J.D.*, 925 F.3d at 1312. "Adequacy embraces two components: the class representative (i) 'must not have antagonistic or conflicting interests with the unnamed members of the class' and (ii) 'must appear able to vigorously prosecute the interests of the class

29

144

through qualified counsel.'" *Id.* (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)).

Defendants also do not dispute that Plaintiffs have satisfied the adequacy requirement. First, Defendants have not identified—and the Court is unaware of—any interest Plaintiffs have that is antagonistic to or conflicts with the putative class members. Rather, courts have found that where, as here, the plaintiffs "seek identical relief for all class members, . . . there are no conflicting interests that might derail certification on this prong." *Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 84 (D.D.C. 2015). Second, the Court concludes that Plaintiffs' current counsel are "willing and have the ability vigorously to litigate this case and to protect the interests of absent class members." *O.A.*, 404 F. Supp. 3d at 157.

### 3. Rule 23(b)(2) Requirement

Having determined that Plaintiffs meet the requirements of Rule 23(a), the Court must next determine whether they meet the requirements of Rule 23(b)(2). Rule 23(b)(2) applies if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the

30

injunctive or declaratory remedy warranted—the notion that the
conduct is such that it can be enjoined or declared unlawful
only as to all of the class members or as to none of them." *Wal-
Mart*, 564 U.S. at 360 (internal quotation marks and citations
omitted). Rule 23(b)(2) imposes "two requirements: (1) that
defendant's actions or refusal to act are 'generally applicable
to the class' and (2) that plaintiffs seek final injunctive
relief or corresponding declaratory relief on behalf of the
class." *Bynum*, 214 F.R.D. at 37.

Plaintiffs have satisfied both requirements here. The
relief Plaintiffs seek—among other things, a declaration that
the Title 42 Process is unlawful and an injunction prohibiting
Defendants from applying the Title 42 Process to Plaintiffs and
proposed class members—is "generally applicable to the class"
and is indivisible. *See Damus*, 313 F. Supp. 3d at 334–35
(finding Rule 23(b)(2) satisfied where plaintiffs were not
asking the court "to remedy discrete errors in their parole
determinations," but rather "only . . . address an alleged
systematic harm"); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 182
(D.D.C. 2015) (finding Rule 23(b)(2) satisfied where plaintiffs
sought to enjoin ICE from consideration of particular factor in
making detention determination). Plaintiffs also do not seek
individualized relief, and thus this is not a case where "each
individual class member would be entitled to a *different*

31

injunction or declaratory judgment against the defendant." *Wal-Mart*, 564 U.S. at 360; *see also Ramirez*, 338 F. Supp. 3d at 48 (finding Rule 23(b) satisfied where plaintiffs "d[id] not seek a court order mandating any particular outcome with respect to any particular [individual plaintiff]").

For all these reasons, the Court grants Plaintiffs' motion for class certification.

### B. Plaintiffs' Motion for Preliminary Injunction

#### 1. Plaintiffs Are Likely to Succeed on the Merits

Plaintiffs argue that the CDC Orders instituting the Title 42 Process exceed the authority granted by Congress pursuant to Section 265 because "[n]othing in [Section] 265, or Title 42 more generally, purports to authorize any deportations, much less deportations in violation of" statutory procedures and humanitarian protections, including the right to seek asylum. Pls.' Mot. Prelim. Inj., ECF No. 57-1 at 17-18. The Court agrees and finds that Plaintiffs have shown that they are likely to succeed on the merits of their claim.

*Chevron, USA, Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), provides the framework for reviewing an agency's interpretation of a statute that the agency is charged with administering. *See* 467 U.S. at 837. The first step in this review process is for the court to determine "whether Congress

32

has directly spoken to the precise question at issue." *Id.* at
842. "If the intent of Congress is clear, that is the end of the
matter; for the court, as well as the agency, must give effect
to the unambiguously expressed intent of Congress." *Id.* at 842–
43. In determining whether the statute unambiguously expresses
the intent of Congress, the court should use all the
"traditional tools of statutory construction," including looking
to the text and structure of the statute, as well as its
legislative history, if appropriate. *See id.* at 843 n.9; *see
also Bell Atlantic Tel. Co. v. FCC*, 131 F.3d 1044, 1047 (D.C.
Cir. 1997). If the court concludes that the statute is either
silent or ambiguous with respect to the precise question at
issue, the second step of the court's review process is to
determine whether the interpretation proffered by the agency is
"based on a permissible construction of the statute." *Chevron*,
467 U.S. at 843. The court must defer to agency interpretations
that are not "arbitrary, capricious, or manifestly contrary to
the statute." *Id.* at 844.

     The Court's analysis begins with the statutory text. *See S.
Cal. Edison Co. v. FERC*, 195 F.3d 17, 22-23 (D.C. Cir. 1999).
Here, Section 265 states in full:

> Whenever the Surgeon General determines that
> by reason of the existence of any communicable
> disease in a foreign country there is serious
> danger of the introduction of such disease
> into the United States, and that this danger

33

148

is so increased by the introduction of persons
or property from such country that a
suspension of the right to introduce such
persons and property is required in the
interest of the public health, the Surgeon
General, in accordance with regulations
approved by the President, shall have the
power to prohibit, in whole or in part, the
introduction of persons and property from such
countries or places as he shall designate in
order to avert such danger, and for such
period of time as he may deem necessary for
such purpose.

42 U.S.C. § 265.

As Plaintiffs point out, Section 265 simply contains no
mention of the word "expel"—or any synonyms thereof—within its
text. *See* Pls.' Mot. Prelim. Inj., ECF No. 57-1 at 18. The lack
of express terms within the statute is significant: even "broad
rulemaking power must be exercised within the bounds set by
Congress," *Merck & Co. v. U.S. Dep't of Health & Human Servs*.,
385 F. Supp. 3d 81, 92, 94 (D.D.C. 2019), *aff'd*, 962 F.3d 531
(D.C. Cir. 2020) (stating that "agencies are 'bound, not only by
the ultimate purposes Congress has selected, but by the means it
has deemed appropriate, and prescribed, for the pursuit of those
purposes'"); and the CDC "does not [have the] power to revise
clear statutory terms," *Util. Air Reg. Grp. v. EPA*, 573 U.S.
302, 327 (2014).

Indeed, particularly where the statute in question regards
such a "severe 'penalty'" as deportation, *Padilla v. Kentucky*,
559 U.S. 356, 365 (2010) (quoting *Fong Yue Ting v. United*

34

*States*, 149 U.S. 698, 740 (1893)); the Court is loathe to

recognize an implied power of forced removal from the country,

*see Util. Air Reg. Grp.*, 573 U.S. at 324 ("We expect Congress to

speak clearly if it wishes to assign to an agency decisions of

vast 'economic and political significance.'"). Rather, as this

Court explained in *P.J.E.S. v. Wolf*, 502 F. Supp. 3d 492, 512

(D.D.C. 2020), "when Congress wants to grant the power to expel

individuals out of the United States, it does so plainly."

*P.J.E.S.*, 502 F. Supp. 3d at 512; *see, e.g.*, 8 U.S.C. §

1225(b)(2)(A), (C) (allowing an alien who has arrived on land

from a contiguous country and who is "not clearly and beyond a

doubt entitled to be admitted" to be "return[ed] . . . to that

territory pending a proceeding"); *id.* § 1231(a)(1)(A) ("Except

as otherwise provided in this section, when an alien is ordered

removed, the Attorney General shall remove the alien from the

United States within a period of 90 days . . . ."); 18 U.S.C. §

3186 (authorizing a fugitive from another country found in the

United States to be "take[n] . . . to the territory of such

foreign government" by an agent of that government). Moreover,

"Congress has made clear when public health concerns merit

disallowing a non-citizen to remain in the United States."

*P.J.E.S.*, 502 F. Supp. 3d at 539; *see* 8 U.S.C. § 1182(a)(1)

(providing that "aliens who are inadmissible" are those

determined "to have a communicable disease of public health

35

significance"); *id.* § 1222 (providing for medical detention and examination as part of immigration processing). As the Supreme Court "ha[s] stated time and again[,] . . . courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (citations omitted); *see also FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000) ("The classic judicial task of reconciling many laws enacted over time, and getting them to make sense in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute." (internal quotation marks omitted)). And here, the plain language of Section 265, particularly when read in conjunction with the above statutes governing immigration under Title 8 of the U.S. Code, evinces no intention to grant the Executive the authority to expel or remove persons from the United States.

The Court also finds that the plain text of Section 265 is supported by the statutory context. *See Brown & Williamson Tobacco Corp.*, 529 U.S. at 132-33 (2000) ("It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989))). For example, in Section 271, Congress provided for specific "penalties" for those

36

151

persons who or vessels that violated public health regulations prescribed under the relevant sections, including Section 265. 42 U.S.C. § 271. For individuals, Section 271 states that any violation "shall be punished by a fine of not more than $1,000 or by imprisonment for not more than one year, or both." *Id.* § 271(a). Removal from the United States, however, is not included as a penalty. Moreover, Section 271 refers to the regulations prescribed under Section 265 and others as "*quarantine* laws," further suggesting that the CDC's powers were limited to quarantine and containment. *Id.* § 271 (emphasis added).

Neither does neighboring Section 264 contemplate the removal of persons from the United States. Section 264 authorizes the Secretary to use various public health measures to "prevent the introduction, transmission, or spread of communicable diseases." 42 U.S.C. § 264. Although Defendants rely on Section 264 as evidence of the Secretary's "sweeping authority to protect the country from potentially devastating communicable diseases," Defs.' Opp'n, ECF No. 76 at 23; the provision only mentions regulations that provide for the "apprehension, detention, examination, or conditional release of individuals" if the individual is "coming into a State or possession from a foreign country or possession." 42 U.S.C. § 264(c). Again, the authority to remove is not mentioned. "That is, in a section where one would expect the term to appear—where

37

Congress has delineated the government's power to prevent the spread of contagious disease from individuals coming into the United States from a foreign country—it does not." *P.J.E.S.*, 502 F. Supp. 3d at 537-38.

Furthermore, even beyond Sections 264 and 271, the statute as a whole does not contain "a word about the power of the [CDC] to expel anyone who has come into the country." *Id.* at 513-14 (citing 42 U.S.C., Chap. 6A, Subchap. II, Part G (entitled "Quarantine and Inspection")); 42 U.S.C. § 267 (entitled "Quarantine stations, grounds, and anchorages"); *id.* § 268 (entitled "Quarantine duties of consular and other officers"); *id.* § 270 (entitled "Quarantine regulations governing civil air navigation and civil aircraft"); *id.* § 271 (entitled "Penalties for violation of quarantine laws"); *id.* § 272 (entitled "Administration of oaths by quarantine officers"). Rather, the statutory scheme reflects Congress's focus on the public's health, authorizing the CDC to create regulations that allow for the "apprehension, detention, examination, or conditional release of individuals" entering from foreign countries to stop the spread of communicable diseases from those countries, *id.* § 264; and then in times of serious danger, to halt the "introduction of persons" from designated foreign countries, *id.* § 265.

38

Defendants argue, however, that the findings above

"ignore[] the purely public health purpose of the statute,"
because "[t]he absence of the terms 'expel' or 'removal' has no
special significance in the public health context even if its
absence might be meaningful in the immigration context." Defs.'
Opp'n, ECF No. 76 at 19-20. They further contend that Section
265's phrase "prohibit[ing] . . . the introduction" does not
demonstrate that Congress intended to limit the Executive's
authority at "stopping a person precisely at the Nation's
borders." *Id.* at 18. Instead, "the term 'introduction' refers to
a continuing process and is most naturally read to extend beyond
a person's immediate physical crossing of the border," and "to
'prohibit . . . the introduction' naturally means to intercept
or prevent such a process." *Id.* at 18-19. Thus, in Defendants'
view, "the Section 265 authority includes intercepting and
halting persons who have already crossed the border—but who are
in the process of being introduced—into the United States." *Id.*
at 19.

Defendants arguments are unpersuasive. First, regardless of
whether the words "expel" or "remove" are specific to the
immigration context, Defendants do not explain the lack of
synonyms of either word within the statute. Moreover, "[i]t is a
fundamental principle of statutory interpretation that absent
provision[s] cannot be supplied by the courts." *Rotkiske v.*

39

154

*Klemm*, 140 S. Ct. 355, 360–61 (2019) (internal citations and

quotation marks omitted) (alteration in original). "[W]hen

Congress wants to mandate [certain] procedures[,] it knows

exactly how to do so." *Epic Sys. Corp. v. Lewis*, 138 S. Ct.

1612, 1626 (2018). In view of current immigration laws, which

speak to deportation by using words such as "remove" and

"return," *see* 8 U.S.C. § 1182(d)(3)(A) ("The Attorney General

shall prescribe conditions . . . to . . . *return* . . .

inadmissible aliens . . . ." (emphasis added)); *id.* § 1182(h)(2)

("No waiver shall be granted . . . for a period of not less than

7 years immediately preceding the date of initiation of

proceedings to *remove* the alien from the United States."

(emphasis added)); this Court recognizes, as have other courts

in this District, that "[t]here's a serious question about

whether [Section 265's] power includes the power . . . to remove

or exclude persons who are already present in the United

States," Hr'g Tr., *J.B.B.C. v. Wolf*, No. 20-cv-1509, ECF No. 39

at 50 (June 26, 2020). Put simply, the "fact that Congress did

not use [words such as 'return' or 'remove'] . . . suggests at a

minimum that the power to remove is not granted by [S]ection

265." *Id.*[5]

---

[5] Citing to dicta in *Russello v. United States*, 464 U.S. 16, 25
(1983), the government argues that "language in one statute
usually sheds little light upon the meaning of different
language in another statute." Defs.' Opp'n, ECF No. 76 at 19-20.

Second, even accepting the government's position that the phrase "prohibit . . . the introduction of" means "to intercept or prevent" the "process" of introduction, Defs.' Opp'n, ECF No. 76 at 18-19; this phrase also does not encompass expulsion from the United States, nor do any of the definitions provided by the Government contain the word "expel" or synonyms thereof. Rather, to "prohibit . . . the introduction of" merely means that the process of introduction can be halted. And "[e]xpelling persons, as a matter of ordinary language, is entirely different from interrupting, intercepting, or halting the process of introduction." *P.J.E.S.*, 502 F. Supp. at 512; *see also id.* at 536 (finding that the Merriam-Webster Dictionary definitions of "prohibit," "intercept," and "prevent" each "connote stopping something before it begins, rather than remedying it afterwards"). In other words, "interrupting, intercepting, or halting the process of introduction does [not] inexorably lead to expulsion." *Id.* at 512.

---

However, the Supreme Court routinely points to other statutes as evidence that Congress knows how to legislate in particular ways. *See Rotkiske v. Klemm*, 140 S. Ct. 355, 361 (2019) ("A textual judicial supplementation is particularly inappropriate when, as here, Congress has shown that it knows how to adopt the omitted language or provision. Congress has enacted statutes that expressly include the language [the petitioner] asks us to read in . . . ."); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1626 (2018) (explaining that "when Congress wants to mandate [certain] procedures[,] it knows exactly how to do so," and "Congress has spoken often and clearly" to the issue in other statutes).

41

The Government next contends that, "rather than specifying that the power to prohibit the introduction of persons is limited to the Nation's borders," Congress expressly delegated the power to issue regulations that accomplish Section 265's purpose. Defs.' Opp'n, ECF No. 76 at 20. But the government's argument is beside the point; if Section 265 does not provide the authority to expel persons, then it does not delegate the authority to issue regulations to expel persons. In addition, the Court also notes that the legislative history cited by the government—that Section 265's predecessor statute would have given the President the power to suspend "immigration," *see* Defs.' Opp'n, ECF No. 76 at 22—does not provide support for its position that Section 265 authorizes it to expel persons.

Finally, in view of the above discussion and finding that Section 265 is not ambiguous, the Court need not reach step two of the *Chevron* analysis. However, even if the statute was ambiguous, deference would not be justified. First, "the 'reconciliation' of distinct statutory regimes 'is a matter for the courts,' not agencies," *Epic Sys.*, 138 S. Ct. at 1629 (quoting *Gordon v. N.Y. Stock Exch., Inc.*, 422 U.S. 659, 685-86 (1975)); and here, "[t]he question for this claim is purely legal: does Section 265 authorize expulsions from the United States, or does it not?" *P.J.E.S.*, 502 F. Supp. 3d at 544 n.15. And while the government contends that the interpretation of

42

"introduction" is within the Secretary's expertise, *see* Defs.'
Opp'n, ECF No. 76 at 33-34; the Court disagrees. "The CDC's
'scientific and technical knowledge' . . . has no bearing on
that question of statutory interpretation." *P.J.E.S.*, 502 F.
Supp. 3d at 544 n.15. Moreover, government has not explained how
its scientific and technical expertise would lead it to
interpret "introduction" to encompass "expulsion." *Cf. Kisor v.
Wilkie*, 139 S. Ct. 2400, 2416 (2019) (noting that "[a] court
must make an independent inquiry into whether the character and
context of the agency interpretation entitled it to controlling
weight"); *see also NRDC v. Daley*, 209 F.3d 747, 755-56 (D.C.
Cir. 2000) ("The Service cannot rely on 'reminders that its
scientific determinations are entitled to deference' in the
absence of reasoned analysis 'to cogently explain' why its
additional recommended measures satisfied the Fishery Act's
requirements."). Accordingly, the CDC is not entitled to
deference with respect to its interpretation.[6]

## 2. Plaintiffs Face Irreparable Injury

"The failure to demonstrate irreparable harm is 'grounds
for refusing to issue a preliminary injunction, even if the

---

[6] Because the Court finds that Title 42 does not authorize
expulsion, the Court need not address Plaintiffs' additional
arguments that Section 265 was designed to regulation
transportation or that, even if Section 265 authorized
expulsions, the Title 42 Process would violate the immigration
statutes. *See* Pls.' Mot. Prelim. Inj., ECF No. 57-1 at 21, 27.

43

other three factors . . . merit such relief.'" *Nat'l Mining
Ass'n v. Jackson*, 768 F. Supp. 2d 34, 50 (D.D.C. 2011) (RBW)
(quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d
290, 297 (D.C. Cir. 2006)). "In this Circuit, a litigant seeking
a preliminary injunction must satisfy 'a high standard' for
irreparable injury." *ConverDyn*, 68 F. Supp. 3d at 46 (quoting
*Chaplaincy of Full Gospel Churches*, 454 F.3d at 297). The movant
must demonstrate that it faces an injury that is "both certain
and great; it must be actual and not theoretical," and of a
nature "of such imminence that there is a clear and present need
for equitable relief to prevent irreparable harm." *Wis. Gas Co.
v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (quotation marks and
emphasis omitted).

Plaintiffs contend that they are likely to suffer
irreparable harm if they are expelled without the opportunity to
seek humanitarian relief pursuant to the Title 42 Process. Pls.'
Mot. Prelim. Inj., ECF No. 57-1 at 31. Plaintiffs have presented
as evidence United States Department of State reports and
multiple declarations asserting that the home countries of the
proposed class members "are among the most dangerous in the
world due to gang, gender, family membership, and other
identity-based violence." *Id.* at 32. The declarations submitted
to the Court specify in detail Plaintiffs' fear of violence,
persecution, and other victimization if they are removed, yet

44

they remain subject to the Title 42 Process and face the threat of removal prior to receiving any of the protections the immigration laws provide. *See, e.g.*, Sealed Decl., ECF No. 9; Sealed Decl., ECF No. 17; Sealed Decl., ECF No. 27; Sealed Decl., ECF No. 32; Sealed Decls., ECF Nos. 63-67; Sealed Decl., ECF No. 70; Sealed Decls., ECF Nos. 84; Sealed Decls., ECF No. 88-89. Plaintiffs further assert that many of the families "are expelled to Mexico, where they are often victimized by criminal cartels and gang members and face numerous barriers to finding safe places to shelter." Pls.' Mot. Prelim. Inj., ECF No. 57-1 at 33. Defendants do not dispute the potential harms that Plaintiffs could face if removed from the United States.

The Court finds that Plaintiffs have sufficiently shown they will likely suffer irreparable harm absent a preliminary injunction. Plaintiffs' alleged injuries would likely be "beyond remediation." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297. First, pursuant to the Title 42 Process, Plaintiffs and the proposed class members face the prospect of expulsion without any opportunity to apply for asylum or withholding of removal. And once expelled from the United States and outside the jurisdiction of the Court, a judicial remedy may be unavailable. *See Doe v. Mattis*, 928 F.3d 1, 22 (D.C. Cir. 2019) (finding irreparable harm likely to flow from the transfer of a dual citizen detained in Iraq to an unidentified third country

45

because he would then be in the custody of that third country
"without any continuing oversight by—or recourse to—the United
States"); *P.J.E.S.*, 502 F. Supp. 3d at 545; *Tefel v. Reno*, 972
F. Supp. 608, 619–20 (S.D. Fla. 1997) ("[T]he Court finds . . .
that Plaintiffs and class members would suffer irreparable harm
if they are deported to their native countries after having been
denied an opportunity to have a hearing on their claims for
suspension of deportation."); *Velasquez v. Velasquez*, No. 14-cv-
1688, 2014 WL 7272934, at *5 (E.D. Va. Dec. 15, 2014) (finding
irreparable harm where children could be removed from
jurisdiction because that would "frustrate the effort of th[e]
Court in resolving the [dispute]"). Second, members of the
proposed class also do not seek monetary compensation for their
injuries; instead, they seek injunctive and declaratory relief
invalidating the Title 42 Process. Unlike economic harm, the
harm resulting from expulsion from the United States pursuant to
an unlawful policy likely cannot be remediated after the fact.
*Cf. Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1295
(D.C. Cir. 2009) (explaining that economic losses are typically
not irreparable because compensation can be awarded after a
merits determination).

        In addition, "[i]t is well-established that acts by
[g]overnment agencies in derogation of statutory rights of the
public or certain individual members of the public can

46

constitute irreparable injury." *Kirwa v. U.S. Dep't of Def.*, 285

F. Supp. 3d 21, 42 n.22 (D.D.C. 2017) (quoting *Gates v.*

*Schlesinger*, 366 F. Supp. 797, 800 (D.D.C. 1973)). Here, the

Court has explained that Section 265 likely does not authorize

expulsion, thereby denying the proposed class members' the

opportunity to seek humanitarian benefits pursuant to the

immigration statutes.

Defendants argue, however, that the "inherently

individualized nature" of Plaintiffs' potential harms does not

demonstrate that the harms are "likely" to occur in the absence

of a preliminary injunction. Defs.' Opp'n, ECF No. 76 at 35. But

while the decision whether to eventually grant asylum to

individuals is undoubtedly fact-intensive, as explained above,

Plaintiffs have provided ample unrebutted evidence demonstrating

that they are collectively deprived of certain statutory

procedures to seek protection under the Title 42 Process, and

they face real threats of violence and persecution if they were

to be removed from the United States. *See, e.g.*, Neusner Decl.,

ECF No. 118-4 ¶ 8; Harbury Decl., ECF No. 118-5 ¶¶ 1, 10; Arvey

Decl, ECF No. 118-7 ¶ 16; Pinheiro Decl., ECF No. 118-7 ¶ 37;

Suppl. Levy Decl., ECF No. 118-3 ¶ 16; Rivas Decl., ECF No. 118-

11 ¶ 16. In addition, as Plaintiffs point out, "Defendants offer

no evidence that class members face materially disparate dangers

once expelled." Pls.' Reply, ECF No. 118 at 20. As other courts

47

have noted, "similar showings" of "bona fide clams for
humanitarian relief, including fear of persecution on the basis
of protected characteristics," have been found to be "sufficient
to demonstrate irreparable injury." *P.J.E.S.*, 502 F. Supp. 3d at
544 (citing cases); *see also J.B.B.C. v. Wolf*, No. 20-cv-1509,
2020 WL 6041870, at *2 (D.D.C. June 26, 2020) (stating that
sealed "declaration describing the possible harms that would
result from plaintiff's return to Honduras" was sufficient);
*Devitri v. Cronen*, 289 F. Supp. 3d 287, 296-97 (D. Mass. 2018)
(finding unrebutted evidence showing threat of persecution or
torture if deported established likely irreparable harm, despite
"no individualized evidence concerning the specific threats each
Petitioner faces in Indonesia"); *Grace v. Whitaker*, 344 F. Supp.
3d 96, 146 (D.D.C. 2018), *aff'd in part, rev'd in part on other
grounds sub nom.*, *Grace v. Barr*, 965 F.3d 883 (D.C. Cir. 2020)
("[P]laintiffs credibly alleged at their credible fear
determinations that they feared rape, pervasive domestic
violence, beatings, shootings, and death in their countries of
origin. Based on plaintiffs' declarations attesting to such
harms, they have demonstrated that they have suffered
irreparable injuries."); *Orantes-Hernandez v. Meese*, 685 F.
Supp. 1488, 1504-05 (C.D. Cal. 1988) (finding that plaintiffs
would suffer irreparable harm if they were summarily removed

48

163

without being afforded the opportunity to exercise their right to apply for asylum).

Defendants also contend that "the [g]overnment's implementation of the Order provides a process for determining a covered alien's claim for protection under the Convention Against Torture. Thus, Plaintiffs would not be expelled without some opportunity to seek humanitarian relief." Defs.' Opp'n, ECF No. 76 at 35. However, Defendants do not dispute that Plaintiffs and proposed class members would still be deprived of the protections and procedures provided for under the immigration statutes. *See id.*

Plaintiffs have thus shown a likelihood of suffering irreparable harm.

### 3. The Balance of the Equities and Public Interest Favors an Injunction

The balance-of-equities factor directs the Court to "balance the competing claims of injury and . . . consider the effect on each party of the granting or withholding of the requested relief." *ConverDyn*, 68 F. Supp. 3d at 52 (quoting *Winter*, 555 U.S. at 24). "When the issuance of a preliminary injunction, while preventing harm to one party, causes injury to the other, this factor does not weigh in favor of granting preliminary injunctive relief." *Id.*; *see also Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1326 (D.C. Cir. 1998). By contrast,

49

164

the balance of equities may favor a preliminary injunction that serves only "to preserve the relative positions of the parties until a trial on the merits can be held." *Rufer v. FEC*, 64 F. Supp. 3d 195, 206 (D.D.C. 2014) (quoting *Camenisch*, 451 U.S. at 395). "The purpose of . . . interim relief is not to conclusively determine the rights of the parties, . . . but to balance the equities as the litigation moves forward. In awarding a preliminary injunction a court must also 'conside[r] . . . the overall public interest'. . . ." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (second alteration in original) (citations omitted).

Plaintiffs contend that issuing a preliminary injunction "would not substantially injure the government and would be consistent with public health" because (1) "families who come to the border . . . can be processed quickly by Border Patrol agents and released to sponsors in the interior," where they can quarantine and be subject to local health restrictions; (2) "insofar as Defendants choose to detain families upon their apprehension at the border, Defendants operate family detention facilities where the family can be housed together," as well as tested and quarantined; and (3) "Defendants keep many families in custody for weeks before expulsion," where the families are tested for COVID-19. Pls.' Mot. Prelim. Inj., ECF No. 57-1 at 34-35. Defendants, in opposition, argue that "an injunction will

50

increase the risk of COVID-19 transmission, which for some could have deadly consequences, and undoing the mitigation measures put in place by the Order is not in the public interest." Defs.' Opp'n, ECF No. 76 at 36.

Here, the Court ultimately finds that the balance of the equities and the public interest weigh in favor of an injunction.

First, "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016); *see also Ramirez v. ICE*, 310 F. Supp. 3d 7, 33 (D.D.C. 2018) ("The public interest surely does not cut in favor of permitting an agency to fail to comply with a statutory mandate."); *R.I.L-R*, 80 F. Supp. 3d at 191 ("The Government 'cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns.'"). As explained above, the Court has determined that Plaintiffs are likely to succeed on their claim that the Title 42 Process is unlawful. Accordingly, because "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate," *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977); the Court finds that Plaintiffs likelihood of success "is a strong indicator that a preliminary injunction would serve the public interest," *Newby*,

51

838 F.3d at 12; *see also A.B.-B. v. Morgan*, No. 20-cv-846, 2020 WL 5107548, at *9 (D.D.C. Aug. 31, 2020) ("[T]he Government and public can have little interest in executing removal orders that are based on statutory violations . . . .").

Second, "the public has an interest in 'ensuring that we do not deliver aliens into the hands of their persecutors,' *Leiva-Perez* [*v. Holder*], 640 F.3d [962,] 971 [(9th Cir. 2011)], and 'preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm,' *Nken*, 556 U.S. at 436." *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 678 (9th Cir. 2021). Here, the Title 42 Process deprives Plaintiffs and the proposed class members of an opportunity to seek humanitarian protections under the asylum and withholding of removal statutes. Proceeding to the merits of this litigation without preliminary injunctive relief thus "risks [P]laintiffs being returned to home countries where they face significant risk of physical harm." *A.B.-B.*, 2020 WL 5107548, at *9. Defendants do not question that Plaintiffs face substantial harm if returned to their countries of origin. Accordingly, "[t]hese life-or-death consequences weigh heavily in favor of preliminary injunctive relief." *Id.*; *see also Devitri*, 289 F. Supp. 3d at 297 (D. Mass. 2018) ("The public's interest in providing due process for non-citizens to ensure that they are not removed to a country where they will be

persecuted is an extremely weighty one."); *Chaudhry v. Barr*, No. 19-cv-00682, 2019 WL 2009307, at \*4 (E.D. Cal. May 7, 2019) ("[T]here is . . . 'a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm.'" (quoting *Sied v. Nielsen*, No. 17-cv-06785, 2018 WL 1142202, at \*27 (N.D. Cal. Mar. 2, 2018))).

Defendants argue, however, that "an injunction will increase the risk of COVID-19 transmission, which for some could have deadly consequences, and undoing the mitigation measures put in place by the Order is not in the public interest." Defs.' Opp'n, ECF No. 76 at 36. According to Defendants, (1) "CBP facilities 'are not structured or equipped for quarantine or isolation for COVID-19'"; (2) "[t]he numbers of aliens and the size and capacity of the congregate holding areas are not at all conducive to effective social distancing"; and (3) "CBP is not equipped to provide on-site care to infected persons." *Id.* (quoting March Order at 14; Final Rule, 85 Fed Reg. at 56,433). Due to these constraints, Defendants fear that U.S. Border Patrol's facilities "may rapidly become overcrowded" if the Title 42 Process is rescinded. *Id.* But despite the government's warnings regarding the capacity of its facilities and staff, the fact remains that "86% of families arriving at the southwest border are *already* allowed into the United States and processed

for regular removal proceedings." Pls.' Reply, ECF No. 118 at

22. Moreover, although Defendants have expressed concerns

regarding its inability to provide for quarantine space or

"effective social distancing" if the Title 42 Process were not

in effect, expulsion pursuant to the CDC Orders still results in

"plac[ing] families on crowded planes and buses from the Rio

Grande Valley," without first testing the individuals and

isolating those who test positive, and transporting them "to

other locations in Texas, or places as far away as Arizona and

San Diego," before expelling them or releasing them into the

United States. Pls.' Reply, ECF No. 118 at 25.

        Citing an increased number of "enforcement encounters" from

April 2020 to January 2021, Defendants further contend that an

injunction in this case could "create a 'pull factor' leading to

additional attempts to enter the United States and in turn more

apprehensions." Defs.' Opp'n, ECF No. 76 at 37 (citing Miller

Decl., ECF No. 76-2 ¶ 16). However, as Plaintiffs point out,

Defendants' only evidence in support of their prediction is "a

16% increase in encounters of unaccompanied children in the

weeks after entry of this Court's injunction in *P.J.E.S.* in

November 2020," which was actually "part of a larger upward

trend that predated the injunction by *many months*—and it was

smaller than the percentage increase for each month from April

to October 2020, when Title 42 was being enforced against

54

169

unaccompanied children." Pls.' Reply, ECF No. 118 at 26 (citing

Menjívar Decl., ECF No. 118-23 ¶ 15). Moreover, though

Defendants contend that there has been a "historic" level of

enforcement encounters at the border, the statistics Defendants

cite "overstate the number of unique individuals arriving at the

border." Reichlin-Melnick Decl., ECF No. 118-18 ¶¶ 15-16. For

example, Plaintiffs have provided evidence that, after the

implementation of the Title 42 Process, the recidivism rate of

individuals crossing the border increased from less than 7% to

40%. *Id.* ¶ 11. In other words, under the Title 42 regime,

individuals seeking an asylum hearing have attempted to cross

the border multiple times, "sometimes 10 times or more, and each

attempt is counted as a new 'encounter.'" Pls.' Reply, ECF No.

118 at 22. Such evidence casts doubt on Defendants' claims that

an injunction in this matter would create a "pull factor." *See*

*Flores v. Sessions*, No. 85-cv-4544, 2018 WL 4945000, at *2 (C.D.

Cal. July 9, 2018) (finding argument that border crossings would

surge due to court order lacked merit).

Defendants also note that "the pandemic has taken a toll on

the CBP workforce," with many CBP employees contracting COVID-19

and several others dying from the virus. Defs.' Opp'n, ECF No.

76 at 37 (citing Miller Decl., ECF No. 76-2 ¶ 18). Defendants

assert that "[w]ith personnel on sick leave or quarantining, the

ability of CBP to perform its functions is diminished." *Id.*

(citing Miller Decl., ECF No. 76-2 ¶ 14). The loss of life resulting from COVID-19 contraction is undeniably tragic, and the Court agrees that "promoting public health—especially during a pandemic—is in the public interest." *Nat'l Immigration Project of Nat'l Lawyers Guild v. Exec. Off. of Immigration Review*, 456 F. Supp. 3d 16, 34 (D.D.C. 2020). However, Defendants provide no evidence that the CBP employees who tested positive for COVID-19 contracted the virus from any of the asylum seekers crossing the border into the United States. And, significantly, since Defendants filed its opposition brief in this matter, vaccines protecting against the risk of serious disease and hospitalization have become widely available in the United States. *See* Pls.' Reply, ECF No. 118 at 25. The Court does not doubt that a preliminary injunction issued in this matter would force the government "to make difficult decisions about allocation of resources to mitigate the risks caused by COVID-19." *P.J.E.S.*, 502 F. Supp. 3d at 549. But in view of the wide availability of testing, vaccines, and other minimization measures, the Court is not convinced that the transmission of COVID-19 during border processing cannot be significantly mitigated. Indeed, the government has successfully implemented mitigation measures with regard to processing unaccompanied minors in order to minimize risk of COVID-19 transmission. *See* Pls.' Reply, ECF No. 118 at 21-22.

Finally, Defendants argue that "[a]ny time [the government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." Defs.' Opp'n, ECF No. 76 at 38 (quoting *Maryland v. King*, 133 S. Ct. 1, 3 (2012)). But, as explained above, the Title 42 Process is likely unlawful, and "[t]here is generally no public interest in the perpetuation of an unlawful agency action." *Newby*, 838 F.3d at 12.

## 4. The Court Will Not Require Plaintiffs to Post a Bond

Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). "Courts in this Circuit have found the Rule 'vest[s] broad discretion in the district court to determine the appropriate amount of an injunction bond,' including the discretion to require no bond at all." *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 107 (D.D.C. 2012) (quoting *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999)) (internal citation omitted). Here, Plaintiffs are families allegedly fleeing persecution in their home country and do not have the ability to post a bond. Additionally, they are seeking to vindicate

57

important procedures and protections under the immigration laws.

Accordingly, the Court will waive the requirement for an

injunction bond. *See id.*

## **5. The Court Shall Stay the Preliminary Injunction**

Defendants request that the Court stay its Order enjoining

the Title 42 Process for 14 days "to give Defendants sufficient

time to explore their appellate options." Defs.' Opp'n, ECF No.

76 at 39. Plaintiffs do not oppose Defendants' request. Pls.'

Reply, ECF No. 118 at 30. Accordingly, the Court shall stay its

Order for 14 days from the date of its entry. However, the Court

declines to stay this decision pending appeal for substantially

the same reasons as those articulated in this Opinion.

## **IV.   Conclusion**

For the foregoing reasons, the Court **GRANTS** Plaintiffs'

Motion for Class Certification, ECF No. 23, and **GRANTS**

Plaintiffs' Motion for Preliminary Injunction, ECF No. 57. The

preliminary injunction shall be stayed for 14 days. An

appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**September 16, 2021**

58

173

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NANCY GIMENA HUISHA-HUISHA, *et al.*,<br><br>        Plaintiffs,<br><br>v.<br><br>ALEJANDRO MAYORKAS, *in his official capacity as Secretary of Homeland Security*, *et al.*,<br><br>        Defendants. | Civ. Action No. 21-100(EGS) |

**ORDER**

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Plaintiffs' Motion for Class Certification is **GRANTED**; and it is further

**ORDERED** that the Court certifies a class pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure consisting of all noncitizens who: (1) are or will be in the United States; (2) come to the United States as a family unit composed of at least one child under 18 years old and that child's parent or legal guardian; and (3) are or will be subjected to the Title 42 Process; and it is further

**ORDERED** that Plaintiffs Nancy Gimena Huisha-Huisha and her minor child I.M.C.H.; Valeria Macancela Bermejo and her minor

1

daughter, B.A.M.M.; Josaine Pereira-De Souza and her minor children H.N.D.S.; E.R.P.D.S.; M.E.S.D.S.; H.T.D.S.D.S.; Martha Liliana Taday-Acosta and her minor children D.J.Z.; J.A.Z.; Julien Thomas, Fidette Boute, and their minor children D.J.T.-B.; T.J.T.-B.; and Romilus Valcourt, Bedapheca Alcante, and their minor child, B.V.-A., are appointed as Class Representatives; and it is further

**ORDERED** that ACLU Immigrants' Rights Project is appointed Lead Class Counsel, and the Texas Civil Rights Project, the ACLU of Texas, the ACLU of the District of Columbia, the Refugee and Immigrant Center for Legal Education and Legal Services (RAICES), the Center for Gender & Refugee Studies, and Oxfam America are appointed as Class Counsel; and it is further

**ORDERED** that Defendants' Motion for Oral Argument is **DENIED**; and it is further

**ORDERED** that Plaintiffs' Motion for Preliminary Injunction is **GRANTED**; and it is further

**ORDERED** that, pursuant to this Order, Defendants are **HEREBY ENJOINED** from applying the Title 42 Process, including the CDC's August 2021 Order, to the Class Members; and it is further

**ORDERED** that this Order shall be stayed for 14 days from the date of its entry; and it is further

2

**ORDERED** that any request to stay this Order pending appeal

will be denied for the reasons stated in the accompanying

Memorandum Opinion.

    **SO ORDERED.**

**Signed:   Emmet G. Sullivan**
             **United States District Judge**
             **September 16, 2021**