[ORAL ARGUMENT NOT YET SCHEDULED]

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

NANCY GIMENA HUISHA-HUISHA, on behalf of
herself and others similarly situated,

      Plaintiffs-Appellees,

      v.

ALEJANDRO MAYORKAS, Secretary of Homeland
Security, *et al.*,

      Defendants-Appellants.

No. 21-5200

**REPLY IN SUPPORT OF EMERGENCY MOTION FOR STAY PENDING
APPEAL AND FOR AN ADMINISTRATIVE STAY PENDING
DISPOSITION OF THE STAY MOTION**

BRIAN M. BOYNTON
   *Acting Assistant Attorney General*

CHANNING PHILLIPS
   *Acting United States Attorney*

SHARON SWINGLE
JOSHUA WALDMAN
ASHLEY A. CHEUNG
   *Attorneys, Appellate Staff*
   *Civil Division*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-0236*
   *joshua.waldman@usdoj.gov*

## INTRODUCTION

The district court enjoined a straightforward application of a critical public health measure—the authority granted in Section 265 to prevent the introduction of a communicable disease into the United States.  The challenged CDC Order protects against the risk of transmission of COVID-19 resulting from holding noncitizens in congregate settings pending immigration processing.  The recent emergence of the highly transmissible Delta variant and the historic surge of noncitizens crossing the southwest border have only increased the need for the Order.

Plaintiffs' opposition fails to undermine the government's demonstration that a stay is warranted.  On the merits, the statutory text and context strongly support CDC's conclusion that Section 265 authorizes enforcement of the prohibition of introduction of noncitizens by expelling them if they manage to cross the border before being encountered.  Plaintiffs fall back on alternative merits arguments the district court did not reach to try to defend the court's injunction.  But those arguments disregard Section 265's plain text and, in any case, are not before the Court.  At a minimum, CDC's reasonable interpretation is entitled to *Chevron* deference.  On the balancing of harms, plaintiffs ask this Court to overrule CDC's expert public-health judgment regarding the increased risk of the transmission of COVID-19.  And plaintiffs improperly dismiss this Court's

1

previous stay of a preliminary injunction barring application of the CDC Order to

unaccompanied noncitizen children.  *See P.J.E.S. v. Mayorkas*, D.C. Cir. No. 20-

5357, Document #1882899 (Jan. 29, 2021).  As in *P.J.E.S.*, the injunctive-relief

factors here support a stay pending appeal.[1]

## ARGUMENT

### I.    The Government is Likely to Succeed on the Merits.

**A.**    Congress authorized CDC to prohibit the introduction of persons or

property from foreign countries to avert a "serious danger of the introduction of

such disease *into* the United States" that is "increased by the introduction of

persons * * * from such countries."  42 U.S.C. § 265 (emphasis added).  The word

"into" means "[t]o the inside or interior of," American Heritage Dictionary 934 (3d

ed. 1992), demonstrating that Congress was concerned not only with stopping a

communicable disease, and the persons and property carrying it, before they cross

the border, but also with preventing further introduction of the disease, or the

person or property, into the interior of the country and among its populace.

Notably, Section 265 uses the word "introduction" in two senses:  "the

introduction of persons" who would increase the danger of "the introduction of

---

[1] If this Court denies a stay pending appeal, the government respectfully requests that the Court grant an administrative stay of no fewer than seven days to give the government an opportunity to seek emergency relief from the Supreme Court.

such [communicable] disease into the United States." That dual usage underscores the connection between a person's presence in the United States and the risk of that person serving as a vector for transmitting disease into this country. In holding that Section 265 contains no authority to expel a person who sets foot over the border, the district court mistakenly decoupled the statutory connection between a person's presence and their propensity for transmitting disease.

A statutory provision authorizing the prohibition of persons or property from entering certain protected areas encompasses both the power to prevent entry in the first instance and the power to expel if persons or property improperly enter. Plaintiffs' insistence that that statute could confer that authority only if Congress "*explicitly authorize[d]* physical removal," Opp.9 (emphasis added), or included catch-all language such as take "other appropriate action," Opp.10, ignores that common-sense reading. The fact that Section 265 does not contain the word "expel" or a synonym, Opp.9, is not surprising in a public-health provision most naturally read to include both the power to prevent persons from entering and to expel them if they manage to enter and continue to move into the country.

Statutory context also squarely supports CDC's interpretation. Section 265 seeks "to avert" the "serious danger of the introduction * * * into the United States" of "any communicable disease in a foreign country" if that "danger is so increased by the introduction of persons * * * from such country." The need to

3

prevent the spread of disease is in no way diminished by the fact that a noncitizen

has arrived at a Port of Entry or managed to cross the border unlawfully, and

neither plaintiffs nor the district court offer any plausible reason why the statute

should be read to render CDC powerless in those circumstances.

Plaintiffs note the government can arrest and imprison or fine noncitizens

who cross the border. Opp.12. Although those punishments might deter unlawful

border crossings in the first instance, they do not further the statutory purpose of

averting the spread of disease caused by the continued presence of those who

evidently were not sufficiently deterred. Plaintiffs further suggest that Section 265

provides "*no* authority" to stop noncitizens even *before* they cross the border,

Opp.12 n.6 – a view that not even the district court endorsed, Add.41, and one that

would render Section 265 a virtual nullity.

At a minimum, Section 265 is ambiguous, and CDC's reasonable

interpretation is entitled to *Chevron* deference. Plaintiffs do not dispute that CDC

administers Section 265 and that the challenged Order carries the force of law and

was issued under the authority of a Final Rule promulgated in accordance with the

APA. That is sufficient to warrant *Chevron* deference. *Encino Motorcars v.

Navarro*, 136 S. Ct. 2117, 2125 (2016). Plaintiffs argue instead that CDC is

entitled to no deference because its interpretation of Section 265 would override

another statute it does not administer. Opp.14-15. But that argument is plainly

incorrect with respect to the primary issue presented: whether Section 265 by its own terms permits expulsion to avoid the spread of disease.  Moreover, contrary to plaintiffs' assertion, Opp.15, CDC's interpretation is rooted in its expert public-health determination that "those who have physically crossed a border of the United States and are in the process of moving into the interior * * * present a risk of transmission of a communicable disease," and may spread "communicable disease into the United States."  85 Fed. Reg. at 16,563, 16,567.

**B.**     Plaintiffs also argue that Section 265 regulates only transportation common carriers, Opp.3-8; that CDC's interpretation impermissibly overrides immigration statutes, Opp.13-14; and that its interpretation would raise constitutional concerns if applied to U.S. citizens, Opp.10-11.  Putting aside the anomaly of asserting that the district court did not abuse its discretion based on issues it never reached, *see* Add.43 n.6, plaintiffs' arguments are meritless.

**1.**     Section 265 is not limited to introduction by common carriers.  Unlike neighboring provisions that explicitly regulate "vessels" or "aircraft," 42 U.S.C. §§ 267(b), 269, 270, 271(b), Section 265 refers to "the introduction of persons" without any textual reference to their means of transportation.  "Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another."  *DHS v. MacLean*, 574 U.S. 383, 391 (2015).

When Congress enacted Section 265's predecessor, it expressly rejected an amendment to bar "passenger travel" or "all passenger travel," 24 Cong. Rec. at 470, concluding "that something more would be necessary in order to protect the public interest than the mere restriction upon passenger travel," *id*. Instead, Congress adopted the language prohibiting "introduction of persons." *Id*. at 471.

Contrary to plaintiffs' claim, Opp.8, Congress was not exclusively focused on passenger ships and was well aware that communicable diseases could be spread by persons arriving over land borders. 24 Cong. Rec. at 370 (noting the "terrible ravages [that] cholera was going to bring to this country" could "come from Mexico"); *id*. at 359 (noting immigration "coming through Alaska and Mexico"); *id*. at 364 (noting possibility of "cholera-breeding immigration which will come into this country by land" though Canada); *id*. at 371.

2.       Plaintiffs argue that CDC's interpretation of Section 265 unlawfully conflicts with immigration provisions. Opp.13-14. But the statutes are readily harmonized: immigration laws apply in normally prevailing conditions in the absence of a rare public-health emergency, whereas Section 265 is an emergency public-health provision that applies only in specific, limited circumstances.

Regardless, Congress expressed its clear intent that Section 265 permits the temporary displacement of immigration laws by providing for a "*suspension* of the right to introduce such persons." 42 U.S.C. § 265 (emphasis added). An earlier

6

draft of Section 265's predecessor included express authority for a "suspension" of "immigration," 24 Cong. Rec. at 358, but after numerous legislators objected that "immigration" would not encompass temporary visitors, *see id.* at 361, 363, 374, Congress amended the language to provide for a "suspension of the right to introduce" "persons or property," *id.* at 470-71, to empower the government to "exclude all other passenger travel *as well as immigration.*"  *Id*. at 471 (emphasis added).

3.      Plaintiffs assert that Section 265 cannot include the power to expel because that authority would raise grave constitutional questions if applied to U.S. citizens.  Opp.1, 10-11.  Neither the final rule nor the CDC Order, however, applies to U.S. citizens.  42 C.F.R. § 71.40(f); Add.91.

Moreover, the district court's construction of Section 265 would similarly raise constitutional concerns, as it would permit the government to indefinitely prevent U.S. citizens from reentering the country from abroad.  In other words, the avoidance doctrine does not assist plaintiffs because the interpretation they urge would not, in fact, avoid the constitutional issue they pose.  If CDC were ever to invoke Section 265 to expel U.S. citizens (or indefinitely bar their re-entry), a court could then address whether such an order would be unconstitutional *as applied* to U.S. citizens, *cf. Reno v. Flores*, 507 U.S. 292, 305-06 (1993), or whether

7

constitutional concerns call for an implicit exception for U.S. citizens, *cf. Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020).

## II.     The Remaining Factors Support A Stay.

There can be little doubt that the district court's preliminary injunction increases the risk of the transmission of COVID-19 among noncitizens, U.S. Customs and Border Protection (CBP) personnel, and the public at large.  The injunction would require the government to hold covered family units in congregate settings for hours or days while they undergo immigration processing, in facilities that are not equipped for physical distancing, quarantine, or isolation at the best of times, and that are now substantially over their COVID-restricted capacity.  Add.69 ¶21.

Plaintiffs assert that, because in June 2021 the government was unable to apply Title 42 to approximately 86% of individuals in family units, primarily as a result of foreign government restrictions, Add.86 & n.80, enjoining application of the CDC Order to the remaining family units "would not impose a drastic additional burden."  Opp.17.  But under the CDC Order, the government expelled more than 8,000 individuals in family units per month in May and June 2021, and over 10,000 and 16,000 in July and August 2021, respectively.  Add.67-68 ¶¶ 17-18; https://www.cbp.gov/newsroom/stats/southwest-land-border-encounters (interactive dashboard).  The number of individuals in family units encountered

8

monthly has nearly doubled from May to August 2021 (from 44,000 to 86,000),

*id.*, and is expected to escalate sharply if the preliminary injunction is not stayed,

as the application of Title 42 has been a significant deterrent to the entry of family

units who qualify for processing under the CDC Order, Add.70 ¶ 23; D. Ct. Dkt.

76-2 at 4, 9.[2]  Furthermore, two Border Patrol sectors on the southwest border have

seen a disproportionate share of the encounters, resulting in "extremely

worrisome" statistics, with one section at 783% over COVID-adjusted capacity as

of August 2021.  Add.68-69.[3]  Plaintiffs' observation that noncitizen family

members are a "tiny fraction" of "all the travelers" who cross the border daily,

Opp.19, is a meaningless comparison, as the vast majority of those travelers do not

require lengthy Title 8 processing in congregate settings.

    Plaintiffs also fault the government for not employing testing, vaccines, and

other mitigation protocols.  Opp.18.  Although DHS is moving expeditiously to

implement and expand the use of such measures, as well as to build additional

detention capacity, currently the "extreme population density and the resulting

---

[2] Despite plaintiffs' claim of inflated statistics due to repeat crossings,
Opp.21, their own statistics show only a 16.8% recidivism rate for family units in
the first nine months of fiscal year 2021, Supp.Add.127, which is dwarfed by the
surge in the number of family unit encounters, Add.68-70.

[3] Overcapacity or other factors might necessitate the transfer of noncitizens
to other regions for processing under Title 42, Opp.20, but those risks from
overcapacity and transfer would be substantially exacerbated if the government
must process all noncitizen family members under Title 8.

increased time spent in custody by noncitizens" in CBP facilities pose significant

risk.  Add.84.  In addition, risk-mitigation efforts are constrained by requirements

to hold various population cohorts separately, as well as resource constraints on the

part of partner agencies and organizations that lack the ability to test all family

units who are subject to Title 42.  Add.84-85.  Nor would the fact that certain local

organizations might have available capacity to receive and transport families *after*

they have been processed by CBP, Opp.23, lower the risk of spread of COVID-19

while families are held in overcrowded CBP facilities pending immigration

processing.  And even if the government could vaccinate all willing and eligible

members of family units encountered, that would not eliminate the potential harm

given the period of time before vaccination would be effective (even putting aside

that many children are ineligible for vaccination).

Plaintiffs also question whether positivity rates are increasing, Opp.19, but

their limited evidence shows a steady increase from June 2021 to August 2021,

Supp.Add.106, 131, 133, reflecting the same increased transmission due to the

Delta variant that CDC identified, Add.75, 78.  In any event, CDC's expert public-

health judgment regarding the rising positivity rates is entitled to deference, and

even small numbers of contagious individuals can lead to substantial spread in

crowded CBP facilities.  The injunction inhibits CDC's authority to respond

effectively to changes in the public-health environment and the status of the pandemic.

Plaintiffs also assert that the balancing of harms weighs against a stay because noncitizens who hope to come to the United States but are barred from doing so, or who have been encountered in the United States and expelled under the CDC Order, have been victimized by criminal gangs in those foreign countries. The government deplores the mistreatment of migrants, and has partnered with foreign governments and nongovernmental organizations to develop protections for those particularly vulnerable populations. In part, those protections have included processing exceptions from the CDC Order for particularly vulnerable families, in partnership with nongovernmental organizations, an effort that has resulted in the exception of over 16,000 individuals from the CDC Order. Add.65 ¶11. Although the federal defendants regret that participating nongovernmental organizations have recently ceased assisting individual noncitizens in seeking exceptions from Title 42, the government continues to grant case-by-case exceptions based on the totality of the circumstances, including humanitarian considerations. But as the case comes to this Court, the issue is whether the federal government is disabled from taking quick action to protect the public health in circumstances that pose a risk of spread of COVID-19 not just for

11

covered noncitizens but for CBP personnel and the U.S. public.  With all respect,

the government submits that it is not.

## CONCLUSION

This Court should enter (1) an administrative stay of the district court's

order while this motion is considered and (2) a stay of the order pending appeal.  If

this Court ultimately denies a stay, it should grant an administrative stay of no

fewer than seven days to give the government an opportunity to seek emergency

relief from the Supreme Court.

Respectfully submitted,


BRIAN M. BOYNTON
  *Acting Assistant Attorney General*

SHARON SWINGLE

*/s/ Joshua Waldman*
JOSHUA WALDMAN
ASHLEY A. CHEUNG
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-0236*
  *joshua.waldman@usdoj.gov*


September 2021

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing satisfies the type-volume limitation in Rule 27(d)(2)(A) because it contains 2598 words. This motion also complies with the typeface and type-style requirements of Rule 32(a)(5) and Rule 32(a)(6) because it was prepared using Microsoft Word 2016 in Times New Roman 14-point font, a proportionally spaced typeface.

*/s/ Joshua Waldman*
JOSHUA WALDMAN

**CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2021, I electronically filed the

foregoing with the Clerk of the Court for the United States Court of Appeals for

the District of Columbia Circuit by using the appellate CM/ECF system.

Participants in the case are registered CM/ECF users, and service will be

accomplished by the appellate CM/ECF system.


        */s/ Joshua Waldman*
        JOSHUA WALDMAN