No. 21-5200

# In the United States Court of Appeals for the D.C. Circuit

NANCY GIMENA HUISHA-HUISHA, ET AL,

Plaintiffs-Appellees,

*v.*

ALEJANDRO MAYORKAS, ET AL,

Defendants-Appellants,

*and*

THE STATE OF TEXAS,

Proposed Intervenor-Defendant.

On Appeal from the United States District Court
for the District of Columbia
Case No. 1:21-cv-00100-EGS

## THE STATE OF TEXAS' MOTION TO INTERVENE AS INTERVENOR-DEFENDANT

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

JUDD E. STONE II
Solicitor General

RYAN S. BAASCH
Assistant Solicitor General
ryan.baasch@oag.texas.gov

LEIF A. OLSON
Special Counsel

Counsel for Proposed Intervenor-Defendant the State of Texas

# TABLE OF CONTENTS

TABLES OF AUTHORITIES ...................................................................iii

INTRODUCTION ............................................................................. 1

BACKGROUND ................................................................................. 5

    A.   Legal Background ................................................................ 5

    B.   Texas' Substantial Interest In This Case....................................7

    C.   Procedural History ............................................................10

LEGAL STANDARD ........................................................................11

  I.   The Court Should Grant Intervention As Of Right.....................12

    A.   Texas Has Standing ..........................................................12

    B.   Texas' Motion Is Timely ................................................... 13

    C.   Texas Has Significant Protectable Interests Directly Affected By This Litigation..............................................................................16

    D.   Disposition Of This Action May Impair Or Impede Texas' Ability To Protect Its Interests.................................................................16

    E.   Defendants Do Not Adequately Represent Texas' Interests.....................17

  II.   In The Alternative, The Court Should Permit Permissive Intervention .....19

CONCLUSION ...................................................................................20

CERTIFICATE AS TO PARTIES AND AMICI .......................................... 21

CERTIFICATE OF COMPLIANCE ..........................................................22

CERTIFICATE OF SERVICE.................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Air All. Houston v. EPA*,
    906 F.3d 1049 (D.C. Cir. 2018) .......................................................................... 12

*Alfred L. Snapp & Son v. P.R. ex rel. Barez*,
    458 U.S. 592 (1982) ............................................................................................. 13

*Amalgamated Transit Union Int'l v. Donovan*,
    771 F.2d 1551 (D.C. Cir. 1985)........................................................................... 15

*Crossroads Grassroots Policy Strategies v. FEC*,
    788 F.3d 312 (D.C. Cir. 2015) ...................................................................... 11, 12

*Del. Dep't of Nat. Res. v. EPA*,
    785 F.3d 1 (D.C. Cir. 2015) ................................................................................ 13

*E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*,
    950 F.3d 177 (3d Cir. 2020)..................................................................................2

*Eagle Pharms. v. Azar*,
    952 F.3d 323 (D.C. Cir. 2020)............................................................................ 14

*EEOC v. Nat'l Children's Ctr., Inc.*,
    146 F.3d 1042 (D.C. Cir. 1998) .......................................................................... 19

*Env't. Def. Fund, Inc. v. Costle*,
    79 F.R.D. 235 (D.D.C. 1978) .............................................................................. 17

*Flores v. Sessions*,
    862 F.3d 863 (9th Cir. 2017) .................................................................................2

*Fund for Animals Inc. v. Norton*,
    322 F.3d 728 (D.C. Cir. 2003)............................................................................ 17

*Mass. Sch. of Law v. United States*,
    118 F.3d 776 (D.C. Cir. 1997) ............................................................................ 11

*NRDC v. Costle*,
    561 F.2d 904 (D.C. Cir. 1977) ............................................................................ 17

*Nuesse v. Camp*,
    385 F.2d 694 (D.C. Cir. 1967) ............................................................................ 16

*Roane v. Leonhart,*
    741 F.3d 147 (D.C. Cir. 2014)....................................................14, 15

*Smith v. Marsh,*
    194 F.3d 1045 (9th Cir. 1999) ............................................ 14

*Smoke v. Norton,*
    252 F.3d 468 (D.C. Cir. 2001)............................................ 14

*Smuck v. Hobson,*
    408 F.2d 175 (D.C. Cir. 1969) ........................................... 17

*State of Texas v. Biden,*
    2021 WL 3603341 (N.D. Tex. Aug. 13, 2021)................................. 3, 9

*State of Texas v. Biden et al.,*
    Case No. 4:21-CV-579-P (N.D. Tex. filed April 22, 2021)........................ 3-4, 10

*Texas v. United States,*
    809 F.3d 134 (5th Cir. 2015)............................................ 10, 12

*Trbovich v. United Mine Workers of Am.,*
    404 U.S. 528 (1972) ................................................... 17

*United States v. Am. Tel. & Tel. Co.,*
    642 F.2d 1285 (D.C. Cir. 1980) ......................................... 17

*Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.,*
    395 F. Supp. 3d 1 (D.D.C. 2019) ........................................ 17

*Waterkeeper All., Inc. v. Wheeler,*
    330 F.R.D. 1 (D.D.C. 2018)............................................. 17

*Wyoming v. Oklahoma,*
    502 U.S. 437 (1992)................................................... 12

**Constitutional Provisions, Statutes, and Rules:**

42 U.S.C. § 265.....................................................1, 5, 6, 10, 11, 19

42 C.F.R.:

    § 34.7(a)........................................................... 9

    § 71.40 ............................................................ 6

D.C. Cir. R.:

    28(d)(3)............................................................ 15

    28(d)(5) ........................................................... 15

Fed. R. App. Proc. 15(d) ...................................................................13, 14

Fed. R. Civ. Proc.:

    24.................................................................................................... 11

    24(a) ........................................................................................ 11,17, 20

    24(b) .................................................................................................20

    24(b)(1)(B) ................................................................................ 11, 12

1 Tex. Admin. Code:

    § 355.8201-.8202.............................................................................9

    § 355.8212-.8215 ............................................................................9

    § 366.903 ........................................................................................9

**Other Authorities:**

Foreign Quarantine: Suspension of Introduction of Persons into
    United States from Designated Foreign Countries or Places for
    Public Health Purposes:

    85 Fed. Reg. 16,559 (Mar. 24, 2020) .........................................5

    85 Fed. Reg. 56,424 (Sept. 11, 2020) .........................................6

Agreement Between Department of Homeland Security and the State
    of Texas (Jan. 8, 2021) ................................................................7

7C Charles Alan Wright et al., Federal Practice and Procedure § 1916
    (3d ed. 2007)...........................................................................15, 19

Declaration of Blas Nunez-Neto ¶ 11, *Texas v. Biden*,
    Case No. 2:21-cv-00067-Z (N.D. Tex. Sept. 15, 2021), ECF No. 105................3

Declaration of Lisa Kalakanis ¶ 7, filed with Appendix to Texas' Renewed
    Motion for Preliminary Injunction, *State of Texas v. Biden et al.*,
    Case No: 4:21-cv-00579-P (N.D. Tex. Sept. 8, 2021), ECF No. 69 ...................9

Hidalgo County Judge Richard F. Cortez, *Declaring a Local State of
    Disaster* (Aug. 2, 2021)..........................................................7, 8

Joint Stipulation of Dismissal Without Prejudice at 1, *J.D. v. Azar*,
    No. 17-cv-02122-TSC (D.D.C. Sept. 29, 2020), ECF No. 168 ..........................2

Mayor Bruno J. Lozano, *City of Del Rio Emergency Local Disaster
    Declaration* (Sept. 17, 2021)....................................................8

Mem. from Secretary Alejandro N. Mayorkas at 2, *Guidelines for the Enforcement of Civil Immigration Law* (Sept. 30, 2021) ........................................4

Order Suspending the Right to Introduce Certain Persons from Countries Where a Quarantinable Communicable Disease Exists, 85 Fed. Reg. 65806, 65,806 (Oct. 16, 2020) ................................................. 6, 10

Public Health Reassessment and Order Suspending the Right to Introduce Certain Persons from Countries Where a Quarantinable Communicable Disease Exists, 86 Fed. Reg. 42,828 (Aug. 5, 2021) ........... 6, 7, 9

Settlement Agreement and Release, *Mendez Rojas v. Johnson*, No. 2:16-cv-01024-RSM (W.D. Wash. July 28, 2020), ECF No. 79-1 ...................................................................................................................... 3

Webb County Judge Tano E. Tijerina, *Corrected Declaration of Local State of Disaster and Order* (July 21, 2021) ........................................................8

# INTRODUCTION

The State of Texas moves to intervene to defend the lawfulness of the "Title 42 Process"—a fundamental part of the broader national toolkit that is necessary to secure the border and to protect the health and well-being of U.S., and, particularly, Texas residents during the ongoing COVID-19 pandemic. Under 42 U.S.C. § 265, the Department of Health and Human Services ("HHS") is authorized to promulgate regulations that "prohibit" the "introduction" of persons from a foreign country affected by a communicable disease. Pursuant to that authority, Defendants-Appellants ("Defendants") promulgated a regulation and subsequent orders that limit the likelihood that foreign persons will exacerbate the COVID-19 crisis domestically. Specifically, certain aliens who enter the country from designated nations affected by COVID-19 are subject to immediate expulsion.

Texas has a critical interest in the continued use of the Title 42 Process because the State suffers tremendous and irreparable injury when an uncontrolled influx of aliens with high COVID-19 positivity rates cross the border and enter its communities. There is no dispute here that both things are happening: There is a substantial influx of aliens crossing the border, and they have disproportionately high COVID-19 positivity rates. As a result, and as explained in greater detail *infra* at 7-8, multiple Texas border counties have declared states of disaster, the health of Texas' residents has been—and continues to be—jeopardized, and Texas' fisc is on the hook for substantial increases in healthcare and other expenditures.

On January 12, 2021, Plaintiffs—a group of aliens who have entered the United States illegally—brought suit to enjoin Defendants from applying the Title 42 Process to a class of aliens who come to the United States as a "family unit." Although Texas has significant interests in the resolution of this case, it did not initially seek to intervene while Defendants were adequately defending the Title 42 Process. Evolving circumstances, however, have made it apparent that Texas' interests diverge from Defendants' and that Texas' intervention is necessary for its interests to be adequately represented. That is so because of the combination of two factors:

First, the federal government has a long and controversial history of using litigation settlements to set national policy on important immigration and border security issues. The most notorious example is the so-called *Flores* agreement, a 1997 settlement between the federal government and a class of alien minors which "establish[ed] a 'nationwide policy for the detention, release, and treatment of [alien] minors in the custody of the'" Immigration and Naturalization Service. *Flores v. Sessions*, 862 F.3d 863, 866 (9th Cir. 2017). That agreement dictated national immigration policy for more than 20 years. And courts *nationwide* determined that they were bound by it. *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 191 (3d Cir. 2020). It is highly unlikely that this agreement would have materialized in the form that it did if other interested parties were present in the litigation. And there are multiple other, more recent, examples of this practice. *See, e.g.*, Joint Stipulation of Dismissal Without Prejudice at 1, *J.D. v. Azar*, No. 17-cv-02122-TSC (D.D.C. Sept. 29, 2020), ECF No. 168 (settlement granting unaccompanied immigrant minors in-

2

creased abortion rights); Settlement Agreement and Release, *Mendez Rojas v. Johnson*, No. 2:16-cv-01024-RSM (W.D. Wash. July 28, 2020), ECF No. 79-1 (settlement granting significant benefits to asylum seekers).

Second, multiple specific recent actions have called into question whether Defendants will continue to defend the Title 42 Process, or whether they might take action (*i.e.*, a settlement, failure to pursue an appeal, or otherwise) that would be adverse to Texas. Specifically:

- Texas is litigating multiple immigration and border security disputes against Defendants in the Northern District of Texas, including how an injunction requiring Defendants to re-implement Migrant Protection Protocols for asylum seekers (colloquially known as the Remain in Mexico policy) will be effectuated. *State of Texas v. Biden*, 2021 WL 3603341 (N.D. Tex. Aug. 13, 2021). In a September 15, 2021 Status Report about their progress re-implementing that policy, however, Defendants represented that they were "assessing the interplay" of the Title 42 Process with the Protocols, and that they have "been working with non-governmental partners to identify individuals who meet specified vulnerability criteria that merit . . . exceptions from Title 42." Declaration of Blas Nunez-Neto ¶ 11, *Texas v. Biden*, Case No. 2:21-cv-00067-Z (N.D. Tex. Sept. 15, 2021), ECF No. 105-1. In other words, Defendants appear to be considering how to water down the Title 42 Process.

- Texas is also litigating whether Defendants' steep reduction in the actual use of the Title 42 Process complies with applicable law. *See State of Texas v. Biden*

*et al.*, Case No. 4:21-CV-579-P (N.D. Tex. filed April 22, 2021). On September 21, 2021, Defendants filed a brief in that litigation defending their failure to fully apply the Title 42 Process, asserting that "[e]ven if [they] determine[] that there is a serious danger of the introduction of a communicable disease into the United States, [they are] not *required* to do anything." Consolidated Brief in Support of Defendants' Motion to Dismiss, Biden, *supra*, (Sept. 21, 2021), ECF No. 79 (internal quotation marks omitted). As a purely legal matter, that is a striking assertion. But it is also a telling indicator of where the Defendants' border security and related health priorities might lie.

- On September 31, 2021, the Secretary of the Department of Homeland Security issued a memorandum indicating that federal immigration agents should refrain from apprehending or removing *millions* of illegal, removable aliens residing throughout the country. *See* Mem. from Secretary Alejandro N. Mayorkas at 2, *Guidelines for the Enforcement of Civil Immigration Law* (Sept. 30, 2021) ("The fact an individual is a removable noncitizen . . . should not alone be the basis of an enforcement action against them.").[1]

In light of these actions and other recent developments, Texas no longer believes Defendants can or will adequately represent the State's significant interests in this case. For these reasons, and as set forth in further detail below, Texas satisfies the

---

[1] https://www.ice.gov/doclib/news/guidelines-civilimmigrationlaw.pdf.

requirements for both intervention as of right and permissive intervention, and its motion should be granted.[2]

# BACKGROUND

## A. Legal Background

Under 42 U.S.C. § 265, the Secretary of HHS possesses broad authority to promulgate regulations that "prohibit" "introduction of persons . . . from . . . countries or places" where the entry of persons from those places would increase the risk that a "communicable disease" will be spread to the United States. In March 2020 the Centers for Disease Control and Prevention ("CDC") used this authority to issue an interim final rule providing a procedure for the CDC Director to temporarily suspend the introduction of persons from designated foreign countries into the United States. Control of Communicable Diseases; Foreign Quarantine: Suspension of Introduction of Persons into United States from Designated Foreign Countries or Places for Public Health Purposes, 85 Fed. Reg. 16,559 (Mar. 24, 2020). Among other things, that interim rule clarified that the bar on "introduction" applies not just to those *seeking* to physically enter the United States, but also those who have already "physically crossed a border of the United States and are in the process of moving into the interior." *Id.* at 16,563. In other words, the CDC established that its order did not contain a loophole and that aliens could not circumvent the reach of the prohibition merely by setting foot on U.S. soil before a government agent could prevent their entrance.

---

[2] Counsel for Plaintiffs-Appellees and Defendants-Appellants indicated to undersigned counsel that they oppose Texas' intervention.

On September 11, 2020, the CDC finalized the interim regulation. Control of Communicable Diseases; Foreign Quarantine: Suspension of Introduction of Persons into United States from Designated Foreign Countries or Places for Public Health Purposes, 85 Fed. Reg. 56,424 (Sept. 11, 2020) (codified at 42 C.F.R. § 71.40). The final rule became effective on October 13, 2020. And, on that same day, the CDC issued an order suspending the right to introduce aliens migrating through Mexico or Canada, concluding that their entrance "creates a serious danger of the introduction of COVID-19 into the United States" and that a temporary suspension of their entry is "necessary to protect the public health." *See* Order Suspending the Right to Introduce Certain Persons from Countries Where a Quarantinable Communicable Disease Exists, 85 Fed. Reg. 65806, 65,806 (Oct. 16, 2020) ("October Order"). Collectively, the final rule and the October Order form a process colloquially known as the "Title 42 Process."

Most recently, the CDC's October Order was superseded by an order published in August that re-affirms that "CDC has determined that an Order under 42 U.S.C. 265 remains necessary to protect [the United States] during the COVID-19 public health emergency" and, as relevant here, continues to prohibit the introduction of "non-citizen" "family units" into the United States along the U.S. land and adjacent coastal borders. *See* Public Health Reassessment and Order Suspending the Right to Introduce Certain Persons from Countries Where a Quarantinable Communicable Disease Exists, 86 Fed. Reg. 42,828 (Aug. 5, 2021) ("August Order").

## B.  Texas' Substantial Interest In This Case

Texas has a unique interest in border enforcement and in the outcome of this case. *See, e.g.*, Agreement Between Department of Homeland Security and the State of Texas (Jan. 8, 2021) ("Texas . . . is directly and concretely affected by changes to [administrative] rules and policies that have the effect of easing, relaxing, or limiting immigration enforcement.  Such changes can impact Texas's law enforcement, housing, education, employment, commerce, and healthcare needs and budgets.").[3] As the August Order recognizes, "the increased movement of typically unvaccinated covered noncitizens into the United States" presents an increased risk of outbreaks in border facilities, and those outbreaks in turn "increase the serious danger of further introduction, transmission, and spread of COVID-19 and variants into the country." August Order at 42,834. Texas bears the brunt of harm from these outbreaks, and as a result is severely and irreparably harmed in multiple respects:

*First*, the unmitigated surge of aliens into Texas communities is overwhelming multiple Texas counties' resources. Several local jurisdictions, in fact, have had to declare states of disaster because of this surge. *See* Hidalgo County Judge Richard F. Cortez, *Declaring a Local State of Disaster* at 1 (Aug. 2, 2021) (declaring disaster because "U.S. Customs and Border Protection is releasing an alarmingly substantial number of immigrants into the City of McAllen, Texas, which is within the jurisdictional boundaries of the County of Hidalgo, Texas, including individuals that are

---

[3]    *See*    https://thetexan.news/wp-content/uploads/2021/01/21-0020-FINAL-TEXAS-DHS-SAFE-MOU-1.8.2021.pdf.

positive for COVID-19") ("Hidalgo County Disaster Declaration");[4] Webb County Judge Tano E. Tijerina, *Corrected Declaration of Local State of Disaster and Order* at 1 (July 21, 2021) (declaring disaster because "Webb County has experienced the organized transportation of large numbers of individuals (refugees, immigrants and/or migrants, a significant portion of whom are unvaccinated, untested for the COVID-19 virus and COVID positive)") ("Webb County Disaster Declaration").[5] Hidalgo County, for example, was forced to declare a state of disaster because "local Non-Governmental Organizations, and the City of McAllen are overwhelmed with the unanticipated influx of individuals and can no longer adequately feed, house, provide medical attention or otherwise accommodate the individuals being released into the County." Hidalgo County Disaster Declaration at 1. The situation was similar in Webb County, where "the unanticipated influx of [aliens with high COVID-19 positivity rates] has overwhelmed local resources and services to the extent that they can no longer adequately feed, house, provide medical attention or otherwise accommodate these individuals." Webb County Disaster Declaration at 1; *see also* Mayor Bruno J. Lozano, *City of Del Rio Emergency Local Disaster Declaration* (Sept. 17, 2021).[6]

*Second*, the health of Texans statewide, and particularly in border communities, is jeopardized by the entry of aliens that the Title 42 Process is designed to prohibit.

---

[4]    *See*   https://www.hidalgocounty.us/DocumentCenter/View/47015/08022021-Declaring-A-Local-State-of-Disaster.

[5] https://www.webbcountytx.gov/DisasterDeclarationRIMSJuly202021.pdf.

[6]                          https://www.cityofdelrio.com/home/showpublisheddocu-ment/6590/637674846959119902.

As DHS's declarant in this case explained: the Title 42 Process is necessary "to pre-vent COVID-19 exposure risks to . . . border communities," and, as of August 2021, "[t]he rates at which encountered noncitizens are testing positive for COVID-19 have increased significantly." Defendants'-Appellants' Motion for Emergency Stay, Attachment at Add.66 (Decl. of David Shahoulian) ¶ 13. The CDC's August Order also recognized that "flow of migration directly impacts not only border communi-ties and regions, but also destination communities and the healthcare resources of both." August Order at 42,835. In short, Texas communities and healthcare re-sources statewide are being put at risk by alien entries that the Title 42 Process is designed to prevent.

*Third*, Texas experiences multiple significant financial injuries when aliens enter the State, *particularly* those who may be infected with COVID-19. Most specifically, aliens seeking medical care cost Texas tens of millions of dollars per year. The De-partment of Homeland Security pays for alien medical care only while aliens are in DHS custody, *see* 42 C.F.R. § 34.7(a), and once aliens are released it is Texas—through Emergency Medicaid, *see* 1 Tex. Admin. Code § 366.903, and other pro-grams that reimburse healthcare providers for otherwise-unpaid services, *see id.* §§ 355.8201–.8202, 355.8212–.8215—that covers medical costs. *See State of Texas*, 2021 WL 3603341, at *10 ("Texas is required by federal law to include illegal aliens in its Emergency Medicaid Program."). For Fiscal Year 2019—the last year that a report is available—the Texas Health and Human Services Commission estimated that Texas spent roughly $80 million on emergency Medicaid services for illegal aliens.

*See* Declaration of Lisa Kalakanis ¶ 7, filed with Appendix to Texas' Renewed Motion for Preliminary Injunction, *State of Texas v. Biden et al.*, Case No: 4:21-cv-00579-P (N.D. Tex. Sept. 8, 2021), ECF No. 69. The COVID-19 pandemic, coupled with the surge of aliens this year, is likely to result in a substantially higher number for 2021. Texas also incurs additional, significant costs associated with alien presence in the State in other settings, *i.e.*, with the provision of driver's licenses. *See, e.g.*, *Texas v. United States*, 809 F.3d 134, 155-56 (5th Cir. 2015).

### C. Procedural History

Plaintiffs brought suit on behalf of a putative class of alien family units who are or will be subjected to the Title 42 Process. As relevant to this appeal, Plaintiffs claimed that the CDC has exceeded its Section 265 authority. Plaintiffs, however, did not bring this suit when the CDC adopted its interim final rule in March 2020, nor even its final rule, or October Order. Rather, Plaintiffs filed their lawsuit at the eleventh hour of the previous administration—on January 12, 2021. Instead of fully litigating this suit, Plaintiffs and the new administration rapidly agreed to engage in settlement discussions, and the case was held in abeyance. *See* Feb. 12 and July 19 Minute Orders. In the meantime, and to ensure that its own interests in the Title 42 Process were vindicated, Texas filed suit in the Northern District of Texas challenging Defendants' failure to fully *use* their Title 42 Process authority. *See State of Texas v. Biden et al.*, Case No. 4:21-CV-579-P (N.D. Tex filed Apr. 22, 2021).

The parties in this case eventually "reached an impasse" in their negotiations, *see* Aug. 2 Minute Order, and then proceeded with preliminary injunction briefing.

On September 16, the district court granted provisional class certification and a class-wide preliminary injunction. The crux of the district court's merits analysis was that 42 U.S.C. § 265 does not authorize the government to expel aliens once they have set foot into the United States because—in the district court's view—"[e]xpelling persons" who have set foot in U.S. territory is "entirely different from" the statutory authorization for the government to "prohibit . . . the introduction of" persons. Memorandum Opinion at 41. In other words, although it is clear that the statute permits Defendants to prevent aliens from entering the country, the district court concluded that aliens could end-run that bar if they are enterprising enough to set foot on U.S. soil before they are intercepted.

Defendants filed their appeal on September 17. On September 30 this Court stayed the preliminary injunction and entered an expedited merits briefing schedule.

## LEGAL STANDARD

Appellate courts judge motions to intervene under Federal Rule of Civil Procedure 24. *See Mass. Sch. of Law v. United States*, 118 F.3d 776, 779 (D.C. Cir. 1997) ("Although [FRCP 24] nominally appl[ies] only to procedure in the United States district courts, we apply [it] . . . to interventions solely for purposes of appeal" (quotations omitted)). Under Rule 24(a), applicants are entitled to intervention as of right if they have Article III standing and then satisfy a four-factor test, showing (1) the motion to intervene is timely; (2) the applicant claims a legally protected interest; (3) the action, as a practical matter, impairs or impedes that interest; and (4) the applicant's interest cannot adequately be represented by another party in the action. *See Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 316, 320 (D.C. Cir.

11

2015). Alternatively, permissive intervention is proper under Rule 24(b)(1)(B) "[o]n timely motion" to "anyone . . . [with] a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

## ARGUMENT

## I. The Court Should Grant Intervention As Of Right

### A. Texas Has Standing

Texas has standing, for multiple reasons.

A prospective intervenor-defendant has standing if it would experience injury in the event the plaintiff's suit succeeds. *See Crossroads*, 788 F.3d at 316-17. Texas is already experiencing multiple injuries because of Defendants' inadequate enforcement at the border as outlined *supra* at 7-10, and those injuries would logically escalate if the Plaintiffs succeed here and enjoin use of the Title 42 Process against family units. In that event, Texas would suffer direct economic injury through increased expenditures on medical care for aliens infected with COVID-19, through the provision of driver's licenses to aliens, and because of a range of other potential expenditures. *See supra* at 7-10; *Wyoming v. Oklahoma*, 502 U.S. 437, 448-49 (1992) (direct effect on state's fisc establishes Article III injury); *Air All. Houston v. EPA*, 906 F.3d 1049, 1059-60 (D.C. Cir. 2018) ("Monetary expenditures to mitigate and recover from harms that could have been prevented [under a particular regulatory approach] are precisely the kind of 'pocketbook' injury that is incurred by the state itself" and that establishes standing); *see also Texas*, 809 F.3d at 155-56.

In addition, Texas would suffer a direct injury in this suit if Plaintiffs succeed because that would invariably result in increased COVID-19 infection, as Defendants themselves have recognized. *See supra* at 6 (Defendants' recognition that Title 42 Process is necessary to prevent greater COVID-19 infection). This Court has concluded that states suffer concrete and imminent injury from regulatory action that allows greater pollutant emissions because they adversely impact air quality. See *Del. Dep't of Nat. Res. v. EPA*, 785 F.3d 1, 10 (D.C. Cir. 2015). Likewise here, Texas would suffer injury if COVID-19 positive aliens in the state increase because that would plainly adversely impact Texans' health. *See also supra* at 8-9 (states of disaster declared in certain Texas counties).

For similar reasons, Texas additionally has *parens patriae* standing to protect the "health and well-being . . . of its residents." *Alfred L. Snapp & Son v. P.R. ex rel. Barez*, 458 U.S. 592, 607 (1982). If Plaintiffs' suit succeeds and Defendants can no longer use the Title 42 Process to expel alien family units—a substantial portion of whom have been infected with COVID-19—it will result in greater harm to the health and well-being of Texas residents through their own increased exposure to COVID-19.

## B.  Texas' Motion Is Timely

Texas' motion is timely because it is being filed shortly after this appeal was initiated and shortly after circumstances made it apparent that there is a substantial likelihood that Defendants will not adequately represent Texas' interests.

Under Federal Rule of Appellate Procedure 15(d), intervention is timely if it is within 30 days of case opening in the court of appeals. And here Texas has moved to

intervene within 24 days of the notice of appeal. While Rule 15(d) technically governs only petitions for review of administrative action, that is a distinction with no material difference here where this appeal concerns an administrative law question and turns on legal questions about the statute and administrative orders that this Court will review with "no particular deference to the District Court's view." *Eagle Pharms. v. Azar*, 952 F.3d 323, 330 (D.C. Cir. 2020). In this context, Texas' absence in the district court proceedings is immaterial, and its motion to intervene within 30 days of the filing of appeal should be treated as presumptively timely, just as if it were made under Rule 15(d).

Texas' motion is also timely even taking into account when this case was filed in *district* court. "[T]imeliness is to be judged in consideration of all the circumstances," *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001), and "measuring the length of time passed is not in itself the determinative test," *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014). Instead, and regardless of the time that has elapsed since case initiation, a motion to intervene is timely if filed when "the potential inadequacy of representation came into existence." *Smoke*, 252 F.3d at 471; *see also Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999). And here the potential for Defendants' representation to be inadequate has recently come to the fore in light of the Defendants' representations in Texas' other litigations, *see supra* at 3-4, and because of Defendant Mayorkas's recent promulgation of final guidance flatly stating that the Department of Homeland Security has no intention of removing millions of

noncitizens from this country. *See* Mayorkas Mem., *supra*, at 2 ("The fact an individual is a removable noncitizen . . . should not alone be the basis of an enforcement action against them.").

In addition, this motion is timely by any standard because, if granted, it could not plausibly prejudice the parties. Timeliness is not a requirement for its own sake, *see* 7C Charles Alan Wright et al., Federal Practice and Procedure § 1916, at 532 (3d ed. 2007) ("The timeliness requirement is not intended as a punishment for the dilatory . . . .")—instead, it is designed to "prevent[] potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties." *Roane*, 741 F.3d at 151. There will be no disruption here. Texas is prepared to be bound both by this Court's September 30, 2021 scheduling order and the local rules for the filing of briefs. That would mean Texas' opening brief in support of appellants would be due October 28—the same day that amicus briefs supporting appellants are already due. *See* D.C. Cir. R. 28(d)(3) (intervenor briefs filed "in accordance with the time limitations" for amici). And Texas' reply would be due "at the time the appellant[s'] . . . reply is due," D.C. Cir. R. 28(d)(5)—on November 29. Texas does not at this time intend to make any other substantive filings before oral argument, and its willingness to be bound by the existing scheduling order eliminates the possibility of prejudice to the parties.[7]

---

[7] Texas recognizes that intervention on appeal is rare. *See Amalgamated Transit Union Int'l v. Donovan*, 771 F.2d 1551 (D.C. Cir. 1985) (emphasis added). But the main intervention-on-appeal precedent in this Circuit denied intervention where it was sought after the Court "*ha[d] decided [the] case.*" *Id.* at 1553. On the other hand, the Court indicated that the party "could have moved to intervene when [appellant] appealed," *id.* at 1554, which is exactly what Texas has done here. In any event, the

## C.  Texas Has Significant Protectable Interests Directly Affected By This Litigation

As demonstrated *supra* at 7-10, Texas has significant protectable interests directly affected by Plaintiffs' challenge to the Title 42 Process. Multiple of its counties have declared states of disaster because of the influx of aliens with COVID-19. The health of its residents is, by the Defendants' own admission, compromised by the surge of aliens with COVID-19. And Texas endures multiple harms to the state fisc by trying to address this situation. In addition, this intervention factor is primarily designed to facilitate the "disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967) (state banking commissioner could intervene as of right in action by bank seeking to enjoin federal Comptroller of the Currency from allowing national bank to open a branch in the vicinity of state bank). Texas' presence in this appeal will advance that goal.

## D.  Disposition Of This Action May Impair Or Impede Texas' Ability To Protect Its Interests

This action may also impair or impede Texas' ability to protect its interests because if Plaintiffs succeed it will automatically harm Texas' interest in protecting the health and well being of its citizens and the public fisc. *See supra* at 7-10. Plaintiffs are seeking to enjoin application of the Title 42 Process to alien family units. This would result in a greater number of alien family units with COVID-19 being released into

---

circumstances of this case satisfy any standard for intervention. *See supra* at 3-4 (explaining the multitude of very recent actions Defendants have taken suggesting they will not adequately represent Texas' interests).

the State of Texas, to the State's obvious detriment. And when a movant benefits from a regulatory scheme, invalidation of that scheme would necessarily impair the movant's interests. *See, e.g.*, *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 395 F. Supp. 3d 1, 20 (D.D.C. 2019); *Waterkeeper All., Inc. v. Wheeler*, 330 F.R.D. 1, 8 (D.D.C. 2018); *Env't. Def. Fund, Inc. v. Costle*, 79 F.R.D. 235, 242 (D.D.C. 1978). That easily meets and exceeds the low "practical consequences" showing that Texas must make to show that this action may impair its ability to protect its interests. *See NRDC v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977). In addition, Texas cannot be denied intervention on the basis that it could challenge any *new* regulatory framework that Defendants might promulgate if Plaintiffs successfully enjoin action under the Title 42 Process. *See id.* at 909 (rejecting such an argument).

### E. Defendants Do Not Adequately Represent Texas' Interests

Finally, Defendants do not adequately represent Texas' interests in this case.

Rule 24(a)'s inadequate representation requirement is "not onerous." *Fund for Animals Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003). "[T]he burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). Movants "ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee." *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980); *Smuck v. Hobson*, 408 F.2d 175, 181 (D.C. Cir. 1969) (burden on parties opposing intervention to demonstrate existing representation is adequate).

It is well-established that federal "governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals*, 322 F.3d at 736-37 &

n.9 (collecting cases). That is particularly true in immigration matters, where the federal government has repeatedly used settlements to set national policy on terms that intervenors with different interests likely would not have consented to. *See supra* at 2-3.

As noted, the likelihood that Defendants may settle litigation over the Title 42 Process on terms that may likewise be disadvantageous to Texas (or take other action that would injure Texas) has increased significantly in recent weeks. Defendants recently represented to a federal court that they are working with NGOs to establish exemptions to the Title 42 Process and that they are not required to *do anything* about COVID-19 alien entries. *See supra* at 3-4. And less than two weeks ago Defendant Mayorkas promulgated guidance directing his subordinates not to remove millions of aliens illegally present in Texas and the broader United States. There is a palpable prospect that Defendants might resolve this litigation in a way that would harm Texas—whether through a settlement, failure to pursue further appeal, or otherwise.

The Defendants also do not adequately represent any of the specific State interests that Texas seeks to protect in this action. The Defendants do not adequately represent Texas' state fisc. *See supra* at 9-10 (explaining harm to state fisc if Plaintiffs succeed). Nor do Defendants adequately represent the Texas border communities that are experiencing crisis because of the influx of aliens infected with COVID-19. And Defendants do not adequately represent the health and well-being of Texas residents more broadly.

## II. In The Alternative, The Court Should Permit Permissive Intervention

In the alternative, and for substantially similar reasons as laid out above, Texas satisfies the prerequisites for permissive intervention. An applicant for permissive intervention should present the Court with "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).

First, Texas has an independent ground for subject matter jurisdiction because this action presents a federal question. *See* Wright, *et al.*, *supra*, § 1917 ("[T]he need for independent jurisdictional grounds is almost entirely a problem of diversity litigation. In federal-question cases there should be no problem of jurisdiction with regard to an intervening defendant.").

Second, Texas' motion is also timely, as explained *supra* at 14-16.

Third, Texas' position that 42 U.S.C. § 265 authorizes Defendants to expel alien family units has perfect overlap with the issues presented in this appeal and so easily satisfies the requirement to show a "common question of law or fact" with the main action. *See Nat'l Children's Ctr.*, 146 F.3d at 1047 (noting courts "afford[] this requirement considerable breadth").

# CONCLUSION

For the foregoing reasons, the State of Texas respectfully requests that the Court grant its motion to intervene as of right under Rule 24(a) or, in the alternative, for permissive intervention under Rule 24(b).

If granted, Texas will, in accordance with this Court's September 30 briefing schedule and the local rules, file its opening brief in support of appellants on October 28 and its reply brief on November 29.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JUDD E. STONE II
Solicitor General

BRENT WEBSTER
First Assistant Attorney General

/s/ Ryan S. Baasch
RYAN S. BAASCH
Assistant Solicitor General
ryan.baasch@oag.texas.gov

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1896
Fax: (512) 370-9191

LEIF A. OLSON*
Special Counsel

Counsel for Proposed Intervenor-
Defendant the State of Texas

* Application for admission
forthcoming

## CERTIFICATE AS TO PARTIES AND AMICI\*

In accordance with D.C. Circuit Rules 27(a)(4) and 28(a)(1)(A), Proposed Intervenor-Defendant the State of Texas certifies as follows:

Except for Proposed Intervenor-Defendant the State of Texas, all parties, intervenors, and amici appearing before the district court and in this court are listed in the Defendants-Appellants Motion for Stay Pending Appeal and for an Administrative Stay Pending Disposition of the Stay Motion.

/s/ Ryan S. Baasch
Ryan S. Baasch

---

\* As a governmental party, Texas is not subject to the requirements of Federal Rule of Appellate Procedure 26.1.

## CERTIFICATE OF COMPLIANCE

The foregoing motion complies with Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it is written in 14-point Equity typeface. It complies with Federal Rules of Appellate Procedure 27(d)(2)(A) and 32(f) and (g) because it contains 4,899 words, excluding exempted portions, according to Microsoft Word.

/s/ Ryan S. Baasch
RYAN S. BAASCH

## CERTIFICATE OF SERVICE

On October 11, 2021, the foregoing motion and certificate as to parties and amici were served via CM/ECF on all registered counsel.

/s/ Ryan S. Baasch
RYAN S. BAASCH