ORAL ARGUMENT NOT YET SCHEDULED
_____

**No. 21-5200**
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

NANCY GIMENA HUISHA-HUISHA, on behalf of
herself and others similarly situated, et al.,

*Plaintiffs-Appellees*,

v.

ALEJANDRO MAYORKAS, et al.,

*Defendants-Appellants*.
_____

On Appeal from the United States District Court
for the District of Columbia
No. 1:21-cv-100
Hon. Emmet G. Sullivan
_____

**PLAINTIFFS-APPELLEES' OPPOSITION TO THE STATE OF TEXAS'
MOTION TO INTERVENE AS INTERVENOR-DEFENDANT**
_____

Stephen B. Kang
Cody Wofsy
Morgan Russell
My Khanh Ngo
American Civil Liberties Union
Foundation, Immigrants' Rights
Project
39 Drumm Street
San Francisco, CA 94111
(415) 343-0774

Lee Gelernt
Omar Jadwat
Daniel A. Galindo
Ming Cheung
David Chen
American Civil Liberties Union
Foundation, Immigrants' Rights
Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2600
lgelernt@aclu.org

*Attorneys for Plaintiffs-Appellees*          (*Additional Counsel on Next Page*)

Andre Segura
Kathryn Huddleston
Brantley Shaw Drake
American Civil Liberties Union
Foundation of Texas, Inc.
5225 Katy Freeway, Suite 350
Houston, Texas 77007
(713) 942-8146

Karla M. Vargas
Texas Civil Rights Project
1017 W. Hackberry Ave.
Alamo, Texas 78516
(956) 787-8171

Jamie Crook
Blaine Bookey
Karen Musalo
Neela Chakravartula
Center for Gender &
Refugee Studies
200 McAllister Street
San Francisco, CA 94102
(415) 565-4877

Robert Silverman
Irit Tamir
Oxfam America
226 Causeway Street, Suite 500
Boston, MA 02115
(617) 482-1211

Scott Michelman
Arthur B. Spitzer
American Civil Liberties Union
Foundation of the District of
Columbia
915 15th Street, NW, 2nd floor
Washington, D.C. 20005
(202) 457-0800

Tamara F. Goodlette
Refugee and Immigrant Center for
Legal Education and Legal
Services (RAICES)
802 Kentucky Avenue
San Antonio, TX 78201
(210) 960-3206

## INTRODUCTION

The Court should reject the State of Texas' extraordinary request to intervene in this appeal where it declined to move to intervene before the District Court despite ample opportunity. Texas' motion comes nine months after Plaintiffs filed suit below; nearly six months after Texas filed its own separate suit concerning the Title 42 Process against the Government in the Northern District of Texas; and more than two months after the parties in this case reached an impasse in their negotiations and resumed their district court litigation on Plaintiffs' motion for a preliminary injunction.

Texas asserts that its untimely intervention is needed based on speculation that Defendants might at some point in the future decide to settle this suit in a manner that would displease it. Motion ("Mot.") 2-4, 18. Despite this purported concern, Texas chose not to follow the normal course of moving to intervene in the District Court, even during the more than five months the parties were actually and publicly engaged in settlement discussions—including for three months after Texas had filed its own separate Title 42 litigation against Defendants.

Since that time, the parties have resumed active litigation and Defendants have vigorously defended their claimed authority to summarily expel asylum-seeking families under 42 U.S.C. § 265, most notably by successfully seeking an emergency stay of the District Court's preliminary injunction pending this appeal.

1

Moreover, in claiming that it seeks to intervene to protect the wellbeing of its communities and healthcare resources, Texas parrots and even explicitly quotes Defendants' own statements purporting to vindicate those same concerns. Mot. 1, 7, 9. Texas' stated legal position—"that 42 U.S.C. § 265 authorizes Defendants to expel alien family units"—aligns entirely with the position advanced by Defendants. Mot. 19. In short, Texas has nothing to add to this case.

Even had Texas followed the proper course and sought to intervene in the District Court, its motion would have been untimely and otherwise baseless under Federal Rule of Civil Procedure 24. By declining to do so, and instead taking the extraordinary step of moving to intervene on appeal in the first instance, Texas has forgone any claim of intervention as of right. Under this Court's longstanding precedent, Texas can now prevail only if it demonstrates "exceptional circumstances supported by imperative reasons to justify [its] motion for leave to intervene." *Amalgamated Transit Union Int'l, AFL-CIO v. Donovan*, 771 F.2d 1551, 1553 (D.C. Cir. 1985). Texas falls far short of satisfying that demanding standard.

## ARGUMENT

**I.    Texas Fails To Demonstrate Exceptional Circumstances Supported By Imperative Reasons Warranting Its Intervention On Appeal After Its Failure To Seek Intervention Below.**

There is no intervention as of right when intervention is first sought on appeal.  "No provision in the Federal Rules of Appellate Procedure provides for intervention on appeal, except in proceedings to review agency action" by a petition for review under Federal Rule of Appellate Procedure 15, which does not apply here.  *Amalgamated Transit Union*, 771 F.2d at 1553 n.3.  "Federal Rule[] of Civil Procedure Rule 24 . . . only applies to intervention at the district court level." *Id.*  Accordingly, "courts of appeals have developed their own standards of intervention in order to take account of the unique problems caused by intervention at the appellate stage."  *Id.*

This Court, following other Circuits, "allow[s] intervention at the appellate stage where none was sought in the district court 'only in an exceptional case for imperative reasons.'"  *Id.* at 1552 (quoting *Landreth Timber Co. v. Landreth*, 731 F.2d 1348, 1353 (9th Cir. 1984), *rev'd on other grounds*, 471 U.S. 681 (1985)); *accord, e.g.*, *Richardson v. Flores*, 979 F.3d 1102, 1104 (5th Cir. 2020); *Craig v. Simon*, 980 F.3d 614, 618 n.3 (8th Cir. 2020); *Pub. Serv. Co. of New Mexico v. Barboan*, 857 F.3d 1101, 1113 (10th Cir. 2017); *Pitts v. Thornburgh*, No. 88-5058,

2003 WL 21384601, at *1 (D.C. Cir. May 28, 2003) (per curiam) (unpublished);

*Hall v. Holder*, 117 F.3d 1222, 1231 (11th Cir. 1997).

Texas fails to acknowledge, let alone satisfy, this exceedingly high standard.

Texas instead recognizes only that "intervention on appeal is rare."  Mot. 15 n.7

(citing *Amalgamated Transit Union,* 771 F.2d 1551).  But such intervention is rare

precisely because it is "reserved for truly exceptional cases."  *Richardson*, 979

F.3d at 1104.[1]  Indeed, Texas has not identified any case in which this Court has

granted intervention on appeal under the demanding "exceptional circumstances"

standard.

This Court has previously noted three considerations relevant to assessing

whether there were "exceptional circumstances supported by imperative reasons to

justify [a] motion for leave to intervene" on appeal in the first instance: (1) whether

---

[1] The "steep threshold for allowing intervention on appeal" "prevent[s] litigants from using procedural gamesmanship to skirt unfavorable standards of review." *Richardson*, 979 F.3d at 1105.  For instance, in reviewing a district court's denial of intervention as of right, this Court reviews legal issues de novo; applies the clear error standard to factfinding; and addresses for abuse of discretion all "issues that 'involve a measure of judicial discretion.'"  *Yocha Dehe v. United States Dep't of the Interior*, 3 F.4th 427, 430 (D.C. Cir. 2021) (quoting *Fund For Animals, Inc*. v. *Norton*, 322 F.3d 728, 732 (D.C. Cir. 2003)).  "If [the Court] analyzed motions to intervene on appeal using the same framework district courts use to address motions to intervene there, litigants would effectively have *de novo* review of their intervention motion" in all respects.  *Richardson*, 979 F.3d at 1105.  "[A]llowing intervention on appeal only 'in an exceptional case for imperative reasons' is necessary to prevent such procedural gamesmanship."  *Id.* (quotation marks and citation omitted).

the prospective intervenor was "the real party in interest"; (2) whether an existing party is an "adequate representative of [the prospective intervenor's] interest" in the case; and (3) the prospective intervenor's "explanation . . . for its failure to make a request for intervention at the District Court level." *Amalgamated Transit Union*, 771 F.2d at 1553-54; *see also Richardson*, 979 F.3d at 1105 (looking to similar considerations).  Here, each consideration weighs heavily against Texas.

First, Texas is not the actual party in interest, as it did not promulgate and does not administer the Title 42 Process.  In *Amalgamated Transit Union*, a local transportation authority sought to intervene in an appeal brought by the plaintiff labor union against the Secretary of Labor, challenging the Secretary's determination that the transportation authority was complying with a labor-related provision of federal law and thus eligible for federal funding.  771 F.2d at 1551, 1553-54.  This Court explained that, as the federal officer whose action was being challenged, the Secretary of Labor was "the real party in interest" and not the proposed intervenor.  *Id.* at 1553.  That case "involved statutory limits on the Secretary's discretion in the certification of labor protective agreements," and it was the lawfulness of the Secretary's "conduct [which was] on trial."  *Id.* at 1553-54.  Here, as in *Amalgamated Transit Union*, it is the lawfulness of the federal defendants' action that is in dispute.  As Texas acknowledges, the central issue in

5

this appeal is whether "42 U.S.C. § 265 authorizes Defendants to expel alien

family units." Mot. 19. No conduct by Texas is at issue.

Second, Texas makes no exceptional showing of inadequate representation

of its interests. *See Amalgamated Transit Union*, 771 F.2d at 1553-54. Texas

acknowledges that just over two months ago, Defendants issued a new Title 42

Order "that re-affirms that . . . [']42 U.S.C. 265 remains necessary to protect [the

United States] during the COVID-19 public health emergency' and . . . continues

to prohibit the introduction of 'non-citizen' 'family units' into the United States."

Mot. 6 (quoting 86 Fed. Reg. 42,828 (Aug. 5, 2021)). In attempting to articulate

its own supposedly "unique interest" in protecting "border communities" and their

"healthcare resources," Mot. 6, Texas notably resorts to quoting from both the

latest Title 42 Order and Defendants' latest declaration filed below, *id.* at 9

(quoting 86 Fed. Reg. at 42,835, and Decl. of David Shahoulian). These interests

are identical to those Defendants assert in defending their purported statutory

authority to carry out the Title 42 Process. *See, e.g.*, Defendants-Appellants'

Motion for Emergency Stay Pending Appeal 1-3, 18-19, 21-22.

Indeed, far from "disclaim[ing] any interest" in the dispute*, Richardson*, 979

F.3d at 1105, Defendants swiftly appealed the District Court's preliminary

injunction order, obtained an emergency stay of the injunction, and now seek to

vacate that injunction. Texas claims that its residents' health and its healthcare

resources *may* be impacted if Defendants' authority to apply the Title 42 Process to families is enjoined, and speculates that Defendants *may* not adequately defend that authority at some later point in this litigation.  Mot. 7-10, 17-18.  But this Circuit rejected much the same argument in *Amalgamated Transit Union*, explaining that such an "alleged conflict of interest" was "hardly exceptional" and would "exist in *any* appeal to which an agency is a party and a third-party faces some liability or loss of funds if the agency does not prevail."  771 F.2d at 1554 (emphasis in original).  Critically, the Court there also pointed out that if the prospective intervenor "wishes to challenge the future exercise of the Secretary's discretion, it may do so by bringing an action against the Secretary, not by intervening in this case."  *Id.* (emphasis omitted).  Here, Texas *already chose* to contest Defendants' management of the Title 42 Process by bringing a separate action in a different district, rather than by seeking to intervene in the District Court below.

Moreover, Texas' assertions that its interests are inadequately represented are belied by the total overlap of its and Defendants' position.  In *Amalgamated Transit Union*, the prospective intervenor sought to intervene to file a petition for rehearing, but acknowledged that the Secretary of Labor had already done so, and the arguments it hoped to raise in its petition were already "reflected in briefs filed by . . . [an] amicus curiae."  771 F.2d at 1553 n.4.  The Court reasoned that both

points "directly contradict[ed] [the prospective intervenor's] claim that its position is not now adequately represented." *Id.* The same is true here, where Texas acknowledges that its "position that 42 U.S.C. § 265 authorizes Defendants to expel alien family units has *perfect overlap* with the issues presented in this appeal." Mot. 19 (emphasis added). Thus, as with the failed intervenor in *Amalgamated Transit Union*, Texas seeks the extraordinary measure of intervention on appeal to urge precisely the same outcome, based on the same legal position, that the named Defendants already advance. *See also Pub. Serv. Co. of New Mexico*, 857 F.3d at 1113-14 ("When the applicant and an existing party share an identical legal objective, we presume that the party's representation is adequate.").

Third, Texas has failed to offer any compelling "explanation . . . for its failure to make a request for intervention at the District Court level." *Amalgamated Transit Union*, 771 F.2d at 1553-54. Plaintiffs filed their preliminary injunction motion in February 2021, putting Texas on notice over eight months ago that the District Court might prohibit the application of the Title 42 Process to noncitizen families. *Cf. Richardson*, 979 F.3d at 1104 (intervention on appeal potentially permissible "where [movant's] lack of timely intervention below may be justified by the district court's action without notice") (quoting *United States v. Bursey*, 515 F.2d 1228, 1238 n.24 (5th Cir. 1975)).

Texas does not dispute that it has long been on notice, but it asserts that "the potential for Defendants' representation [of its interests] to be inadequate has [only] recently come to the fore."  Mot. 14.  Texas' purported concern that "Defendants will . . . fail[] to pursue an appeal" is baseless.  Mot. 3.  Defendants have just successfully sought a stay before this Court, and Texas seeks to intervene *on appeal*.  Texas also claims that "the likelihood that Defendants may settle litigation over the Title 42 Process on terms that may likewise be disadvantageous to Texas . . . has increased significantly in recent weeks."  Mot. 18.  That assertion is not credible in light of the history of this litigation.

The parties in this case agreed via joint motion in late February 2021 to hold the preliminary injunction motion in abeyance to "explore whether it may be possible to resolve or narrow the dispute at issue in this case."  *See* Dkt. 87 (Feb. 23, 2021).  Thereafter, the parties periodically filed public joint requests to hold the preliminary injunction proceedings while negotiations continued.  *See* Dkt. 99, 100, 102, 103, 105-111.  More than five months later, on August 2, 2021, the parties publicly filed a joint motion to reset the briefing schedule on the preliminary injunction motion, stating that their "discussions . . . ha[d] reached an impasse," and proposing a schedule for resolution of the preliminary injunction motion.  Dkt. 112 at 2 (Aug. 2, 2021).  In response to the District Court's offer of mediation, the parties stated that they had "engaged in extensive negotiations for

about six months" and "worked diligently to try to resolve the dispute," such that the impasse would not benefit from further negotiation.  Dkt. 115 (Aug. 4, 2021). The District Court briefing was completed on August 11, 2021.  Dkt. 118.

At no point during the months when the parties' negotiations were ongoing did Texas move to intervene or otherwise assert its purported concern about a possible settlement.[2]  *See Pub. Serv. Co. of New Mexico*, 857 F.3d at 1113 (holding that the "exceptional case for imperative reasons" standard was unmet where the proposed appellate intervenor "had ample opportunity to be heard at the district court and declined to do so").  In the absence of any "exceptional circumstances supported by imperative reasons" excusing Texas' decision not to seek intervention below, its request to intervene on appeal in the first instance must be denied.  *See Amalgamated Transit Union*, 771 F.2d at 1553.

## II.    Texas' Motion Also Fails Under the Standard For Intervention As Of Right Under Rule 24(a).

Even were the Court to apply the standard for intervention as of right in district court under Federal Rule of Civil Procedure 24(a), Texas has not demonstrated its entitlement to intervene.  To prevail, Texas must demonstrate

---

[2] As Texas acknowledges, it filed its own separate lawsuit challenging Defendants' choice not to apply Title 42 to certain children and families.  *See* Complaint, *Texas v. Biden*, No. 4:21-cv-579, ECF No. 1 ¶¶ 120–22 (N.D. Tex. Apr. 22, 2021); *see also* Mot. 3-4 (acknowledging this separate suit).  Plaintiffs' motion for a preliminary injunction in this case had then been held in abeyance for two months.

Article III standing and "must satisfy all four elements" of Rule 24(a): "timeliness, interest, impairment of interest, and adequacy of representation." *Jones v. Prince George's Cty., Maryland*, 348 F.3d 1014, 1017, 1019 (D.C. Cir. 2003). Due to the same deficiencies identified above, Texas fails to satisfy these requirements.

### A. Texas Lacks Standing Or Any Significant Protectable Interests Affected By This Case.

**<u>Standing</u>**. Texas founds its theories for standing on the assumption that enjoining the Title 42 Process as to Class Members will cause migrant families to enter the State in increasing numbers, thereby bringing COVID-19 into the State. Mot. 7-10 (citing purported harms arising from "surge of [noncitizens] into Texas"). As a threshold matter, these alleged interests are all ones that Defendants are vigorously asserting. *See supra* Part I; *Huisha-Huisha v. Mayorkas*, __ F. Supp. 3d __, 2021 WL 4206688, at \*17 (D.D.C. Sept. 16, 2021) (addressing Defendants' assertions that injunction would create "pull factor" and "increase the risk of COVID-19 transmission"). The striking similarity between Texas's asserted interests and those of Defendants only underscores why the State's extraordinary intervention request must be denied.

In any event, Texas' claimed injuries do not withstand scrutiny. Texas claims that it experiences "multiple significant financial injuries" when noncitizens enter the United States, Mot. 9-10, including "direct economic injury through increased expenditure on medical care," *id.* at 12. Relatedly, Texas contends that

11

the preliminary injunction would "invariably result in increased COVID-19 infection" in the State.  Mot. 13; *id.* 8.  These fact-based claims are subject to serious dispute, and Texas's unproven assertions cannot supply a basis for intervention—especially for the first time on appeal.  *See* Dkt. 118-18 ¶¶ 20-22 (explaining that average of 361,000 people enter United States from Mexico via ports of entry daily, whereas only around 2,500 asylum-seeking family members are apprehended daily); Dkt. 118 at 20 (citing declarations showing that only 1.14% of noncitizens in Mexico requesting exemptions from Title 42 tested positive for COVID-19); Order, *United States v. Texas*, No. 3:21-cv-173, ECF No. 52 at 18 (W.D. Tex. Aug. 26, 2021) ("[R]ecent data shows that migrants generally test positive at similar or lower rates than Americans living in the counties where they are tested.").[3]  *See also Commonwealth v. United States Dep't of Educ.*, 340 F. Supp. 3d 7, 17 (D.D.C. 2018) (explaining that "increase in the payment of government benefits, like a decrease in tax revenues" is "generalized grievance" insufficient to confer standing on states).

Similarly, the notion that asylum-seeking families would seek driver's licenses in the state in significant numbers (Mot. 12) depends on an unproven

---

[3] *See also* Michelle Hackman, *Why Illegal U.S. Border Crossings Likely Aren't Fueling the COVID-19 Surge*, Wall St. J. (Aug. 21, 2021) (explaining that "[m]ost public-health experts say it isn't likely that migrants are contributing significantly to transmissions within the U.S.").

causal chain too speculative to support standing on its own. *See California v. Texas*, 141 S. Ct. 2104, 2117 (2021) (explaining that "where a causal relation between injury and challenged action depends upon the decision of an independent third party," standing "is ordinarily substantially more difficult to establish"); *Arpaio v. Obama*, 797 F.3d 11, 20 (D.C. Cir. 2015) (rejecting standing claim premised on "anticipated action of unrelated third parties").

Texas also asserts *parens patriae* standing. Mot. 13. Yet its claimed basis—that the "health and well-being" of its residents" will be negatively affected if Plaintiffs prevail—is another gloss on its other standing arguments and fails for the same reasons. And in any event, the federal Defendants are already amply representing those interests. *Cf. Com. of Pa., by Shapp v. Kleppe*, 533 F.2d 668, 677 (D.C. Cir. 1976) (a state lacks *parens patriae* standing on matters "within the sovereignty of the Federal Government" where the state "seek[s] to represent the same interest of the same citizens" as the Federal Government).[4]

---

[4] Texas's cited decisions are inapposite. In *Wyoming v. Oklahoma*, 502 U.S. 437, 448-49 (1992), a special master made detailed factual findings concerning the state's standing in a coal dispute; not so here. *Texas v. United States*, 809 F.3d 134, 155 (5th Cir. 2015), as revised (Nov. 25, 2015) similarly addressed a developed record on standing, concerning an identified population of undocumented Texas residents who would be eligible for driver's licenses.

*Air Alliance Houston v. EPA* found that states had standing due to their "proprietary interests such as owning land or participating in a business venture." 906 F.3d 1049, 1059-60 (D.C. Cir. 2018) (alterations omitted). Texas makes no such claim here. And in *Delaware Dep't of Nat. Res. & Env't Control v. EPA*, 785 F.3d 1 (D.C. Cir. 2015), the state claimed injury based on harm to its "air quality,"

**<u>Texas's Ability to Protect Its Interests</u>**.  Texas repeats these same claims in asserting that it has a protectable interest that would be impaired in this action, as Rule 24(a)(2) requires.  Mot. 16-17.  Texas's arguments under this Rule should be rejected for the same reasons as above.

Moreover, Texas' concern regarding the "health of Texans statewide," Mot. 8-9, is belied by its affirmative rejection of COVID-19 protections in numerous other contexts.  For example, in July Governor Abbott barred local governments, schools, and many private businesses from taking basic precautions to stop the spread of COVID-19.  Texas Executive Order GA-38, https://perma.cc/BGM8-EV6E.  That order vacated *all* "COVID-19-related operating limits," *id.* ¶ 3(a); ordered that "no person may be required by any jurisdiction to wear . . . a face covering," *id.* ¶ 3(b); and eliminated any masking requirements imposed by any local government or school, *see id.* ¶ 4(a).  The State has also sued to stop at least 15 school districts from having their own mask mandates.  *See* Chuck Lindell, *Austin, 5 Other School Districts Ask Court To Halt AG Ken Paxton's Anti-Mask Lawsuits*, Austin American-Statesman (Sept. 23, 2021), https://www.statesman.com/story/news/2021/09/23/texas-school-districts-ask-court-block-paxtons-anti-mask-lawsuits/5828611001/.  The same day that Texas

---

which would impair its ability to maintain certain legal standards "pursuant to the Clean Air Act."  *Id.* at 8.  Here, Texas asserts no such damage to its ability to fulfill its legal obligations.

filed its motion for intervention, the Governor banned any entity—including private businesses—in the state from mandating vaccines for workers or customers. *See Governor Abbott Issues Executive Order Prohibiting Vaccine Mandates By Any Entity, Adds Issue To Special Session Agenda*, Off. of the Tex. Gov. (Oct. 11, 2021), https://gov.texas.gov/news/post/governor-abbott-issues-executive-order-prohibiting-vaccine-mandates-by-any-entity-adds-issue-to-special-session-agenda. Texas cannot seriously claim that its intervention is motivated by the desire to mitigate COVID-19 in the State.[5]

### B. Texas' Motion Is Untimely.

For much the same reasons Texas has failed to identify exceptional circumstances justifying its failure to seek intervention below, *see supra* Part I,

---

[5] Texas relies on *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967), but there "the court found on the specific facts a sufficient interest for standing in the stare decisis effect of a judgment." *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 29 (D.C. Cir. 2000); *see also Nuesse*, 385 F.2d at 701 (explaining that federal statute at issue adopted state law in key respects, which granted states special interest in its interpretation). Texas does not explain how the legal effects of a judgment in this appeal on the interpretation of a federal statute would affect its ability to vindicate its own state laws or directives.

*NRDC v. Costle*, 561 F.2d 904 (D.C. Cir. 1977), is similarly inapt. That case allowed intervention by industry groups in an environmental case where the parties' settlement agreement restricted an agency's authority to promulgate future rules. *Id.* at 909-10. The intervenors sought only to participate in settlement implementation, not "upset the [] agreement" itself. *Id.* at 908; *see also Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1325-26 & n.8 (D.C. Cir. 2013) (discussing *Costle*'s limitations and observing that it did not analyze standing or protectable interest).

Texas' motion must be denied as untimely under Rule 24(a).  *See Amador Cty., Cal. v. U.S. Dep't of the Interior*, 772 F.3d 901, 903 (D.C. Cir. 2014) ("If the motion is untimely, the explicit language of [Rule 24] dictates that 'intervention must be denied.'").  "Timeliness 'is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case.'"  *Id.* (quoting *United States v. Brit. Am. Tobacco Australia Servs., Ltd.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006).

Texas first suggests that its motion is timely under Federal Rule of Appellate Procedure 15(d).  Mot. 13.  But that Rule concerns "petition[s] for review" of agency orders, Fed. R. App. P. 15(a), not litigation challenging agency action properly commenced in district court.  *See Amalgamated Transit Union*, 771 F.2d at 1553 n.3.  Texas asserts that this distinction is immaterial because the *merits* of this appeal partly involve legal issues.  Mot. 14.  As noted above, however, *supra* at 4 n.1, had Texas properly sought intervention below, this Court *would* defer to multiple aspects of the District Court's ruling on that motion— including its factual findings concerning Texas's standing theories and alleged harms.  *See, e.g.*, *Amador Cty.*, 772 F.3d at 904.  It is precisely "to prevent litigants from using procedural gamesmanship to skirt unfavorable standards of review, [that] there

16

must be a steep threshold for allowing intervention on appeal." *Richardson*, 979 F.3d at 1105.  Applying Rule 15(d) would incentivize just such gamesmanship.

And there is no question Texas's motion is untimely under Rule 24.  As noted, Texas filed a separate suit against Defendants concerning the Title 42 Process on April 22, 2021.  *See supra* at 10 n.2; Mot. 3-4.  By that date, at the very latest, Texas was already asserting that the Title 42 Process implicated the wellbeing of its residents.  *Amador Cty.*, 772 F.3d at 904 (holding that delay may be assessed "from the time when the prospective intervenor knew or should have known that any of its rights would be directly affected by the litigation, or when the potential inadequacy of representation came into existence") (cleaned up).  Texas purportedly now fears that "Defendants may settle litigation over the Title 42 Process on terms that may . . . be disadvantageous to Texas."  Mot. 18.  But Texas declined to seek to intervene in the District Court for more than three months after filing its own separate suit elsewhere, while on notice that the parties here were engaged in settlement discussions explicitly seeking to "resolve or narrow the dispute at issue in this case."  Dkt. 87 (Feb. 23, 2021).  Texas instead seeks to intervene after those settlement discussions reached an impasse; the parties resumed preliminary injunction litigation; the District Court issued the preliminary injunction; Defendants appealed; and Defendants successfully sought a stay of the preliminary injunction pending appeal.

17

Texas incorrectly argues that its motion is nonetheless timely *solely* because intervention "would not prejudice the parties."  Mot. 15.  While prejudice precludes a finding of timeliness, the inverse is not necessarily true.  7C Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1916 (3d ed.) (updated Apr. 2021) (explaining that absence of prejudice merely "supports finding the motion to be timely").  Even under the authorities Texas cites, the "'time elapsed since the inception of the suit' is [a] relevant" factor, even absent prejudice to the parties.  *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) (citation omitted); *see also Federal Practice & Procedure* § 1916 ("[T]he court necessarily will consider the time element itself.").  Delay and potential prejudice are distinct factors.  *See, e.g.*, *Amador Cty.*, 772 F.3d at 903 (quoting *Brit. Am. Tobacco*, 437 F.3d at 1238).

In any event, Texas' belated intervention *does* prejudice Plaintiffs.  "It would be entirely unfair . . . to allow a potential intervenor to lay in wait" throughout the relevant District Court proceedings "before deciding whether to participate" on appeal.  *Amalgamated Transit Union*, 771 F.2d at 1553.  That is particularly so given that Texas is relying on disputed *factual* assertions.  Even when made before the district court, a motion to intervene filed after that court has rendered the decision at issue "will usually be denied."  *See Assoc'd Builders & Contractors, Inc. v. Herman*, 166 F.3d 1248, 1256-57 (D.C. Cir. 1999) (citation

18

omitted). This "presumption" encourages prospective intervenors "to try to enter the proceedings . . . at a time when notice of their arguments would have enabled the district court to avert the alleged errors." *Id.* (quoting *Mass. Sch. of Law v. United States*, 118 F.3d 776, 783 n. 5. (D.C. Cir. 1997)). Here, Texas should have raised its arguments opposing a preliminary injunction with the District Court before that court ruled on Plaintiffs' motion for an injunction. Doing so would have allowed Plaintiffs to gather and submit evidence in opposition to Texas' arguments and enabled the District Court to consider the State's concerns in the first instance. *See NAACP v. New York*, 413 U.S. 345, 367 (1973) (affirming denial of intervention based on failure to intervene at "critical stage" of district court proceedings).

### C. Defendants Are Adequately Representing Texas' Identical Interests.

"The most important factor in determining adequacy of representation is how the interest of the absentee compares with the interests of the present parties." *Federal Practice & Procedure* § 1909. Thus, "[w]here the party seeking to intervene has the same ultimate goal as a party already in the suit, courts have applied a presumption of adequate representation." *Moosehead Sanitary Dist. v. S. G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979). Moreover, mere "difference[s] of opinion concerning the tactics with which litigation should be handled does not make inadequate the representation of those whose interests are identical with that

of an existing party.'" *Jones*, 348 F.3d at 1020 (quoting *Federal Practice & Procedure* § 1909, at 344 (2d. ed. 1986)).[6]

As already discussed, the interests Texas seeks to vindicate and the legal position it urges align entirely with those of Defendants.  *See supra* Part I.  This case is directly analogous to *Building & Construction Trades Department, AFL-CIO v. Reich*, 40 F.3d 1275 (D.C. Cir. 1994), in which this Court upheld denial of intervention as of right because the intervenor sought to advance the same position as the Department of Labor, and "offered no argument not also pressed by [the Department]."  *Id.* at 1282.  Here, as there, the Court should deny intervention.

## III.  The Court Should Deny Texas' Alternative Request For Permissive Intervention.

The standard for permissive intervention under Rule 24(b) likewise does not apply here because Texas seeks the extraordinary remedy of intervening for the

---

[6] Contrary to Texas' assertion, Mot. 17, *Fund for Animals, Inc. v. Norton*, 322 F.3d 728 (D.C. Cir. 2003), set forth no blanket rule that federal agencies do not represent intervenors' interests.  The intervenor there was a *foreign government* whose interests plainly diverged from "the interests of the American people."  *Id.* at 736.  In general, "it will be assumed that the United States adequately represents" the sort of public interests Texas asserts.  *Federal Practice & Procedure* § 1909.

first time on appeal. *See supra* Part I.  Even if this Court were to apply Rule

24(b)'s standards, however, intervention should still be denied.

First, Texas lacks standing in its own right. *See supra* Part II.A.  Second, its

motion is untimely. *See supra* Parts I, II.B.  Third, permissive intervention is

discretionary. *See In re Idaho Conservation League*, 811 F.3d 502, 515 (D.C. Cir.

2016).  As discussed, permitting Texas "to lay in wait" until after both the parties'

negotiations and the preliminary injunction litigation had concluded below "before

deciding whether to participate" for the first time on appeal "would be entirely

unfair." *See Amalgamated Transit Union*, 771 F.2d at 1553; *see also supra* Parts I,

II.B.  For that reason and for all the reasons already described, sound discretion

weighs heavily in favor of denying intervention here.

## CONCLUSION

The Court should deny Texas' motion.

Dated:  October 15, 2021

Stephen B. Kang
Cody Wofsy
Morgan Russell
My Khanh Ngo
American Civil Liberties
Union Foundation, Immigrants'
Rights Project
39 Drumm Street
San Francisco, CA 94111
(415) 343-0770

Andre Segura
Kathryn Huddleston
Brantley Shaw Drake
American Civil Liberties
Union Foundation of Texas, Inc.
5225 Katy Freeway, Suite 350
Houston, Texas 77007
(713) 942-8146

Karla M. Vargas
Texas Civil Rights Project
1017 W. Hackberry Ave.
Alamo, Texas 78516
(956) 787-8171

Jamie Crook
Blaine Bookey
Karen Musalo
Neela  Chakravartula
Center for Gender & Refugee Studies
200 McAllister Street
San Francisco, CA 94102
(415) 565-4877

Respectfully submitted,

*/s/ Lee Gelernt*
Lee Gelernt
Omar Jadwat
Daniel A. Galindo
Ming Cheung
David Chen
American Civil Liberties Union
Foundation, Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2600
lgelernt@aclu.org

Robert Silverman
Irit Tamir
Oxfam America
226 Causeway Street, Suite 500
Boston, MA 02115
(617) 482-1211

Scott Michelman
Arthur B. Spitzer
American Civil Liberties Union
Foundation of the District of Columbia
915 15th Street, NW, 2nd floor
Washington, D.C. 20005
(202) 457-0800

Tamara F. Goodlette
Refugee and Immigrant Center for
Legal Education and Legal Services
(RAICES)
802 Kentucky Avenue
San Antonio, TX 78201
(210) 960-3206

*Counsel for Plaintiffs-Appellees*

22

## CERTIFICATE OF COMPLIANCE

This motion response complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(1)(E) and (2)(A) because:

1. It contains 5,057 words.

2. It complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word Professional Plus 2019 in 14-point Times New Roman font.

*/s/Lee Gelernt*
Lee Gelernt

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2021, I electronically filed the foregoing with the Clerk for the United States Court of Appeals for the DC Circuit by using the CM/ECF system. A true and correct copy of the foregoing has been served via the Court's CM/ECF system on all counsel of record.

*/s/Lee Gelernt*
Lee Gelernt