[ORAL ARGUMENT NOT YET SCHEDULED]

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

NANCY GIMENA HUISHA-HUISHA, on behalf of
herself and others similarly situated,

    Plaintiffs-Appellees,

    v.

ALEJANDRO MAYORKAS, Secretary of Homeland
Security, *et al.*,

    Defendants-Appellants.

No. 21-5200

---

**DEFENDANTS' OPPOSITION TO THE STATE OF TEXAS'S
MOTION TO INTERVENE**

BRIAN M. BOYNTON
   *Acting Assistant Attorney General*

CHANNING PHILLIPS
   *Acting United States Attorney*

SHARON SWINGLE
JOSHUA WALDMAN
ASHLEY A. CHEUNG
   *Attorneys, Appellate Staff*
   *Civil Division*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-0236*
   *joshua.waldman@usdoj.gov*

## INTRODUCTION

Although this litigation began nine months ago, and this appeal has been pending for weeks, the State of Texas has moved to intervene a mere ten days before the opening brief is due under this Court's expedited schedule. Texas seeks to justify its untimeliness by claiming that the need to intervene only recently came to light – but then points to facts that were known months, if not years, ago. Texas also seeks to justify its intervention by pointing to statutory arguments the State is advancing in other litigation against the federal government, even though those arguments have no bearing on the district court's holding in this case or the federal government's defense of this lawsuit and its efforts to seek appellate relief. Granting intervention would prejudice the parties by belatedly interjecting Texas's new arguments into this case (and would do so only after the federal government filed its opening brief). If granted intervention, Texas may also prejudice the parties with unanticipated and unnecessary filings – motions for divided argument, rehearing petitions, or other such motions – just as it has with its motion to intervene in this appeal at the eleventh hour and after months of inaction. The motion to intervene should be denied.

1

**STATEMENT**

## I.    Background

Under 42 U.S.C. § 265, the Secretary of the Department of Health and Human Services (HHS) is authorized to "prohibit * * * the introduction of persons" into the United States to "avert" the "serious danger of the introduction of" a "communicable disease," "[w]henever the [Secretary] determines that" "a suspension of the right to introduce such persons" is "required in the interest of the public health." 42 U.S.C. § 265.  In March 2020, in light of the unprecedented COVID-19 pandemic, HHS and the Centers for Disease Control and Prevention (CDC) issued an interim final rule, pursuant to their authority under 42 U.S.C. § 265, to provide a procedure for the CDC Director to temporarily suspend the introduction of certain persons into the United States.  85 Fed. Reg. 16,559 (Mar. 24, 2020).  The CDC Director also issued an order, pursuant to the interim rule, temporarily suspending the introduction of certain noncitizens traveling from Canada and Mexico into the United States.  85 Fed. Reg. 17,060 (Mar. 26, 2020). Both the interim rule and the order were expressly predicated on the risk of communicable disease transmission into the United States, particularly where noncitizens would ordinarily be held in congregate settings – in facilities not designed or equipped to quarantine, isolate or enable social distancing – while undergoing immigration processing.  85 Fed. Reg. at 16,560; 85 Fed. Reg. at

2

17,061, 17,066.  CDC explained that its interim rule "encompass[es] those who have physically crossed a border of the United States."  85 Fed. Reg. at 16,563.  HHS and CDC subsequently published a final rule, and issued a new order, suspending the introduction of all covered noncitizens into the United States, subject to certain exceptions.  85 Fed. Reg. 56,424 (Sept. 11, 2020); 85 Fed. Reg. 65,806 (Oct. 16, 2020).

In February 2021, CDC issued a notice of its decision to temporarily except from expulsion unaccompanied noncitizen children encountered in the United States, pending its forthcoming public-health reassessment of the Order.  86 Fed. Reg. 9942 (Feb. 17, 2021).  Then, in July 2021, CDC announced that it was confirming the exception of unaccompanied noncitizen children from the Order, because there is infrastructure in place to manage the public health risks posed by introduction of these children, who are typically placed into HHS Office of Refugee Resettlement custody, and in light of the humanitarian concerns posed by expelling unaccompanied noncitizen children.  *See* 86 Fed. Reg. 38,717 (July 22, 2021).

In August 2021, CDC issued a new Order, which replaced and superseded the previous Orders.  Addendum to Stay Motion (Add.) 72-95; 86 Fed. Reg. 42,828 (Aug. 5, 2021) (CDC Order).  The CDC Order explains that, "[u]pon reassessment of the current situation with respect to the pandemic and the situation

3

at the U.S. borders, CDC finds [that] an Order" temporarily suspending the right to

introduce certain noncitizens traveling from Canada and Mexico, regardless of

their country of origin, into the United States "remains necessary" for single adults

and family units, subject to recurring 60-day reviews.  Add.74.  CDC made this

determination after an updated public health assessment that evaluated numerous

considerations, including the particular risks of COVID-19 transmission in

congregate settings at U.S. Department of Homeland Security (DHS) facilities,

Add.79, the limited ability to maintain physical distancing and cohorting in those

facilities given capacity constraints, Add.83-84, the significant increase in CBP

encounters that has caused DHS facilities to exceed capacity, Add.84, the

emergence of the highly transmissible Delta variant, Add.78, and the increase in

community transmission and hospitalizations along the U.S.-Mexico border,

Add.75, 82-83.

## II.    Prior Proceedings

On January 12, 2021, plaintiffs brought suit on behalf of a putative class of

noncitizen family units who are or will be subjected to the CDC Order.  As

relevant here, plaintiffs asserted that the Order exceeds CDC's Section 265

authority.  The case was held in abeyance from February 23, 2021, to August 2,

2021, as the parties engaged in settlement discussions.  *See* ECF Nos. 87, 99, 100,

102, 103, 105-111 (twelve joint motions seeking an abeyance in light of settlement

discussions).  When discussions reached an impasse, the parties resumed litigation

and the government filed a supplemental declaration in support of its opposition to

the plaintiffs' motions and plaintiffs filed a reply brief and declarations.  *See* ECF

Nos. 116, 118.

On September 16, 2021, the district court granted class certification and a

classwide preliminary injunction.  As relevant here, the district court concluded

that Section 265 likely does not authorize the government to expel noncitizens

once they have crossed the border into the United States, reasoning that "even

accepting * * * that the phrase, 'prohibit * * * the introduction of,' means 'to

intercept or prevent,' the 'process' of introduction * * * this phrase also does not

encompass expulsion from the United States" and "[e]xpelling persons" "is

entirely different from interrupting, intercepting, or halting the process of

introduction."  Add.41.  The district court also held that the remaining preliminary

injunction factors weigh in favor of plaintiffs, Add.43-57, and the court enjoined

the federal government from expelling class members from the United States under

the CDC Orders, Add.58, 60.

On September 17, 2021, the federal government filed a notice of appeal and

a motion in this Court for a stay pending appeal.  On September 30, 2021, this

Court granted the motion, and ordered expedited briefing, with the federal

government's opening brief due on October 21, 2021.

5

On October 11, 2021, the State of Texas filed a motion to intervene in this litigation. Texas had not previously sought to intervene in this case, or even filed an *amicus* brief in proceedings below. That motion is opposed by all parties to the appeal.

## ARGUMENT

The State of Texas has not met the standard for intervention, either as of right or by permission. Intervention requires a timely motion, but Texas has been anything but timely. This litigation was commenced nine months ago, in January 2021, yet until now Texas has taken no steps to intervene or otherwise participate in this case. Texas claims that its need to intervene only recently came to light. But the State points only to settlements reached before a complaint was even filed in this litigation, and to filings in other litigation that merely restate the same position the federal government had been taking for months. Texas can hardly claim to have newly discovered events that took place long ago. In short, there are no new developments that would excuse Texas's delay.

In addition, Texas's intervention would be prejudicial. Texas would likely argue – as it is currently arguing in the Northern District of Texas in the State's affirmative lawsuit against the federal government – that the federal government acted unlawfully when, among other things, it excepted unaccompanied noncitizen children from the CDC Order. In that event, Texas's intervention would force the

6

federal government, in this appeal, to simultaneously seek to vacate the district court's injunction and to defend against the argument Texas has asserted in a separate action, which has not previously been raised or considered in this litigation – and to do so only in a reply brief, given that Texas proposes that the federal government file its opening brief first, and Texas will file thereafter.  In addition, if Texas were permitted to intervene, it could then file any number of substantive or procedural motions, or take other action as a party, which could unnecessarily complicate this litigation to the prejudice of the existing parties. Texas's carefully worded statement that it does not "intend" "at this time" to take such actions provides no assurance at all.  Given that Texas could present its arguments as *amicus curiae*, the primary purpose of seeking to intervene appears to be to allow the State to do precisely that.

Finally, the federal government adequately represents Texas's interests in this litigation.  Indeed, Texas conceded that until recently, the federal government *was* adequately representing the State's interests.  Texas claims that its mind was changed due to recent events.  But the State once again relies on facts of which it has been aware for months or years, namely, settlements reached before a complaint was even filed in this litigation, and filings in other litigation restating positions the federal government has consistently taken.  Texas contends that recent events show a likelihood that the federal government will settle this case, or

7

will fail to appeal, to the State's detriment. But recent events show the opposite: the federal government announced that settlement negotiations reached an impasse, and after the district court entered an injunction, the federal government appealed and sought a stay the very next day.

## I.    Intervention as of Right Should Be Denied.

Intervention as of right requires four elements: "1) the application to intervene must be timely, 2) the party must have an interest relating to the property or transaction which is the subject of the action, 3) the party must be so situated that the disposition of the action may, as a practical matter, impair or impede the party's ability to protect that interest, and 4) the party's interest must not be adequately represented by existing parties to the action." *Defenders of Wildlife v. Perciasepe*, 714 F.3d 1317, 1322-23 (D.C. Cir. 2013). The party seeking to intervene as of right must also demonstrate Article III standing. *Id.* at 1323. The putative intervenor must "satisfy all four elements of the Rule in order to intervene as of right." *Jones v. Prince George's County*, 348 F.3d 1014, 1019 (D.C. Cir. 2003).

### A. Texas' Motion is Untimely

In assessing the timeliness of a motion to intervene, "timeliness is to be judged in consideration of all the circumstances, *especially weighing the factors of time elapsed since the inception of the suit*." *Smoke v. Norton*, 252 F.3d 468, 471

8

(D.C. Cir. 2001) (emphasis added) (quoting *United States v. AT&T*, 642 F.2d 1285, 1295 (D.C. Cir. 1980)).  Here, plaintiffs filed their complaint on January 12, 2021 – more than nine months ago – but Texas never sought to intervene in the district court.  When the parties engaged in several months of settlement discussions, *see supra* at 4; Mot. 10, Texas did not intervene, notwithstanding its current assertion that the federal government has a "history of using litigation settlements to set national policy on important immigration and border security issues" in a way that supposedly disadvantages Texas.  Mot. 2.  And by Texas's own admission, during that time, it initiated *other* litigation in the Northern District of Texas "to ensure that its own interests in the Title 42 Process were vindicated," Mot. 10, and yet it stood idly by in this litigation without seeking to intervene.

When the settlement negotiations reached an impasse and this litigation resumed, Texas still took no action to intervene.  After the district court entered a preliminary injunction on September 16, 2021, Texas still did nothing.  And when the federal government filed a notice of appeal the next day, and then expeditiously filed a successful motion for a stay pending appeal, Texas once again failed to act.  Now, twenty-six days after the district court entered its injunction, and eleven days

after this Court ordered expedited briefing, Texas belatedly seeks to intervene. Under any plausible standard, its motion is untimely.[1]

"A court of appeals may allow intervention at the appellate stage where none was sought in the district court 'only in an exceptional case for imperative reasons.'" *Amalgamated Transit Union Int'l v. Donovan*, 771 F.2d 1551, 1552 (D.C. Cir. 1985). Texas does not dispute its "absence in the district court proceedings," Mot. 14, but contends its failure to seek intervention in the district court is "immaterial" because the State's motion to intervene would be timely if it were a motion to intervene under Federal Rule of Appellate Procedure 15(d). That argument is meritless. Texas concedes that "[a]ppellate courts judge motions to intervene under Federal Rule of Civil Procedure 24," Mot. 11, not under Rule 15(d). Moreover, Rule 15(d) applies when a litigant files a direct petition for review in the court of appeals, and in that circumstance there would be no district court proceedings in which to intervene. A putative intervenor obviously could not be faulted for failing to intervene in non-existent district court proceedings. But in this case, district court proceedings were pending for *eight months* between the

---

[1] Further still, when different plaintiffs brought a similar challenge to CDC's authority under 42 U.S.C. § 265 to issue its Order, *see P.J.E.S. v. Wolf*, No. 1:20-cv-02245-EGS-GMH (D.D.C.), Texas did not move to intervene at any point before the district court, nor did it move to intervene in this Court during the appeal, *P.J.E.S. v. Mayorkas*, No. 20-5357 (D.C. Cir.). Indeed, Texas did not intervene in that litigation even after the CDC expressly excepted unaccompanied noncitizen children from expulsion under the Order.

filing of the complaint and the entry of a preliminary injunction, and Texas failed at any point to move for intervention.  (Indeed, the entry of a preliminary injunction does not end proceedings in the district court, and yet Texas has *still* not sought to intervene in that court.)  The State's persistent failure to act renders its motion at this stage of the litigation untimely.  Even drawing on Rule 15(d) as an analogy does not assist Texas:  Rule 15(d) requires intervention within 30 days of when the action is commenced (in January 2021), and that time has long since passed.  Nor, contrary to Texas's argument (Mot. 14), does the standard of review in this Court shed any light on whether the State's motion is timely.

Texas contends that its motion is timely because it only "recently" came to light that, in the State's view, the federal government "will not adequately" defend the CDC Order.  Mot. 13-14.   Texas's unsupported assertion that the federal government will not adequately defend the CDC Order, which likely comes as a surprise to the plaintiffs in this action, is discussed *infra* at 16-21.  But even taking Texas's assertion at face value, the State does not point to any recent developments that would excuse its months-long failure to seek intervention at any prior point in the litigation or explain why intervention has only recently become necessary. Texas cannot justify its lack of timeliness by pointing to three settlement agreements that *pre-date* the instant litigation.  Mot. 2-3.  Texas fares no better in relying on other litigation that the State initiated six months ago, in which Texas

11

asserts that the federal government is not adequately enforcing immigration law or the CDC Order.  Mot. 3-4.[2]  Texas can hardly claim to have come only recently to the view that the federal government is inadequately enforcing immigration law given that Texas has been (erroneously) arguing that view for the past six months.

Nor is there anything new in the recent filings in those cases that would explain Texas's prior failure to seek intervention.  For example, Texas points to a Declaration attached to a Status Report in which the federal government notes it has been working to identify individuals who might be excepted from the CDC Order for humanitarian reasons.  Mot. 3.  But that Declaration explained that "the Title 42 order *has always included* exceptions for humanitarian reasons," Decl. of Blas Nunez-Neto, Dkt. 105-1 ¶ 11 (emphasis added)*, Texas v. Biden*, No. 2:21-cv-00067 (N.D. Tex.), a fact noted in the first CDC Order, 85 Fed. Reg. at 17,061 (noting humanitarian exceptions), as well as the most recent, 86 Fed. Reg. at 42,838 (same).

Similarly, Texas points to a statement in the federal government's brief in other litigation, filed on September 21, 2021, making the unremarkable point that 42 U.S.C. § 265 confers discretion on CDC to determine, among other things,

---

[2] *Texas v. Biden*, No. 2:21-cv-00067-Z (N.D. Tex.) (complaint filed April 13, 2021); *Texas v. Biden*, No. 4:21-cv-00579-P (N.D. Tex.) (complaint filed April 22, 2021).

which persons to prohibit.  Mot. 4.  Again, however, this is nothing new.  The federal government has taken that same view since the very first CDC Order, by exempting (among others) U.S. citizens, members of the armed forces and other government employees and contractors, and persons from foreign countries who hold valid travel documents and arrive at a port of entry.  85 Fed. Reg. at 17,061; 42 C.F.R. § 71.40(e), (f).  And since February 2021, CDC has been excepting from expulsion unaccompanied noncitizen children encountered in the United States.  86 Fed. Reg. 9942.  Furthermore, the sentence from the federal government's September 2021 brief, which Texas quotes in its motion, appeared almost word-for-word in the federal government's earlier brief in that litigation, filed more than four months ago.  *Compare* Mot. 4 *with Texas v. Biden*, No. 4:21-cv-00579-P (N.D. Tex.), Dkt. 28 at 25 (July 6, 2021) ("Even if CDC 'determines' that there is a 'serious danger of the introduction of [a] communicable disease into the United States' that is 'increased by the introduction of persons or property' from another country, CDC is not *required* to do anything.").  Texas can hardly claim surprise to see the same argument advanced in the federal government's recent brief.

Finally, Texas relies (Mot. 4, 14-15) on DHS's Guidelines for the Enforcement of Civil Immigration Law, issued on September 30, 2021.[3]  Those Guidelines state (at 2) that because DHS "do[es] not have the resources to

---

[3] https://www.ice.gov/doclib/news/guidelines-civilimmigrationlaw.pdf.

apprehend and seek the removal of every one" of the 11 million undocumented or otherwise removable noncitizens in the United States, it must therefore "exercise [its] discretion and determine whom to prioritize for immigration enforcement action" and "[t]he fact an individual is a removable noncitizen therefore should not alone be the basis of an enforcement action against them."  But Texas has known this for months:  DHS's interim guidance, issued in January 2021, similarly stated (at 2) that "[d]ue to limited resources, DHS cannot respond to all immigration violations or remove all persons unlawfully in the United States" and it must therefore "implement civil immigration enforcement based on sensible priorities and changing circumstances."[4]  Indeed, Texas has been litigating the lawfulness of DHS's interim guidance since April 2021.  *See Texas v. United States*, No. 6:21-cv-00016 (S.D. Tex.).  And in any event, the Guidelines do not mention or specifically address Title 42 or the CDC Order, and have no bearing on the federal government's argument in this Court.

Texas contends that even if its motion is untimely, its tardiness will not prejudice the parties.  Mot. 15.  But Texas's motion has already prejudiced the federal government, by forcing it to divert time and attention away from drafting

---

[4] https://www.dhs.gov/sites/default/files/publications/21_0120_enforcement-memo_signed.pdf.

14

its opening brief on an expedited schedule in order to respond to the State's motion to intervene.

Moreover, Texas has argued in other litigation in the Northern District of Texas that the federal government acted unlawfully when, among other things, it exempted unaccompanied noncitizen children from the CDC Order. *See* Mot. 3-4, 10; *Texas v. Biden*, No. 4:21-cv-00579-P (N.D. Tex.). That argument has no bearing on this case, because the extent of CDC's discretion under Section 265 to except certain persons does not address the relevant issue here, which is whether Section 265 authorizes expulsion. But to the extent the State, if intervention were granted, would seek to introduce an erroneous limitation on CDC's Section 265 authority into this case, or otherwise interject the State's position as advanced in other litigation, doing so would prejudice the federal government. It would force the federal government, in the context of this appeal, to simultaneously litigate two different cases on an expedited basis, seeking reversal of the district court's injunction while also refuting Texas's litigation position in a different district court matter. It would introduce an argument in this case that was not presented to or decided by the district court, and is not properly raised for the first time in the court of appeals. Moreover, Texas proposes to file its brief *after* the federal government files its opening brief, *see* Mot. 15, so that the federal government's response would be limited to its reply brief.

15

Further still, if intervention were granted, Texas would "become [a] full-blown part[y] to [the] litigation," *Old Dominion Electric Cooperative v. FERC*, 892 F.3d 1223, 1232 (D.C. Cir. 2018), after which it could seek divided oral argument time, file a petition for rehearing (or for initial rehearing *en banc*), or even petition the Supreme Court for a writ of *certiorari* before judgment or any other unanticipated procedural steps that would unnecessarily complicate the litigation and prejudice the parties. Texas's noncommittal statement – that it does not "at this time" "intend" to make other "substantive" filings "before oral argument," Mot. 15 – is no assurance at all. Given that Texas could set out its legal position by filing an *amicus* brief in this case (and all parties previously informed Texas that they would not oppose its participation as *amicus*), it appears that the purpose of seeking intervention is to allow Texas to make precisely the kind of substantive and procedural filings as a party that would disrupt proceedings and prejudice the parties. There is no compelling reason to allow for those disruptive possibilities at this late stage of the litigation.

### B. The Federal Government Adequately Represents Any Interests That Texas Might Have In This Litigation

Nor is Texas's intervention necessary to adequately protect any interests that Texas might have arising out of this litigation – although the federal government certainly does not concede that any such interests exist, or that Texas has standing

16

to intervene.  Texas itself concedes that until recently, the federal government "Defendants *were adequately defending* the Title 42 Process."  Mot. 2 (emphasis added).  The State argues that this has changed due to "[e]volving circumstances." *Id.*  But the only "circumstances" Texas specifies are settlements that pre-date this litigation, Mot. 2-3, and filings in other cases that re-state the federal government's longstanding positions of which Texas has been aware for months, Mot. 3-4.  *See also supra* at 11-14.  Accordingly, Texas points to no substantial basis for its apparent, and belated, about-face.  Regardless, the federal government's position on immigration enforcement in other litigation, and involving different statutory and regulatory programs, has no bearing on whether the federal government's robust and consistent defense of the CDC Order in this case adequately represents Texas's interests in defending the Order.

The State asserts that "the likelihood" that the federal government will settle this case in a way that disadvantages Texas "has increased significantly in recent weeks."  Mot. 18.  The undisputed record demonstrates that the exact opposite is true.  In recent weeks, the federal government and plaintiffs have ended settlement negotiations when the parties reached an impasse.  Mot. 10; *see supra* at 4-5.  The federal government then proceeded to vigorously defend the lawfulness of the CDC Order, including by submission of a new declaration explaining the continued urgent need for the Order.  *See supra* at 5.  And when the district court

entered its preliminary injunction, the federal government filed a notice of appeal and an emergency motion for a stay the *very next day* – while Texas did nothing. The State's suggestion that the federal government might now settle the case or abandon litigation is nothing more than speculation devoid of any basis in the record.

Finally, Texas asserts a state interest in protecting the health and well-being of the State's citizens from the risk of COVID-19, as well as its interest in avoiding additional strain on its health-care resources and associated financial costs, Mot. 18, and contends that the federal government does not adequately represent those interests. But the CDC Order – and the federal government's defense of it – is expressly predicated on the interests of protecting the health and well-being of U.S. citizens and residents from the risks of COVID-19 and avoiding additional strain on healthcare resources. *See* Add.74 (discussing need to "protect the public health from an increase in risk of the introduction of COVID-19" and to "reduc[e] risks to * * * the healthcare systems in local communities," particularly "at or near the U.S. borders,"); Add.63-64 ¶ 6 (noting that enjoining the CDC Order "risks overwhelming the local testing, isolation, and quarantine infrastructure * * * and will thus burden local healthcare systems and strain healthcare resources"); Add.66 ¶ 13 ("[T]he CDC Order remains necessary, while the pandemic continues, to prevent COVID-19 exposure risks to * * * border communities."). Indeed, while

18

Texas relies heavily on disaster declarations in two of the State's counties, Mot. 7-8, the CDC Order notes the "high or substantial levels of community transmission" in "U.S. counties along the U.S.-Mexico border," and singles out those two Texas counties – Hidalgo County and Webb County – as examples.  Add.82 & n.58.  In the end, even Texas concedes the point, noting elsewhere in its motion that the federal government has already recognized and explained the particular exposure risks of border communities in defending the CDC Order.  Mot. 9, 13.

To the extent that Texas is claiming an interest in compelling the federal government to apply the CDC Order to expel *more* noncitizens than it is currently doing – the position the State advances in other litigation, *see supra* at 15 – it lacks any cognizable legal interest in compelling the stricter enforcement of federal law or foreclosing the federal government from permitting humanitarian exceptions as provided for in the Order.  *Cf. Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").  But even setting aside that objection, that simply underscores that it would be wrong to permit Texas to intervene at this very late stage of proceedings, nominally on the side of the federal government, to enable it to make arguments never before presented in this litigation that would seek to put additional but different limitations on the federal government's authority than those imposed by the challenged preliminary injunction.  This case is not the

19

appropriate vehicle for adjudication of those arguments, and the federal government would be significantly prejudiced if this Court were to allow intervention for those purposes.

In the end, any legitimate interest that Texas might have that is implicated by this litigation would be protected if the preliminary injunction of the CDC Order were vacated. And the very purpose of the federal government's appeal is to uphold the lawfulness of the CDC Order and to vacate the district court's improper injunction. "[W]hen the party seeking intervention has the same ultimate objective as a party to the suit," courts apply a "presumption of adequate representation." *North Carolina State Conference of NAACP v. Berger*, 999 F.3d 915, 930 (4th Cir. 2021); *see id.* & n.5 (noting that "virtually all our sister circuits have applied [that presumption] for decades" and collecting cases). Thus, the Fifth Circuit affirmed the denial of a motion to intervene by the State of Alabama because the defendant U.S. Environmental Protection Agency was already defending the lawfulness of its water quality standards that Alabama sought to defend. *Associated Industries of Alabama v. Train*, 543 F.2d 1159 (1976). And the Eleventh Circuit affirmed the denial of a motion to intervene by the Florida Department of Environmental Protection because Florida's interests were adequately represented by the defendant U.S. Environmental Protection Agency, which was already "in this case to defend the legality" of the agency's own actions. *Sierra Club v. Leavitt*, 488

20

F.3d 904, 911 (2007); *see id.* (rejecting Florida's argument that federal defendant "ha[s] an increased incentive to comprise with Sierra Club in settlement discussions" because "nothing in the record supports the suggestion"). Accordingly, Texas has not identified any legally protected interest that is not adequately represented by the federal government's defense of the CDC Order.[5]

## II.    Permissive Intervention Should be Denied

This Court should likewise deny Texas's request for permissive intervention. Mot. 19. Permissive intervention requires a timely motion, *EEOC v. National Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998), but Texas's motion is untimely for the reasons stated above. Regardless, "permissive intervention is an inherently discretionary enterprise," *id.*, and because of Texas's motion is untimely, intervention would cause substantial prejudice to the federal government (*supra* at 14-16), and the federal government adequately represents Texas's interest in this case, this Court should deny the motion for permissive intervention.

---

[5] Contrary to Texas's suggestion, Mot. 17-18, *Fund for Animals v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003), does not establish a categorical rule that government entities do not adequately represent the interests of putative intervenors. Rather, this Court merely noted that courts had reached such a conclusion in particular cases, not that it is invariably the case. Indeed, as noted above, Texas concedes that until recently, it agreed that the federal government was adequately defending its interests.

**CONCLUSION**

For the foregoing reasons, Texas's motion to intervene should be denied.

Respectfully submitted,

BRIAN M. BOYNTON
  *Acting Assistant Attorney General*

SHARON SWINGLE

*/s/ Joshua Waldman*
JOSHUA WALDMAN
ASHLEY A. CHEUNG
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-0236*
  *joshua.waldman@usdoj.gov*

October 2021

22

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Opposition to the motion to intervene satisfies the type-volume limitation in Rule 27(d)(2)(A) because it contains 4946 words. This motion also complies with the typeface and type-style requirements of Rule 32(a)(5) and Rule 32(a)(6) because it was prepared using Microsoft Word 2016 in Times New Roman 14-point font, a proportionally spaced typeface.

*/s/ Joshua Waldman*
JOSHUA WALDMAN

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Joshua Waldman*
JOSHUA WALDMAN