No. 21-5200

# In the United States Court of Appeals for the D.C. Circuit

Nancy Gimena Huisha-Huisha, et al,

Plaintiffs-Appellees,

*v.*

Alejandro Mayorkas, et al,

Defendants-Appellants,

*and*

The State of Texas,

Proposed Intervenor-Defendant.

On Appeal from the United States District Court
for the District of Columbia
Case No. 1:21-cv-00100-EGS

**THE STATE OF TEXAS' REPLY IN SUPPORT OF MOTION TO INTERVENE AS INTERVENOR-DEFENDANT**

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Judd E. Stone II
Solicitor General

Ryan S. Baasch
Assistant Solicitor General
ryan.baasch@oag.texas.gov

Leif A. Olson
Special Counsel

Counsel for Proposed Intervenor-Defendant the State of Texas

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

   I.   As Texas' Intervention Will Not Prejudice Either Party, It Is Timely. ............ 2

   II.   Defendants Do Not Adequately Represent Texas' Interests. ....................... 5

   III.   There Is No Other Basis for Denying Intervention as of Right. ................... 8

   IV.   Permissive Intervention is Also Warranted. ............................................... 10

CONCLUSION ..................................................................................................... 11

# INTRODUCTION

The Title 42 Process is fundamental to protecting the health and well-being of Texans and Texan communities during the ongoing COVID-19 pandemic. Multiple communities in Texas have declared states of disaster because of the ongoing surge of aliens crossing the border with high COVID-19 infection rates. Those aliens are overwhelming the resources of local communities, exposing Texans to a heightened risk of contracting COVID-19, and draining the State's fisc in multiple ways. The Title 42 Process is designed to address these harms by preventing the flow of aliens from countries with high COVID-19 infection rates, and immediately expelling those aliens who do enter instead of permitting them to remain in Texas communities during the pendency of lengthy asylum or removal proceedings.

Although the federal Defendants are charged with implementing and defending the Title 42 Process, Texas has determined that only its presence in this case as a party can protect its interests for two reasons. *First*, it is well known that the federal government has used strategic settlement and other underhanded litigation maneuvers as a way of setting national immigration policy while bypassing the Administrative Procedure Act. Indeed, these specific Defendants cooperated with friendly plaintiff groups to "instantly terminate [an immigration] rule with extreme prejudice" ensuring not only that the rule was eliminated, "but that it could effectively never, ever be resurrected, even by a future administration. All while avoiding the normal messy public participation generally required to change a federal rule." *City & Cnty. of San Francisco v. USCIS*, 992 F.3d 742, 743 (9th Cir. 2021) (Van Dyke, J., dissenting). *Second*, the Defendants here have recently given significant indications

that they plan to do the same with the Title 42 Process, or that they may take other action in this litigation that adversely affects Texas. *See* Texas Mot. at 3-4.

Defendants' response to Texas' Motion to Intervene only underscores these concerns. It is unsurprising that *Plaintiffs* oppose intervention of a party who will vigorously defend the legality of the Title 42 Process. But the Defendants oppose intervention based on "prejudice" arguments do not pass the straight face test, such as that they had to spend time drafting an opposition to Texas' intervention which they opted to draft notwithstanding that Texas takes Defendants' side on the merits. *See infra* at 2-3. Intervention will not prejudice either party. And the remaining arguments against intervention fail.

## I. As Texas' Intervention Will Not Prejudice Either Party, It Is Timely.

Texas explained in its Motion (at 13-15) that its intervention is timely for multiple reasons. Most importantly, its intervention does not "unfairly disadvantage the original parties." *NRDC v. Costle*, 561 F.2d 904, 908 (D.C. Cir. 1977). And prejudice is the touchstone of the timeliness inquiry. *See Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) (district court "abuse[d]" its discretion when it "lost sight of this fundamental principle" to deny intervention even though "no existing party would be prejudiced"). Neither party raises a response that has merit.

**A.** Defendants raise three theories of prejudice.

*First*, Defendants say (at 14-15) they "already" have been prejudiced, because they "divert[ed] time and attention away from drafting [their] opening [merits] brief … to respond to [Texas'] motion to intervene." But that cannot be prejudice—

if it were, then a party could defeat *any* intervention motion by the simple expedient of claiming prejudice from opposing it.

*Second*, Defendants speculate (at 15) that prejudice could occur if Texas introduces a wholly new issue to this case—specifically, whether "unaccompanied noncitizen children" should be subject to the Title 42 Process (they presently are not). But Defendants' speculation is unfounded: While Texas intervenes (in part) to protect its right to litigate that issue in a *different* case, *Texas v. Biden*, 4:21-cv-00579-P (N.D. Tex.), Texas has not and will not litigate that issue here.

*Third*, Defendants say (at 16) they would be prejudiced because Texas could "seek divided oral argument time, file a petition for rehearing … or even petition the Supreme Court for a writ." But those "practical result[s] of its intervention … would have occurred whenever the [S]tate joined the proceedings." *Day v. Apoliona*, 505 F.3d 963, 966 (9th Cir. 2007). As a result, they "do[] not cause prejudice" or render Texas' intervention untimely. *Id.*; *cf. Roane*, 741 F.3d at 151 (prejudice involves such actions as "reopening discovery," "revisit[ing] issues that had already been decided," or presenting arguments that require new "factual development").

**B.** Plaintiffs also offer two theories of prejudice; neither is legitimate. First, they claim (at 18-19) that intervention will be prejudicial because "Texas is relying on disputed *factual* assertions" that the State should have presented to "the District Court before that court ruled on Plaintiffs' motion for an injunction." It is hard to see how. The merits question presented in this appeal is whether the district court correctly held that the "Orders instituting the Title 42 Process exceed the statutory

3

authority granted by Congress pursuant to Section 265." *See* District Court Op. at 32. The answer to that purely legal question does not depend on "disputed factual assertions."

Second, Plaintiffs argue (at 16-17) that Texas is wrong to rely on Federal Rule of Appellate Procedure 15(d) because, if Texas moved in district court, then this Court would "defer to multiple aspects of the District Court's ruling on that motion—including its factual findings." But this Court routinely rules on motions to intervene in the first instance under Rule 15(d) without the benefit of district court fact-finding. And sometimes district courts do not find any facts at all—this Court then just rules on intervention *de novo*, as it would here. *See Karsner v. Lothian*, 532 F.3d 876, 886 (D.C. Cir. 2008) ("reviewing" intervention ruling "*de novo* because the district court failed to provide any findings for us to review" (quotations omitted)). The purely legal nature of the merits question presented indicates that Rule 15(d) and its default presumption that a motion to intervene in the review of an agency action is timely if made within 30 days after case opening in the court of appeals is fully applicable here. *See* Mot. at 13-14.[1] Because Texas intervened within 24 days its motion is presumptively timely without a showing of prejudice, which neither party has made.

---

[1] Notably, neither of the parties have explained why Rule 15(d)'s application to petitions for review of agency action should prevent it from guiding the Court's timeliness analysis here. Nor could they: the Court is reviewing exactly the type of issue that it routinely sees in petitions for review (whether agency action comports with a statute).

## II. Defendants Do Not Adequately Represent Texas' Interests.

Defendants' only other argument for opposing Texas' intervention as of right (at 16-21) is that Defendants adequately represent Texas' interests. That is wrong. Even in the ordinary setting, the federal government frequently cannot be relied upon to adequately represent the interests of other parties. *See Fund for Animals v. Norton*, 322 F.3d 728, 736 n.9 (D.C. Cir. 2003) (collecting cases for this proposition). And here that problem is especially pronounced because Texas and Defendants are currently litigating whether the federal government is properly applying the Title 42 Process. *See Texas v. Biden*, 4:21-cv-00579-P (N.D. Tex.). Indeed, they are at loggerheads regarding almost every single other aspect of the Biden Administration's failure to comply with federal immigration law. *See, e.g.*, *Texas v. United States*, 1:18-cv-68 (S.D. Tex.) (DACA); *Texas v. Biden*, 2:21-cv-67 (N.D. Tex.) (Migrant Protection Protocols); *Texas v. United States*, 6:21-cv-3 (S.D. Tex.) (pause on removals); *Texas v. United States*, 6:21-cv-16 (S.D. Tex.) (prioritization of removal); *United States v. Texas*, 3:21-cv-173 (W.D. Tex.) (Texas authority to restrict transport of aliens). This more than suffices to meet Texas' "minimal" burden of showing that Defendants' representation "*may* be" inadequate. *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir. 1972); *see also* Texas Mot. at 16 (collecting cases).

Defendants respond (at 17-18) by sidestepping the fact that Texas and Defendants are in an adversarial posture on nearly every aspect of border security, and argue that they represent Texas' interests with sustaining the lawfulness of the Title 42 Process because they have defended the program in *this* litigation (*for now*). But

Texas provided ample reasons in its Motion why it believes that defense may imminently come to an end: Defendants have said they are actively considering exemptions to the Title 42 Process, Defendants have said they do not believe they have *any* obligation to use the Title 42 Process, and less than three weeks ago Defendant Mayorkas promulgated guidance indicating that aliens should not be removed from the country unless special aggravating circumstances are present beyond unlawful presence. *See* Texas Mot. at 3-4.[2] The writing is on the wall.

Even if Defendants have not *yet* taken action in this case that directly undermines Texas' interests (which is debatable), the Administration has proven that it may change its mind at any day; Texas should not be forced to wait until that occurs. For example, their "defense" of the previous administration's "Public Charge" rule consisted of simultaneously moving to dismiss appeals in every pending challenge to the rule without notice to any potentially interested party. The Seventh Circuit granted the motion to dismiss and issued its mandate *on the same day*, cementing in place a district court's nationwide injunction. *See Cook County v. Wolf*, No. 20-3150, ECF Nos. 23-25 (7th Cir.). Two days later, Texas (along with several other affected states) moved to intervene and for a recall of the mandate. But the same Defendants here **opposed** that intervention and the Seventh Circuit denied the motions. *Id.* ECF Nos. 26-27. When the States then sought—with the permission of the Supreme

---

[2] Defendants (at 12-14) dispute Texas' characterization of these actions and contend that none call into question the adequacy of their representation. But assuming *Defendants'* characterizations are correct (they are not), Texas need not show Defendants' representation "*is* inadequate, but … merely that it *may* be" *Hodgson*, 473 F.2d at 130. Texas has easily carried that burden.

Court—to intervene in the Northern District of Illinois, the request was denied on the ground that they should have known from President Biden's campaign promises that his administration would abandon the rule. *Cook County v. Mayorkas*, 2021 WL 3633917 (Aug. 17, 2021). Texas is trying to prevent a replay here.

Defendants also wrongly claim (at 18) that they adequately represent Texas' interest in protecting the health and well-being of its citizens from COVID-19. Even if Defendants were fully invested in Texans' health (and their method of enforcing Title 42 suggests they are not), Defendants have stated that they are considering a host of *other* interests including Mexico's interests and stated policies about what aliens Mexico will accept to be "return[ed] via the Title 42 expulsion process." Public Health Reassessment and Order, 86 Fed. Reg. 42,828, 42,837 (Aug 5, 2021). Other countries apparently impose logistical requirements for the return of aliens (*i.e.*, "consular interviews") that inconvenience Defendants. *Id.* Defendants have demonstrated that they will put that inconvenience above fully implementing the Title 42 Process. That Texas puts the health and well-being of its citizens above that inconvenience alone warrants intervention. *See Kane Cty., Utah v. United States*, 928 F.3d 877, 894 (10th Cir. 2019) (granting intervention even where defendant United States shared interests with intervenor because United States' "objectives involve a much *broader* range of interests, including competing policy, economic, political, legal, and environmental factors" (emphasis added)).[3]

---

[3] In addition, Texas is aware of D.C. Circuit Rule 28(d) and will not present duplicative legal argument in its merits brief.

7

## III. There Is No Other Basis for Denying Intervention as of Right.

Defendants do not assert that any other reasons prevent Texas' intervention. *Cf.* Defs' Opp. at 16-17 (not arguing, but "not conced[ing]" the other intervention factors). And all of Plaintiffs' remaining arguments fail.

**A.** Texas has standing. Texas' Motion demonstrated (at 12-13) that Texas has multiple forms of standing, including most plainly a "pocketbook injury that is incurred by the [S]tate itself." *Air All. Houston v. EPA*, 906 F.3d 1049, 1059-60 (D.C. Cir. 2018). Plaintiffs try (at 11-12) to manufacture a factual dispute about the number of aliens crossing the border and how many are infected with COVID-19 to call Texas' standing into question. But Defendants recently admitted that "the United States is currently experiencing … a migratory surge of noncitizens attempting to enter the country," 86 Fed. Reg. at 42,835, and that "[t]he rates at which encountered noncitizens are testing positive for COVID-19 have increased significantly," Defendants'-Appellants' Motion for Emergency Stay, Attachment at Add.66 (Decl. of David Shahoulian) ¶ 13. Defendants further admit they are "heavily reliant on local healthcare systems for the provision of more extensive medical services to noncitizens." 86 Fed. Reg. at 42,837. *see also* Texas Mot. at 9-10. And even if this surge did not exist, Texas' burden of treating even a relatively small additional number (if Plaintiffs succeed in dismantling the Title 42 Process) would suffice for standing. *See Czyzewski v. Jevic Holding Corp.*, 173 S. Ct. 973, 983 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'").

**B**. Texas' interests would be impaired if Plaintiffs succeed. Plaintiffs claim (at 14-15) Texas does not need to intervene to protect its interests because, in their view

8

(at 14-15), Texas lacks "concern regarding the health of Texans statewide." Plaintiffs' basis for this inflammatory claim is apparently that Texas, instead of using coercive power, has permitted individual citizens to make their own decisions about vaccination and masks. It has also taken such steps, among numerous other ways it has protected its citizens, as being the first State to "open[] free monoclonal antibody centers to treat" COVID-19 patients.[4] *See also* FDA Press Release, *Coronavirus (COVID-19) Update: FDA Authorizes Additional Monoclonal Antibody for Treatment of COVID-19* (May 26, 2021) (FDA discussion of significant monoclonal antibody efficacy against COVID-19).[5] There are hundreds of other examples of the State protecting Texans' health and well-being throughout the pandemic. *See* Office of the Governor, *Governor Abbott's Proactive Responses to the Coronavirus Threat* (Oct. 6, 2021) (collecting examples).[6]

**C.** Finally, Texas satisfies any applicable standard for intervention on appeal. Plaintiffs contend (at 3-10) that Texas' Motion should be judged under an exacting standard because it is being made on appeal. But the circumstances of this case, and the clear lack of prejudice, would satisfy any intervention standard. In what appears to be its lone reported opinion on the subject, this Court did express that intervention

---

[4] Robert Towey, *Florida and Texas open Covid antibody treatment centers as delta surge overwhelms hospitals*, CNBC (Aug. 19, 2021), https://www.cnbc.com/2021/08/19/florida-and-texas-open-covid-antibody-treatment-centers-as-delta-surge-overwhelms-hospitals.html.

[5] https://www.fda.gov/news-events/press-announcements/coronavirus-covid-19-update-fda-authorizes-additional-monoclonal-antibody-treatment-covid-19.

[6] https://gov.texas.gov/uploads/files/press/Governor-Abbott-Proactive-Response.pdf.

9

should be limited to "exceptional case[s] for imperative reasons." *Amalgamated Transit Union Int'l v. Donovan*, 771 F.2d 1151, 1152 (D.C. Cir. 1985). But it did so in a case where the motion was filed *after* the Court had rendered its decision, based on a concern that such "belated intervention" will ordinarily be "unduly disruptive and place[] an unfair burden on the parties to the appeal." *Id.* at 1553. In that same opinion, the Court suggested that the movant instead "could have moved to intervene when [a party] appealed." *Id.* at 1554. And as explained *supra* at 2-4, concerns regarding prejudice do not exist here, so any presumption that may flow from such timing does not apply. Indeed, multiple courts of appeal have granted intervention in far later postures than Texas' is being made here. *See, e.g.*, *Apoliona*, 505 F.3d at 964-65 (granting motion so that intervenor can file "petition for rehearing or for rehearing en banc"); *Peruta v. Cty. of San Diego*, 824 F.3d 919, 940 (9th Cir. 2016) (same); *see also Ne. Ohio Coal. for Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999). This Court should do the same.

## IV. Permissive Intervention is Also Warranted.

In the alternative, and for materially the same reasons as set forth above, Texas is entitled to permissive intervention under Federal Rule of Civil Procedure 24(b). *See* Mot. at 19.

# CONCLUSION

For the foregoing reasons, the State of Texas respectfully requests that the Court grant its motion to intervene as of right under Rule 24(a) or, in the alternative, for permissive intervention under Rule 24(b).

                                                Respectfully submitted.

| | |
|---|---|
| KEN PAXTON<br>Attorney General of Texas | JUDD E. STONE II<br>Solicitor General |
| BRENT WEBSTER<br>First Assistant Attorney General | /s/ Ryan S. Baasch<br>RYAN S. BAASCH<br>Assistant Solicitor General<br>ryan.baasch@oag.texas.gov |
| Office of the Attorney General<br>P.O. Box 12548 (MC 059)<br>Austin, Texas 78711-2548<br>Tel.: (512) 936-1896<br>Fax: (512) 370-9191 | LEIF A. OLSON\*<br>Special Counsel<br><br>Counsel for Proposed Intervenor-Defendant the State of Texas |

\* Application for admission forthcoming

## CERTIFICATE OF COMPLIANCE

The foregoing motion complies with Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it is written in 14-point Equity typeface. It complies with Federal Rules of Appellate Procedure 27(d)(2)(C) and 32(f) and (g) because it contains 2,554 words, excluding exempted portions, according to Microsoft Word.

/s/ Ryan S. Baasch
Ryan S. Baasch

## CERTIFICATE OF SERVICE

On October 18, 2021, the foregoing motion and certificate as to parties and amici were served via CM/ECF on all registered counsel.

/s/ Ryan S. Baasch
Ryan S. Baasch