No. 21-5200
Oral Argument Not Scheduled

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA

---

Nancy Gimena Huisha-Huisha, et al.,

Plaintiffs - Appellees,

v.

Alejandro N. Mayorkas, et al.,

Defendants - Appellants.

---

ON APPEAL FROM AN ORDER ENTERED BY THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
No. 21-cv-00100

---

BRIEF FOR AMICUS CURIAE
IMMIGRATION REFORM LAW INSTITUTE
IN SUPPORT OF DEFENDANTS - APPELLANTS

---

IMMIGRATION REFORM LAW INSTITUTE
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
Telephone: (202) 232-5590

John M. Miano
*Counsel of Record*
Matt A. Crapo
*On the Brief*

Attorneys for *Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

The Immigration Reform Law Institute is a non-profit corporation with no shareholders.

## FED. R. APP. P. 29 STATEMENT

In accordance with Fed. R. App. P. 29(a)(2), all parties have consented to the filing of this brief. This brief is filed in accordance with Circuit Rule 29(d) as the only non-government entity *amicus* brief filed in support of Defendants–Appellants.

Further, no counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT

FED. R. APP. P. 29 STATEMENT

TABLE OF AUTHORITIES ........................................................................ ii

INTEREST OF *AMICUS CURIAE* .......................................................... 1

INTRODUCTION ...................................................................................... 2

ARGUMENT .............................................................................................. 3

I.      Based on an Absurd Statutory Reading, the District Court Eviscerated
a Vital Sovereign Power .................................................................... 3

II.     Subsequent Immigration Provisions did not Repeal the Public Health
Statute by Implication ....................................................................... 7

CONCLUSION .......................................................................................... 14

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arizona Dream Act Coal. v. Brewer*,
    818 F.3d 101 (9th Cir. 2016) ................................................................1

*Branch v. Smith*,
    538 U.S. 254 (2003) ...........................................................................11

*Caminetti v. United States*,
    242 U.S. 470 (1917) .............................................................................6

*Defs. of Wildlife v. United States EPA*,
    420 F.3d 946 (9th Cir. 2005) ..........................................................9, 10

*Defs. of Wildlife v. United States EPA*,
    450 F.3d 394 (9th Cir. 2006) ...............................................................10

*Fiallo v. Bell*,
    430 U.S. 787 (1977) .............................................................................3

*Galvan v. Press*,
    347 U.S. 522 (1954) .............................................................................3

*Hunter v. FERC*,
    711 F.3d 155 (D.C. Cir. 2013) .............................................................9

*Kremer v. Chem. Constr. Corp.*,
    456 U.S. 461 (1982) ...........................................................................11

*Landon v. Plasencia*,
    459 U.S. 21 (1982) ...............................................................................3

*Matter of Silva-Trevino*,
    26 I. & N. Dec. 826 (B.I.A. 2016) ........................................................1

*Matter of C-T-L-*,
    25 I. & N. Dec. 341 (B.I.A. 2010) ........................................................1

*Morton v. Mancari,*
    417 U.S. 535 (1974) ...................................................................................9

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife,*
    551 U.S. 644 (2007) ...............................................................................9, 10

*Nishimura Ekiu v. United States,*
    142 U.S. 651 (1892) ...................................................................................3

*Pub. Citizen v. U.S. Dep't of Justice,*
    491 U.S. 440 (1989) ...................................................................................7

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,*
    566 U.S. 639 (2012) ..................................................................................12

*Ruckelshaus v. Monsanto Co.,*
    467 U.S. 986 (1984) ...................................................................................9

*Save Jobs USA v. U.S. Dep't of Homeland Sec.,*
    942 F.3d 504 (D.C. Cir. 2019) .....................................................................1

*Trump v. Hawaii,*
    138 S. Ct. 2392 (2018) ............................................................................1, 3

*United States v. Borden Co.,*
    308 U.S. 188 (1939) ...................................................................................9

*United States v. Rodriguez-Rios,*
    14 F.3d 1040 (5th Cir. 1994) .......................................................................7

*United States v. Texas,*
    136 S. Ct. 2271 (2016) ................................................................................1

*United States v. United Cont'l Tuna Corp.,*
    425 U.S. 164 (1976) ...................................................................................9

*Washington All. of Tech. Workers v. U.S. Dep't of Homeland Sec.,*
    74 F. Supp. 3d 247 (D.D.C.2014) .................................................................1

## STATUTES AND REGULATIONS

7 U.S.C. § 7712 ..........................................................................................5, 8

7 U.S.C. § 8303 ..........................................................................................5, 8

8 U.S.C. § 1158 ..........................................................................................4, 12

8 U.S.C. § 1182(a)(1)(A)(i) ...........................................................................7

8 U.S.C. § 1231 ..........................................................................................4, 12

8 U.S.C. § 1232 ..........................................................................................4, 12

42 C.F.R. § 71.40 ........................................................................................4, 12

42 U.S.C. § 264 ...........................................................................................4, 5

42 U.S.C. § 265 ................................................................................4, 5, 8, 11, 13

Hawaii Omnibus Act,
    Pub. L. 86-624, 74 Stat. 419 (1960) ...................................................13

Immigration and Nationality Act of 1952,
    Pub. L. No. 82-414, 66 Stat. 163 .........................................................4

National Consumer Health Information and Health Promotion Act of 1976,
    Pub. L. No. 94-317, 90 Stat. 695 .........................................................13

Public Health Security and Bioterrorism Preparedness and Response Act of 2002,
    Pub. L. No. 107-188, 116 Stat. 594 .....................................................13

Public Health Service Act,
    Pub. L. No. 78-410, 58 Stat. 682 (1944) .........................................4, 8, 12

## MISCELLANEOUS

85 Fed. Reg. 16,559 (Mar. 24, 2020) ........................................................4

85 Fed. Reg. 56,424 (Sept. 11, 2020) .......................................................4

Black's Law Dictionary (11th ed.) ............................................................6

1 William Blackstone, Commentaries 91 ..................................................6

## INTEREST OF *AMICI CURIAE*

The Immigration Reform Law Institute ("IRLI") is a not for profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens, and also to assisting courts in understanding and accurately applying federal immigration law.  For more than twenty years the Board of Immigration Appeals has solicited supplementary briefing, drafted by IRLI staff, from the Federation for American Immigration Reform, of which IRLI is a supporting organization. IRLI has litigated or filed *amicus curiae* briefs in a wide variety of cases, including *Trump v. Hawaii*, 138 S. Ct. 2392 (2018); *United States v. Texas*, 136 S. Ct. 2271 (2016); *Arizona Dream Act Coal. v. Brewer*, 818 F.3d 101 (9th Cir. 2016); *Washington All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 74 F. Supp. 3d 247 (D.D.C.2014); *Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 942 F.3d 504 (D.C. Cir. 2019); *Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016); and *Matter of C-T-L-*, 25 I. & N. Dec. 341 (B.I.A. 2010). IRLI has also represented a wide variety of plaintiffs in immigration matters, ranging from American workers who have been displaced by foreign workers to foreign workers who have not been paid by their employers. Consequently, IRLI is dedicated to assisting the courts in maintaining a rational immigration system for the benefit of its clients.

# INTRODUCTION

IRLI respectfully submits that this Court should reverse the judgment of the district court and vacate the preliminary injunction. The district court's ruling is based upon an absurd interpretation of the Public Health Service Act. Specifically, the district court's determination that the public health authority to prohibit the introduction of persons does not include the authority to expel persons who violate such a prohibition leads to the absurd result that, in the Public Health Service Act, Congress granted an illusory power. Because absurd interpretations are to be eschewed, this Court should reverse the district court's misreading of the statute and uphold the government's inherent sovereign authority to control the nation's borders.

The district court also improperly imposed immigration-related constraints upon public health officials acting under separate and more specific public health authority. Congress enacted the Public Health Service Act for the purpose of protecting the public health. Subsequently, Congress enacted immigration provisions that constrain the Department of Homeland Security's authority to remove certain aliens from the United States. The district court erred in concluding that these generally-applicable immigration provisions implicitly repealed or otherwise constrain public health officials' authority to prohibit the introduction of certain aliens. Repeals by implication are disfavored, and the narrow conditions for

them are not met here. Rather, the more specific of the two statutes—the Public Health Services Act—should govern.

For these reasons, and those put forward by Defendents-Appellees, this Court should reverse the district court's judgment and vacate the preliminary injunction.

## ARGUMENT

## I.    Based on an Absurd Statutory Reading, the District Court Eviscerated a Vital Sovereign Power

The Supreme Court has long recognized that "the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Trump v. Hawaii*, 138 S. Ct. 2392, 2418 (2018) (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)); *see also Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("[T]he power to admit or exclude aliens is a sovereign prerogative."). Thus, the power "to forbid the entrance of foreigners … or to admit them only in such cases and upon such conditions as it may see fit to prescribe" is an inherent sovereign prerogative entrusted exclusively in Congress. *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892); *see also Galvan v. Press*, 347 U.S. 522, 531 (1954) ("Policies pertaining to the entry of aliens and their right to remain here are . . . entrusted exclusively to Congress . . . .").

In enacting the public health provisions of 42 U.S.C. §§ 264-65, Congress sought to protect the public health by authorizing the executive branch to prohibit the introduction of people or property from countries where the Director of the Centers for Disease Control and Prevention has determined there exists a dangerous communicable disease. These provisions were enacted in the Public Health Service Act, Pub. L. No. 78-410, §§ 361-62, 58 Stat. 682, 704 (1944).

Congress has also established a comprehensive and uniform immigration system governing who may enter and remain in the United States by enacting the Immigration and Nationality Act of 1952 ("INA"), Pub. L. No. 82-414, 66 Stat. 163. That act governs the removal of aliens who are already present in the United States and includes provisions aimed at protecting aliens from persecution abroad and combatting the trafficking of children. *See*, *e.g.*, 8 U.S.C. §§ 1158, 1231-1232.

To combat the current global pandemic, the Department of Health and Human Services, pursuant to 42 U.S.C. § 265, promulgated an interim final rule that permitted the Director of the Centers for Disease Control to prohibit the introduction of certain persons into the United States. *See* 85 Fed. Reg. 16,559 (Mar. 24, 2020); *see also* 85 Fed. Reg. 56,424 (Sept. 11, 2020) (promulgating final rule); 42 C.F.R. § 71.40. Previous regulations had not addressed the introduction of people into the United States. 85 Fed. Reg. at 16,560.

Federal statutes recognize that blocking the admission of disease from abroad is a key means of slowing the spread of an epidemic within the United States. *See*, *e.g.*, 7 U.S.C. §§ 7712, 8302, 42 U.S.C. §§ 264-65. The Homeland Security Council noted in 2005 that "[t]he most effective way to protect the American population is to contain an outbreak beyond the borders of the U.S." National Strategy for Pandemic Influenza, Nov. 2005 (available at https://www.hsdl.org/?view&did=457407). A study on internal border controls and the spread of influenza found that, absent other control measures, "stopping at least 99% of travel would be required to significantly increase time available for vaccine production and distribution." James G. Wood, et al., "Effects of Internal Border Control on Spread of Pandemic Influenza," EMERGING INFECTIOUS DISEASES, Vol. 13, No. 7 (July 2007) 1038-1045 (available at https://wwwnc.cdc.gov/eid/article/13/7/06-0740_article).

Despite the vital nature of this authority to protect public health, the district court held that the power to prohibit the introduction of all aliens from a given country during a health emergency does not encompass the power to expel such aliens who have crossed the border. Joint Appendix at 110 (reasoning that "[e]ven accepting … that the phrase, 'prohibit … the introduction of,' means 'to intercept or prevent,' the 'process' of introduction … this phrase also does not encompass expulsion from the United States" and "'[e]xpelling persons … is entirely different

5

from interrupting, intercepting, or halting the process of introduction"). This is an absurd holding. Congress did not authorize the executive to undertake the physical task of preventing or impeding the geographical entry of persons into the United States. Rather, it gave the executive the authority to prohibit their introduction or entry. The leading definition of prohibit is "[to] forbid by law." Prohibit, Black's Law Dictionary (11th ed.).

If the statute did not give the executive the authority to expel aliens who had violated its prohibition by surreptitiously crossing the border, the executive would have no way to exercise its authority to prohibit introduction at a land border at all, and Congress's grant of that authority would have been only an empty gesture. It is absurd to conclude that Congress granted such an illusory power, particularly with respect to an authority intended to protect public health.

Absurd interpretations of statutes are, of course, to be avoided. "If there arise out of [acts of parliament] collaterally any absurd consequences, manifestly contradictory to common reason, they are, with regard to those collateral consequences, void." 1 William Blackstone, Commentaries 91. And mindfulness of absurd consequences is—and always has been—an essential element of reading a text, notwithstanding the plainest statutory language. "[T]he language being plain, and not leading to absurd or wholly impracticable consequences, it is the sole evidence of the ultimate legislative intent." *Caminetti v. United States*, 242

U.S. 470, 490 (1917). Reading statutes to avoid absurd consequences "demonstrates a respect for the coequal Legislative Branch, which we assume would not act an in absurd way." *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 470 (1989) (Kennedy, J., concurring). Thus, "[w]e are authorized to deviate from the literal language of a statute only if the plain language would lead to absurd results, or if such an interpretation would defeat the intent of Congress." *United States v. Rodriguez-Rios*, 14 F.3d 1040, 1044 (5th Cir. 1994). Here, even if the language of the statute plainly had the meaning the district court gave it, the absurd consequence that Congress granted the executive a merely nominal and illusory power to prohibit the introduction of aliens at a land border (in order to protect public health no less) should be rejected.

For the reasons discussed above, the district court's interpretation is not only absurd, but dangerous, gravely undermining both national security and the public health of the nation.

## II.     Subsequent Immigration Provisions did not Repeal the Public Health Statute by Implication

The authority to seal the borders in the event of a public health crisis is not a shared power. The Immigration and Nationality Act provides for the exclusion of individual aliens on health- related grounds. 8 U.S.C. § 1182(a)(1)(A)(i) (specifying that any alien who is determined to have a communicable disease of public health significance is inadmissible). The Act does not, however, provide the

7

Department of Homeland Security with authority to close the border with countries in a pandemic health emergency. That power lies with the public health services that have the authority to prohibit the "introduction" of "persons." Public Health Service Act., Pub. L. No. 78-410, § 362, 58 Stat. 682, 704 (1944) (codified at 42 U.S.C. § 265).[1]

Although the Department of Homeland Security's authority to remove aliens is constrained by the provisions in the Immigration and Nationality Act enacted to protect aliens from persecution abroad and to combat the trafficking of children, Congress has not imposed those same constraints on public health officials under the Public Health Service Act. Nevertheless, the district court ruled that the expulsion of Plaintiffs-Appellees pursuant to the Title 42 process, without any opportunity to apply for asylum or withholding of removal under Title 8 immigration laws, is unlawful. Joint Appendix at 114. In essence, the district court held that the enactments in Title 8 governing the Department of Homeland Security took precedence over, or implicitly repealed, the earlier public health provisions enacted by Congress.

---

[1] Likewise, the Secretary of Agriculture has the similar authority to ban the importation of plants (7 U.S.C. § 7712) and animals (7 U.S.C. § 8303).

"It is, of course, a cardinal principle of statutory construction that repeals by implication are not favored." *United States v. United Cont'l Tuna Corp.*, 425 U.S. 164, 168 (1976).

> The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective. "When there are two acts upon the same subject, the rule is to give effect to both if possible."

*Morton v. Mancari*, 417 U.S. 535, 551 (1974) (quoting *United States v. Borden Co.*, 308 U.S. 188, 198 (1939)). Furthermore, the courts treat allegations of partial repeal by implication in the same manner as allegations of total repeal by implication. *E.g.*, *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1017 (1984); *Hunter v. FERC*, 711 F.3d 155, 159 (D.C. Cir. 2013).

Under this general rule of statutory construction, the provisions of Title 42 have not been repealed by subsequent enactments in Title 8. Instructively, the Supreme Court declined to find a repeal by implication in *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644 (2007). The Clean Water Act (1972) gave the Environmental Protection Agency authority to issue permits for the discharge of pollutants into navigable waters. *Defs. of Wildlife v. United States EPA*, 420 F.3d 946, 950 (9th Cir. 2005). The same Act permitted states to apply to the Environmental Protection Agency to administer the permit program within their borders. *Id.* Furthermore, the Clean Water Act mandated that the

Environmental Protection Agency approve such applications if nine conditions were met. *Id.* Subsequently, in 1973, Congress enacted the Endangered Species Act. *Id.* The Endangered Species Act required agencies to ensure that their actions would not adversely affect threatened species. *Id.* at 950-51. The plaintiff in *Defs. of Wildlife* challenged the transfer of a permit process to Arizona under the Clean Water Act on the grounds that the transfer did not conform to the requirements of the Endangered Species Act. *Id.* at 955.

The Ninth Circuit vacated the permit process transfer, even though the nine requirements of the Clean Water Act had been satisfied. *Defs. of Wildlife*, 420 F.3d at 978. The Ninth Circuit held that the requirements of the Endangered Species Act also applied, effectively creating a tenth requirement for the application process. *Id.* at 975; *Defs. of Wildlife v. United States EPA*, 450 F.3d 394, 404 n.2 (9th Cir. 2006) ("[T]he very definite, unqualified language of the after-enacted Endangered Species Act must still prevail.") (Berzon, J., concurring in denial of rehearing en banc).

The Supreme Court reversed. *Nat'l Ass'n of Home Builders*, 551 U.S. at 673. The Court noted that the Ninth Circuit's grafting of a tenth requirement from the Endangered Species Act into the permit application process impermissibly created an implicit repeal of the mandate of the Clean Water Act. *Id.* at 663.

10

Similarly, here, the provisions of Title 42 cannot be wiped out implicitly by the later enactments of Title 8 when there has been no explicit repeal. There are two situations where courts find repeals by implication:

> (1) where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act. But, in either case, the intention of the legislature to repeal must be clear and manifest.

*Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 468 (1982) (internal quotations omitted). Such a finding is rare. *See Branch v. Smith*, 538 U.S. 254, 293 (2003) (O'Connor, J., concurring in part and dissenting in part) (observing the Court had not found an implied repeal outside the antitrust context since 1917, or any implied repeal since 1975).

The first circumstance for finding a repeal by implication is not present here. The executive's powers to prohibit introduction under 42 U.S.C. § 265 are not boundless. That provision can only be invoked when four prerequisites are satisfied: the Director of the Centers for Disease Control and Prevention must determine (1) the existence of a communicable disease in a foreign country; (2) that there is serious danger of the introduction of the disease into the United States; (3) that the danger from the disease is increased by the introduction of persons or property from that country; and (4) that the suspension of the introduction of such persons or property is required in the interest of public health. *See* 42 U.S.C. § 265;

11

42 C.F.R. § 71.40(a). Accordingly, section 265 is not a provision of general application.

Because section 265 is of limited application, it is not difficult to give effect to both it and the statutory provisions of Title 8. The provisions of the Immigration and Nationality Act (including 8 U.S.C. §§ 1158, 1231, 1232) are of general application and normally apply. In contrast, section 265 only applies in limited circumstances and over limited periods of time. Thus, their interplay flows naturally from the *generalia specialibus non derogant* (general/specific) canon of statutory construction. "[W]here general and specific authorizations exist side-by-side, the general/specific canon avoids rendering superfluous a specific provision that is swallowed by the general one." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). The provisions of Title 42 can, and should, be given full effect.

Neither is the second circumstance for finding repeal by implication present here. The public health provisions and immigration provisions at issue are in different titles of the U.S. Code (8: Aliens and Nationality; 42: The Public Health and Welfare). Section 265 of Title 42 was created in an act that consolidated the laws relating to the Public Health Service. Public Health Service Act, § 362, 58 Stat. at 704. Clearly, the Immigration and Nationality Act of 1952 as amended does not cover the whole subject of public health. There is some overlap in subject

matter, but the Public Health Service Act is not a subset of the Immigration and Nationality Act. In particular, Title 8 does not confer on the Department of Homeland Security the authority to suspend entries from a country on public health grounds. That power solely exists with the public health authorities. 42 U.S.C. § 265. Therefore, neither circumstance for finding a repeal by implication exists here.

Congress's subsequent amendments to the immigration-related provisions of the Public Health Service Act also show a lack of implicit repeal. Section 362 of the Act, authorizing regulations to prevent the introduction of disease from foreign countries and allowing the apprehension of aliens coming from a foreign country, has been amended three times after the enactment of the Immigration and Nationality Act of 1952. The Hawaii Omnibus Act (1960) removed references to the Territory of Hawaii. Pub. L. 86-624, § 29, 74 Stat. 419, 624. The National Consumer Health Information and Health Promotion Act of 1976 redefined state to include the District of Columbia. Pub. L. No. 94-317, § 301, 90 Stat. 695, 707. The Public Health Security and Bioterrorism Preparedness and Response Act of 2002 modified the regulatory requirements governing the apprehension of aliens. Pub. L. No. 107-188, § 142, 116 Stat. 594, 626-27. These repeated amendments to the provision authorizing regulations to prohibit the introduction of aliens to prevent

the spread of communicable diseases shows that Congress has not intended § 362 of the Public Health Service Act to be repealed.

In sum, the district court's reading of the public health authority to prohibit the introduction of certain persons into the United States is erroneous, leads to an absurd result, and endangers the public health. Nothing in the Public Health Service Act empowers the courts to second-guess the inherent authority to determine who may enter the country and on what terms. In light of the current pandemic conditions, the district court's ruling endangers the public health and prevents public health officials from exercising their lawful authority.

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's judgment and vacate the preliminary injunction.

DATED: October 28, 2021             Respectfully submitted,

                                    /s/ John M. Miano
                                    John M. Miano
                                    D.C. Bar No. 1003068
                                    Matt A. Crapo
                                    D.C. Bar No. 473355
                                    Immigration Reform Law Institute
                                    25 Massachusetts Ave., NW, Suite 335
                                    Washington, DC 20001
                                    Telephone: (202) 232-5590

                                    Attorneys for *Amicus Curiae*

14

## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with Fed. R. App. P. 29(a)(5) because it contains 3,161 words, as measured by Microsoft Word software. The brief also complies with the typeface and style requirements of Fed. R. App. P. 32(a)(5) & 32(a)(6) because it has been prepared in a proportionally spaced, Roman-style typeface of 14 points or more.

DATED: October 28, 2021            Respectfully submitted,

/s/ John M. Miano
John M. Miano

## CERTIFICATE OF SERVICE

I certify that on October 28, 2021, I electronically filed the foregoing motion and attached *amicus* brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.  Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.


/s/ John M. Miano
John M. Miano