IN THE UNITED STATES COURT OF
APPEALS FOR THE DISTRICT OF
COLUMBIA CIRCUIT

_____

NANCY GIMENA                    )
HUISHA-HUISHA, *et al.*         )
                                )
                                )
                                )
            Appellees           )
                                )
v.                              )
                                )        No.21-100 (EGS)
                                )
ALEJANDRO MAYORKAS,             )
in his official capacity as     )
Secretary of Homeland           )
Security, *et al.*              )
                                )
                                )
                                )
            Appellants          )
_____)


UNNAPPOSED MOTION, OR, IN THE ALTERNATIVE, MOTION OF THE
NATIONAL HAITIAN AMERICAN ELECTED OFFICIALS NETWORK, THE
NATIONAL BAR ASSOCIATION, AND CLYDE VANEL, THE
ASSEMBLYMEMBER FOR THE THIRTY-THIRD DISTRICT OF NEW YORK
FOR LEAVE TO FILE BRIEF AMICUS CURIAE IN SUPPORT OF
APPELLEES AND AFFIRMANCE

i

The National Haitian American Elected Officials Network, the National Bar

Association, and Clyde Vanel, the Assemblymember for the Thirty-Third District

of New York, ("Amici"), respectfully moves for leave to file the attached amicus

curiae brief in support of Appellees.


Date: November 19, 2021                    */s/ Charles Tucker, Jr.*
                                           Charles Tucker, Jr., Esq.
                                           8181 Professional Place
                                           Hyattsville, MD 20785
                                           Tel: (301) 577-1175
                                           charlestuckerlawgroupllp.com


                                           */s/ Clyde Vanel*
                                           Clyde Vanel, Esq.
                                           229-01 Linden Blvd, Unit 110740
                                           Cambria Heights, NY 11411
                                           Tel: (212) 402-5472
                                           clydevanel@vanellaw.com


                                           *Counsel for Amicus Curiae*

# STANDARD

"An amicus curiae, defined as [a] 'friend of the court,' . . . does not represent the parties but participates only for the benefit of the Court." *Hopi Tribe v. Trump*, 2019 US Dist. LEXIS 106244, at 16 (DDC Mar. 20, 2019, No. 17-cv-2590 (TSC)). "An *amicus* brief should normally be allowed . . . when the *amicus* has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Youming Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131, 137 (DDC 2008) (quoting *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1064 (7th Cir. 1997).

"Courts have permitted parties to file amicus briefs where 'the brief will assist the judges by presenting ideas, arguments, theories, insights, facts, or data that are not to be found in the parties' briefs.'" *In re Search of Info. Associated with @mac.com that is Stored at Premises Controlled by Apple, Inc.*, 13 F. Supp. 3d 157, 167 (DDC 2014) (quoting *Voices for Choices v. Illinois Bell Tel. Co.*, 339 F.3d 542, 545 (7th Cir 2003). "Courts have wide discretion in deciding whether to grant a third party leave to file an amicus brief." *In re Search of Info.* 13 F. Supp. 3d at 167.

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 19, 2021, I electronically filed a copy of this Motion, along with the attached proposed Amicus Curiae Brief in the United States Court of Appeals for the District of Columbia Circuit by utilizing the CM/ECF System which will send notification of such filings to all counsel of record in this litigation.

Date: November 19, 2021                          */s/ Charles Tucker, Jr.*
                                                 Charles Tucker, Jr., Esq.

                                                 */s/ Clyde Vanel*
                                                 Clyde Vanel, Esq.

                                                 *Counsel for Amicus Curiae*

ORAL ARGUMENT SCHEDULED FOR 01/19/2022

**No. 13-250**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**
_____

NANCY GIMENA HUISHA-HUISHA, *et al.*
*Plaintiff – Appellees*

v.

ALEJANDRO MAYORKAS, in his official capacity as
Secretary of Homeland Security, *et al.*
*Defendant – Appellants*
_____

On Appeal from the
United States District Court
for the District of Columbia
(No.21-100(EGS))
_____

BRIEF OF THE NATIONAL HAITIAN AMERICAN
ELECTED OFFICIALS NETWORK, THE NATIONAL
BAR ASSOCIATION, AND CLYDE VANEL,
ASSEMBLYMEMBER FOR THE 33RD DISTRICT OF
NEW YORK AS *AMICUS CURIAE* IN SUPPORT OF
APPELLEES
_____

Date: November 19, 2021

*/s/ Charles Tucker, Jr.*
Charles Tucker, Jr., Esq.

*/s/ Clyde Vanel*
Clyde Vanel, Esq.

*Counsel for Amicus Curiae*

v

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned certifies as follows:

### A. Parties and *Amici*

Except for the following amici, all parties, intervenors, and amici appearing before the district court and in this Court are listed in the Brief for Appellants: (1) Immigration Law Reform Institute; (2) State of Texas. The Court denied the State of Texas's motion to intervene in this appeal.

### B.  Rulings Under Review

Reference to the ruling under review appears in the Brief for Appellants.

### C. Related Cases

There are no related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C), nor has this case previously been before this court or any other court.

Date: November 19, 2021                              */s/ Charles Tucker, Jr.*
                                                     Charles Tucker, Jr., Esq.

                                                     */s/ Clyde Vanel*
                                                     Clyde Vanel, Esq.

                                                     *Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to D.C. Circuit Rules 8(a)(4), 26.1, 27(a)(4), and 29(b) and Federal Rules of Appellate Procedure 29(a)(4)(A) and 26.1, *amicus curiae* submits the following corporate disclosure statement:

The National Bar Association, Inc. is a private, non-profit organization and is the nation's oldest and largest national network of predominantly African-American attorneys and judges. It has no parent corporation, and no publicly held corporation owns ten percent or more of its stock.

The National Haitian American Elected Officials Network, Inc. is a private, non-profit organization and is the largest non-partisan organization of over eighty Haitian American elected and appointed public officials in the United States. It has no parent corporation, and no publicly held corporation owns ten percent or more of its stock.

# TABLE OF CONTENTS

STATEMENT OF IDENTITY, INTEREST IN CASE, AND SOURCE OF
AUTHORITY TO FILE ....................................................................................1

STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS ........4

ARGUMENT ....................................................................................................7

   I.      THE CLASS WILL SUFFER IRREPERABLE INJURY ABSENT A
          PRELIMINARY INJUNCTION.........................................................7

    A.   Haitian Immigration Attorneys and Haitian American Public Officials....8

      1.   Stephanie Delia, Esq., Immigration Attorney.......................................8

      2.   Eudson Francois, Trustee of Spring Valley, New York .........................8

      3.   Alix Desulme, Councilman for the Fourth District of North Miami,
          Florida...............................................................................................9

      4.   Clyde Vanel, Assemblymember for the Thirty-Third District of New
          York ..................................................................................................9

    B.   Migrant #1 ..........................................................................................9

    D.   Migrant #2 ........................................................................................13

    E.   Migrant #3 ........................................................................................14

    F.   Migrant #4 ........................................................................................15

    G.   Migrant #5 ........................................................................................16

    H.   Migrant #6 ........................................................................................17

    I.   A Fear of Haiti...................................................................................17

CONCLUSION ...............................................................................................18

# TABLE OF AUTHORITIES

## OTHER AUTHORITIES

https://www.timesrecordnews.com/story/opinion/2021/09/26/border-patrol-agents-horses-cracking-whips-haitian-immigrants-how-ok/5832575001/ ...................... 3

Uriel J. García, *"We suffered a lot to get here": A Haitian migrant's harrowing journey to the Texas-Mexico border* (last visited Nov. 15, 2021), https://www.texastribune.org/2021/10/01/haitian-migrants-texas-mexico-border/ ............................................................................................................. 7

Macro Trends, *Haiti Murder/Homicide Rate 2007-2021* (last visited Nov. 17, 2021), https://www.macrotrends.net/countries/HTI/haiti/murder-homicide-rate ....................................................................................................... 10

Reuters, *Haiti's History of Violence and Disasters* (last visited Nov. 17, 2021), https://www.usnews.com/news/world/articles/2021-08-14/haitis-history-of-violence-and-disasters ...................................................................... 10

Jim Wyss, *Gangs Now Run Haiti, Filling A Vacuum Left By Years of Collapse* (last visited Nov. 16, 2021), https://www.bloomberg.com/news/articles/2021-09-02/gangs-now-run-haiti-filling-a-vacuum-left-by-years-of-collapse ................ 11

British Broadcasting Corporation, *Haiti President's Assassination: What We Know So Far* (last visited Nov. 16, 2021), https://www.bbc.com/news/world-latin-america-57762246 ....................................................................................... 11

Catherine Porter, Natali Kitroeff, *'It's Terror': In Haiti, Gangs Gain Power as Security Vacuum Grows* (last visited Nov. 17, 2021)......................................... 12

Maria Abi-Habib, *As Gangs' Power Grows, Haiti's Police Are Outgunned and Underpaid* (last visited Nov. 16, 2021), https://www.nytimes.com/2021/10/26/world/americas/haiti-police-gangs.html.................................................................................................. 13

Reuters Fact Check, *Fact Check – How Haitian Migrants Make Their Way to the U.S. Border* (last visited Nov. 15, 2021), https://www.reuters.com/article/factcheck-haiti-route/fact-check-how-haitian-migrants-make-their-way-to-the-u-s-border-idUSL1N2QQ1XB ...................... 15

# GLOSSARY

DHS                  United States Department of Homeland Security

NHAEON           National Haitian American Elected Officials Network

**STATEMENT OF IDENTITY, INTEREST IN CASE, AND SOURCE OF AUTHORITY TO FILE**

The National Haitian-American Elected Officials Network ("NHAEON"), the National Bar Association, and Clyde Vanel, the Assemblymember for the Thirty-Third District of New York ("Amici"), are filing this Amicus Brief in support of Appellees against Alejandro Mayokras, in his official capacity as Secretary the United States Department of Homeland Security ("DHS"), to prevent DHS from illegal deporting and continually denying due process to the thousands of Haitian migrant children, woman, and men who have journeyed to the United States to seek refuge from the perilous conditions in Haiti.

Amici, NHAEON is the largest non-partisan organization of over eighty Haitian American elected and appointed public officials in the United States. NHAEON members represent millions of constituents and American residents across the nation, from as far east as New York State and Florida to as far west as Arizona. Amici is dedicated to supporting domestic policies, legislation and issues affecting Haitians living in the United States and abroad.

Amici, the National Bar Association was founded in 1925 and is the nation's oldest and largest national network of predominantly African-American attorneys and judges. It represents the interests of approximately 66,000 lawyers, judges, law professors, and law students. The NBA is organized around 23 substantive law

1

sections, 10 divisions, 12 regions, and over 80 affiliate chapters throughout the United States and around the world.

In early September 2021, since first learning of the Texas border crisis, Amici has been in Del Rio, Texas to assess the conditions and situation and assist organizations with providing humanitarian relief to the thousands of migrants that were mistreated. Amici spoke directly to Haitian migrants who were fleeing Haiti for fear of losing their lives due to political persecution, migrants who gave birth to children in less than sanitary conditions, and Amici spoke to migrants that experienced being chased like animals by federal agents on horseback with whips.

Thousands of Haitians and other migrants have previously been refused due process and expelled to Haiti and their respective countries, without being given the chance to seek asylum, as a result of a faulty and unjustified interpretation of the law that is wreaking havoc among Haitians and many other migrants during these trying times. These actions have and will subject these Haitian migrants to persecution that will likely result in murder, torture, rape, and kidnapping. This case is of vital importance to the thousands of Haitian migrants and its disposition will be, for many, the difference between freedom and persecution.

Many Amici are of Haitian descent, and Amici is extremely concerned about the treatment of Haitians migrants. As Americans, Amici is committed to

protecting due process and the fair treatment of the thousands of children, women, and men who have fled Haiti to the borders of the United States.

In this Brief, Amici addresses the issue of Appellees will suffer irreparable harm if migrants are continually expelled under Title 42 without an asylum hearing.



[1]

---

[1] A photograph of a U.S. Border Patrol agent on horseback apprehending a Haitian migrant near the Acuna Del Rio National Bridge in Del, Rio Texas: September 19, 2021. Elvia Díaz, *Border Patrol agents on horses are cracking whips at Haitian immigrants. How is that OK?* (last visited Sept. 30, 2021), https://www.timesrecordnews.com/story/opinion/2021/09/26/border-patrol-agents-horses-cracking-whips-haitian-immigrants-how-ok/5832575001/

## STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS

Amici drafted this Brief in its entirety and has received no financial contributions in the preparation and filing of this Brief.

## D.C. CIRCUIT RULE 29(d) STATEMENT

This Brief discusses the plight of the Haitian migrants who fled persecution and who have risked their lives to traverse dangerous lands and seek refuge in the United States. Amici have heard first-hand accounts of the Haitian migrants and have observed their suffering in their experiences visiting the Haitian migrant camps at the border of Del Rio, Texas, as well as through conversations with their constituents and, in the case of attorneys, their clients.

Amici's unique perspective of the impact of Title 42 on the Haitian migrants who are seeking asylum is necessary, and this case requires that the Court examine the irreparable harm that will occur to the Haitian migrants if expelled without an asylum hearing. This harm is told through the painful stories of persecution within Haiti, their escape, their journey to the United States through dangerous lands, and their experiences within the United States, as told by the Haitian migrants who are constituents of public official Amici and Amici who work with immigration attorneys.

Date: November 19, 2021

*/s/ Charles Tucker, Jr.*
Charles Tucker, Jr., Esq.

*/s/ Clyde Vanel*
Clyde Vanel, Esq.

*Counsel for Amicus Curiae*

5

## INTRODUCTION

The citizens of the country of Haiti have borne witness to tragedies that, in any other nation, would be cause for annual days of remembrance, patriotic rally cries, and nation-bonding moments, however, for the citizens of Haiti, these tragedies represent just another day. For them, these surmounting tragedies have caused each one to blur into one another, leaving many hopeless with feelings of insecurity about their continued safety.

Haiti has received the brunt of its damage from major earthquakes, the assassination of its President, and high rates of infection and mortality from COVID-19 due to their lack of medical infrastructure. This instability has caused a perfect storm of unpredictability and distress among the Haitian population, leaving many amenable to persecution and an ultimate end to any form of a fulfilling life by ruthless gangs ostensibly acting in concert with the government. The abrogation's of the most precious rights of Americans are commonplace in Haiti, many are refused the right to vote and brutally assaulted with deadly weapons when they try, they are killed, robbed, and ambushed for their political beliefs, and yet the government does nothing. Without a country to flee to, the future they had in Haiti was no future at all: it was an end.

## ARGUMENT

The continued enforcement of Title 42 to expel migrants without an asylum hearing will cause irreparable harm to Appellees because many face political persecution and may face death and an abridgment of their rights simply due to their political beliefs and their exercising of their rights. Such persecution will occur without them being able to seek redress in the United States court system against those perpetrating such heinous actions against them a result of the Haitian migrants being expelled without being given an asylum hearing under Title 42.

## I.    THE CLASS WILL SUFFER IRREPERABLE INJURY ABSENT A PRELIMINARY INJUNCTION

Thousands of migrants crossed the southern border into Del Rio, Texas, in September of 2021.[2] Many migrants fled Haiti in pursuit of safety in the United States, stating a profound fear of death as a result of the country's daily political violence. Because the Haitian migrants who have given their stories for this Brief are fearful for their lives and of political retaliation, they have requested that we use pseudonyms to protect their identity. The stories of the lawyers and political officials represents only a fraction of the thousands of migrants who have traveled through dangerous terrain, witnessed and experienced kidnappings, rapes, and killings, and fled their country in fear of their lives.

---

[2] Uriel J. García, *"We suffered a lot to get here": A Haitian migrant's harrowing journey to the Texas-Mexico border* (last visited Nov. 15, 2021), https://www.texastribune.org/2021/10/01/haitian-migrants-texas-mexico-border/

### A.     Haitian Immigration Attorneys and Haitian American Public Officials

#### 1.     Stephanie Delia, Esq., Immigration Attorney

Stephanie Delia has worked as an immigration attorney for over ten years, attending to the needs of the defenseless and providing hope to individuals fleeing persecution. Attorney Delia leapt to action and pressed on in her pursuit of assisting individuals fleeing the perils of their homeland to provide them the opportunity to find a new life when the Haitian migrant crisis arose in September of 2021.

Since the beginning of the crisis, Attorney Delia has interacted with many Haitian migrants. She noticed that those refugees who had previously sought aid and failed to obtain representation had an instinctive tendency to normalize the pain and political violence they had experienced in Haiti, thereby placing their struggles outside the realm of asylum, when in reality they had legitimate claims.

#### 2.     Eudson Francois, Trustee of Spring Valley, New York

Trustee Eudson Francois is a member of NHAEON and an elected trustee of Spring Valley, New York. In September 2021, he traveled to Texas to meet with migrants and give relief to those in need during the Haitian migrant crisis. He provided personal transportation and food for many of the migrants who crossed the border.

### 3. Alix Desulme, Councilman for the Fourth District of North Miami, Florida

Councilman Alix Desulme is a member of NHAEON and an elected councilman of North Miami, Florida. In September 2021, he too traveled to Texas to meet with the Haitian migrants who crossed the border into Del Rio, Texas.

### 4. Clyde Vanel, Assemblymember for the Thirty-Third District of New York

Assemblymember Clyde Vanel is a member of NHAEON and an elected assemblymember in the state of New York. His constituents consist of a large number of Hatian Americans. He and his colleagues have worked tirelessly to find representation for Haitian migrants, and he has spoken publicly to express his dismay at the Title 42 expulsions of the Haitian migrants.

### B. Migrant #1

Migrant #1 is a Seventh Day Adventist who spent his entire life in Haiti prior to migrating to America. When Attorney Delia first inquired about his asylum claim, he stated that he was experiencing "misery and lack of security." Attorney Delia is well aware, as an experienced immigration attorney, that these amorphous sorts of injury are inadequate to support a claim for asylum. However, when she delved further into Migrant #1's circumstances, it became evident that misery and insecurity were only symptoms of the problem, not the problem itself. This is the account he gave.

According to Migrant #1 misery and insecurity leads to death. In Haiti, Migrant #1 stated that the President is typically regarded as accountable for any mishaps that occur in the country due to the political structure of Haiti. This animosity towards bad presidents seeps into everyday life, creating the illusion that every wrongdoing by the president is the responsibility of the individual people who voted for that president. As a result, politics becomes personal, and exposure of one's political beliefs in Haiti can lead to hostility, injury, and even death. Worse, simply working in Haiti is grounds for alarm, particularly if one votes for the opposition. Gang members raiding employed people's houses, attacking, and robbing them is a relatively common event in Haiti.[3]

Natural and biological disasters have wreaked havoc on Haiti, exacerbating the country's already high levels of poverty and violence.[4] All of these recent concerns arose under the reign of President Jovenel Moïse. As a result, his presidency was a ticking time bomb, animosity toward him was increasing, and it was only a matter of time until something terrible happened. That terrible tragedy occurred on July 7, 2021, when President Jovenel Moïse was slain at his home in Port-au-Prince, Haiti, allegedly by nearly thirty foreign assassins who planned and

---

[3] Macro Trends, *Haiti Murder/Homicide Rate 2007-2021* (last visited Nov. 17, 2021), https://www.macrotrends.net/countries/HTI/haiti/murder-homicide-rate
[4] Reuters, *Haiti's History of Violence and Disasters* (last visited Nov. 17, 2021), https://www.usnews.com/news/world/articles/2021-08-14/haitis-history-of-violence-and-disasters

carried out the heinous assassination.[5] Following the President's killing, formidable gangs began seizing control of local communities, more armed and powerful than they had ever been before.[6]

Haiti shares a border with the Dominican Republic, which provides a lifeline for Haitian merchants by enabling them to effortlessly cross the border and acquire low-cost commodities to sell in their communities back home. The dates and hours on which the merchants conduct their shopping are coordinated: every week on Monday and Friday at the same time. Since President Jovenel Moïse assassination, Migrant #1 has stated that the gangs have coordinated their attempts to disrupt the population's lives by choking trade between Haiti and the Dominican Republic. To accomplish their goals of disrupting commerce, they hold protests along merchants' routes, obstructing their efforts to do business by prohibiting them from traveling through and carrying products back to Haiti.

The gang protests in Haiti are more analogous to political power grabs and techniques of disruption than the rallies we are used to observing in the United

---

[5] British Broadcasting Corporation, *Haiti President's Assassination: What We Know So Far* (last visited Nov. 16, 2021), https://www.bbc.com/news/world-latin-america-57762246

[6] Jim Wyss, *Gangs Now Run Haiti, Filling A Vacuum Left By Years of Collapse* (last visited Nov. 16, 2021), https://www.bloomberg.com/news/articles/2021-09-02/gangs-now-run-haiti-filling-a-vacuum-left-by-years-of-collapse

States.[7] The purpose of the protests are well known in Haiti, as is the consequence of not participating. The gangs are in charge of the destructive protests in Haiti, and they threaten and use violence against anyone who does not join them. This has led many people who disagree with the gangs, as well as those who have been victims of the gangs' violet actions, to join in their message and aid in their destruction and disruption. Migrant #1 was not one of these people; his religious beliefs prohibited him from taking part in the violent demonstrations, even if it meant risking his life. As a result, the gangs decided to attack him. Consequently, Migrant #1 was compelled to hide or run whenever there was a demonstration for fear of being injured or killed.

The police force is a traditional government institution; people who are authorized by the government to use both the powers of force and arrest to prevent persons from committing acts of violence. Yet, in Haiti, following the killing of President Jovenel Moïse's, gangs have taken control of police forces in particular communities and threaten anybody who tries to contact the police.[8] It is common, local knowledge in some communities that contacting the authorities is risky. In certain communities, contacting the authorities can have far-reaching repercussions

---

[7] Catherine Porter, Natali Kitroeff, *'It's Terror': In Haiti, Gangs Gain Power as Security Vacuum Grows* (last visited Nov. 17, 2021), https://www.nytimes.com/2021/10/21/world/americas/haiti-gangs-kidnapping.html
[8] Maria Abi-Habib, *As Gangs' Power Grows, Haiti's Police Are Outgunned and Underpaid* (last visited Nov. 16, 2021), https://www.nytimes.com/2021/10/26/world/americas/haiti-police-gangs.html

that are considerably worse than not calling them. Migrant #1 resided in a town run by gangs, and because he couldn't fight back due to his religious convictions, nor could he call the police due to the fact that they were partnered with the gangs, he risked his life by traveling to the gang leader's home and begging for forgiveness.

### D.     Migrant #2

In the United States, the freedom to vote has long been a cornerstone of our democracy. It empowers citizens to rule themselves and elect whomever they believe would govern effectively in their best interests. However, in Haiti, this right is curtailed in the most egregious manner through force and intimidation. Migrant #2 is from a politically active family, and their political opinions are well-known in their community. Unfortunately, in some Haitian communities, the price you pay for being politically active is with your safety and, in some cases, your life. Migrant #2 sought to vote in her local school's voting booths during one election. However, because of the gangs' brutality and political activism, they not only barred her from voting, but also threatened her life if she continued to attempt to do so. "If you know what's good for you, leave," the gang members said.

Migrant #2 was a formidable opponent for the gangs, as was her uncle. But her uncle's will to engage in the political process was even more remarkable. Unfortunately, his strong resolve resulted in him suffering tremendously. After one of her failed efforts to vote, Migrant #2 returned to her house to inform her uncle

of the violence that may ensue if he were to continue to make attempts to vote. However, the gang got to him first. He was transported to the hospital after being attacked with a machete in his own house. He lived, but he was traumatized and grievously injured.

### E.    Migrant #3

Migrant #3 had to live with the daily anxiety of needing to glance over his shoulder for fear of being attacked by politically active gangs. It came to a point that he was forced out of his house one night because he was afraid of being killed, leaving behind all of his worldly possessions, friends, and neighbors, with no intention of ever returning. One night, he was greeted at his doorstep by men who were wielding firearms. Upon seeing them, he dashed through his house and leaped out of his window as swiftly as he could. He had no idea that would be the final time he would ever step foot in his house.

Even after fleeing gang violence and persecution, Migrant #3 continued to encounter and witness horrors he could never have imagined even after arriving in the nation that promised him freedom. He was promptly chained and placed on a bus to be transported from El Paso, Texas to New Mexico. His feet grew badly swollen as a result of a tight shackle being placed on it, and he caught a cold while being kept in a detention center, rendering him particularly vulnerable to COVID-19.

### F.    Migrant #4

The journey from Haiti to the United States was perilous. Men and women were frequently raped, groups were ambushed, looted, and slaughtered for the material goods they carried with them from Haiti, and people gave birth both outside and inside the United States.  These are not unusual stories; they happened virtually every day on the journey to the United States.[9]

Along the journey, many Haitians perished, many were raped and abducted, and the majority were robbed. Migrant #4 has firsthand experience with this. He saved up approximately $8,000 before escaping Haiti with his family to traverse dangerous lands and seek refuge in the United States to help him along the journey. Unfortunately, those who came before him provided thieves with a clear and direct path to effortlessly rob Haitians. As a result, robbers took all of the money he planned to spend to aid his family at gunpoint very early in the trip. Fortunately, he and his family were able to reach the United States safely thanks to good Samaritans who assisted them in whatever way they could. He and his family would have perished if it hadn't been for their kindness. Unfortunately, his narrative was not unusual, and many others were not so lucky; Migrant #4 claimed

---

[9] Reuters Fact Check, *Fact Check – How Haitian Migrants Make Their Way to the U.S. Border* (last visited Nov. 15, 2021), https://www.reuters.com/article/factcheck-haiti-route/fact-check-how-haitian-migrants-make-their-way-to-the-u-s-border-idUSL1N2QQ1XB

that the chances of leaving Haiti with money and reaching in the United States with it were slim.

Women were being victimized at an astonishing rate; thankfully, Migrant #4's family was spared. Many others, however, were not so lucky. Women, especially pregnant women, were extremely vulnerable to being victimized, as he and many other Haitian migrants recounted, due to their perceived incapacity to fight back due to their pregnancy.

### G.    Migrant #5

The dangers did not end there. Women were routinely raped beneath bridges, individuals were attacked, and families were plundered in migrant camps, with practically no redress to the United States. Other perils frequented Haitian migrants after their arrival, mainly expulsion. Had the Haitian migrants been allowed to seek asylum in the United States, they undoubtedly would have been able to avoid these tragic events. Instead, the enforcement of Title 42 has led many to be victimized by these atrocious acts of violence.

Migrant #5 and the other 19 members of her party successfully completed the lengthy journey to the United States, arriving in Laredo, Texas. Despite the fact that she is a Haitian national, she currently is married to a former detective who resides with their child in Washington, D.C., both of whom are American citizens. She wanted to go to Washington, D.C. to be with her husband and child, thus, she

16

was required to fill out paperwork prior to boarding the flight in order to be qualified to fly. She remained up until four in the morning finishing the papers. She was then taken by border patrol at four o'clock in the morning and forcibly flown back to Haiti.

### H.    Migrant #6

Migrant #6, a pregnant mother, risked her life to flee Haiti with her daughter, despite the dangers of the trek. During their time in the United States, Trustee Eudson Francois looked after the family. Trustee Francois brought Migrant #6's daughter to McDonalds for a quick meal shortly after they arrived, a fast-food establishment whose food is inexpensive and not particularly impressive. Despite the fact that this meal is fast and cheap, Trustee Francois recalls Migrant #6's daughter's expression as she had her first mouthful. Her face lit up with delight, and she relished every bite as if she hadn't eaten in months. She did not take a single bite for granted, for she could not know whether she would have that meal again. At that moment, the food she ate was not just food, it was a miracle, it was necessary, and it was a blessing.

### I.    A Fear of Haiti

Prior to 2021, the people of Haiti were destitute and under attack by ruthless gangs. It is not the case that a large number of Haitians suddenly opted to depart because of poverty and miserable living conditions. No. The gangs are the ones

17

who have seized control by force and imposed their political stances on the Haitian people. Rape, murder, abduction, robbery, and other crimes are all part of this power grab. This use of deadly force is still present today.

In Haiti, the killing of the president and the gangs' ascent to power has produced a critical threshold. With gangs seizing control of everyday life and critical resources that the people of Haiti require, it is no surprise that they would rather risk death and suffering by traversing perilous routes for months to the United States. This is because they know that if they stayed in Haiti, the government would be powerless to help them and they would likely die anyway; at the very least, by taking this journey, they might still have a chance at a meaningful life, or even a life in general.

These Haitian migrants, and thousands of others, risked death, rape, kidnapping, and robbery just so that they could live in the United States, yet they gladly took the risk to escape persecution. Evidently, sending these Haitians back to Haiti is truly the only way to frighten them.

## CONCLUSION

The District Court was correct in granting Appellee's motion for a preliminary injunction. Thus, the Appellee's would likely suffer irreparable harm. For these reasons, the Court should affirm.

Dated: November 19, 2021                    Respectfully submitted,

                                            */s/ Charles Tucker, Jr.*
                                            Charles Tucker, Jr., Esq.
                                            8181 Professional Place
                                            Hyattsville, MD 20785
                                            Tel: (301) 577-1175
                                            charlestuckerlawgroupllp.com


                                            */s/ Clyde Vanel*
                                            Clyde Vanel, Esq.
                                            229-01 Linden Blvd, Unit 110740
                                            Cambria Heights, NY 11411
                                            Tel: (212) 402-5472
                                            clydevanel@vanellaw.com


                                            *Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

This document complies with the type-volume limit of Fed R. App. P.

29(a)(5) because it contains 3,769 words, excluding the parts exempted by Cir. R.

32(f).

This document complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this

document has been prepared in proportionally spaced typeface using Microsoft

Word in Times New Roman, 14-point font, regular style.

Dated: November 19, 2021                    */s/ Charles Tucker, Jr.*
                                             Charles Tucker, Jr., Esq.

                                             */s/ Clyde Vanel*
                                             Clyde Vanel, Esq.

                                             *Counsel for Amicus Curiae*

20